**UNITED STATES DISTRICT COURT**

**EASTERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| DOUGLAS J. STEVENSON, | **CASE NO. 1:16-cv-01831-AWI-SKO** |
| Plaintiff, | **ORDER GRANTING IN PART AND DENYING IN PART DEFENDANTS' MOTION TO DISMISS** |
| v. | |
| K. HOLLAND, et al., | |
| Defendants. | |

## I. Introduction

Plaintiff Douglas J. Stevenson ("Plaintiff"), a former inmate at California Correctional Institution ("CCI") a prison operated by the California Department of Corrections and Rehabilitation ("CDCR") in Tehachapi, California, brings the instant civil rights action against defendants K. Holland, warden of CCI; Sergeant Foster, a supervising sergeant at CCI; Ronnie Frye, employed by CDCR as an "ISU employee" at CCI; correctional officers M. Crotty, R. Valaverde, J. Dunnahoe, V. White, A. Cantu, C. Gonzales, Alomari, and Jackson, all correctional officers at CCI; and Does 1-100. Doc. 1 ("Compl.") at ¶6-17. Plaintiff's allegations arise from two incidents: the first, an application of pepper spray allegedly involving Defendants Dunnahoe, Valaverde, Crotty, and a Doe defendant nurse on November 11, 2012; the second, an application of physical force in the form of multiple baton strikes and kicks performed by Defendants Crotty

and Does 1 and 2, observed by Defendants Gonzales, Cantu, and Foster, and the effects of which were seen and photographed by Defendant Frye.

Defendants move to dismiss the thirteen causes of action based on those allegations. For the following reasons, Defendants' motion will be granted in part and denied in part.

## II. Background[1]

First Incident: November 11, 2012.

Plaintiff was an inmate at CCI on November 11, 2012. On that date, Plaintiff was transferred into CCI's secured housing unit ("SHU") and placed with a cellmate named Bell. Compl. at ¶¶ 22-23. On the same date, Plaintiff inquired of one or more of Defendants regarding his property which had not been returned to him after the transfer. *Id.* at ¶ 24. Thereafter, Defendants Dunnahoe and Valverde emptied both of their pepper spray canisters at Plaintiff and his cellmate through the port in their cell door without any good cause for doing so. *Id.* at ¶¶ 24-25. Defendant Crotty offered his pepper spray canister to Defendants Dunnahoe and Valverde. *Id.* at ¶ 24.[2] Defendant White observed Defendants Dunnahoe and Valverde apply pepper spray to Plaintiff and did not interfere. *Id.*

Defendant Crotty then took Plaintiff to a holding cell, "raised up [Plaintiff's] handcuffs and threw him head-first into the cell with such force that [Plaintiff's] face slammed into the cell's back fence, injuring [Plaintiff's] cheekbone and eye…." Compl. at ¶ 26. Defendant Crotty then performed a strip search of Plaintiff as part of the decontamination process. *Id.* at ¶ 26. Plaintiff alleges that during that process Defendant Crotty saw Plaintiff's "infirm leg with a surgical scar." *Id.* at ¶ 27.

Plaintiff informed Defendant Sgt. Foster that Defendant Crotty "slamm[ed]" Plaintiff's face into the fence. Compl. at ¶ 28. When Plaintiff was seen by examining nurse Doe, Defendant Foster instructed nurse Doe "not to document any injury." *Id.* at 28.

In order to cover up the misconduct, "Defendants falsely reported that [Plaintiff] was arguing with his cellmate and/or that there was a problem between [Plaintiff] and his cellmate,

---

[1] This section relies wholly on the allegations of the operative complaint.
[2] Plaintiff's complaint does not suggest whether Defendants Dunnahoe and Valverde accepted Defendant Crotty's canister or whether it was used.

and/or that [Plaintiff] refused their orders." Compl. at ¶ 29. Plaintiff file a prisoner grievance regarding the force applied but it was never returned. *Id.* at ¶ 31.[3] Based on the false report or reports by the Defendant correctional officers, Plaintiff received a rules violation report ("RVR"), prepared by Defendant Dunnahoe, resulting in a loss of 90 days of credits. *Id.* at ¶ 30. Plaintiff appealed the RVR and attendant loss of credits. *Id.* at ¶ 32. Plaintiff indicates that he "continued to follow up on his appeal status to no avail." *Id.* at ¶ 32. Plaintiff does not indicate the result of the appeal.

Second Incident: December 7, 2012.

Following the pepper spray incident on November 11, 2012, Plaintiff was afraid to go to the shower because it required him being escorted by correctional officers to and from the shower while handcuffed. Compl. at ¶¶ 35-36. Between November 11 and December 7, 2012, Plaintiff bathed in his sink. *Id.* at ¶ 35. On December 7, 2012, Plaintiff elected to take a shower. *Id.* at ¶ 36. Defendant Crotty escorted Plaintiff on the return trip from the shower. *Id.* at ¶ 36. During that trip, while Plaintiff was handcuffed behind his back, Plaintiff asked Defendant Crotty for a spoon because Plaintiff's was broken. *Id.*[4] Defendant Crotty then pushed Plaintiff into a wall, then onto the ground, and then struck Plaintiff with a baton seven or eight times, purposefully aiming at Plaintiff's injured leg. *Id.* Defendants Gonzales and Cantu watched the incident without intervening despite Plaintiff's pleas for help. *Id.* Two other guards, unknown to plaintiff, joined in on the beating. *Id.* The first struck Plaintiff with a baton several times (appearing to also hit Defendant Crotty in the hand)[5] and stomped on Plaintiff. *Id.* The second unknown guard stomped on Plaintiff. *Id.*

Defendant Crotty and the Doe defendant correctional officers stopped beating plaintiff when Defendant Sgt. Foster arrived on the scene. *Id.* at ¶ 37. Plaintiff was then placed in a holding cell. *Id.* Defendant Sgt. Foster reprimanded Defendant Crotty for being part of a second

---

[3] Plaintiff indicates that he submitted supporting documents with the prisoner petition but does not indicate what those supporting documents were.

[4] Plaintiff also offers an alternative explanation for the beating: "According to [Defendant Crotty], he was prompted to beat [Plaintiff] because another inmate called out to him to retrieve a book. [Plaintiff] denied this." Compl. at ¶ 38.

[5] Defendant Crotty's "right fourth metacarpal" was fractured. Compl. at ¶ 45. Defendant Crotty was on medical leave for several months as a result of the injury. *Id.*

physical confrontation with Plaintiff. *Id*. Defendant Sgt. Foster "asked [Defendant Crotty] what [Defendant Crotty] wanted [Defendant Sgt. Foster] to do." *Id*. Defendant Crotty "responded that he didn't care 'what the fuck' [Defendant Sgt. Foster] charged [Plaintiff] with, and slammed a nearby locker." *Id*.

Defendant Sgt. Foster interviewed Plaintiff about the incident and recorded the interview. Compl. at ¶ 39. Plaintiff told Defendant Sgt. Foster that Plaintiff had done nothing wrong and that the guards beat him for no reason. *Id*. Plaintiff "begged" Defendant Sgt. Foster to be permitted to take a lie detector test to prove the truth of his statement. *Id*. Plaintiff was never given a lie detector test and Defendant Sgt. Foster never recorded the offer to take one in his report. *Id.* at ¶ 41. Plaintiff refused to identify any of the correctional officers who beat him out of fear for his safety. *Id*. at ¶ 40. Defendant Sgt. Foster "knew [Defendant Crotty] was the one who had beaten [Plaintiff]" but used Plaintiff's refusal to identify the officers as a pretext not to take action against Defendant Crotty. *Id*.

After the incident, Defendant Sgt. Foster authored Defendant Crotty's report for him. Compl. at ¶¶ 41-42. The report was false and Defendants Sgt. Foster and Crotty were aware of its falsity. *Id.* at ¶ 42. Defendant Frye photographed Plaintiff's injuries after the incident. *Id*. at ¶ 43. Defendant Frye asked Plaintiff what happened and Plaintiff responded that he was beaten for no reason. *Id*. Defendant Frye did not include Plaintiff's explanation in his report. *Id*. Plaintiff declined an interview with prison internal affairs staff "out of fear of reprisal." *Id.* at ¶ 46.

Plaintiff received a RVR for the December 7, 2012 incident, resulting in a loss of 360 days credit. Compl. at ¶ 47. On December 18, 2012, Plaintiff filed a prisoner grievance regarding Defendant Crotty's use of force on December 7, 2012. *Id*. at ¶ 48. The prisoner grievance was returned to plaintiff for the stated reason that he failed to attach any supporting documentation. *Id*. On January 4, 2013, Plaintiff was provided with a final RVR regarding the December 7, 2012 incident. *Id*. Plaintiff resubmitted his prisoner grievance the same day, attaching the RVR. *Id.* Plaintiff never received a response regarding his grievance despite repeatedly having written to appeals coordinator Defendants Alomari and Jackson. Plaintiff also wrote to Defendant Warden Holland regarding the incident but never heard back.

Plaintiff pled guilty to a criminal charge of battery of Defendant Crotty. Compl. at ¶ 60. That conviction was reversed. *Id.* Plaintiff was not retried on that charge.

### III. Legal Standard

Under Federal Rule of Civil Procedure 12(b)(6), a claim may be dismissed where a plaintiff fails "to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). A dismissal under Rule 12(b)(6) may be based on the lack of a cognizable legal theory or on the absence of sufficient facts alleged under a cognizable legal theory. *Johnson v. Riverside Healthcare Sys.*, 534 F.3d 1116, 1121 (9th Cir. 2008); *Navarro v. Block*, 250 F.3d 729, 732 (9th Cir. 2001).

In reviewing a complaint under Rule 12(b)(6), all allegations of material fact are taken as true and construed in the light most favorable to the non-moving party. *Mollett v. Netflix, Inc.*, 795 F.3d 1062, 1065 (9th Cir. 2015); *Marceau v. Blackfeet Hous. Auth.*, 540 F.3d 916, 919 (9th Cir. 2008). However, the Court is not required "to accept as true allegations that are merely conclusory, unwarranted deductions of fact, or unreasonable inferences." *In re Gilead Scis. Sec. Litig.*, 536 F.3d 1049, 1056-57 (9th Cir. 2008); *Sprewell v. Golden State Warriors*, 266 F.3d 979, 988 (9th Cir. 2001). To avoid a Rule 12(b)(6) dismissal, "a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 278 (2009); *see Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555, 570 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678. The Ninth Circuit has distilled the following principles from *Iqbal* and *Twombly*:

> First, to be entitled to the presumption of truth, allegations in a complaint or counterclaim may not simply recite the elements of a cause of action, but must contain sufficient allegations of underlying facts to give fair notice and to enable the opposing party to defend itself effectively. Second, the factual allegations that are taken as true must plausibly suggest an entitlement to relief, such that it is not unfair to require the opposing party to be subjected to the expense of discovery and continued litigation.

*Starr v. Baca*, 652 F.3d 1202, 1216 (9th Cir. 2011). If a Rule 12(b)(6) motion is granted, the "district court should grant leave to amend even if no request to amend the pleading was

made, unless it determines that the pleading could not possibly be cured by the allegation of other facts." *Lopez v. Smith*, 203 F.3d 1122, 1127 (9th Cir. 2000) (en banc).  In other words, leave to amend should be granted unless amendment would be futile.  *Gompper v. VISX*, Inc., 298 F.3d 893, 898 (9th Cir. 2002); *see Petersen v. Boeing Co.*, 715 F.3d 276, 282 (9th Cir. 2013) (requiring that "leave to amend … be granted with extreme liberality") (internal quotation marks omitted).

## IV. Discussion

A. Timeliness of claims accruing on November 11, 2012

A claim should only be dismissed pursuant to Rule 12(b)(6) based on a statute of limitations where the running of the statute of limitations is apparent "on the face of a complaint," *Von Saher v. Norton Simon Museum of Art at Pasadena*, 592 F.3d 954, 969 (9th Cir. 2010), or where material subject to judicial notice, incorporated by reference into the complaint, or attached to the complaint indicates that a claim is necessarily barred, *United States v. Ritchie*, 342 F.3d 903, 907-908 (9th Cir. 2003); *Gumataotao v. Director of Dep't. of Revenue and Taxation*, 236 F.3d 1077, 1083 (9th Cir. 2001), and "it appears beyond doubt that the plaintiff can prove no set of facts that would establish the timeliness of the claim," *Syed v. M-I, LLC*, 853 F.3d 492, 507 (9th Cir. 2017) (quoting *Supermail Cargo, Inc.v. United States*, 68 F.3d 1204, 1207 (9th Cir. 1995)).

*1. Statute of Limitations Generally*

Section 1983 creates a federal cause of action but does not provide a specific statute of limitations. *Wallace v. Kato*, 549 U.S. 384, 487 (2007). Instead, Section 1983 actions borrow the limitation period and the rules governing tolling from the forum state. *Douglas v. Noelle,* 567 F.3d 1103, 1109 (9th Cir. 2009); *see Wilson v. Garcia*, 471 U.S. 261, 266-67 (1985). The statute of limitations for personal injury claims applies to claims brought under Section 1983 in California. *Pouncil v. Tilton*, 704 F.3d 568, 573 (9th Cir. 2012); *Maldonado v. Harris*, 370 F.3d 945, 954-955 (9th Cir. 2004). California's limitation period for personal injury actions is two years. Cal. Code Civ. Proc. § 335.1; *Pouncil*, 704 F.3d at 573.

Federal law governs the accrual of the cause of action. *Douglas v. Noelle*, 567 F.3d at

1109 (citing *Johnson v. California*, 207 F.3d 650, 653 (9th Cir. 2000). "Under federal law, accrual occurs when the plaintiff has a complete and present cause of action and may file a suit to obtain relief." *Pouncil*, 704 F.3d at 573-574 (citing *Wallace v. Kato*, 549 U.S. 384, 387 (2007)). In other words, a claim accrues when the plaintiffs "knows or has reason to know of the injury that is the basis of the action." *Balanus v. Clark*, 796 F.3d 1021, 1025 (9th Cir. 2015). Normally, an action accrues on the date of the injury. *Pouncil*, 704 F.3d at 574.

After a claim has accrued, California law may operate to toll the running of the limitations period. Such is the case when a plaintiff is incarcerated for a term less than life; California Code of Civil Procedure § 352.1 tolls the statute of limitations for up to two years. The tolling ends at the first of (1) release from custody or (2) two years of tolling. *Cabrera v. City of Huntington Park*, 159 F.3d 374, 378-379 (9th Cir 1998).

In addition to the statutory tolling afforded under California law, federal courts in California also apply California's equitable tolling rules in Section 1983 actions. *Cervantez v. City of San Diego*, 5 F.3d 1273, 1275 (9th Cir. 1993). Under California law, "the effect of equitable tolling is that the limitations period stops running during the tolling event, and begins to run again only when the tolling event has concluded. As a consequence, the tolled interval, no matter when it took place, is tacked onto the end of the limitations period…." *Lantzy v. Centex Homes*, 31 Cal.4th 363, 370-371 (2003), *modified* (Aug. 27, 2009). California's judge-made doctrine of equitable tolling allows tolling of a claim where alternative relief was sought prior to filing suit upon a showing of: (1) "timely notice" of the first claim for relief to the defendants; (2) "lack of prejudice[ ] to the defendant[s]"; and (3) "reasonable and good faith conduct on the part of the plaintiff." *McDonald v. Antelope Valley Comm. College Dist.*, 45 Cal.4th 88, 102 (2008); *accord Cervantes*, 5 F.3d at 1275; *Thomas v. Gilliand*, 95 Cal.App.4th 427, 434 (Cal. Ct. App. 2002); *see Elkins v. Derby*, 12 Cal.3d 410, 414 (1974) (en banc) (Equitable tolling applies "when an injured person has several legal remedies and, reasonably and in good faith, pursues one.") The Prison Litigation Reform Act ("PLRA") requires a prisoner to exhaust remedies within the prison grievance system before filing a related Section 1983 action. 42 U.S.C. § 1997e(a). Filing of a prisoner grievance can place the defendants on notice of the claim. Running of the

limitations period "must be tolled" during the pendency of the exhaustion process. *Brown v. Valoff*, 422 F.3d 926, 943 (9th Cir. 2005); *Donoghue v. Orange County*, 848 F.2d 926, 930-931 (9th Cir. 1988). As a general matter, the applicability of equitable tolling is a fact-specific inquiry, not well suited to resolution on a motion to dismiss. *Pesnell v. Arsenault*, 543 F.3d 1038, 1042 (9th Cir. 2008).

*2. Analysis*

The causes of action based upon the pepper spray incident on November 11, 2012 accrued on November 11, 2012. Because Plaintiff was incarcerated for a term short of life on the date of accrual, Plaintiff's claim was tolled for two years, from November 12, 2012 to November 12, 2014. The statutory period ran for two year, from November 12, 2014 to November 12, 2016. Plaintiff did not file a complaint in this action until December 6, 2016. Absent equitable tolling, the limitations period expired twenty-four days earlier, on November 12, 2016.

Defendants argue that Plaintiff cannot receive the benefit of statutory tolling and equitable tolling because the tolling events took place in the same period. *See* Doc. 19 at 4. In other words, Defendant argues that the period of equitable tolling is subsumed within the statutory tolling period. No binding authority on this question exists and district courts in this circuit are divided. *See Morman v. Dyer*, 2017 WL 1233329, *2 n.1 (N.D. Cal. Apr. 4, 2017) *Harbridge v. Schwarzenegger*, 2014 WL 8734138, *9 n.6 (C.D. Cal. Nov. 19, 2014) *adopted by* 2015 WL 1931676 (Apr. 28, 2015); *Alder v. Sullivan*, 2013 WL 3481584, *3 (E.D. Cal. July 10, 2013) *adopted by* 2013 WL 5946168 (Nov. 6, 2013).

Most of the district courts that have permitted equitable tolling in addition to statutory tolling when the tolling events overlap have relied upon language from *Lantzy*: "[e]quitable tolling under California law operates independently of the literal wording of the [California] Code of Civil Procedure to suspend or extend a statute of limitations as necessary to ensure fundamental practicality and fairness."[6] *E.g., Carranza v. Lewis*, 2017 WL 1050538, *17-18

---

[6] The Ninth Circuit has relied upon *Lantzy* for the proposition that equitable and statutory tolling are distinct routes to extending the limitations period. *Jones v. Blanas*, 393 F.3d 918, 928 (9th Cir. 2004) (internal quotation marks omitted) (quoting *Lantzy*, 31 Cal.4th at 370). However, it has not spoken to whether overlapping tolling events result in concurrent or consecutive periods.

(N.D. Cal. Mar. 17, 2017); *Beard v. Pennington*, 2015 WL 7293652, *6-7 (N.D. Cal. Nov. 19, 2015); *Burns v. Crook*, 2008 WL 5103183, *3 (S.D. Cal. Dec. 3, 2008). Those courts have read California law regarding equitable tolling to require tacking of additional time (beyond the statutory tolling period) to the end of a limitations period when an equitable tolling event occurs during a period of statutory tolling. *Carranza*, 2017 WL 1050538 at *18 ("[N]o matter when [the equitable tolling event] took place, [the duration of the equitable tolling event] is tacked onto the end of the limitations period."); *Akhtar v. Mesa*, 2014 WL 1922576, *7-8 (E.D. Cal. May 14, 2014); (applying tolling for the duration of the prison exhaustion process and statutory tolling to a prisoner's claim to extend the limitations period beyond four years);[7] *Dawkins v. Woodford,* 2012 WL 554371, *5 (S.D. Cal. Feb. 21, 2012) (same); *Crayton v. Hedgpeth*, 2011 WL 1988450, *9 (E.D Cal. May 20, 2011) (same); *Burns*, 2008 WL 5103183 at *3 (same); *see also Adler*, 2013 WL 3481584 at *5 (assuming without deciding that the plaintiff could receive the benefit of equitable and statutory tolling even when the tolling events overlap in time).

The district courts that have declined to apply equitable tolling in addition to statutory tolling when the equitable tolling event overlaps with the period of statutory tolling have relied upon (1) the "common sense" explanation that "when two or more reasons for tolling exist" during the same period that those reasons "will toll concurrently during the time they are both active, and are not tacked consecutively, one upon the other," and (2) *Rose v. Petaluma & S.R. Ry. Co.* for the proposition that separate periods of disability cannot be tacked. *Lopez v. Schwarzenegger*, 2012 WL 78377, *5 (E.D. Cal. Jan. 10, 2012); *accord Oliver v. McDaniel,* 2016 WL 4535389, *3 (C.D. Cal. June 2, 2016); *see also Martin v. Biaggini*, 2015 WL 1399240, *4 (N.D. Cal. Mar. 26, 2015) (identifying that *Rose* and *Lantzy* are both inapt analogs but agreeing that overlapping reasons for tolling should result in only a single period of tolling).

The former camp's reasoning is most consistent with Ninth Circuit authority on tolling pending exhaustion of administrative relief. *Brown v. Valoff*, 422 F.3d at 943 (tolling the limitations period during the administrative exhaustion process without regard to statutory

---

[7] The *Carranza, Beard*, and *Akhtar* courts' discussions of consecutive versus concurrent application of statutory and equitable tolling were dicta. Even with the benefit of statutory and equitable tolling, the claims of all three plaintiffs were untimely. *Carranza*, 2017 WL 1050538 at *18; *Beard*, 2015 WL 7293652 at *7; *Akhtar*, 2014 WL 1922576.

tolling); *see Elmore v. Arong*, 2010 WL 366628, *2 (E.D. Cal. Jan. 26, 2010). Application of statutory and equitable tolling consecutively is also more consistent with the mandate of California law to tack time to the end of the limitations period for equitable tolling. *See Lantzy*, 31 Cal.4th at 370-371.

Plaintiff contends that during the two year statutory tolling period he attempted to exhaust his administrative remedies by filing prison grievances. Compl. at ¶¶ 31, 66. Plaintiff contends that he "filed a 602 complaint"—i.e., a prisoner grievance—"within 15 days of the November 11, 2012 incident … but never received th[e] 602 back." Compl. at ¶ 31.[8] "As with the underlying statute of limitations, the period of tolling is subject to precise calculation." *Doe v. Kaweah Delta Hospital*, 2016 WL 4381870, *5 (E.D. Cal. Aug. 16, 2016) (citations omitted). "Plaintiffs have the burden of proof as to equitable tolling" and must plead facts to support entitlement to it. *Id.* (citing, *inter alia*, *Vaughn v. Teledyne, Inc.*, 628 F.2d 1214, 1218 (9th Cir. 1980)); *accord Hinton Pacific Enterprises*, 5 F.3d 391, 395 (9th Cir. 1993) ("The burden of alleging facts which would give rise to tolling falls upon the plaintiff."). Although Plaintiff has not alleged the precise duration of time that his grievance was pending, that failure is not fatal to his claim. The California Code of Regulations governing prison responses to prisoner grievances afford the prison 30 days to respond to a grievance submitted at the first level. 15 C.C.R. § 3084.8(c)(1). Because Plaintiff alleges that he filed a grievance and that there was no response by the prison within that 30-day period, the Court cannot conclude on the face of the complaint that Plaintiff's grievance was not pending for at least 30 days. Tacking 30 days to the end of the limitations period results in running of the limitations periods on December 12, 2016. This action was filed on December 6, 2016. The running of the limitations period for Plaintiff's claims accruing on November 11, 2012 is not apparent from the face of the complaint. Those claims will not be dismissed at this stage on that basis.

B. Favorable termination rule

A prisoner cannot challenge the fact or duration of his sentence by way of a Section 1983

---

[8] Plaintiff also appealed the deprivation of custody credits resulting from the RVR. However, the Court need not address the impact of that appeal.

claim. *Wilkinson v. Dotson*, 544 U.S. 74, 78 (2005). That prohibition applies equally to those former prisoners who have already served their sentences. *Guerro v. Gates*, 442 F.3d 697, 703-704 (9th Cir. 2006). Former prisoner plaintiffs are also barred from litigating a Section 1983 claim if a finding in his favor would "necessarily imply the invalidity of the deprivation of … good-time credits" suffered as a result of prison disciplinary convictions. *Edwards v. Balisok*, 520 U.S. 641, 646 (1997). In sum, *Heck* bars a former prisoner's Section 1983 claim "(absent prior invalidation)—no matter the relief sought (damages or equitable relief), no matter the target of the prisoner's suit (state conduct leading to conviction or internal prison proceedings)—if success in that action would necessarily demonstrate the invalidity of confinement or its duration." *Wilkinson*, 544 U.S. 82-83; *Smithart v. Towery*, 79 F.3d 951, 952 (9th Cir. 1996).

On the other hand, where the facts underlying the disciplinary conviction and the facts alleged in the Section 1983 action are separate incidents—i.e., the prisoner assaulted a correctional officer necessitating the use of force, then after the force was no longer necessary, the officer used force in retaliation—*Heck* does not operate as a bar. *See Nettles v. Grounds*, 830 F.3d 922, 928-929 (9th Cir. 2016) (en banc). Challenges to disciplinary proceedings are only barred by *Heck* if the Section 1983 action "would be seeking a judgment at odds with … the State's calculation of time to be served" or the validity of the disciplinary conviction. *Id*. at 929. To be clear, the question is not whether the plaintiff seeks to have custody credits restored; the question is whether success on the merits (generally on a claim for damages) would suggest that the deprivation of credits was in error. *Burton v. Chenoweth*, 2015 WL7758476, *2 (E.D. Cal. Dec. 2, 2015) ("[T]o determine whether *Heck* and *Edwards* bar a claim for damages arising from a prison disciplinary hearing, the court must examine not the relief sought, but the ground of the challenge.")

Plaintiff is correct that "a finding of excessive force [does not always] *necessarily* challenge [an] underlying rules violation." Doc. 18 at 13 (emphasis added). For instance, where a complaint alleges a continuous chain of events with two separate factual predicates—the first, acts by the prisoner leading to the prisoner's rules violation under California Code of Regulations title 15, section 3005(d)(1) for battery, and the second, acts of excessive force in

response to the prisoner's conduct by the officer—*Heck* would not operate as a bar. *Smith v. City of Hemet,* 394 F.3d 689, 695 (9th Cir. 2005); *Cunningham v. Gates*, 312 F.3d 1148, 1153-54 (9th Cir. 2002); *Hernandez v. Holman*, 2017 U.S. Dist. LEXIS 94202, *13 (C.D. Cal. June 19, 2017) (citing *Brown v. Holland*, 2014 WL 1339687, *4 (N.D. Cal. Mar. 28, 2014)). Such was the case in *Brown v. Holland*, 2014 WL 1339687, where a RVR was issued based on the prisoner's battery of a police officer and a Section 1983 excessive force claim was maintained based on the officer's allegedly excessive response to that battery. The plaintiff in *Brown* proceeded on the theory that, assuming the validity of the battery conviction, the responsive use of force was excessive.

   *Hernandez v. Holman*, 2017 U.S. Dist. LEXIS 94202, presents the opposite situation— the RVR and the alleged excessive force arise from the same factual premise. In *Hernandez*, the prisoner-plaintiff alleged that he made a rude comment to a correctional officer and the correctional officer physically attacked the plaintiff as a result. *Hernandez,* 2017 U.S. Dist. LEXIS 94202, *14. The plaintiff argued that the RVR was false and issued only to cover up the correctional officer's use of excessive force. *Id.* However, the RVR indicated that the "[p]laintiff made essentially the same rude comment to [the correctional officer]…; [the p]laintiff challenged [the correctional officer] to a fight; [the correctional officer] told [the p]laintiff to relax…; [the p]laintiff tried to pull away, lunged, head-butted [the correctional officer]… and attempted to kick [him]." *Id.* at *13-14. The correctional officer then forced the plaintiff to the ground and attempted to control the plaintiff while the plaintiff attempted to fight back. *Id*. at *14. The court explained that the complaint was premised on the theory that *any* use of force was excessive because the plaintiff was innocent of the rules violation for which he was convicted since he did not commit battery. *Id*. The events alleged in the Section 1983 complaint and the events in the RVR were wholly inconsistent such that a finding in the plaintiff's favor would necessarily imply the invalidity of the RVR conviction. *Id*. For that reason, the plaintiff's Section 1983 complaint was barred by *Heck*.

   This action has hallmarks of both situations.

   Here, Plaintiff alleges that he suffered two rules violations—one from each incident. The

12

RVR resulting from the November 11, 2012 incident caused a loss of 90 days of custody credit. The RVR resulting from the December 7, 2012 incident caused a loss of 360 days of custody credit. Plaintiff does not indicate that either RVR was invalidated.[9] Indeed, Plaintiff alleges that he "experienced … excess incarceration" due to the RVRs. Compl. at ¶164. Specifically, "[a]s a result of the pepper spray incident … the [CDCR] improperly took 90 days of [Plaintiff's] previously earned custody credits" and "[a]s a result of the baton-beating incident … the [CDCR] improperly took 360 days of [Plaintiff's] previously earned good time credit…." *Id.* at ¶¶ 164(a)-164(b). Plaintiff suggests that the RVRs are invalid.

Factually, the complaint alleges that the pepper spray incident and the baton-beating incident were unprovoked attacks by the Defendant Crotty and others. *Compl.* at ¶¶ 24-26, 33-34, 36, 39. Indeed, as to the pepper spray incident, Plaintiff specifically notes that "he was falsely accused and … the rules [RVR] prepared by Dunnahoe was 'a big lie.'" Compl. at ¶ 24. As to the baton-beating incident, Plaintiff identifies Defendant Crotty's report (which Defendant Foster allegedly wrote for him) as being "materially false." Compl. at ¶ 42. However, insofar as Plaintiff's claims are premised upon a theory that the force used by Defendants was excessive because he did not commit the conduct underlying the RVRs, those claims are barred by *Heck*.[10] However, insofar as Plaintiff alleges that—despite the fact that *some* use of force was warranted as a result of his conduct as set out in the RVRs—the force actually used was more than reasonably necessary to restore order, such claims are not barred by *Heck*. Accordingly, Plaintiff's first (that defendants "for no apparent reason other than retaliation" sprayed him with pepper spray), fourth (that defendants purposefully submitted false rules violation reports), fifth (Defendant Crotty falsely testified that Plaintiff had done something to warrant the use of force) and ninth (assault and battery for the allegedly unprovoked pepper spray incident) claims for relief are entirely barred by *Heck* because they necessarily imply the invalidity of the RVRs— they suggest that Defendant Crotty attacked Plaintiff without cause. Plaintiff's third (Defendant

---

[9] Neither RVR is before the Court. Although the reports are incorporated by reference into the complaint, neither party has submitted them to the Court.
[10] Plaintiff's contention that his theories that conflict with the RVRs are "not barred because [the] underlying rules violation[s] w[ere] improperly sustained based on … false evidence…" is simply wrong. That is exactly the kind of theory foreclosed by *Heck* unless and until the RVR is vacated.

Crotty "took [Plaintiff] to a spot out of view from other inmates, threw him into the wall and then onto the ground, where he struck him 7-8 times on his leg…), seventh (supervisory liability as to Defendant Holland based in part on the falsity of the RVR), eleventh (assault and battery for the baton incident), twelfth (state law § 52.1 ("Bane Act") intimidation claim premised in part on false reporting in RVRs), and thirteenth (negligent supervision by supervisory employees premised in part upon Defendants having attacked plaintiff without justification) claims for relief are barred by *Heck* insofar as his allegations are inconsistent with the findings of the RVRs. Plaintiff's eighth claim for relief is separately addressed in Section IV(G) *infra*.

Leave to amend would not be futile for claims that do not advance a theory necessarily inconsistent with the violations found in the RVRs. Leave to amend will be granted only to allege claims that are not premised on the falsity or inaccuracy of the RVRs; i.e., plaintiff may allege claims that do not contend that Plaintiff was improperly assessed disciplinary violations.

C. False reports claim

The Due Process Clause protects against the deprivation of liberty without due process of law. *Wilkinson v. Austin*, 545 U.S. 209, 221 (2005). "Prison disciplinary proceedings are not part of a criminal prosecution, and the full panoply of rights due a defendant in such proceedings does not apply." Wolff v. McDonnell, 418 U.S. 539, 556, 94 S. Ct. 2963, 41 L. Ed. 2d 935 (1974). The Fourteen Amendment requires prison officials to provide the prisoner with: (1) written notice of the charges at least 24–hours before the hearing; (2) the opportunity to appear in person at the hearing, to call witness, and to present rebuttal evidence; (3) a written statement by the fact finders of the evidence relied on for their decision and the reasons for the actions taken by the committee; and (4) there must be some evidence to support the disciplinary charge. *Wolff*, 418 U.S. at 564-566. Plaintiff's complaint makes no reference to the process actually given or any facts suggesting that the *Wolff* requirements went unmet.[11] The procedural due process affords protections to *defend against* false accusations, it does not grant a broad right to be free from false accusations. *Hernandez v. Martinez*, 2013 WL 6838682, *5 (E.D. Cal. Dec. 20, 2013) (citing *Freeman v. Rideout*, 808 F.2d 949, 951 (2d Cir. 1986)). Plaintiff takes issue with the

---

[11] Plaintiff does allege that he was given final RVRs from each incident.

substance of the reports, not the process given. For that reason, Plaintiff fails to allege a violation of procedural due process.

More generally, Defendants argue that liberty interest is implicated by false reporting by law enforcement officers. Defendants are partially correct. "[T]he issuance of a false RVR or false crime report does not, in and of itself, support a claim under [S]ection 1983." *Washington v. Cicone*, 2017 WL 2423661, *4 (E.D. Cal. June 5, 2017) (collecting cases); *Johnson v. Felker*, 2013 WL 6243280, at *6 (E.D. Cal. Dec. 3, 2013) ("Prisoners have no constitutionally guaranteed right to be free from false accusations of misconduct, so the mere falsification of a [rules violation] report does not give rise to a claim under [S]ection 1983."); *see also Garrot v. Glebe*, 600 Fed.Appx. 540, 542 (9th Cir. Apr. 22, 2015) (citing, *inter alia*, *Freeman*, 808 F.2d at 951-952 ("The prison inmate has no constitutionally guaranteed immunity from being falsely or wrongly accused of conduct which may result in the deprivation of a protected liberty interest.")) However, a false rules violation that results in longer detention does tread on a prisoner's liberty interest, *Spencer v. Peters*, 857 F.3d 789, 798 (9th Cir. 2017), which can give rise to a substantive due process claim, *Costanich v. Dep't. of Soc. & Health Servs.*, 627 F.3d 1101, 1111 (9th Cir. 2010). "To prevail on a [Section] 1983 claim of deliberate fabrication [of evidence], a plaintiff must prove that (1) the defendant official deliberately fabricated evidence and (2) the deliberate fabrication caused the plaintiff's deprivation of liberty." *Id*. (citing *Costanich*, 627 F.3d at 1111); *accord Devereaux v. Abbey*, 263 F.3d 1070, 1074-1075 (9th Cir. 2001) ("[T]here is a clearly established constitutional due process right not to be subjected to criminal charges on the basis of false evidence that was deliberately fabricated by the government.") Plaintiff has alleged that Defendants authored false or fabricated rules violation reports resulting in deprivation of custody credits. Plaintiff also alleges that the false crime incident reports resulted in a wrongful conviction that was ultimately vacated.

As explained above, insofar as Plaintiff alleges that the RVRs are false, that theory is *Heck* barred. Based on Plaintiff's complaint, it is clear that Plaintiff contends that the Defendant officers Crotty, Gonzales, Cantu, Frye, Foster, and Does 21-30 generated false "crime incident or rules violation report[s]." Compl. at ¶89. That understanding is confirmed by Plaintiff's

opposition to Defendants' motion to dismiss where Plaintiff indicates that the allegedly false reports generated "were used at [Plaintiff's] rules violations hearings and in the state prosecution." Doc. 18 at 16. Plaintiff's rules violation conviction has not been set aside. Plaintiff's attempt to challenge the validity of the rules violation reports (or the validity of the reports supporting the rules violation report) is barred by *Heck*. *Cf. Spencer*, 857 F.3d 789 (The plaintiff was permitted to litigate a "deliberate fabrication of evidence" claim only after "the state courts allowed Plaintiff to withdraw his *Alford* plea … [and] the prosecutor dismissed all charges against" the plaintiff.) Although Plaintiff's criminal conviction has been vacated, his claim arises out of the same incident giving rise to the December 7, 2012 rules violation and it remains barred to the extent that it would suggest the invalidity of the rules violation conviction. Plaintiffs allegations that he was beaten unjustly and without provocation undermine the validity of the rules violation conviction. *See* Compl. at ¶¶ 89, 93.

Plaintiff's fourth cause of action will be dismissed. This Court cannot conclusively determine that a due process claim based on false crime incident reports would necessarily undermine the rules violation conviction (as distinct from the criminal conviction that has already been vacated). For instance, if the crime incident report contains information not necessary to the underlying rules violation conviction that resulted in Plaintiff's criminal conviction, he may be able to state a claim. As a result, the Court cannot conclude that any amendment would be futile. However, Plaintiff is cautioned that to the extent that his amended causes of action implicate the validity of the RVRs, such amendments would be subject to immediate dismissal for the same reasons as the present complaint.

D. False testimony claim

Plaintiff alleges that Defendant "Crotty falsely testified under oath regarding the circumstances of the event on December 7, 2012." Compl. at ¶ 98. Plaintiff continues that "[a]t no time did [Plaintiff] do anything to merit the unprovoked beating by Crotty, contrary to his testimony at the preliminary hearing." *Id*. Again, Plaintiff seeks to prove facts that would undermine the validity of Plaintiff's rules violation conviction. The fact that Plaintiff alleges that the false information was provided at a preliminary hearing does not impact the analysis.

Plaintiff's fifth cause of action is barred by *Heck*. It will be dismissed. Leave to amend will be granted to allege a claim not inconsistent with the RVR convictions.

E. Intimidation claim

Plaintiff alleges that during his criminal trial regarding the December 7, 2012 incident, while Plaintiff was at court, Doe defendants "entered his cell, took his family portrait hanging over his bed, untied his television from where it was secured, and cracked his television." Compl. at ¶ 59. Plaintiff contends in his sixth cause of action that this conduct violated his rights secured by the Fifth, Sixth, and Fourteenth Amendments. *Id.* at ¶¶ 104-109. Defendants did not move to dismiss this cause of action.[12]

F. Supervisory liability claims

Plaintiff alleges Section 1983 claims against Defendants Foster, Holland, and Does 51-70, contending that each was aware of a host of malfeasances by the named defendants and others directed toward other prisoners. Plaintiff lists other prisoner civil rights actions naming correctional officers at CCI to show that the pepper spraying, the beating, and the subsequent rules violation that he suffered were common practice at CCI and that Defendants Holland, Foster, and Does 51-70 were all aware of that conduct. *See* Compl. at ¶¶ 112-120. Plaintiff contends that those defendants all "acquiesced in [known] unconstitutional conduct." *Id.* at ¶ 111. As part of the same cause of action, Plaintiff also alleges that Holland and Does 51-70 were all also aware of correctional officer interference with the prison grievance system. *See Id.* at ¶¶ 121-122.

Defendants contend that Plaintiff's allegations fail to allege the requisite personal participation in deprivation of a constitutional right to state a claim under Section 1983. Doc. 13 at 17-18.

As a preliminary matter, respondeat superior liability may not be imposed upon supervisors for the acts of their subordinates in the Section 1983 context. *Ashcroft v. Iqbal*, 556 U.S. 662, 677 (2009); *Taylor v. List*, 880 F.2d 1040, 1045 (9th Cir. 1989). Mere knowledge of

---

[12] In Defendants' reply they suggest for the first time that the intimidation that Plaintiff allegedly suffered does not amount to a deprivation of due process. Doc. 19 at 9. Because Defendants raise this argument for the first time in their reply it will not be addressed.

and acquiescence in the conduct of subordinates is insufficient to hold a supervisor liable under Section 1983; each government official is liable only for his or her own misconduct. *Iqbal*, 556 U.S. at 677. That said, a supervisor may be liable in his or her official capacity for a subordinate's actions where the supervisory defendants failed to properly train or supervise personnel resulting in the alleged deprivation, *Ybarra v. Reno Thunderbird Mobile Home Village*, 723 F.2d 675, 680 (9th Cir. 1984), where the alleged deprivation resulted from custom or policy for which each of the supervisory defendants was responsible, *see id.*, or where the supervisory defendants knew of the alleged misconduct and failed to act to prevent future misconduct, *Taylor*, 880 F.2d at 1045; *see Preschooler II v. Clark County School Bd. of Trustees*, 479 F.3d 1175, 1183 (9th Cir. 2007); *Hansen v. Black*, 885 F.2d 642, 646 (9th Cir. 1989).

Here, Plaintiff alleges that Defendant Foster "failed to mention in his report that [Plaintiff] begged to take a lie detector test…, failed to obtain the identities of any potential witnesses…, improperly wrote [Defendant Crotty's] report…, knew the report was materially false…, [and] failed to reprimand [Defendant Crotty]…" despite his knowledge that Defendant Crotty unjustly beat Plaintiff. Compl. at ¶¶ 41-42, 113; Doc. 18 at 20. As previously discussed, insofar as Plaintiff claims that the RVR resulting from the December 7, 2012 incident is false or invalid, his claims are barred. Even assuming that Plaintiff's allegations that Defendant Foster's failure to include in his report Plaintiff's plea to take a lie detector test and the identities of the witnesses do not undercut the findings of the RVR, they do not state a claim because there is no independent right to be free from false (or incomplete) reporting where duration of sentence is not impacted. *Garrot*, 600 Fed.Appx. at 542, *Smith v. Albee*, 2016 WL 6094471, *4 (E.D. Cal. Oct. 18, 2016) (the "falsification of disciplinary reports does not state a stand-alone constitutional claim," because "[t]here is no constitutionally guaranteed immunity from being falsely or wrongly accused of conduct which may result in the deprivation of a protected liberty interest").

If it were Plaintiff's theory that—despite the appropriate use of some force against Plaintiff—the force used was excessive, then the failure to reprimand allegation would not be

barred and could be indicative (although not sufficient standing alone) of ratification of Defendant Crotty's use of excessive force. *See Sheehan v. City and Cnty of San Francisco,* 743 F.3d 1211, 1231 (9th Cir. 2014); *Clouthier v. Cnty. of Contra Costa,* 591 F.3d 1232, 1253–1254 (9th Cir. 2010); *Henry v. County of Shasta*, 132 F.3d 512, 519 (9th Cir. 1997). However, based on Plaintiff's allegations, it appears that he contends that no force was justified and that Defendant Foster fabricated a theory by which force was justified, thereby challenging the basis for the RVR. That claim is barred. In sum, although Plaintiff does allege some personal conduct by Defendant Foster that might otherwise state a claim, that conduct undermines the basis for the RVR and is barred by *Heck.* Leave to amend will be granted to pursue this claim under a theory not inconsistent with the RVR.

As to Defendant Holland, Plaintiff alleges that he "contacted [Defendant Holland] at least four times requesting to meet with her and inform her 'of what was going on in her prison,' and included allegations that [Plaintiff] had been beaten for no reason by officers and that [Defendant Foster] had failed to properly investigate. [Defendant Holland] never responded to [Plaintiff]'s requests for a meeting." Compl. at ¶¶ 50-51. Plaintiff's complaint that he had been beaten without cause could only have taken place after the alleged rights violation. The violation was not ongoing. Based on the allegations, Defendant Holland could not have personally participated in the alleged misconduct.

Plaintiff also suggests that Defendant Holland (and Doe defendants) was on notice of a practice of his correctional officers having beaten prisoners and fabricated reports to cover up those beatings. *See* Compl. at ¶¶ 112-113. Specifically, Plaintiff alleges that Defendant Foster had previously "covered for his … officers wrongful actions…" and Defendants Dunnahoe, Gonzales, Valverde, White, and Crotty had previously beaten and otherwise mistreated prisoners "in retaliation" for prisoners filing grievances. *Id*. at ¶¶ 112-114. Again, Plaintiff appears to suggest that Defendant Crotty beat Plaintiff without cause. Such a claim conflicts with Plaintiff's prison disciplinary conviction and is barred by *Heck*. Plaintiff will be granted leave to amend to pursue this claim under a theory not inconsistent with the RVR.

Finally, Plaintiff alleges that Defendant Holland (and Doe defendants) was on notice of

prison officials deliberately frustrating prisoner grievances. Compl. at ¶¶ 121-122. Plaintiff alleges that Defendant Holland condoned the alleged denial of due process and access to courts. Defendants do not directly address this theory. They do, however, address the underlying claim that appeals coordinators Alomari and Jackson intentionally frustrated Plaintiff's 602 complaints and appeals. The claim against Defendant Holland is derivative of that claim. For the reasons discussed in Section IV(G), *infra*, this claim also fails. It will be dismissed without leave to amend.

G. Failure to process administrative grievances claim

Plaintiff alleges that appeals coordinators Alomari and Jackson "intentionally thwarted Stevenson's initial 602 complaints and subsequent appeals to prevent him from being able to properly exhaust administrative claims…." Compl. at ¶¶ 126. Plaintiff alleges that he submitted a 602 complaint regarding the baton beating incident "on or about December 18, 2012," approximately 10 days after the incident occurred. *Id*. at ¶ 48. The appeal was returned to Plaintiff "on the pretext and/or improper grounds that he had not provided any supporting documents—even though at the time no documentation had been provided to him." *Id*. Plaintiff received a "final RVR report regarding the December 7, 2012 incident" on January 4, 2013. *Id*. The following day Plaintiff resubmitted the 602 complaint, attaching the RVR report. *Id*. Plaintiff alleges that he never received the 602 complaint back despite his repeated requests for status updates. *Id*. at 48-49.

In response to the allegations, Defendants contend that "a prisoner is not required to exhaust the prison's remedies prior to filing a habeas petition" so any interference by Defendant Alomari or Jackson did not prevent Plaintiff from challenging his disciplinary conviction. Doc. 19 (citing 28 U.S.C. § 2254). Defendants are wrong and Defendants' reliance on 28 U.S.C. § 2254 for that proposition is misguided. A state prisoner who seeks federal habeas relief must first exhaust state judicial remedies before he or she may file a federal habeas petition. 28 U.S.C. § 2254(b)(1), (c); *Rose v. Lundy*, 455 U.S. 509, 515-516 (1982). In turn, California law requires a "prisoner-petitioner [to] exhaust administrative remedies before he file[s] a habeas petition in a California state court." *Cardoza v. Hatton*, 2017 WL 1493106, *2 (N.D. Cal. Apr. 26, 2016)

(citing *In re Dexter*, 25 Cal.3d 921, 925 (1979)); *Stamos v. Davey*, 2017 WL 412619, *1 (N.D. Cal. Jan. 31, 2017); *Turner v. Director of CDC*, 2014 WL 4458885, *3 (E.D. Cal. Sept. 10, 2014); *see* Cal. Code Regs. tit. 15, § 3084.1(a) ("Any inmate...may appeal any policy, decision, action, condition, or omission by the department or its staff that the inmate or parolee can demonstrate as having a material adverse effect upon his or her health, safety, or welfare."). Although the exhaustion requirement is not without exceptions—for instance, purposeful frustration by prison officials of the ability to use the grievance system, *In re Thompson*, 172 Cal.App.3d 256, 261-262 (Cal. Ct. App. 1985)—exhaustion of available administrative remedies is required in order for Plaintiff to have been able to seek habeas relief. *In re Arias,* 42 Cal.3d 667, 278 (1986) *superseded by statute on other grounds* ("[I]t is well settled that habeas corpus petitioners must exhaust available administrative remedies before seeking judicial relief, even where constitutional issues are at the core of the dispute."); *In re Dexter*, 25 Cal.3d at 925.

Regardless of Defendant's error regarding the state habeas requirement to exhaust administrative remedies, a prison grievance procedure is a procedural right only; it does not confer any substantive right upon the inmates. *Ramirez v. Galaza*, 334 F.3d 850, 860 (9th Cir. 2003) ("[I]nmates lack a separate constitutional entitlement to a specific prison grievance procedure."); *Buckley v. Barlow*, 997 F.2d 494, 495 (8th Cir. 1993) (citing *Azeez v. DeRobertis*, 568 F. Supp. 8, 10 (N.D. Ill. 1982)); *Massey v. Helman*, 259 F.3d 641, 647 (7th Cir. 2001) (existence of grievance procedure confers no liberty interest on prisoner); *Mann v. Adams*, 855 F.2d 639, 640 (9th Cir. 1988). Hence, it does not give rise to a protected liberty interest requiring the procedural protections envisioned by the Fourteenth Amendment. *Ramirez,* 334 F.3d at 860; *Azeez*, 568 F. Supp. at 10; *Spencer v. Moore*, 638 F. Supp. 315, 316 (E.D. Mo. 1986). Actions in reviewing a prisoner's administrative appeal, without more, are not actionable under Section 1983. *Buckley*, 997 F.2d at 495.

Moreover, a claim that Plaintiff was denied due process in appealing the findings of the RVR suggests that the RVR is invalid. Even if such a claim was otherwise cognizable, it is barred by *Heck* unless and until the disciplinary conviction is vacated. This claim will be dismissed without leave to amend.

Under the First and Fourteenth Amendments to the Constitution, state inmates have a "'fundamental constitutional right of access to the courts.'" *Lewis v. Casey*, 518 U.S. 343, 346 (1996) (quoting *Bounds v. Smith*, 430 U.S. 817 (1977)); *Phillips v. Hust*, 477 F.3d 1070, 1075 (9th Cir. 2007), overruled on other grounds by *Hust v. Phillips*, 555 U.S. 1150 (2009). The right is limited to direct criminal appeals, habeas petitions, and civil rights actions. Lewis, 518 U.S. at 354.

To have standing to bring this claim, plaintiff must allege he suffered an actual injury to a non-frivolous legal claim. *Lewis*, 518 U.S. at 351-52; *Vandelft v. Moses*, 31 F.3d 794, 798 (9th Cir. 1994). In other words, a prisoner must have been denied the necessary tools to litigate a non-frivolous claim attacking a conviction, a sentence, or conditions of confinement. *Christopher*, 536 U.S. at 415; *Lewis*, 518 U.S. at 353 & n.3. To show that he had a non-frivolous claim that he was not appropriately divested of time credits by the RVR, Plaintiff would necessarily suggest the invalidity of the RVR. Such a claim is barred by *Heck. See Powell v. Barron*, Case No. 1:15-cv-00089-AWI-SAB, Doc. 69 at 5-7 (E.D. Cal. June 16, 2017) ("The Ninth Circuit has permitted § 1983 challenges relating to alleged constitutional violations surrounding criminal convictions only when such challenges are completely divorced from the validity of the conviction. A § 1983 claim that *at all* implies the invalidity of the underlying conviction, sentence, or duration of confinement is barred unless the conviction has been vacated."); *Delarm v. Growe*, 2016 WL 1722382, *2-3 (E.D. Cal. Apr. 29, 2016) ("[C]laims by prisoners for damages based on alleged denial of access to [court to challenge their] conviction or sentence, are *Heck* barred unless the conviction or sentence has been overturned."); *Koch v. Jester*, 2014 WL 3783961, *5 (D. Or. 2014) (collecting cases); *but see Sprinkle v. Robinson*, 2017 WL 1079833 (E.D. Cal. Mar. 22, 2017) (allowing an access to courts claim premised on an allegedly non-frivolous habeas claim).

Amendment on this claim would be futile unless Plaintiff's disciplinary conviction is set aside. Leave to amend will not be granted as to this claim.

H. Official Capacity Claims

Defendant move to dismiss all claims against them in their official capacities as barred by

the Eleventh Amendment. Plaintiff does not oppose dismissal of the official capacity claims.
They will be dismissed without leave to amend.

I. Failure to intercede claim.

Broadly, correctional officers have an obligation to protect their prisoners from harm at the hands of other prisoners and from the wrongful conduct of other correctional officers. *Farmer v. Brennan*, 511 U.S. 825, 833 (1994); *Cunningham v. Gates*, 229 F.3d 1271, 1289 (9th Cir. 2000); *United States v. Koon*, 34 F.3d 1416, 1447 n. 25 (9th Cir. 1994) *vacated in part on other grounds by Koon v. United States*, 518 U.S. 81 (1996). When a correctional officer fails to intercede—despite having a realistic opportunity to do so—"the constitutional right violated by the passive defendant is analytically the same as the right violated by the person who strikes the blows." *Koon*, 34 F.3d at 1447 n.25; *Cunningham*, 229 F.3d at 1289; *Melendez v. Hung*, 2016 WL 5156469, *11 (E.D. Cal. Sept. 21, 2016). Where a convicted prisoner alleges that correctional officers used excessive force the Eighth Amendment is implicated. When prison officials stand accused of using excessive force in violation of the Eighth Amendment, the deliberate indifference standard is "inappropriate." *Hudson v. McMillian*, 503 U.S. 1, 6 (1992). Instead, the core judicial inquiry is "whether force was applied in a good-faith effort to maintain or restore discipline, or maliciously and sadistically to cause harm." *Hudson v. McMillian*, 503 U.S. 1, 6-7 (1992); *Whitley v. Albers*, 475 U.S. 312, 320 (1986).

Plaintiff alleges direct involvement in the pepper spray incident by Defendants Dunnahoe, Valverde, and Crotty. Compl. at ¶¶ 24, 68. Plaintiff alleges that Defendant White "stood by watching and did nothing to interfere." *Id.* at ¶¶ 24, 69.[13] Plaintiff's claim is barred by *Heck* as to Defendant White to the same extent that it is against Defendants Dunnahoe, Valverde, and Crotty—insofar as Plaintiff's complaint is at odds with the RVR issued in relation to the November 11, 2012 incident. Otherwise, the complaint against Defendant White survives. From Plaintiff's allegation that Defendant White stood by watching a jury could find that he saw alleged application of excessive force, had an opportunity to prevent it or intervene, and chose to

---

[13] Plaintiff also identifies Does 2-10 as having had a duty to intervene in the pepper spray incident but does provide any detail about their relative positions to the active participant defendants. Compl. at ¶ 69. Those claims will be dismissed.

do nothing.

Plaintiff alleges direct involvement in the baton beating incident by Defendants Crotty, and Does 1 and 2. Defendant Crotty allegedly delivered seven or eight baton strikes; Does 1 and 2 allegedly delivered "several more baton" strikes "and/or stomp[s]." Compl. at ¶ 82. Defendant "Gonzales, who was to receive [Plaintiff] from [Defendant] Crotty and take him to his cell…, stood on the stairs watching the incident without intervening." *Id.* at ¶ 36. Defendant "Cantu, who operated the control tower, watched on without intervening, as [Plaintiff] pleaded for help." *Id.*[14] Plaintiff's claim is barred as to Defendants Gonzales and Cantu to the extent that it is barred regarding Defendant Crotty—insofar as Plaintiff's complaint is at odds with the RVR issued in relation to the December 7, 2012 incident. Otherwise, from Plaintiff's allegations, a jury could find that Defendants Gonzales and Cantu were in positions to intervene to prevent the alleged application of excessive force but chose not to do so.

Plaintiff alleges that Defendant Frye failed to include in his report that Plaintiff was beaten for no reason. Compl. at ¶ 43. Defendant Frye's involvement appears to have only taken place after the alleged rights violation. Plaintiff fails to state a failure to intervene claim against Defendant Frye. Similarly, Plaintiff acknowledges that the beating stopped when Defendant Foster arrived and he states no failure to intervene claim against Defendant Foster. To the extent that Plaintiff sought to allege failure to intervene claims against Defendants Frye and Foster they are dismissed without leave to amend.

J. Bane Act claims

Plaintiff alleges a sweeping cause of action for violation of the Bane Act. Plaintiff suggests for the first time in his opposition to the motion to dismiss that he suffered discrimination because he is African-American. Doc. 18 at 25. No reference is made to Plaintiff being African-American in the complaint. The Court agrees with Defendants' assertion that the basis for the Bane Act violation is unclear. This claim will be dismissed. Leave will be granted because amendment does not appear futile. *See Cameron v. Craig*, 713 F.3d 1012, 1022 (9th Cir.

---

[14] Again, Plaintiff identifies Doe Defendants (11-20) as having failed to intervene, yet he does not provide the detail necessary to state a claim. Compl. at ¶ 83. Those claims will be dismissed.

2013) ("[T]he elements of [an] excessive force claim under § 52.1 are the same as under § 1983.") (citation omitted).

K. Qualified Immunity

Government officials enjoy qualified immunity from civil damages unless their conduct violates "clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982). In general, qualified immunity protects "all but the plainly incompetent or those who knowingly violate the law." *Malley v. Briggs*, 475 U.S. 335, 341 (1986). In ruling upon the issue of qualified immunity, the initial inquiry is whether, taken in the light most favorable to the party asserting the injury, the facts alleged show the defendant's conduct violated a constitutional right. *See Saucier v. Katz*, 533 U.S. 194, 201 (2001). If a violation can be made out, the next step is to ask whether the right was clearly established. *See id*. This inquiry "must be undertaken in light of the specific context of the case, not as a broad general proposition...." *Id*. "[T]he right the official is alleged to have violated must have been 'clearly established' in a more particularized, and hence more relevant, sense: The contours of the right must be sufficiently clear that a reasonable official would understand that what he is doing violates that right." *Id*. at 202 (citation omitted). Thus, the final step in the analysis is to determine whether a reasonable officer in similar circumstances would have thought his conduct violated the alleged right. *See id*. at 205.

Defendants acknowledge that "[i]f the allegations are true, Defendant[s] would not be entitled to qualified immunity." Doc. 13 at 23. At this stage, the Court must accept Plaintiff's allegations as true.[15] Assuming Plaintiff did attack Defendant Crotty, and assuming thereafter Defendant Crotty struck Plaintiff with a baton 7 to 8 times while Defendant was handcuffed behind his back and at some point the Doe defendants also struck Plaintiff and kicked him while he was on the ground handcuffed behind his back, Defendants would not be entitled to qualified immunity. It was well-settled at that time the Eighth Amendment prohibits prison officials from wantonly beating an inmate who was no longer resisting. *See Hudson v.*

---

[15] As previously indicated, to the extent that Plaintiff's claims are necessarily at odds with the RVR they are barred by *Heck*. However, qualified immunity has no impact on that analysis.

1  *McMillian*, 503 U.S. 1, 6 (1992) ("[T]he core judicial inquiry is ... whether force was applied in a
2  good-faith effort to maintain or restore discipline, or maliciously and sadistically to cause
3  harm."); *Martinez v. Stanford*, 323 F.3d 1178, 1180, 1183–84 (9th Cir. 2003) (Prison officials
4  were not entitled to qualified immunity where the inmate alleged that the officials, among other
5  things, "beat him with their fists and a wooden baton on his head, torso, and legs" and continued
6  to kick him and beat him with batons after they had handcuffed him.) At this stage, the Court
7  cannot find that Defendants are entitled to qualified immunity.
8  *///*
9  *///*
10 *///*

11 **V. Order**

12      Based on the foregoing, IT IS HEREBY ORDERED that Defendant's motion to dismiss
13 is GRANTED in part and DENIED in part as follows:

14   1. Plaintiff's claims for relief accruing on November 11, 2012 are not dismissed as barred
15      by the limitations period;
16   2. Plaintiff's first, third, fourth, fifth, seventh, ninth, eleventh, twelfth, and thirteenth claims
17      for relief are at odds with the findings of the RVRs and are dismissed as barred by *Heck*
18      *v. Humphries*. Plaintiff is granted leave to amend those claims to allege theories not
19      inconsistent with the findings of the RVRs as set forth herein;
20   3. Plaintiff's eighth cause of action is dismissed as barred by *Heck v. Humprhies.* Leave to
21      amend is not granted as to that claim;
22   4. The portion of Plaintiff's seventh cause of action derivative of Plaintiff's eighth cause of
23      action—alleging that Defendant Holland was complicit in the failure to process
24      appeals—is dismissed without leave to amend;
25   5. Insofar as Plaintiff sought to allege claims against any defendant in his or her official
26      capacity, those claims are dismissed without leave to amend;
27   6. Insofar as Plaintiff sought to allege a claim against Defendant Foster for failure to
28      intercede, that claim is dismissed without leave to amend;

7. Plaintiff's twelfth cause of action is dismissed for failure to state a claim. Leave to amend is granted as to that claim;

8. Defendants Frye, Alomari, and Jackson are dismissed from this action.

IT IS SO ORDERED.

Dated: __July 11, 2017__      _____

SENIOR DISTRICT JUDGE