UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| DOUGLAS JEROME STEVENSON, | **CASE NO. 1:16-cv-01831-AWI-SKO** |
| Plaintiff, | **ORDER RE DEFENDANT'S MOTION TO DISMISS FIRST AMENDED COMPLAINT** |
| v. | |
| K. HOLLAND, et al., | |
| Defendants. | |

## I. Introduction

Plaintiff Douglas Stevenson ("Plaintiff") is a former prisoner of the California Department of Corrections and Rehabilitation ("CDCR"). He was formerly incarcerated at California Correctional Institute (CCI) in Tehachapi, California, where the events at issue in this action took place. Plaintiff now proceeds on his First Amended Complaint ("FAC") wherein he alleges claims against the Defendant CDCR employees based on three incidents of misconduct: the first, an application of pepper spray allegedly involving Defendant correctional officers J. Dunnahoe, R. Valaverde, M. Crotty, Sergeant Foster, and a Doe defendant nurse on November 11, 2012; the second, an application of physical force in the form of multiple baton strikes and kicks performed by Defendants Crotty and Does 1 and 2, observed by Defendant correctional officers C. Gonzales, A. Cantu, and Sergeant Foster on December 7, 2012; the third, an alleged

destruction of Plaintiff's property on August 19, 2013. Defendants move to dismiss all of Plaintiff's claims. Plaintiff opposes that motion. For the following reasons, Defendant's motion will be granted in part and denied in part.

## II. Background

First Incident: November 11, 2012.

Plaintiff was an inmate at CCI on November 11, 2012. On that date, Plaintiff was transferred into CCI's secured housing unit ("SHU") and placed with a cellmate named Bell. FAC at ¶¶ 20. On the same date, Plaintiff inquired of one or more of Defendants regarding his property which had not been returned to him after the transfer. *Id.* at ¶ 21. Thereafter, Defendants Dunnahoe and Valverde emptied both of their pepper spray canisters at Plaintiff and his cellmate through the port in their cell door without any good cause for doing so. *Id.* at ¶¶ 21-21. Plaintiff contends that the application of pepper spray was unwarranted regardless of whether he "refused to cuff up, lay prone on the ground, or otherwise delayed and resisted the officers. *Id.* at ¶ 22. Defendant Crotty offered his pepper spray canister to Defendants Dunnahoe and Valverde. *Id.* at ¶ 24.[1] Defendant White observed Defendants Dunnahoe and Valverde apply pepper spray to Plaintiff and did not interfere. *Id.*

Defendant Crotty then took Plaintiff to a holding cell, "raised up [Plaintiff's] handcuffs and threw him head-first into the cell with such force that [Plaintiff's] face slammed into the cell's back fence, injuring [Plaintiff's] cheekbone and eye…." FAC at ¶ 23. Defendant Crotty then performed a strip search of Plaintiff as part of the decontamination process. *Id.* at ¶ 24. Plaintiff alleges that during that process Defendant Crotty saw Plaintiff's "infirm leg with a surgical scar." *Id.* at ¶ 24.

Plaintiff informed Defendant Sgt. Foster that Defendant Crotty "slamm[ed]" Plaintiff's face into the fence. FAC at ¶ 25. When Plaintiff was seen by examining nurse Doe, Defendant Foster instructed nurse Doe "not to document any injury." *Id.* at ¶ 25.

Plaintiff was issued a RVR for resisting an officer resulting in the use of foce based on

---

[1] Like Plaintiff's original complaint, Plaintiff's amended complaint does not suggest whether Defendants Dunnahoe and Valverde accepted Defendant Crotty's canister or whether it was used.

that incident and assessed a 90-days loss of credits. Defendants' Request for Judicial Notice, Doc. 23-1 ("RJN") at 5-8.

Second Incident: December 7, 2012.

Following the pepper spray incident on November 11, 2012, Plaintiff was afraid to go to the shower because it required him being escorted by correctional officers to and from the shower while handcuffed. FAC at ¶ 30. Between November 11 and December 7, 2012, Plaintiff bathed in his sink. *Id*. On December 7, 2012, Plaintiff elected to take a shower. *Id*. at ¶ 31. Defendant Crotty escorted Plaintiff on the return trip from the shower. *Id*. at ¶ 31. During that trip, while Plaintiff was handcuffed behind his back, Plaintiff asked Defendant Crotty for a spoon because Plaintiff's was broken. *Id*. Plaintiff acknowledges that he suffered a rules violation report ("RVR") for having lunged backwards into Defendant Crotty and having failed to comply with an order to get down. *See Id*. Defendant Crotty then pushed Plaintiff into a wall, then onto the ground, and then struck Plaintiff with a baton seven or eight times, purposefully aiming at Plaintiff's injured leg. *Id*. Defendants Gonzales and Cantu watched the incident without intervening despite Plaintiff's pleas for help. *Id*. Two other guards, unknown to plaintiff, joined in on the beating. *Id*. The first struck Plaintiff with a baton several times (appearing to also hit Defendant Crotty in the hand)[2] and stomped on Plaintiff. *Id*. The second unknown guard stomped on Plaintiff. *Id*.

Defendant Crotty and the Doe defendant correctional officers stopped beating plaintiff when Defendant Sgt. Foster arrived on the scene. *Id*. at ¶ 37. Plaintiff was then placed in a holding cell. *Id*. Defendant Sgt. Foster reprimanded Defendant Crotty for being part of a second physical confrontation with Plaintiff. *Id*. Defendant Sgt. Foster "asked [Defendant Crotty] what [Defendant Crotty] wanted [Defendant Sgt. Foster] to do." *Id*. Defendant Crotty "responded that he didn't care 'what the fuck' [Defendant Sgt. Foster] charged [Plaintiff] with, and slammed a nearby locker." *Id*.

Defendant Sgt. Foster interviewed Plaintiff about the incident and recorded the interview.

---

[2] Defendant Crotty's "right fourth metacarpal" was fractured. FAC at ¶ 36. Defendant Crotty was on medical leave for several months as a result of the injury. *Id*.

FAC at ¶ 33. Plaintiff told Defendant Sgt. Foster that Plaintiff had done nothing wrong and that the guards beat him for no reason. *Id.* Plaintiff "begged" Defendant Sgt. Foster to be permitted to take a lie detector test to prove the truth of his statement. *Id*. Plaintiff was never given a lie detector test and Defendant Sgt. Foster never recorded the offer to take one in his report. *Id.* at ¶ 34. Plaintiff refused to identify any of the correctional officers who beat him out of fear of reprisal. *Id*. at ¶ 37.

Plaintiff received a RVR for the December 7, 2012 incident, resulting in a loss of 360 days credit. RJN at 14-18. On December 18, 2012, Plaintiff filed a prisoner grievance regarding Defendant Crotty's use of force on December 7, 2012. FAC at ¶ 38. The prisoner grievance was returned to plaintiff for the stated reason that he failed to attach any supporting documentation. *Id.* On January 4, 2013, Plaintiff was provided with a final RVR regarding the December 7, 2012 incident. *Id*. Plaintiff resubmitted his prisoner grievance the same day, attaching the RVR. *Id.* Plaintiff never received a response regarding his grievance despite multiple requests for a status update. *Id*. Plaintiff also wrote to Defendant Warden Holland regarding the incident but never heard back. *Id*. at ¶¶ 39-40.

Third Incident: August 19, 2013.

Plaintiff was charged criminally regarding the December 7, 2012 incident. FAC at ¶ 41. While Plaintiff was in court regarding those charges, some Doe Defendants are alleged to have entered his cell, taken his family portrait from above his bed, and broken his television. *Id.* at ¶ 43. Because Plaintiff was in the segregated housing unit, he believes that the vandalism was perpetrated by correctional officers. *Id.* Plaintiff pled guilty to a criminal charge of battery of Defendant Crotty because he was afraid that whoever damaged his property would hurt him if he continued to defend the criminal action. *Id.* at ¶ 44. That conviction was reversed on unrelated grounds. *Id.* at ¶¶ 46-47. Plaintiff was not retried on that charge. *Id.* at ¶ 48.

### III. Legal Standard

Under Federal Rule of Civil Procedure 12(b)(6), a claim may be dismissed where a plaintiff fails "to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). A dismissal under Rule 12(b)(6) may be based on the lack of a cognizable legal theory or on the

absence of sufficient facts alleged under a cognizable legal theory. *Johnson v. Riverside Healthcare Sys.*, 534 F.3d 1116, 1121 (9th Cir. 2008); *Navarro v. Block*, 250 F.3d 729, 732 (9th Cir. 2001).

In reviewing a complaint under Rule 12(b)(6), all allegations of material fact are taken as true and construed in the light most favorable to the non-moving party. *Mollett v. Netflix, Inc.*, 795 F.3d 1062, 1065 (9th Cir. 2015); *Marceau v. Blackfeet Hous. Auth.*, 540 F.3d 916, 919 (9th Cir. 2008). However, the Court is not required "to accept as true allegations that are merely conclusory, unwarranted deductions of fact, or unreasonable inferences." *In re Gilead Scis. Sec. Litig.*, 536 F.3d 1049, 1056-57 (9th Cir. 2008); *Sprewell v. Golden State Warriors*, 266 F.3d 979, 988 (9th Cir. 2001). To avoid a Rule 12(b)(6) dismissal, "a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 278 (2009); *see Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555, 570 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678. The Ninth Circuit has distilled the following principles from *Iqbal* and *Twombly*:

> First, to be entitled to the presumption of truth, allegations in a complaint or counterclaim may not simply recite the elements of a cause of action, but must contain sufficient allegations of underlying facts to give fair notice and to enable the opposing party to defend itself effectively. Second, the factual allegations that are taken as true must plausibly suggest an entitlement to relief, such that it is not unfair to require the opposing party to be subjected to the expense of discovery and continued litigation.

*Starr v. Baca*, 652 F.3d 1202, 1216 (9th Cir. 2011). If a Rule 12(b)(6) motion is granted, the "district court should grant leave to amend even if no request to amend the pleading was made, unless it determines that the pleading could not possibly be cured by the allegation of other facts." *Lopez v. Smith*, 203 F.3d 1122, 1127 (9th Cir. 2000) (en banc). In other words, leave to amend should be granted unless amendment would be futile. *Gompper v. VISX*, Inc., 298 F.3d 893, 898 (9th Cir. 2002); *see Petersen v. Boeing Co.*, 715 F.3d 276, 282 (9th Cir. 2013) (requiring that "leave to amend … be granted with extreme liberality") (internal quotation marks omitted).

**IV. Discussion**

The focus of Defendants' motion to dismiss is primarily on the impact of the favorable termination rule as articulated in *Heck v. Humphrey*, 512 U.S. 477 (1994), and its progeny, on claims related to the Rules Violation Reports ("RVRs") that Plaintiff suffered in prison. Defendants' motion to dismiss also moves to dismiss claims unrelated to RVRs based on substantive arguments. Finally, if the Court dismisses the claims over which it has original jurisdiction, Defendants ask the Court to decline to exercise supplemental jurisdiction over the remaining state law claims.

1. The Reach of *Heck* and the Favorable Termination Rule

a. *Heck* Framework

At its core, the favorable termination rule, as first articulated in *Heck v. Humphries* and extended by *Edwards v. Balisok*, precludes a prisoner from seeking damages for an alleged constitutional violation which, if established, would necessarily imply the invalidity of his conviction, sentence, or deprivation of good-time credits. *Heck v. Humphrey*, 512 U.S. at 487; *Edwards v. Balisok*, 520 U.S. 641, 648 (1997). Even after a sentence is served and a prisoner is released from custody, *Heck*'s favorable termination rule may apply. *Lyall v. City of Los Angeles*, 807 F.3d 1178, 1191 (9th Cir. 2015); *Guerrero v. Gates,* 422 F.3d 697 (9th Cir. 2006); *Nonnette v. Small*, 316 F.3d 872 (9th Cir. 2002); *cf. Spencer v. Kemna*, 523 U.S. 1, 19 (1998) (Souter, J., concurring) (The "better view" of *Heck*'s favorable termination requirement is that "a former prisoner, no longer 'in custody,' may bring a § 1983 action establishing the unconstitutionality of a conviction or confinement without being bound to satisfy a favorable-termination requirement that would impossible as a matter of law to satisfy" because it would be moot.) A "narrow exception" to the favorable termination rule exists where a § 1983 plaintiff challenging a prison disciplinary determination, who no longer meets the "in custody" requirement for filing a habeas petition, has diligent pursued relief. *See Guerrero v. Gates*, 442 F.3d 697, 704–05 (9th Cir. 2006); *Nonnette v. Small*, 316 F.3d 872, 876–77 (9th Cir. 2002). That exception only applies when the former prisoner plaintiff "challenges loss of good-time credits, revocation of parole or similar matters;" it does not apply to challenging underlying convictions.

1   *Lyall*, 807 F.3d at 1192.

2                              b. Analysis

3        Defendants contend that Plaintiff's excessive force claims—causes of action one through

4   three—are barred by a straight-forward reading of *Heck*'s favorable termination rule. Plaintiff's

5   theory, if proved, would necessarily imply the invalidity of the credit loss assessed in response to

6   the November 11, 2012 and December 7, 2012 incidents. If any relief is to be had, Defendants

7   contend, it must be pursued by way of a petition for habeas corpus.

8        Plaintiff contends that his excessive force claims should not be *Heck* barred, even if

9   success on those claims would be necessarily inconsistent with his prison disciplinary

10  conviction, because he is no longer able to challenge that conviction by way of a habeas petition.

11  That position is different from Plaintiff's position in the prior motion to dismiss. Previously,

12  Plaintiff contended that *Heck* was not implicated, regardless of whether a finding of liability on

13  Plaintiff's theory of relief would be inconsistent with the RVR, because he was not "specifically

14  challeng[ing]" the credit loss as a result of the RVR. Doc. 18 at 12.

15       Neither party's position is completely correct. *Heck* in not "simply inapplicable" merely

16  because plaintiff is no longer is custody, as Plaintiff argues, Doc. 28 at 11, 13; but neither is does

17  *Heck* always bar claims by former prisoners that necessarily imply the validity of disciplinary

18  violations with attendant credit losses, Doc, 25 at 15. Instead, whether claims that necessarily

19  imply the invalidity of rule violations may be litigated turn on whether the "narrow exception" to

20  *Heck* recognized in *Spencer*, *Nonnette*, *Guerrero*, and *Lyall*. The Court finds, as explained in

21  more depth below, Plaintiff's claims do not fall within that narrow exception. More significantly,

22  the Court also finds that Plaintiff's claims are not necessarily inconsistent with the RVRs. The

23  Court finds that the first three causes of action are alleged in conformity with the boundaries

24  imposed in the Court's prior order.

25       Plaintiff's criminal conviction resulting from the December 7, 2012 incident has been

26  reversed and cannot operate as a bar to his present action. Plaintiff was issued RVRs from both

27  the November 12, 2012 incident and the December 7, 2012 incident with attendant time credit

28  losses. On the date of filing of this action, after his release from custody, Plaintiff could not

                                        7

challenge his disciplinary violations (RVRs) by way of a habeas petition. California and federal habeas jurisprudence require a petitioner to be "in custody" at the time that a habeas petition is filed. 28 U.S.C. § 2254(a); *Maleng v. Cook,* 490 U.S. 488, 490-491 (1989); *Bailey v. Hill*, 599 F.3d 976, 980 (9th Cir. 2010); *In re Douglas*, 200 Cal.App.4th 236, 246-247 (Cal.Ct.App. 2011). The "in custody" requirement is met if, at the time of filing of the petition, the habeas petitioner is in physical custody, *Carafas v. LaVallee*, 391 U.S. 234, 238-240 (1968); *In re Douglas*, 200 Cal.App.4th at 246-247, is on parole from an unexpired sentence, *Maleng*, 490 U.S. at 491 (citing *Jones v. Cunningham*, 371 U.S. 236, 242 (1963) (emphasizing that the petitioner was "confined by the parole order to a particular community, house, and job at the sufferance of his parole officer"); *In re Jones*, 57 Cal.2d 860, 861 (1962), or is on probation, *In re Osslo*, 51 Cal.2d 371, 376 (1958). In each of those situations, the petitioner is subject to the control of the state, limited in liberty, and at risk of resumption of (or actually in) physical custody as a result of the criminal conviction. The same is not true of a former prisoner who seeks to challenge the outcome of a RVR. After release from custody, a former prisoner faces no limitations on liberty as a result an erroneous disciplinary violation, even with an attendant loss of time credits. Accordingly, a habeas corpus cannot be used to challenge a disciplinary violation after release from custody because the former prisoner is no longer "in custody."

With that understanding in mind, Defendants' suggestion that Plaintiff's "sole remedy is a petition for writ of habeas corpus" is incorrect. Plaintiff cannot challenge his disciplinary violations by way of petitions for writ of habeas corpus. However, that does not necessarily mean that he can challenge those claims by way of a § 1983 claim either. Just because a party having suffered a conviction or disciplinary violation is presently ineligible for habeas relief does not mean that he or she must be able to litigate a claim related to that conviction or violation by way of § 1983. *Guerrero*, 442 F.3d at 704 ("The fact that Guerrero is no longer in custody and thus cannot overturn his prior convictions by means of habeas corpus does not lift Heck's bar.") Indeed, it is well established that a conviction, if not set aside, bars the convicted person from litigating a claim necessarily inconsistent with the fact of conviction, even after that convicted person has served the entirety of their sentence. *Guerrero*, 442 F.3d at 705. In the ordinary case,

a convicted person may not elect not to pursue habeas relief when available, then seek relief under § 1983 upon release from "custody." *Id*.

As noted above, a very narrow exception to the *Heck* bar exists where a plaintiff timely and diligently pursued available habeas relief. *Lyall*, 807 F.3d at 1191 (citing *Guerrero*, 422 F.3d at 705); *see Heck*, 512 U.S. at 500 (Souter, J. concurring) (explaining that *Heck* should not be read to preclude claims by those who cannot obtain a favorable state ruling because they were not long or ever in custody); *Spencer*, 523 U.S. at 20-21 (Souter, J. concurring) (same); *id*. at 25 (Stevens, J. dissenting) (same). In this Circuit, the court in *Guerrero* (and then again in *Lyall*) explained that relief from a *Heck* bar is appropriate where a former prisoner plaintiff "'immediately pursue[s] relief after the incident giving rise to his claims and [cannot] seek habeas relief only because of the shortness of his prison sentence.'" *Lyall*, 807 F.3d at 1191 (quoting *Guerrero*, 422 F.3d at 705). By contrast, a plaintiff that "never challenged his convictions prior to filing his § 1983 suit, despite having years in custody in which to do so" is not eligible for relief from a *Heck* bar. *Id*. at 1191-1192. Such a plaintiff suffers only from a "self-imposed" failure to seek habeas relief which does not justify deviation from *Heck*. *Id*.

Plaintiff alleges that he "made diligent efforts to exhaust his administrative remedies." FAC at ¶ 50. Specifically, with respect to the November 11, 2012 incident, Plaintiff alleges that he "filed a 602 complaint within 15 days of November 11, 2012, contesting the excessive and unwarranted use of force by being pepper sprayed." FAC at ¶ 26. On January 22, 2013, after Plaintiff was assessed a credit loss and provided with a copy of the RVR from the November 11, 2012 incident, Plaintiff appealed the loss of credits. FAC at ¶ 27. Plaintiff did not receive a response to his 602 complaint regarding excessive force or his appeal of the credit loss. FAC at ¶¶ 27-28. With respect to the December 7 incident, Plaintiff "filed a 602 on or about December 18, 2012, complaining about" the "use of force." FAC at ¶ 38. The prison returned the 602 complaint to Plaintiff for failure to submit supporting documentation. FAC at ¶ 38. Plaintiff was provided his final RVR regarding the December 7 incident on January 4, 2013. FAC at ¶ 38. On or around that date, Plaintiff "re-submitted his 602" with the supporting documentation he received in the RVR. FAC at ¶ 38. Plaintiff never received any response to his 602 complaint

despite repeated requests for a status update. FAC at ¶ 38.

Plaintiff contends in his opposition to the motion to dismiss that he sought to expand the scope of his appellate counsel's appointment to include filing of a habeas petition regarding the two RVRs. Doc. 28 at 14 (citing Doc. 23-1 at 35.).[3] The Court of Appeal deferred ruling on the application to expand the scope of appointment until after resolution of Plaintiff's appeal from the conviction arising from the December 7 incident. Doc. 23-1 at 35. On July 25, 2015, the Court of Appeal reversed Plaintiff's conviction relating to the December 7 incident and denied without prejudice Plaintiff's application to expand the scope of appointment. Doc. 23-1 at 35-36. Plaintiff did not file any habeas petition relating to either RVR.  Plaintiff was released from custody on July 11, 2016. FAC at ¶ 48.

No part of Plaintiff's explanation suggests that he was diligent in seeking available habeas relief.[4] As Defendants correctly point out, more than three years elapsed between issuance of Plaintiff's RVRs and his release from custody. The prison's alleged failure to reply to any of the 602 petitions does not undermine that conclusion. Plaintiff does not fall within the limited exception to the *Heck* bar. Therefore, any of Plaintiff's claims that would be necessarily inconsistent with the RVRs would be barred by *Heck*. That is to say, insofar as any of Plaintiff's claims or theories requires a showing that is inconsistent with a necessary element or requirement for sustaining Plaintiff's disciplinary violation, it is barred.

For the sake of clarity, *Heck* does not preclude presentation of evidence; it does not preclude pleading of facts beyond those necessary to establish a claim; it does not preclude a plaintiff from "tell[ing] the jury the entire story—in other words, [Plaintiff] may present evidence and/or testimony that [the officer] initiated the physical confrontation…." *Simpson v. Thomas*, 528 F.3d 685, 696 (9th Cir. 2008). Although Plaintiff may tell his complete story,

---

[3] It is unclear based on the Court of Appeal's characterization of the request for expansion of appointment whether that expansion actually included filing of a habeas petition to challenge the credit losses as a result of the RVRs. *See* Doc. 23-1 at 30, 35-36. The court suggests that the application sought approval for a polygraph examination and to pursue evidentiary matters outside of the scope of appeal. Doc. 23-1 at 35. No mention is made of challenging the RVRs.

[4] Counsel's suggestion that Plaintiff could not have filed a habeas petition challenging the RVRs without it being considered an unauthorized second petition is wrong (or at least without any factual support). No suggestion has been made that Plaintiff filed any habeas petition, much less a habeas petition challenging either of the RVRs.

Plaintiff's claim may only succeed if the force used was beyond the force necessary to bring Plaintiff into compliance with the Defendant correctional officer's orders. *See Wilkins v. Gaddy*, 559 U.S. 34, 40 (2010) (quoting *Hudson v. McMillian*, 503 U.S. 1, 7 (1992) ("The 'core judicial inquiry' … [is] 'whether force was applied in a good-faith effort to maintain or restore discipline, or maliciously and sadistically to cause harm.'")) Plaintiff could not, for instance, prevail upon the theory that Defendants' force was excessive because they applied force without provocation.

### c. Plaintiff's First Cause of Action

Plaintiff's first cause of action alleges that, on November 11, 2012, Defendants Dunnahoe and Valverde "sprayed two full canisters of pepper spray at [Plaintiff] through the cell's port door." FAC at ¶ 52. Plaintiff contends that this act constituted excessive force. Plaintiff further alleges that Defendant Crotty offered his pepper spray canister to Defendants Dunnahoe and Valverde. *Id.* Plaintiff does not allege whether that pepper spray canister was accepted or used.

A reasonable reading of Plaintiff's complaint is that the amount of forced used was beyond the force necessary to bring Plaintiff into compliance. To that extent, Plaintiff's claim survives *Heck*. However, insofar as Plaintiff suggests that no force was warranted because he did not defy the Defendant correctional officers' orders, his claim is barred by *Heck*. Again, Plaintiff may tell his entire story. And again, his claim may only succeed if it is established that the force used was more than necessary. Plaintiff could not recover based on a finding that the application of any force was unwarranted because Plaintiff did nothing to warrant application of such force. Plaintiff's first claim is curbed, but not barred, by *Heck*. Dismissal is not warranted as to this claim.

### d. Plaintiff's Second Cause of Action

Plaintiff's second cause of action alleges that on November 11, 2012, after the pepper spray incident, Defendant "Crotty raised up [Plainitff's] hand-cuff[ed]" hands and "threw [Plaintiff] into [a] holding cell, causing [Plaintiff's] face to be slammed into the cell's back fence, injuring his left cheekbone and eye in the form of bruising." FAC at ¶¶ 23, 59. Plaintiff contends that this act constituted excessive force. *Heck* does not preclude that claim because it is

not necessarily inconsistent with the RVR. Indeed, the RVR issued in relation to the November 11, 2012 incident gives no indication that the allegations of the second cause of action ever took place or that any force was required in that situation. *See* Doc. 23-1 at 5-12.[5] Plaintiff's success on such a claim would not tend to undermine, in any way, the RVR. This claim is not impacted by *Heck*. Dismissal is not warranted as to this claim.

### e. Plaintiff's Third Cause of Action

Plaintiff's third cause of action alleges that on December 7, 2012, Defendant Crotty escorted Plaintiff, whose hands were handcuffed behind his back, to a spot out of view and threw Plaintiff into a wall and then onto the ground where he struck Plaintiff multiple times in his infirm leg. FAC at ¶ 66. Two Doe Defendant correctional officers joined in the attack, inflicting baton blows and stomping on Plaintiff. FAC at ¶ 66. Plaintiff contends that the beating he received constituted force beyond that which was necessary to restore order.

A RVR was issued in relation to this incident wherein Plaintiff was assessed a 360-day credit loss for battery upon a peace officer resulting in serious injury. Doc. 23-1 at 16-18. At the rules violation hearing, the hearing official considered the statements of the correctional officers and Plaintiff's oral statement. Defendant Crotty testified that Plaintiff thrust his shoulder into Crotty, causing Defendant Crotty to lose his grip on Plaintiff's arm. Defendant Crotty ordered Plaintiff to assume a prone position and Plaintiff refused. Defendant Crotty then "used his baton, and then physical force to force [Plaintiff] to the ground. Additional force was utilized and [Plaintiff became compliant]." Doc. 23-1 at 17. Defendants Gonzales and Cantu agreed with Defendant Crotty's recitation of the events and added that Plaintiff kicked at Defendants Gonzales and Crotty after having been forced to the ground. *Id.*

In this context, "even if Defendant[s] acted unlawfully by using excessive force, Plaintiff could still have been guilty of battery." *Simpson v. Thomas*, 2009 WL 1327147, *4 (E.D. Cal.

---

[5] Defendants make much of the fact that the RVR indicated that "medical reported no injuries." Doc. 25 at 17. So far as the Court can tell, whether or not Plaintiff suffered injuries was irrelevant to whether the allegations of the RVR were sustained. The inclusion of a fact in an RVR does not necessarily mean that inconsistent factual allegations are precluded by *Heck* in a later proceeding. *See Cunningham v. Gates*, 312 F.3d 1148, 1153-1154 (9th Cir. 2002); *Bealer v. Warden of KSVP*, 2015 WL 5519645, *7 (E.D. Cal. Sept. 16, 2015) (citing, *inter alia, Candler v. Woodford*, 2007 WL 3232435, *7 (N.D.Cal. Nov.1, 2007)). Instead, a factual premise must underlie—and indeed be essential to—a necessary element in order for litigation of that premise to be barred by *Heck*. *Id.*

May 19, 2009) (citing *Simpson*, 528 F.3d at 685). Assuming, as the Court must, that Plaintiff did thrust his shoulder at Defendant Crotty, Plaintiff contends that Defendant Crotty's response was excessive; further assuming that Plaintiff kicked at Defendants Crotty and Gonzales, Plaintiff contends that the beating he received was beyond that necessary to achieve compliance with their orders. The fact that the RVR recited the situation as relayed by Defendants Crotty, Gonzales, and Cantu—that the force used to bring Plaintiff to the ground was necessary and that Defendants only applied baton strikes until Plaintiff stopped kicking—does not preclude litigation of excessive force allegations. The findings regarding how much force Defendants applied and when they ceased to apply force were not necessary to sustain the RVR for battery on a peace officer causing serious injury. As this Court has previously noted, the fact that Plaintiff battered a correctional officer and refused orders from a correctional officer does not offer a blank check for use of force by correctional officers. Doc. 21 at 13-14; *see Hopper v. County of San Diego*, 629 F.3d 1127, 1134 (9th Cir. 2011); *Smith v. City of Hemet*, 394 F.3d 689, 695 (9th Cir. 2005); *Mundo v. Carmona*, 2018 WL 573365, *5 (E.D. Cal. Jan. 26, 2018); *Russel v. Lopez*, 2017 WL 4244620, *2 (S.D. Cal. Sept. 25, 2017). A finding that the Defendants applied excessive force would not tend to invalidate the RVR resulting from the December 7, 2012 incident. Plaintiff's third cause of action survives *Heck*. Dismissal is not appropriate as to this claim.

*f. Failure-to-Intervene*

Each of Plaintiff's first three causes of action allege a failure-to-intervene by surrounding correctional officers.[6] Defendants move to dismiss all of the failure-to-intervene allegations as barred by *Heck* for largely the same reasons addressed with respect to the direct violation allegations. With respect to the first cause of action, relating to the November 11, 2012 pepper spray incident, Plaintiff alleges that Defendant White (and unnamed Doe Defendants) "stood by watching, doing nothing to interfere" while Defendants Dunnahoe and Valverde emptied their pepper spray canisters upon Plaintiff and his cellmate. Defendants contend that Plaintiff's claim

---

[6] Defendants' motion to dismiss the failure-to-intervene claims is premised only upon the favorable termination doctrine. This Court's order should not be read to consider the underlying merits of those claims.

is barred by *Heck*. Again, to the same extent that Plaintiff's first cause of action survives against Defendants Dunnahoe and Valverde, i.e., insofar as it alleges that the force applied was malicious and sadistic and not taken in a good-faith effort to restore discipline, the derivative claim against Defendant White survives *Heck*.

As to Plaintiff's second cause of action, where plaintiff alleges that after the pepper spraying on November 11, 2012, Defendant Crotty threw him face first into his cell with such force to harm his face on the back of the cage, Plaintiff also contends that Doe Defendants 2-10 failed to intervene and prevent Defendant Crotty's conduct. That claim is not barred by *Heck* for the same reason that the portion of that cause of action alleged against Defendant Crotty is not barred by *Heck*.

Finally, with respect to the third cause of action, relating to the December 7, 2012 incident involving Defendant Crotty forcing Plaintiff to the ground and Defendant Crotty and Doe Defendants 1 and 2 applying baton strikes and kicks to Plaintiff while he was on the ground, Plaintiff contends that Defendants Gonzales, Cantu, and Doe Defendants 11-20 failed to intervene to prevent the alleged misconduct. Plaintiff contends that Defendant Gonzales "was present and did nothing to intervene" and Defendant Cantu "operated the control tower" and also watched and did nothing to intervene. FAC at ¶ 31. To the same extent that Plaintiff's third cause of action survives against Defendant Crotty, i.e. insofar as it alleges that the force applied was malicious and sadistic and not taken in a good-faith effort to restore discipline, the derivative claim against Defendants Gonzales and Cantu survive *Heck*.

b. Previously Dismissed Causes of Action

The Court previously dismissed Plaintiff's fourth and fifth causes of action with leave to amend in a manner not inconsistent with *Heck*. Plaintiff's FAC did not reallege those claims and now explains that he could not have done so in conformity with the Court's order. Doc. 28 at 24-25. Defendant seeks a ruling that Plaintiff's failure to reallege those claims constitutes a waiver. Doc. 25 at 19. Neither cause of action is before this Court. The question whether a party has

waived its right to appeal is appropriately resolved by the circuit court on appeal.[7]

c. Intimidation Claim

Plaintiff's sixth cause of action alleges that during his criminal trial regarding the December 7, 2012 incident, some Doe Defendants entered his cell while he was out to court, "damaged [his] television and removed his family portrait in a purposeful attempt to intimidate [him.]" FAC at ¶ 73. Although Plaintiff is unaware who damaged his television and removed his family portrait, Plaintiff suggests that only the guards in the secured housing unit had access to his cell. Doc. 28 at 25. Plaintiff further asserts that "[i]t is highly likely that the guards performed these acts" for purposes of "intimidation." *Id*. Based on those allegations, Plaintiff contends that the Doe Defendants violated his due process rights under the Fifth and Fourteenth Amendments and interfered with his right to a jury trial in violation of the Sixth Amendment.

Defendant moves to dismiss because a state law remedy post-deprivation remedy exists for claim his deprivation of property claim and because Plaintiff's contentions are speculative. Defendants also argue that Plaintiff's allegations are implausible.

Plaintiff does not plead factual content that allows the court to draw the reasonable inference that a person or persons actually damaged his television and took his family photo, that a person or person did so intentionally, and that the purpose of the person or persons was to intimidate him into pleading guilty to the offense that he was charged with. Factually, all that plaintiff can allege is that while he was gone his family portrait disappeared and that his television was broken. That allegation gives rise to myriad equally reasonable explanations—that Plaintiff had more in his cell than he was permitted to have, that during a cell sweep his television was accidentally knocked over, that someone other than a correctional officer may have accessed his cell. There is a possibility of misconduct that can be seen from Plaintiff's allegations. However, the facts as alleged are inadequate to nudge his claims across the line from conceivable to plausible. *Ashcroft v. Iqbal*, 556 U.S. 662, 680 (2009). Plaintiff's sixth cause of

---

[7] Although the Court does not presume to resolve the question, it would note that the Ninth Circuit has sought to avoid requiring a plaintiff to replead a claim in a manner expressly rejected by the trial court for the sake of preserving a right to appeal the dismissed claim. *Vien-Phuong Thi Ho v. ReconTrust Company, NA*, 858 F.3d 568, 577 (9th Cir. 2017); *Lacey v. Maricopa County*, 693 F.3d 896, 928 (9th Cir. 2012).

action will be dismissed. Plaintiff's opposition tends to suggest that Plaintiff has alleged as much factual matter as is possible with respect to this cause of action. As such, amendment would likely be futile and leave to amend will not be granted.

d. Supervisory Liability

Plaintiff's seventh cause of action alleges Defendants Foster and Holland both knew that the correctional officers involved in this action had previously used excessive force upon other inmates and tacitly approved of that conduct. Plaintiff details alleged prior instances of excessive force by Defendants Crotty, Dunnahoe, and Valverde, as well as instances when Defendant Foster allegedly ignored prisoner safety complaints and issued false reports to cover for wrongful conduct by correctional officers. FAC at ¶¶ 82-85.[8]

Defendants argue that Plaintiff's allegations fail to provide any indication that Defendants Foster and Holland personally participated in any act or knew of and failed to prevent an unconstitutional act with respect to Plaintiff. Doc. 25 at 19-20 (citing *Taylor v. List*, 880 F.2d 1040, 1045 (9th Cir. 1989)). Further, Defendants contend that the existence of other suits is inadequate to provide notice to Defendants Foster and Holland of the likelihood of a use of excessive force against Plaintiff.

The parties are in agreement, and are correct: in order to demonstrate a civil rights violation, a plaintiff must show either direct, personal participation or some sufficient causal connection between the defendants' conduct and the alleged constitutional violation. *See Starr v. Baca*, 652 F.3d 1202, 1205–1206 (9th Cir. 2011). For instance, "[a] supervisor can be liable in his individual capacity for his own culpable action or inaction in the training, supervision, or control of his subordinates; for his acquiescence in the constitutional deprivation; or for conduct that showed a reckless or callous indifference to the rights of others." *Watkins v. City of Oakland*, 145 F.3d 1087, 1093 (9th Cir. 1998). Plaintiff draws the Court's attention to *Johnson v.*

---

[8] Plaintiff also alleges that that Defendant Foster failed to reprimand Defendant Crotty for his use of excessive force with respect to the December 7, 2012 incident. The Court reads that allegation as an attempt to support Plaintiff's claim that Defendants' regularly ignored uses of excessive force. However, insofar as Plaintiff intended to contend that Defendant Foster is liable as a result of his failure to reprimand Defendant Crotty, that theory cannot survive. Defendant Foster's failure to reprimand Defendant Crotty after the alleged use of excessive force, standing alone, has no causal relationship to Plaintiff's injuries. *See Wolniak v. County of Sacramento*, 2017 WL 6558095, *5 (E.D. Cal. Dec. 22, 2017); *Kong Meng Xiong v. City of Merced*, 2015 WL 4598861, *30 (E.D. Cal. July 29, 2015).

16

*Baca*, 2014 WL 12588641, *8 (C.D. Cal. Mar. 3, 2014) and *Starr v. Baca*, 652 F.3d 1202, 1208 (9th Cir. 2011). In *Starr*, a cognizable deliberate indifference claim was found where it was alleged that the supervisory officer knew of, and was specifically given notice of, culpable uses of force by his subordinates prior to the alleged use of excessive force against the plaintiff yet took no preventative action despite his ability to do so. *Starr*, 652 F.3d at 1208-1209.[9] Similarly, in *Johnson*, the a cognizable deliberate indifference claim was found where the same reports detailed the same facility's failure to address mentally ill and suicidal inmates and other reports detailing the same conditions, all of which the supervisory defendant was on notice of but failed to take any action in response to. *Johnson*, 2014 WL 12588641 at *8-9. The *Starr* and *Johnson* courts detailed at length the "reports of past injuries to other inmates, received by [the supervisory officer, which] were sufficient to put him on notice that similar injuries could occur to inmates in the future if he took no action…." *Johnson*, 2014 WL 12588641 at *8; *accord Starr*, 652 F.3d at 1209-1213.

Defendants do not directly address this theory in their motion to dismiss or reply. Instead, Defendants cast Plaintiff's claim as an attempt to impose vicarious liability based on Defendant Holland and Foster's roles as supervisors rather than their own inaction. To be clear, a supervisory defendant that is aware of regular use of excessive force by his or her subordinates yet does nothing to prevent such abuses even though he or she is in a position to do so, is responsible for his or her own inaction. *Starr*, 652 F.3d at 1208-1209. In that situation there is a sufficient causal connection between the plaintiff's injure and the defendant's inaction to impose liability.

---

[9] In *Starr* "[t]he plaintiff alleged that: (1) in September 1997, Baca received an investigative report from the United States Department of Justice ("DOJ") of a continued and serious pattern and practice of constitutional violations including abuse of inmates by his deputies and inmate on inmate violence; (2) Baca received weekly reports from subordinates of death and injuries in the jails, as well as reports of his Special Counsel and the Office of Independent Review; (3) in 1999, Baca signed a document indicating he was aware of problems identified by the DOJ, but 'after years of monitoring the County Jail system ... in 2006 the DOJ experts issued a report which still found noncompliance with many of its recommendations regarding the abuse of inmates ...'; (4) Baca was aware of specific incidents, described in the complaint, of attacks on inmates by deputies and other inmates causing serious injuries and deaths during each of the four years preceding the attack on the plaintiff in 2006; and (5) in 2004 and 2005, Baca received reports of increasing levels of inmate violence, lax security and discipline, and other serious defects in Sheriff's Department practices and procedures from the Special Counsel to the Los Angeles County Sheriff's Department." *Coley v. Baca,* 2012 WL 1340373, *5 (C.D. Cal . Mar. 8, 2012) (citing *Starr*, 652 F.3d at 1209–1212).

Here, Plaintiff alleges that Defendant Foster watched Defendants Dunnahoe and Gonzales use excessive force against an inmate in the past. FAC at ¶ 82. Rather than reprimand those officers or take any corrective action, Defendant Foster authored false incident reports. *Id.* Defendant Foster is alleged to have also been deliberately indifferent to another prisoner's suffering when he delayed decontamination after an application of pepper spray. FAC at ¶ 84 (citing *Young v. Curliss*, Case No. 12-cv-1871-LJO-JLT, Doc. 1 at 6 (E.D. Cal. Nov. 15, 2012). Plaintiff also alleges that Defendant Foster ignored known threats by other correctional officers (non-defendants in this action). These allegations detail only a single incident where Defendant Foster allegedly watched at two Defendants in this case use excessive force yet failed to reprimand those Defendants. The conduct attributed to Defendant Foster is indisputably short of the conduct alleged in *Johnson* and *Starr. See Starr*, 652 F.3d at 1208, 1216 (finding an adequately alleged claim where there were the supervisory defendant was on notice of repeated systemic problems that he failed to address despite his authority to do so); *Johnson*, 2014 WL 12588641 at *8 (same); *see also Coley v. Baca*, 2012 WL 1340373, *2 (C.D. Cal. Mar. 8, 2012) (same). There are no allegations of external governmental reports of a "continued and serious pattern … of constitutional violations"; no acknowledgement by Defendant Foster that constitutional violations were ongoing; no inmates being killed by correctional officers or other prisoners; no abandoned guard posts that allowed for attacks by other inmates. *Starr*, 652 F.3d at 1208-1212. Despite those differences, all of the core findings made by the *Starr* court can just as easily be made here with respect to the allegations against Defendant Foster: (1) numerous prisoners were alleged to have been injured or threatened by Defendant Foster's subordinates; (2) Defendant Foster was on actual notice—he saw or was advised of—at least three of those incidents; and (3) Defendant Foster took no action to protect the inmates from those dangers, and in fact, he took actions to hide the actions of his subordinates. For that reason, Defendants' motion to dismiss Plaintiff's supervisory liability claim against Defendant Foster will be denied.

Next, none of the actions that are alleged to have put Defendant Holland on notice of uses of excessive force resulted in a finding that excessive force was actually used by any of the Defendants in this action or that Defendant Foster observed excessive force and failed to act. *See*

*Jacobs v. Sullivan*, Case No. 05-cv-1625-LJO-GSA, Doc. 248 (E.D. Cal. Oct. 3, 2016) (returning a jury verdict, finding excessive force by non-defendants in this action); *Holt v. Nicholas*, Case No. 09-cv-800, Docs. 141, 144 (E.D. Cal. Mar. 19, 2015) (granting summary judgment to all defendants relevant to this action on excessive force claims); *Gonzales v. Francisco*, Case No. 12-cv-1782-SKO, Doc. 11 (E.D. Cal. Apr. 2, 2013) (dismissing action for failure to pay the required filing fee); *Johnson v. Dovey*, Case No. 08-cv-640-LJO-DLB, Doc. 261 (E.D. Cal. Mar. 14, 2013) (returning a jury verdict finding no excessive force); *Young v. Curliss*, Case No. 12-cv-1871-LJO-JLT, Doc. 5 (E.D. Cal. Jan. 18, 2013) (dismissing action for failure to obey court orders); *Young v. Peterson*, Case No. 12-cv-864-AWI-GBC, Doc. 12 (E.D. Cal. Aug. 3, 2012) (dismissing action for failure to pay filing fee); *Palmer v. Crotty*, Case No. 07-cv-148-LJO-DLB, Docs. 44, 46 (E.D. Cal. Dec. 2, 2009) (dismissing excessive force claims for failure to exhaust administrative remedies); *Palmer v. Crotty*, Case No. 07-cv-514-LJO-WMW, Doc. 24 (E.D. Cal. Feb. 18, 2009) (dismissing the action as duplicative). There is nothing in the record to indicate that Defendant Holland had actual notice of any of those actions. More importantly, assuming that Defendant Holland was on notice, the fact that allegations of excessive force have been leveled against an officer is not sufficient for the Court to find that Defendant Holland was on notice that his officers actually used excessive force (much less that they made a practice of doing so). Unlike Defendant Foster, there are no allegations that Defendant Holland observed any of the alleged misconduct. The allegations regarding notice to Defendant Holland are lacking. Plaintiff's claim of supervisory liability as to Defendant Holland will be dismissed.

e. State Law Claims

*a. Assault and Battery Causes of Action*

Plaintiff's ninth, tenth, and eleventh causes of action allege state law assault and battery claims against Defendants Valverde, Crotty, White, Gonzales, Cantu, and Does 1-20 for their alleged respective roles in the November 11, 2012 and December 7, 2012 incidents.

Defendants seek dismissal of those claims on two bases: (1) assuming that Plaintiff's claims over which the Court has original jurisdiction were dismissed, Defendants ask the Court not to exercise supplemental jurisdiction, and (2) because Plaintiff's claims are all barred by

*Heck* to the same extent as his excessive force and failure to intervene claims. Doc. 25 at 20-21.[10]

Because federal claims do remain, the Court will not decline to exercise supplemental jurisdiction over Plaintiff's state law claims. *See* 28 U.S.C. § 1367(c)(3).

Next, Defendants are correct that Plaintiff's state law claims are barred to the same extent as his civil rights claims. Plaintiff cannot recover under a theory that no use of force was justified. Plaintiff can only recover under the theory that—assuming that some use of force was necessary to restore order—the force actually applied was excessive because it was maliciously and sadistically applied. The Court reads each of Plaintiff's ninth through eleventh causes of action to advance the latter theory. As a result, Plaintiff's claims are not barred by *Heck* because, in order to succeed, they do not require (and cannot prevail on) findings necessarily inconsistent with the elements of the RVRs. Those causes of action will not be dismissed

*b. Bane Act, Ralph Act, and Unruh Act and California Government Code § 845.4 Cause of Action*

Plaintiff's claim is no less sweeping than it was in his original complaint. However, it is now clear that Plaintiff's twelfth cause of action alleges violations of the Bane Act, the Ralph Act, the Unruh Act, and California Government Code section 845.4, based upon the three different incidents at issue in this action—the November 11, 2012 use of force, the December 11, 2012 use of force, and the August 19, 2013 alleged destruction of Plaintiff's property.  California Civil Code section 52.1, commonly known at the Bane Act, provides a private right of action for those who suffer violations of their rights secured by the United States and California Constitutions or laws of California by way of "threat, intimidation, or coercion." Cal. Civ. Code § 52.1(a). The Ralph and Unruh Acts provide a similar protection to be "free from any violence or intimidation by threat of violence" on account of "sex, race, color, religion, ancestry, national origin, disability, medical condition, genetic information, marital status, sexual orientation, citizenship, primary language, or immigration status." Cal. Civ. Code §§ 51(b), 51.7(a). Section 845.4 of the California Government Code offers a private right of action for

---

[10] Defendant also notes that "it is likely that Plaintiff did not exhaust the government claim filing requirements for all of his state law claims." Therefore "Defendants reserve the right to introduce evidence …" of Plaintiff's failure to exhaustion requirements. Doc. 25 at 21. Defendants do not now seek dismissal on that basis.

prisoners whose right to obtain a judicial determination regarding his confinement is interfered with by a public employee acting within the scope of his employment. Cal. Gov. Code § 845.4.[11]

Defendants move to dismiss this claim because its basis "is entirely unclear and inadequately pled." Doc. 25 at 22. Defendants further emphasize that the allegation of racial animus is conclusory and does not appear to be premised on any factual allegations.

The Court agrees that Plaintiff's claim is wholly conclusory in its allegation that the Defendants committed acts of violence against him *because of* his race. *See* FAC at ¶¶ 112 (Defendants "committed violent acts against [Plaintiff], the reason for doing was because of [his] race…."), ¶ 113 (same); *Austin B. v. Escondido Union School Dist.*, 149 Cal.App.4th 860, 880-881 (Cal.Ct.App. 2007).[12] Plaintiff alleges no facts from which that conclusion can be drawn. The Unruh and Ralph Act portion of his claim is therefore properly dismissed. Leave to amend will be granted because Court cannot find that such leave would be futile.

However, the allegation of racial animus is only required with respect to the Unruh and Ralph Act portion of his claim. "[N]othing in [California] Civil Code section 52.1 requires any showing of actual intent to discriminate." *Venegas v. County of Los Angeles*, 32 Cal.4th 820, 842 (2004); *accord id.* at 843 ("[P]laintiffs need not allege that defendants acted with discriminatory animus or intent, so long as those acts were accompanied by the requisite threats, intimidation, or coercion."); *Lanier v. City of Fresno*, 2011 WL 149802 (E.D. Cal Jan. 18, 2011). "The essence of a Bane Act claim is that the defendant, by the specified improper means (i.e., 'threats, intimidation or coercion'), tried to or did prevent the plaintiff from doing something he … he had the right to do under the law or to force the plaintiff to do something that he … was not required to do under the law." *Shoyoye v. County of Los Angeles*, 203 Cal.App.4th 947, 955–56 (Cal.Ct.App. 2012). Courts in this district and in the Northern District have consistently found that the elements of a § 1983 excessive force claim and a Bane Act claim premised upon the use

---

[11] Section 845.4 imposes a limitation very similar to *Heck*—no cause of action under that section can accrue "until it has first been determined that the confinement was illegal."

[12] Plaintiff argues that his Unruh Act claim should not be dismissed for failure to allege the race of the Defendants. The Court agrees; identifying the race of the Defendants is wholly immaterial. Plaintiff's cause of action fails because he has not identified any facts from which a trier of fact could reasonably infer that he was attacked *because of* his race.

of excessive force are identical. *See Bordegary v. County of Santa Barbara*, 2016 WL 7223254, *14 (C.D. Dec. 12, 2016) (collecting cases). The Central District requires allegation of "facts showing that [the plaintiff] faced threats, intimidation, or coercion independent from [the defendants'] alleged use of excessive force." *Id*. at 15. This Court has previously found that a showing of threats, intimidation, or coercion independent from the use of excessive force is unnecessary. *Ruiz v. Flores*, 2015 WL 966148, *10-11 (E.D. Cal. Mar. 4, 2015) (quoting *Olivera v. City of Modesto*, 2015 WL 627082, *3 (E.D. Cal. Feb. 12, 2015)); *see also Stevenson v. Holland*, 2017 WL 2958731, *14 (E.D. Cal. July 11, 2017) (quoting *Cameron v. Craig*, 713 F.3d 1012, 1022 (9th Cir. 2013) ("[T]he elements of [an] excessive force claim under § 52.1 are the same as under § 1983" in the context of a Fourth Amendment claim.) This Court will not depart from that conclusion. To the same extent that Plaintiff's section 1983 excessive force claims survive *Heck*, so do his Bane Act claims.

The California Government Code section 845.4 portion of Plaintiff's claim mirrors his intimidation claim. It fails for the same reason. Plaintiff has failed to plausibly allege that any destruction or loss of property was a result of any correctional officer's attempt to intimidate him or obstruct Plaintiff's right to a judicial determination. That portion of the claim will be dismissed. Leave to amend will be granted because Court cannot find that such leave would be futile.

### c. Negligence Cause of Action

Plaintiff's thirteenth cause of action alleges that Defendants Holland, Foster, and Does 51-70 were negligent in failing to train, supervise, and control subordinate officers, resulting in application of excessive force. This claim mirrors Plaintiff's § 1983 supervisory liability claim.

Defendant moves to dismiss this claim for the same reason that it moved to dismiss the excessive force claim—because "Plaintiff appears to suggest that Defendant Crotty struck Plaintiff without cause." Doc. 25 at 22. If Plaintiff's theory was that Defendant Crotty struck plaintiff without cause, Plaintiff's cause of action would be necessarily inconsistent with the finding of the RVR and would be barred by *Heck*. However, this Court does not read Plaintiff's negligence cause of action to make that assertion. Instead, the Court reads Plaintiff's cause of

22

action to acknowledge that the RVRs found that some measure of force was necessary to respond to Plaintiff's assault on an officer and failure to comply with commands. However, the force actually used was beyond that which was necessary to restore order. Such a claim is not barred by *Heck*.

The Court also reads Plaintiff's cause of action to allege that the supervisory defendants were aware of the prior alleged abuses as to other inmates and failed to take measures to control, train, or supervise their subordinates. That claim is not barred by *Heck*.

Separate from the question of *Heck*, in the same way that Plaintiff's supervisory liability claim against Defendant Holland is inadequately pled—because there is no factual basis for drawing an inference that Defendant Holland was on notice of any of the alleged misconduct— Plaintiff's present claim is inadequately pled against Defendant Holland. That portion of the claim will be dismissed. Because pleading notice may not be futile, the court will grant leave to amend.

f. Qualified Immunity

Defendant again moves to dismiss based on qualified immunity. Their argument with respect to the December 7, 2012 incident is the same as the last iteration of their motion to dismiss. It will be denied for the same reasons. *Stevenson*, 2017 WL 2958731 at \*14. Defendants' argument with respect to the November 12, 2012 incident is raised for the first time in their reply.[13] That issue is therefore not properly before the Court and will not be considered. *Moralez v. Vilsack*, 2017 WL 1354692, \*1 n.1 (E.D. Cal. Apr. 7, 2017) (citing, *inter alia*, *Publius v. Boyer-Vine*, 2017 WL 772146, \*22 n.23 (E.D. Cal. Feb. 27, 2017)).

**V. Order**

Based on the foregoing, IT IS HEREBY ORDERED that:

1. Defendants' motion to dismiss is GRANTED in part and DENIED in part as follows:

    a. Plaintiff's first, second, third, ninth, tenth, and eleventh causes of action SURVIVE Defendants' motion to dismiss;

---

[13] The Court advised Defendants that such arguments would not be permitted in its Order on Defendants' last motion to dismiss. *Stevenson*, 2017 WL 2958731 at \*9 n.12.

b.   Plaintiff's sixth cause of action and the portion of his twelfth cause of action alleging a violation of California Government Code § 845.4 are DISMISSED without leave to amend. Doe Defendants 41-50 are DISMISSED from this action.

c.   Plaintiff's seventh and thirteenth causes of action are DISMISSED as to Defendant Holland but SURVIVE as to Defendant Foster. Leave to amend will be granted as to both causes of action as to Defendant Holland;

d.   The portion of Plaintiff's twelfth cause of action relating to the Unruh and Ralph Act are DISMISSED with leave to amend;

e.   The portion of Plaintiff's twelfth cause of action relating to the Bane Act SURVIVES.

2.   Where the Court granted leave to amend, only one final opportunity to amend will be permitted.

IT IS SO ORDERED.

Dated:   February 28, 2018            _____
                                                     SENIOR  DISTRICT  JUDGE