1
2
3
4
5
6
7
8                    **UNITED STATES DISTRICT COURT**

9                    **EASTERN DISTRICT OF CALIFORNIA**

10

11   DOUGLAS J. STEVENSON,                )   Case No.: 1:16-cv-01831-AWI-JLT
                                          )
12              Plaintiff,                )   ORDER DENYING PLAINTIFF'S MOTION TO
                                          )   COMPEL DISCOVERY
13        v.                              )
                                          )
14   K. HOLLAND, et al.,                  )   (Doc. 70)
                                          )
15              Defendants.               )
                                          )
16   _____ )

17          Douglas Stevenson was formerly incarcerated in the custody of the California Department of

18   Corrections and Rehabilitation at the California Correctional Institute in Tehachapi, California. Plaintiff

19   asserts his civil rights were violated by CDCR employees through the use of excessive force,

20   destruction of his property, and loss of credits.  Plaintiff seeks to compel the production of additional

21   discovery, which Defendants oppose.  (Doc. 70)  The parties filed a joint statement regarding the

22   disputed discovery on September 19, 2019.  (Doc. 71) For the reasons set forth below—including the

23   untimely filing of the motion— Plaintiff's motion to compel the additional production of discovery is

24   **DENIED**.

25   **I.      Background and Allegations**

26          Plaintiff was imprisoned pursuant to a judgment issued by Alameda County Superior Court,

27   Case No. C163420.  (Doc. 22 at 8, ¶ 19)  On November 11, 2012, Plaintiff was transferred into the

28   secured housing unit (SHU) at CCI.  (*Id.* at ¶ 20)  The same date, Plaintiff inquired about his property

                                                    1

that had not been returned to him after the transfer. (*Id.*, ¶ 21) He alleges that after he made this inquiry, correctional officer Crotty bated Plaintiff to kick the door, and officers Dunnahoe and Valverde "emptied both of their pepper spray canisters" at Plaintiff and his cell mate, through the cell port. (*Id.* at 9, ¶ 21) Plaintiff asserts Crotty "aided and abetted" the other officers by offering his own pepper spray canister for them to use," and officer White "stood by watching, doing nothing to interfere." (*Id.*) According to Plaintiff, the use of pepper spray was not justified, "whether or not [he] refused to cuff up, lay prone on the ground or otherwise delayed or resisted the officers." (*Id.*, ¶ 22) Instead, Plaintiff believes the pepper spray was used in retaliation for the request property. (*Id.* at 10, ¶ 28)

Plaintiff alleges that after the pepper spray cannisters were emptied into his cell, Crotty escorted Plaintiff to a holding cell. (Doc. 22 at 8, ¶ 23) Plaintiff asserts Crotty "raised up [Plaintiff's] hand-cuffs and threw him head-first into the cell with such force that [his] face slammed into the cell's back fence, injuring his left cheekbone and eye in the form of bruising." (*Id.*) He reports Crotty strip-searched him "as part of the decontamination process," at which time Crotty saw Plaintiff's "infirm leg with a surgical scar." (*Id.*, ¶ 24)

He alleges he complained to Sergeant Foster, a supervising sergeant at CCI, about Crotty "slamming his face into the fence." (*Id.* at 4,10 ¶¶ 7, 25) He believes Foster instructed the examining nurse "not do document any injury" to Plaintiff, and that the nurse followed this instruction. (*Id.* at 10, ¶ 25) In addition, Plaintiff reports that he "filed a 602 complaint within 15 days of November 11, 2012, contesting the excessive and unwarranted use of force by being pepper-sprayed but never received this 602 back." (*Id.* at 10, ¶ 25) Based upon this encounter with officers, Plaintiff was issued a rules violation report (RVR) for resisting an officer resulting in the use of force and assessed a 90-days loss of credits. (Doc. 31 at 2-3; citing Doc. 23-1 at 5-8)

According to Plaintiff, after the pepper spray incident, he became "so scared that he declined opportunities to go shower, because he would have had to do so under escort by correctional officers." (Doc. 22 at 11, ¶ 30) Instead, Plaintiff alleges that "he remained in his cell for nearly a month and, as best he could, bathed in his sink." (*Id.*)

On December 7, 2012, Plaintiff "elected to take a morning shower," and was escorted in handcuffs by Crotty while returning from the shower. (Doc. 22 at 11, ¶ 31) Plaintiff asserts during the

escort, he "asked for a spoon because the one he had been using was broken." (*Id.*) During the escort, there was a physical altercation between Plaintiff and Crotty. (*See id.*) Plaintiff acknowledges he received an RVR for lunging backwards into Crotty and failing to comply with an order to get down. (*Id.*) Plaintiff contends that "[w]hether or not [he] first lunged" and failed to comply with the order, Crotty used excessive force. (*Id.*) Plaintiff alleges Crotty pushed him "into a wall, then onto the ground, and struck [Plaintiff] on the ground with his baton multiple times, purposefully aiming at [the] infirm leg." (*Id.*) According to Plaintiff, two other unidentified guards "joined in," with one guard using "his baton several times" and stomping on Plaintiff, while the other guard stomped on Plaintiff. (*Id.* at 11-12, ¶ 31) In addition, Plaintiff asserts that defendant Gonzales "was present and did nothing to intervene," while Cantu "watched on without intervening" from the control tower. (*Id.* at 11, ¶ 31) He reports the officers stopped the using force upon him once Sgt. Foster arrived. (*Id.* at 12, ¶ 32)

Plaintiff asserts he was then placed in a holding cell, from which he heard Sgt. Foster "yell at Crotty for being involved in a second physical incident with [Plaintiff]." (Doc. 22 at 11, ¶ 32) He alleges Sgt. Foster asked Crotty "what he wanted him to do," which Plaintiff believes was a question "about how they would account for [Plaintiff's] physical injuries." (*Id.*) According to Plaintiff, Crotty "responded that he didn't care 'what the fuck' [Sgt. Foster] charged [Plaintiff] with, and slammed a nearby locker." (*Id.*)

Foster interviewed Plaintiff that afternoon about the incident and recorded the interview. (Doc. 22 at 12, ¶ 33) Plaintiff reports he "begged... to take a lie detector test, adamant that he had done nothing to deserve the beating he received." (*Id.*) Plaintiff did not receive a lie detector test and Foster did not motion Plaintiff's request in his report. (*Id.* at 13, ¶ 34) He alleges Foster "failed to obtain the identifies of any potential witnesses, such as other CDCR employees or any inmates." (*Id.* at 34)

Plaintiff asserts he "declined an interview with internal affairs out of fear of reprisal." (*Id.*, ¶ 37) However, he also reports that he "filed a 602 complaint on or about December 18, 2012," complaining about the use of force, which was returned "the pretext and/or improper grounds that he had not provided any supporting documents." (*Id.*, ¶ 38) Plaintiff received an RVR for the December 2012 incident, resulting in a loss of 360 days credit. (Doc. 22 at 13-14, ¶ 38; Doc. 23-1 at 14-18) After receiving the RVR, Plaintiff re-submitted his 602 complaint "with the supporting documentation he had

just received in the final rules violation report" on January 4, 2013. (Doc. 22 at 14, ¶ 38) Plaintiff did not receive a response, despite status requests. (*Id.*) He reports that he also wrote to Warden Holland "at least four times requesting to meet with her," but received no response. (*Id.* at ¶¶ 39-40)

On March 4, 2013, a complaint was filed against Plaintiff "with one count of battery on a correctional officer Gonzalez and one count of batter on Crotty," related to the December incident. (Doc. 22 at 14, ¶41, emphasis omitted) On April 23, 2013, an information was filed in Kern County Superior Court, Case No. MF010467A, charging Plaintiff with battery on a correctional officer, Crotty, "with a great bodily injury enhancement." (*Id.* at 15, ¶ 42) On June 3, 2013, the defense filed a motion for discovery of complaints against Crotty, and other exculpatory evidence pursuant to *Pitchess* and *Brady*. (*Id.*) The trial court reported there was no information to provide after an in-camera review of provided records. (*Id.*)

Plaintiff alleges that when he was at court for a hearing on August 19, 2013—the day before his jury trial was to commence—unidentified officers "entered his cell, took his family portrait hanging over his bed, untied his television from where it was secured, and cracked his television." (Doc. 22 at 15, ¶ 43) He asserts that because he was then "single-celled in the SHU" at that time, "it was obvious that no other inmate could have accessed his cell, and that it was correctional officers who conducted this vandalism." (*Id.* at 15-16, ¶ 43) Plaintiff "took the guards' actions as a direct threat to his safety, and a warning of future harm, should he continue contesting his case in court." (*Id.* at 16, ¶ 43) The next morning, Plaintiff entered a "plea to batter on a correctional officer as charged," and "admitted a prior strike allegation." (*Id.*, ¶ 44)

Plaintiff was sentenced to "two years, doubled, for an aggregate four-year, consecutive sentence." (Doc. 22 at 17, ¶ 45) He then appealed his sentence to the Fifth District Court of Appeal, requesting "review [of] the trial court's pre-trial ruling regarding discoverable evidence concerning Crotty." (*Id.*, ¶ 46) On July 28, 2015, Plaintiff's conviction was reversed and remanded "for further proceedings with direction to the trial court to provide [Plaintiff] with all discoverable evidence..." (*Id.*, ¶ 47) According to Plaintiff, following the remand, "trial counsel was provided with additional information regarding prior complaints" relating to Officer Crotty. (*Id.*, ¶ 48) He reports that "the prosecution dismissed the case in the interest of justice on June 15, 2016." (*Id.*) Plaintiff was released

from custody on July 11, 2016.  (*Id.*)

On December 6, 2016, Plaintiff initiated this action by filing a complaint for violations of his civil rights.  (Doc. 1)  He filed a First Amended Complaint on July 25, 2017.  (Doc. 22)  Defendants filed a motion to dismiss, which was granted in part by the Court on March 1, 2018.  (Doc. 31) Plaintiff's claims for excessive force, assault, battery, and a violation of the Bane Act survived dismissal, and Plaintiff elected to proceed only upon the claims deemed cognizable.  (*See id.* at 23-24; Doc. 32 at 2) The Court dismissed all of Plaintiff's claims that no force should have been used and allowed claims only that force above that which was lawful was used. (Doc. 31) In addition, Plaintiff dismissed his claim against Warden Holland pursuant to Rule 41 of the Federal Rules of Civil Procedure.  (Doc. 32 at 2)

The Court held a Scheduling Conference with the parties on July 17, 2018.  (Doc. 43) At that time, the parties were ordered to complete all non-expert discovery no later than February 13, 2019. (*Id.* at 2)  Based upon the stipulation of the parties and good cause appearing, the Court continued the non-expert discovery deadline to May 14, 2019. (Doc. 53)  This deadline was again continued to May 21, 2019, only "for the purpose of conducting the depositions of defendants Crotty and Foster."  (Doc. 58)  Any non-dispositive motions were to be filed no later than September 2, 2019.  (Doc. 53 at 1)

The Court held a mid-discovery status conference with the parties on December 17, 2018, and addressed pending discovery issues with the parties.  (Doc. 50)  Following the conference, the parties reported they "met and conferred regarding Plaintiff's request for disciplinary records of peace officer defendants and other records, for which Defendants asserted the official-information privilege."  (Doc. 57 at 2)  On May 17, 2019—after the close of expert discovery—the parties filed a stipulation regarding Plaintiff's discovery requests and joint request for *in camera* review, indicating in part:

> The Parties agreed to narrow the initial request, and to provide any potentially responsive documents for five years before or after the incident at issue in the complaint. Plaintiff's revised request is for: "Any and all documents or records from five years before and five years after 2012 (2007-2017) that reflect any allegation concerning incidents involving Defendant(s), made by any persons (including inmates, correctional officers, civilians, or law enforcement officials) alleging any excessive force, dishonesty, falsifying or altering reports (including incomplete reports), or falsifying or altering evidence."

(Doc. 57 at 2)  Defendant maintained the requested materials were not relevant to the claims, not proportional to the needs of the case, and were privileged.  (*Id.*) The Court granted the *in camera*

review, and ordered Defendant to produce several redacted documents to Plaintiff on June 12, 2019. (Docs. 59, 63)

On August 24, 2019, the Court received an email from the parties requesting a telephonic conference regarding ongoing discovery disputes, which began in November 2018. (*See* Doc. 71 at 243) The Court held a telephonic conference on August 27, 2019. (Doc. 69) During the conference, Defendants "agreed to produce the full evidence log for the videotape of the interview of plaintiff taken on December 7, 2012." (*Id.* at 1) However, the parties were unable to come to an agreement regarding any other issues. Therefore, Plaintiff was authorized to file a motion to compel. (*Id.*)

On August 30, 2019, Plaintiff filed his motion, seeking to compel the further production of documents and response to Interrogatory No. 6 pursuant to Rule 37 of the Federal Rules of Civil Procedure. (Doc. 70)

## II.     Scope of Discovery Requests

The scope and limitations of discovery are governed by the Federal Rules of Civil Procedure. In relevant part, Rule 26(b) states:

> Unless otherwise limited by court order, parties may obtain discovery regarding any nonprivileged manner that is relevant to any party's claim or defense – including the existence, description, nature, custody, condition, and location of any documents or other tangible things . . . For good cause, the court may order discovery of any matter relevant to the subject matter involved in the accident. Relevant information need not be admissible at the trial if the discovery appears reasonably calculated to lead to the discovery of admissible evidence.

Fed. R. Civ. P. 26(b). Relevant evidence is defined as "evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." Fed. R. Evid. 401.

### A.     Interrogatories

A party may propound interrogatories relating to any matter that may be inquired to under Rule 26(b). Fed. R. Civ. P. 33(a). A responding party is obligated to respond to the fullest extent possible, and any objections must be stated with specificity. Fed. R. Civ. P. 33(b)(3)-(4). In general, a responding party is not required "to conduct extensive research in order to answer an interrogatory, but a reasonable effort to respond must be made." *Haney v. Saldana*, 2010 U.S. Dist. LEXIS 93447, at *9

(E.D. Cal. Aug. 24, 2010) (citing *L.H. v. Schwarzenegger*, 2007 U.S. Dist. LEXIS 73753 (E.D. Cal. Sep. 21, 2007)). Further, the responding party must supplement a response if the information sought is later obtained or the previous response requires a correction. Fed. R. Civ. P. 26(e)(1)(A).

Any grounds of an objection to an interrogatory must be stated "with specificity." Fed. R. Civ. P. 33(b)(4); *see also Nagele v. Electronic Data Systems Corp.*, 193 F.R.D. 94, 109 (W.D. N.Y. 2000) (objection that interrogatories were "burdensome" overruled for failure to "particularize" the basis for objection); *Mitchell v. AMTRAK*, 208 F.R.D. 455, 458 at n.4 (D.D.C. 2002) (objections must explain how an interrogatory is overbroad or unduly burdensome).

B.     Requests for Production of Documents

A party may request documents "in the responding party's possession, custody, or control." Fed. R. Civ. P. 34(a)(1). Similarly, a party may serve a request "to permit entry onto designated land or other property possessed or controlled by the responding party, so that the requesting party may inspect, measure, survey, photograph, test, or sample the property . . ." Fed. R. Civ. P. 34(a)(2). A request is adequate if it describes items with "reasonable particularity;" specifies a reasonable time, place, and manner for the inspection; and specifies the form or forms in which electronic information can be produced. Fed. R. Civ. P. 34(b). Thus, a request is sufficiently clear if it "places the party upon 'reasonable notice of what is called for and what is not.'" *Kidwiler v. Progressive Paloverde Ins. Co.*, 192 F.R.D. 193, 202 (N.D. W. Va. 2000) (quoting *Parsons v. Jefferson-Pilot Corp.*, 141 F.R.D. 408, 412 (M.D.N.C. 1992)); *see also* Schwarzer, Tashima & Wagstaffe, *California Practice Guide: Federal Civil Procedure Before Trial* (Rev. #1 2011) Discovery, para. 11:1886 ("the apparent test is whether a respondent of average intelligence would know what items to produce").

The responding party must respond in writing and is obliged to produce all specified relevant and non-privileged documents, tangible things, or electronically stored information in its "possession, custody, or control" on the date specified. Fed. R. Civ. P. 34(a). Actual possession, custody or control is not required. "A party may be ordered to produce a document in the possession of a non-party entity if that party has a legal right to obtain the document or has control over the entity who is in possession of the document." *Soto v. City of Concord*, 162 F.R.D. 603, 620 (N.D. Cal. 1995). Such documents include documents under the control of the party's attorney. *Meeks v. Parson*, , 2009 WL

7

3303718 (E.D. Cal. Sept. 18, 2009) (involving a subpoena to the CDCR); *Axler v. Scientific Ecology Group, Inc.*, 196 F.R.D. 210, 212 (D. Mass. 2000) (a "party must produce otherwise discoverable documents that are in his attorneys' possession, custody or control").

In the alternative, a party may state an objection to a request, including the reasons. Fed. R. Civ. P. 34(b)(2)(A)-(B). When a party resists discovery, he "has the burden to show that discovery should not be allowed, and has the burden of clarifying, explaining, and supporting its objections." *Oakes v. Halvorsen Marine Ltd.*, 189 F.R.D 281, 283 (C.D. Cal 1998) (citing *Nestle Food Corp. v. Aetna Cas. & Sur. Co.*, 135 F.R.D. 101, 104 (D.N.J. 1990)). Boilerplate objections to a request for a production are not sufficient. *Burlington Northern & Santa Fe Ry. v. United States Dist. Court*, 408 F.3d 1142, 1149 (9th Cir. 2005).

If a party "fails to respond that inspection will be permitted – or fails to permit inspection – as requested under Rule 34," the propounding party may make a motion to compel production of the documents. Fed. R. Civ. P. 37(a)(3)(B)(iv). Further, "an evasive or incomplete disclosure, answer, or response must be treated as a failure to disclose, answer or respond." Fed. R. Civ. P. 37(a)(4). "The moving party bears the burden of demonstrating 'actual and substantial prejudice' from the denial of discovery." *Hasan v. Johnson*, 2012 WL 569370 at *2 (E.D. Cal. Apr. 9, 2012) (citing *Hallet v. Morgan*, 296 F.3d 732, 751 (9th Cir. 2002)).

**III.    Discussion and Analysis**

Plaintiff seeks to compel Defendants to provide additional responses to his Requests for Production of Documents (Sets One and Two) and Interrogatory No. 6. (*See* Doc. 70 at 2; *see also* Doc. 71 at 2-3) In particular, Plaintiff seeks the production of:

(1) Confidential documents relating to a 2006 incident involving Defendant Crotty and the identity and contact information for the inmate and third parties identified therein;

(2) All videos referenced in CONFID 250-455, including but not limited to "Exhibit 12";

(3) Photographic headshots of correctional officers working on the first watch at the time of the incident on December 7, 2012; and

(4) Identity and contact information for the complainant whose name is redacted in CONFID 427-444.

(Doc. 70 at 2)

8

## A.  Timeliness of Plaintiff's Motion

As an initial matter, the Court has broad authority to manage its docket and control discovery. *See, e.g., Landis v. N. Am. Co*., 299 U.S. 248, 254 (1936); *Hallett v. Morgan*, 296 F.3d 732, 751 (9th Cir. 2002) ("broad discretion is vested in the trial court to permit or deny discovery"); *see also Faigin v. Kelly*, 184 F.3d 67, 84 (1st Cir. 1999) ("A district court's case-management powers apply with particular force to the regulation of discovery and the reconciliation of discovery disputes").  Thus, the untimeliness of a motion to compel "is sufficient ground, standing alone, to deny a discovery motion." *KST Data, Inc. v. DXC Tech. Co*., 344 F. Supp. 3d 1132, 1136 n.1 (C.D. Cal. 2018) (quoting *Williams v. Las Vegas Metro. Police Dept.*, 2015 WL 3489553 at *1 (D. Nev. June 3, 2015)).  Indeed, courts "will often deny Rule 37(a) motions because the moving party delayed too long." 8B Charles Alan Wright, Arthur R. Miller, & Richard L. Marcus, *Federal Practice & Procedure*, § 2285 (3d ed. Supp. 2019) (collecting cases).

To determine whether a motion to compel is timely, the Court must review "the circumstances specific to each case." *KST Data*, 344 F. Supp. 3d 1136 n.1 (internal quotation marks, citation omitted); *see also In re Sulfuric Acid Antitrust Litig*., 231 F.R.D. 331, 333 (N.D. Ill. 2005) (noting timeliness is based on "the entire complex of circumstances that gave rise to the motion, and what is untimely in one case may not be in another").  In general, the filing of a motion to compel discovery prior to the ordered deadline supports a finding the motion is timely, and a finding of untimeliness in that scenario will be rare. *Gault v. Nabisco Biscuit Co*., 184 F.R.D. 620, 622 (D. Nev. 1999).  On the other hand, courts have repeatedly denied motions filed after the close of discovery as untimely.  *See, e.g., Gault,* 184 F.R.D. at 622 (motion to compel filed 136 days after defendant's initial responses and close of discovery was untimely); *Cottrell v. Wright*, 2012 WL 3535838 at *2 (E.D. Cal. Aug. 15, 2012) (denying a motion as untimely when the "plaintiff's motion to compel was filed over three months after the discovery deadline []and over three months after he received defendants' responses to his discovery requests"); *King v. Wadkins*, 2018 WL 835343 (E.D. Cal. Feb. 13, 2018) (denying the motion to compel as untimely where the "discovery deadline has expired and Plaintiff's previous requests to extend the deadline have been denied"); *Kizzee v. Walmart, Inc.*, 2011 WL 3566881 *1 (D. Az., Aug.15, 2011) (motion to compel discovery made more than three months after the discovery deadline denied as untimely).

Plaintiff propounded his Request for Production, Set One, in July 2018, even before initial disclosures were due. (Doc. 71 at 11, 18) Defendants served their initial response to the Requests on August 31, 2018. (*Id.* at 18, 159) Plaintiff propounded his "first sets of interrogatories and second sets of documents on Crotty … and other defendants" on March 28, 2019. (*Id.* at 15, 98-107, 109-116) Non-expert discovery closed on May 14, 2019. (Doc. 53) Despite this, the Court granted an *in camera* review related to a discovery dispute and ordered discovery be produced on June 12, 2019. (Doc. 63) More than two months later, Plaintiff contacted the Court asserting the parties continued to have disagreements regarding discovery. (Doc. 71 at 243) At that time, Plaintiff acknowledged that many of the issues began in November 2018, after Defendants responded to the Request for Production, Set One. (*See id.*) As a result, the Court ordered Plaintiff to "discuss the timeliness of the motion" if he chose to pursue a motion to compel. (Doc. 69 at 1, n.1)

Plaintiff contends counsel has "been diligent in asserting plaintiff's right to the items requested," and "has been trying to get the disputed items for more than a year, having served his first set of document requests in late July, 2018." (Doc. 71 at 8) Plaintiff provided a timeline for the Court of the efforts expended beginning in July 2018 indicating when communications between counsel occurred, supporting the prior contention that the parties discussed the discovery issues "each month with a two-month hiatus (February through March, 2019) where the parties focused on a voluntary settlement process." (*Id.* at 243; *see also id.* at 11-71)

Plaintiff fails to explain the decision not to bring the disputed discovery issues to the Court earlier. In the Scheduling Order issued on July 17, 2018, the Court ordered:

> A party with a discovery dispute must first confer with the opposing party in a good faith effort to resolve by agreement the issues in dispute. If that good faith effort is unsuccessful, the moving party **promptly shall seek** a telephonic hearing with all involved parties and the Magistrate Judge. It shall be the obligation of the moving party to arrange and originate the conference call to the court.

(Doc. 43 at 2, emphasis added) Plaintiff was aware of the required process when the discovery disputes began in November 2018 yet did not contact the Court to raise any issues until August 2019. The parties have been disputing these issues for a significant time, and Plaintiff did not raise the discovery dispute with the Court until more than three months after the close of non-expert discovery on May 14, 2019 and even after the close of expert discovery. Thus, the Court finds Plaintiff's motion is untimely. *See*

*Cottrell*, 2012 WL 3535838 at *2 (finding a motion as untimely when the "plaintiff's motion to compel was filed over three months after the discovery deadline []and over three months after he received defendants' responses to his discovery requests"); *Kizzee*, 2011 WL 3566881 *1 (finding a motion to compel was untimely where it was filed more than three months after the discovery deadline). Because Plaintiff's motion is untimely, the motion to compel discovery is **DENIED**.

### B. Merits of the Motion

Even if the Court were to find Plaintiff's motion to compel was timely, Plaintiff fails to demonstrate he is entitled to the discovery that remains in dispute.

#### 1. Confidential documents relating to a 2006 incident involving Defendant Crotty and the identity and contact information for the inmate and third parties identified

Plaintiff contends he is entitled to "[r]ecords from the 'Pitchess' file involving personnel records from Defendant Crotty in 2006" and "possible 'Brady' material that was never provided to this Court for review." (Doc. 71 at 28, emphasis omitted) According to Plaintiff, this discovery is responsive to his Request for Production, Set One, No. 10; Request for Production, Set One, No. 22; and Interrogatory No. 6 to Crotty. (*Id.* at 28-41)

Plaintiff observes that in the state court criminal proceedings, these documents were requested pursuant to *Pitchess v. Superior Court of Los Angeles County*, 11 Cal.3d 531 (1974). (Doc. 71 at 35) He notes the Fifth District Court of Appeal reviewed the *Pitchess* file and determined Plaintiff was "entitled to an allegation in 2006." (*Id.*, quoting *People v. Stevenson*, 2015 Cal. App. Unpub. LEXIS 5291, *7 (2015)) Plaintiff acknowledges that the state court's holding is not binding here, but asserts "the Court of Appeal's language strongly suggests that the 2006 incident involving Crotty, is information that is reasonably calculated to lead to the discovery of admissible evidence in this proceeding." (*Id.*) Further, Plaintiff contends there were discussions about "inappropriate or inflated worker's compensation claims, and medical records relating to the injury sustained in the incident," during the *Pitchess* hearing, "which would bear on Crotty's credibility and could also lead to the discovery of admissible evidence." (*Id.* at 36)

In response, Defendants assert the standard for *Pitchess* "is not the same in this civil trial, seeking money damages." (Doc. 71 at 38) In addition, Defendants assert: "The discovery sought here

of *Pitchess* material, presumably consisting of an additional unverified claim by an inmate in 2006, six years before the incidents at issue in 2012, is out of proportion to the needs of the case, including the issues at stake, the importance of the discovery in resolving the issues, and the amount in controversy." (*Id.*) Finally, Defendant maintains the requested records are "not within the possession, custody, or control." (*Id.* at 39-40)

Importantly, as Defendant argues, the applicable standard to determine relevance in this action is Rule 26 of the Federal Rules of Civil Procedure, not *Pitchess.* Despite this, Plaintiff does not address the Rule 26 standard at all. Moreover, the Court notes the parties previously stipulated that Defendants would produce "any potentially responsive documents *for five years before or after the incident at issue* in the complaint."[1] (Doc. 57 at 2) To the extent Plaintiff now regrets this tactical decision, Plaintiff has offered no authority why he should no longer be bound to the terms of the parties' stipulation as to the relevant time period for documents to be produced in this action.[2] In addition, Plaintiff has not presented any evidence that the requested documents are, in fact, within the possession, custody, or control of Defendants. The mere fact that a member of the Attorney General appeared in Court in the *Pitchess* proceeding, does not equate to a determination that the records are within the control of the defendants or, indeed, that documents now reside in the office of the Attorney General, rather than with the relevant personnel department(s), such that the assigned Deputy Attorney General has access to them. Thus, the motion to compel production of confidential documents related to the 2006 incident involving Crotty, and the identity and contact information for the inmate and third parties identified therein, is **DENIED**.

> 2. All videos referenced in CONFID 250-455, including but not limited to "Exhibit 12"

Following the Court's *in camera* review, Defendants "produced confidential documents 250–445, involving an incident with Crotty." (Doc. 71 at 41) According to Plaintiff, "Those documents

---

[1] Plaintiff seems to contend that he did not agree to reduce the time period related to the "*Pitchess* documents." Notably, the *Pitchess* process *requires* an in camera review, the documents at issue involved confidential personnel and inmate records and were similar in kind to those the Court actually reviewed. Thus, the Court finds the plaintiff's assertion to be wholly incredible.

[2] The abbreviated time period was not raised during the telephonic conference with the Court, despite the Court's inquiry as to what disputed matters needed to be discussed with the parties. For this reason as well, Plaintiff's motion to compel the production of documents from 2006 is denied.

(CONFID 250-455) contain numerous references to Exhibit 12, a videotape of one or more interviews." (*Id.* at 41-42, citing CONFID 408, 409, 413, 415, 416, 422) Therefore, Plaintiff reports he "requested that Defendants produce Exhibit 12, the video containing the actual statements that are summarized in CONFID 250-455." (*Id.* at 42)

Significantly, the Court did not retain the produced documents—as it informed the parties in its order and neither party has provided the confidential records—or the summaries of them, which Plaintiff has in his possession—for the Court to review in evaluating this motion. Thus, the Court is at a loss to know the specific contents of the records cited and the references to "videos" made therein. Nevertheless, Defendants have provided some information as to the contents, noting: "Exhibit 12, referenced on CONFID 422, identifies eight recorded videos of officers, lieutenants, and sergeants, during an investigation into another inmate's grievance." (Doc. 71 at 43) Toward that end, Plaintiff has failed to identify the information that he can be glean from the videos or how this evidence is relevant to or could advance the issues in this case. The Court is unable to find the discovery requested complies with the proportionality showing required by Fed.R.Civ.P. 26(b)(1). Further, the Court finds Plaintiff has not carried his burden to explain any "actual and substantial prejudice" related to the videos and Exhibit 12. *See Branch v. Umphenour*, 2014 U.S. Dist. LEXIS 109288 at *10 (citing *Hallett*, 296 F.3d at 751 (9th Cir. 2002)). Consequently, Plaintiff's request to compel discovery of the videos referenced is **DENIED**.

### 3. Photographic headshots of correctional officers working on the first watch at the time of the incident on December 7, 2012.

In his Request for Production, Set One, No. 17, Plaintiff requested the production of (a) "Head-shot photographs of all correctional officers on [the] FLSA sheet for SHU-A for date 12/7/2012" and (b) "Head-shot photographs of all named defendants." (Doc. 71 at 46)

Defendants objected to the request, in part because Plaintiff "did not include a copy of the FLSA sheet referenced, and therefore did not describe the information with any particularity to be able to determine what was sought." (Doc. 71 at 49) Further, Defendants report the "head shots" requested "do not exist in a format to be produced, but would have to be created." (*Id.* at 50) J. Dunn, a personnel supervisor at CCI, explains that the computer system at the facility has only been used since

2016, after "[t]he prior computer system crashed and the photographs stored in the software program were destroyed." (*Id.* at 312, Dunn Decl. ¶¶ 4-5) Dunn reports that "files on the computer were partially recovered, but it is unclear to what extent the information is still available." (*Id.*, ¶ 5)

Because Plaintiff has failed to present any evidence that the requested documents are within Defendants' possession, custody, and control, the request is **DENIED**.

        4.     Identity and contact information for the complainant whose name is redacted in CONFID 427-444.

Following the parties' conference with the Court, Defendants were "notified that the former inmate did not object to his information being provided to the parties." (Doc. 71 at 52) Defendants have agreed to "provide the name of the inmate-complainant to opposing counsel." (*Id.*) Thus, this discovery dispute has been resolved.

## IV.    Conclusion and Order

Based upon the foregoing, the Court **ORDERS**: Plaintiff's motion to compel discovery (Doc. 70) is **DENIED**.

IT IS SO ORDERED.

   Dated:   __September 27, 2019__           __/s/ Jennifer L. Thurston__
                                              UNITED STATES MAGISTRATE JUDGE