DOUGLAS J. STEVENSON,

       Plaintiff,

    v.

K. HOLLAND *et al.*,

       Defendants.

**CASE NO. 1:16-CV-01831-AWI-JLT**

**ORDER GRANTING IN PART AND DENYING IN PART DEFENDANTS' MOTION FOR SUMMARY JUDGMENT**

(Doc. No. 77)

# I.  Introduction

This lawsuit is about a prisoner, Plaintiff Douglas Stevenson ("Plaintiff"), who alleges that he was physically abused by multiple prison officers on November 11, 2012, and December 7, 2012, while incarcerated at the California Correctional Institution in Tehachapi, California.  After Plaintiff was released from prison, Plaintiff sued the prison officers for battery, assault, negligence, California Bane Act violations, and Eighth Amendment violations for excessive force, failure to intervene, and supervisory liability.  The defendants include Officer Dunnahoe, Officer Valverde, Officer Crotty, Officer Gonzales, Officer Cantu, and Officer Foster[1] (collectively "Defendants").  Now before the Court is Defendants' motion for summary judgment, brought pursuant to Rule 56 of the Federal Rules of Civil Procedure.  For the reasons discussed infra, the motion will be granted in part and denied in part.

# II.  Summary Judgment Standard

Summary judgment under Rule 56 is proper when it is demonstrated that there exists no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law.  Fed. R. Civ. P. 56; Adickes v. S.H. Kress & Co., 398 U.S. 144, 157 (1970); Fortyune v. American Multi-Cinema, Inc., 364 F.3d 1075, 1080 (9th Cir. 2004).  The party seeking summary judgment bears the initial burden of informing the court of the basis for its motion and of

---

[1] Technically Foster's position was a "sergeant," but for simplicity's sake the Court will refer to all Defendants as "officers."

identifying the portions of the declarations, pleadings, and discovery that demonstrate an absence of a genuine issue of material fact. Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986); Soremekun v. Thrifty Payless, Inc., 509 F.3d 978, 984 (9th Cir. 2007). A fact is "material" if it might affect the outcome of the suit under the governing law. See Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248-49 (1986); United States v. Kapp, 564 F.3d 1103, 1114 (9th Cir. 2009). A dispute is "genuine" as to a material fact if there is sufficient evidence for a reasonable jury to return a verdict for the non-moving party. Anderson, 477 U.S. at 248; Freecycle Sunnyvale v. Freecycle Network, 626 F.3d 509, 514 (9th Cir. 2010).

Where the moving party will have the burden of proof on an issue at trial, the movant must affirmatively demonstrate that no reasonable trier of fact could find other than for the movant. Soremekun, 509 F.3d at 984. Where the non-moving party will have the burden of proof on an issue at trial, the movant may prevail by presenting evidence that negates an essential element of the non-moving party's claim or by merely pointing out that there is an absence of evidence to support an essential element of the non-moving party's claim. See James River Ins. Co. v. Herbert Schenk, P.C., 523 F.3d 915, 923 (9th Cir. 2008); Soremekun, 509 F.3d at 984. If a moving party fails to carry its burden of production, then "the non-moving party has no obligation to produce anything, even if the non-moving party would have the ultimate burden of persuasion." Nissan Fire & Marine Ins. Co. v. Fritz Cos., 210 F.3d 1099, 1105-06 (9th Cir. 2000). If the moving party meets its initial burden, the burden then shifts to the opposing party to establish that a genuine issue as to any material fact actually exists. See Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986); Nissan Fire, 210 F.3d at 1103. The opposing party cannot "'rest upon the mere allegations or denials of [its] pleading' but must instead produce evidence that 'sets forth specific facts showing that there is a genuine issue for trial.'" Estate of Tucker v. Interscope Records, 515 F.3d 1019, 1030 (9th Cir. 2008).

The opposing party's evidence is to be believed, and all justifiable inferences that may be drawn from the facts placed before the court must be drawn in favor of the opposing party. See Anderson, 477 U.S. at 255; Matsushita, 475 U.S. at 587; Narayan v. EGL, Inc., 616 F.3d 895, 899 (9th Cir. 2010). While a "justifiable inference" need not be the most likely or the most persuasive

inference, a "justifiable inference" must still be rational or reasonable.  See Narayan, 616 F.3d at 899.  Summary judgment may not be granted "where divergent ultimate inferences may reasonably be drawn from the undisputed facts."  Fresno Motors, LLC v. Mercedes Benz USA, LLC, 771 F.3d 1119, 1125 (9th Cir. 2015); see also Holly D. v. Cal. Inst. of Tech., 339 F.3d 1158, 1175 (9th Cir. 2003).  Inferences are not drawn out of the air, and it is the opposing party's obligation to produce a factual predicate from which the inference may be drawn.  See Fitzgerald v. El Dorado Cnty., 94 F.Supp.3d 1155, 1163 (E.D. Cal. 2015); Sanders v. City of Fresno, 551 F.Supp.2d 1149, 1163 (E.D. Cal. 2008).  "A genuine issue of material fact does not spring into being simply because a litigant claims that one exists or promises to produce admissible evidence at trial."  Del Carmen Guadalupe v. Agosto, 299 F.3d 15, 23 (1st Cir. 2002); see Bryant v. Adventist Health System/West, 289 F.3d 1162, 1167 (9th Cir. 2002).  The parties have the obligation to particularly identify material facts, and the court is not required to scour the record in search of a genuine disputed material fact.  Simmons v. Navajo Cnty., 609 F.3d 1011, 1017 (9th Cir. 2010).  Further, a "motion for summary judgment may not be defeated . . . by evidence that is 'merely colorable' or 'is not significantly probative.'"  Anderson, 477 U.S. at 249-50; Hardage v. CBS Broad. Inc., 427 F.3d 1177, 1183 (9th Cir. 2006).  If the nonmoving party fails to produce evidence sufficient to create a genuine issue of material fact, the moving party is entitled to summary judgment.  Nissan Fire, 210 F.3d at 1103.

## III.  Facts

Pursuant to the summary judgment standard identified supra, which requires all facts and justifiable inferences to be drawn in favor of Plaintiff, and pursuant to the "Heck-bar," which will be discussed infra, the facts for purposes of Defendants' summary judgment motion are as follows.

**A.  Plaintiff was incarcerated at the California Correctional Institution.**

Plaintiff was a prisoner at the California Department of Corrections and Rehabilitation between October 25, 2012, and April 7, 2016.

**B.    On November 11, 2012, Officer Dunnahoe and Officer Valverde pepper-sprayed Plaintiff.**

On November 11, 2012, Plaintiff was in his cell with his cellmate.  Plaintiff was at the sink, and Plaintiff's cellmate was on the top bunk.  Doc. No. 80-3 (Pl.'s Dep. Tr. at 48:23).  Officer Dunnahoe and Officer Valverde approached Plaintiff's cell.  Officer Dunnahoe gave Plaintiff a verbal order to back up to the cuff port and cuff up.  See Doc. No. 77-3 at 37-38 (Rules Violation Report); Heck-bar discussion infra.  Plaintiff did not comply with those orders.  Id.  Officer Dunnahoe gave Plaintiff a verbal order to get down in a prone position.  Id.  Plaintiff did not comply with that order.  Id.  Officer Dunnahoe sprayed Plaintiff with one can of pepper spray.  Doc. No. 80-3 at 49 (Pl.'s Dep. Tr. at 49:9-10); Doc. No. 77-5 (Officer Dunnahoe's Decl.).  Officer Dunnahoe and Officer Valverde both gave Plaintiff a verbal order to get down.  See Doc. No. 77-3 at 37-38 (Rules Violation Report); Heck-bar discussion infra.  Plaintiff did not comply with those orders.  Id.  Officer Valverde sprayed Plaintiff with one can of pepper spray.  Doc. No. 80-3 at 49 (Pl.'s Dep. Tr. at 49:9-10); Doc. No. 77-6 (Officer Valverde's Decl.).

After the pepper-spray incident, Officer Foster, who was a supervisor, became aware of the incident and investigated the incident.  Doc. No. 77-10 (Officer Foster's Decl.).

**C.    On November 11, 2012, Officer Crotty pushed Plaintiff's hands up Plaintiff's back and ran Plaintiff into a gate.**

On November 11, 2012, immediately after the pepper spray incident, Officer Crotty escorted Plaintiff to a holding cell.  Doc. No. 80-3 (Pl.'s Dep. Tr. at 49:2-4; 58).  Officer Crotty took Plaintiff's hands, which were handcuffed behind Plaintiff's back, and pushed them up Plaintiff's back.  Id.  Upon arriving at the holding cell, Officer Crotty "ran" Plaintiff's face into the gate in the back of the cell.  Id.

After the incident, Plaintiff complained to Officer Foster about the incident.  Id. (Pl.'s Dep. Tr. at 184:5-10).

**D.    A "day or so after" November 11, 2012, Plaintiff submitted to the prison an appeal about the pepper spray incident and holding cell incident.**

A "day or so after" the pepper spray incident and holding cell incident, Plaintiff submitted to the prison a written appeal about the incidents. Id. (Pl.'s Dep. Tr. at 82:22-25; 83: 1-6; 90:10-

12; 91:17-21).  The prison never responded to Plaintiff about the appeal.  <u>See</u> Doc. No. 77-3 at 34

(Pl.'s January 22, 2013, Form 602, stating, "[m]y final copy was sent to you with my first appeal

paper but it is not in my reture [sic] paperwork so you most [sic] have it").[2]

**E.      On December 7, 2012, Officer Crotty and multiple other officers beat Plaintiff for at least three or four minutes.**

On December 7, 2012, Officer Crotty escorted Plaintiff from the shower.  Plaintiff's hands

were handcuffed.  Doc. No. 80-3 (Pl.'s Dep. Tr. at 140:6; 144:23-24).  Plaintiff suddenly lunged

towards Officer Crotty, striking Officer Crotty in the left shoulder with Plaintiff's right shoulder,

thereby causing Officer Crotty to lose his grip on Plaintiff's arm.  Doc. No. 77-11 at 8-9 (Rules

Violation Report); <u>Heck</u>-bar discussion <u>infra</u>.  Officer Crotty grabbed Plaintiff's arm and slammed

Plaintiff into a wall, and Plaintiff fell to the ground.  Doc. No. 80-3 (Pl.'s Dep. Tr. at 123:20).

Plaintiff kicked at Officer Crotty.  Doc. No. 77-11 at 8-9 (Rules Violation Report); <u>Heck</u>-bar

discussion <u>infra</u>.  Officer Crotty hit and stabbed Plaintiff with a baton, including in Plaintiff's ribs.

Doc. No. 80-3 (Pl.'s Dep. Tr. at 134-149).  Officer Crotty hit Plaintiff's injured leg, which Officer

Crotty knew was injured (from a prior unrelated incident), and ankle with a baton seven or eight

times.  <u>Id.</u>  Officer Gonzales was nearby watching the incident.  At least two other prison officers

arrived at the scene of the incident, and they along with Officer Gonzales and Officer Crotty

continued beating Plaintiff and "did a pile" on Plaintiff.  <u>Id</u>.  One of the officers was "sticking"

Plaintiff with a baton, and that officer hit Officer Crotty's hand with the baton.  <u>Id.</u>  The beating

lasted at least three or four minutes.  <u>Id.</u>  Plaintiff suffered injuries from the beating, including an

abrasion, scratch, bruise, discoloring, and swelling in the left thigh.  <u>See</u> Doc. No. 80-3 at 255 (Tr.

of post-incident interview between Officer Foster and Pl.).  From the moment Plaintiff fell to the

ground throughout the entire duration of the beating, the prison officers did not give any orders to

Plaintiff.  Doc. No. 80-3 (Pl.'s Dep. Tr. at 134-149).  Plaintiff's force or violence fractured bone/s

in Crotty's hand.  Doc. No. 77-11 at 8-9 (Rules Violation Report); <u>Heck</u>-bar discussion <u>infra</u>.

---

[2]  Defendants may contend that Plaintiff's reference to the "first appeal" is a reference to Plaintiff's appeal submitted on January 7, 2013, not the alleged "day or so after" appeal.  Nonetheless, based on the evidence before the Court, a reasonable factfinder could justifiably infer that Plaintiff's reference to the "first appeal" is a reference to the "day or so after" appeal.  Consequently, there is a genuine issue as to this fact.

1    During the foregoing incident, Officer Cantu was stationed in a nearby patrol tower.

2  Officer Cantu saw Officer Crotty escort Plaintiff.  Doc. No. 77-9 (Officer Cantu's Decl.).  Officer

3  Cantu saw a "commotion" during the escort.  Id.  Officer Cantu saw Officer Crotty force Plaintiff

4  to the ground.  Id.  Officer Cantu saw Plaintiff kick while he was on the ground.  Id.  After the

5  beating ended, Officer Cantu sounded an alarm.  Doc. No. 80-3 (Pl.'s Dep. Tr. at 138).  Plaintiff

6  heard the alarm.  Id.

7     Officer Foster arrived at the scene of the incident after the beating ended.  Id. (Pl.'s Dep.

8  Tr. at 147).  Officer Foster became aware of the beating incident and investigated the incident,

9  including by interviewing Plaintiff about the incident and recording the interview.  Doc. No. 77-10

10 (Officer Foster's Decl.); Doc. No. 80-3 (Pl.'s Dep. Tr. at 190:4-6).

11 **F.     On January 4, 2013, the prison notified Plaintiff that the prison found Plaintiff guilty**
**of violating California Code of Regulations, Title 15, § 3005(b) during the pepper-**
12 **spray incident.**

13    Due to the pepper spray incident, the prison charged Plaintiff with "Resisting and/or

14 Obstructing a Peace Officer," a violation of California Code of Regulations, Title 15, § 3005(b),

15 see Doc. No. 77-3 at 37-38 (Rules Violation Report), which reads:

16

17         Obeying Orders.  Inmates and parolees must promptly and courteously obey
          written and verbal orders and instructions from department staff, and from
18         employees of other agencies with authorized responsibility for the custody and
          supervision of inmates and parolees.

19 Cal. Code Regs. tit. 15, § 3005(b).

20    After conducting a prison disciplinary hearing, the prison found Plaintiff guilty of violating

21 § 3005(b).  See Doc. No. 77-3 at 37-38 (Rules Violation Report).  The prison documented the

22 guilty finding and factual basis for the guilty finding in a written "Rules Violation Report."  See

23 id.  The prison's guilty finding was based on the following material facts, which are documented

24 in the Rules Violation Report: (1) Officer Dunnahoe gave Plaintiff a verbal order to back up to the

25 cuff port and cuff up; (2) Plaintiff did not obey that order; (3) Officer Dunnahoe gave Plaintiff a

26 verbal order to get down in a prone position; (4) Plaintiff did not obey that order; (5) Officer

27 Dunnahoe and Officer Valverde both gave Plaintiff a verbal order to get down; (6) Plaintiff did not

28 obey those orders.  See id.; cf. Cal. Code Regs. tit. 15, § 3005(b) (providing elements of violation).

Because Plaintiff was found guilty of violating § 3005(d), the prison deducted behavioral / work credits from Plaintiff, which affected the duration of his incarceration. The prison notified Plaintiff of the guilty finding and deduction of credits on January 4, 2013.

**G.     On January 7, 2013, Plaintiff submitted an appeal to the prison about the pepper-spray incident and holding cell incident.**

On January 7, 2013, Plaintiff submitted to the prison a written appeal on a "Form 602." See Doc. No. 77-3 at 9-12 (Form 602). In the appeal, Plaintiff wrote that the prison officers pepper-sprayed Plaintiff in his cell because the prison officers were retaliating for Plaintiff asking the officers for his property. Id. Plaintiff also wrote that he was not guilty of resisting the prison officers or fighting his cellmate during the pepper-spray incident. Id. Plaintiff also wrote that he had "been beat up and hurt very bad" by Officer Crotty, and in making that statement Plaintiff referenced the date of December 7, 2012, the date of the beating incident. Id.

The prison canceled Plaintiff's appeal on January 15, 2013, because, according to the prison, Plaintiff had not submitted the appeal within thirty days of the pepper spray incident, as is required by California Code of Regulations, Title 15, § 3084.8(b), see Doc. No. 77-3 at 8 (prison's cancelation letter), which requires the prisoner to submit an appeal within thirty days of either "[t]he occurrence of the event or decision being appealed." Cal. Code Regs. tit. 15, § 3084.8(b)(1). The prison's cancelation letter to Plaintiff stated,

> Your appeal includes issues related to an alleged staff complaint/misconduct and to a disciplinary issue. . . . You have violated time constraints in filing your appeal dated 1/7/13 as it relates to the alleged staff complaint from 11/11/12.

Doc. No. 77-3 at 8.

**H.     On January 17, 2013, the prison notified Plaintiff that the prison found Plaintiff guilty of violating California Code of Regulations, Title 15, § 3005(d)(1) during the beating incident.**

Due to the beating incident, the prison charged Plaintiff with "Battery on a Peace Officer with Serious Injury," a violation of California Code of Regulations, Title 15, § 3005(d)(1), see Doc. No. 77-11 at 6-12 (Rules Violation Report), which reads:

> Inmates shall not willfully commit or assist another person in the commission of an assault or battery to any person or persons, nor attempt or threaten the use of force or violence upon another person.

Cal. Code of Regs. tit. 15, § 3005(d)(1). "Battery," as was recognized by the prison, is defined by California Penal Code § 242 as "any willful and unlawful use of force or violence upon the person of another." "Serious injury," as was recognized by the prison, is defined by California Penal Code 243(f)(4) as "a serious impairment of physical condition, including, but not limited to, the following: loss of consciousness; concussion; bone fracture; protracted loss or impairment of function of any bodily member or organ; a wound requiring extensive suturing; and serious disfigurement."

After conducting a prison disciplinary hearing, the prison found Plaintiff guilty of, first, violating § 3005(d)(1) by battering Officer Crotty and, second, causing serious injury to Officer Crotty by fracturing his hand. See Doc. No. 77-11 at 6-12 (Rules Violation Report). The prison documented the guilty finding and factual basis for the guilty finding in a written Rules Violation Report. See id. at 8-9. The prison's guilty finding was based on the following material facts, which are documented in the Rules Violation Report: (1) Plaintiff lunged towards Officer Crotty and struck Officer Crotty's left shoulder with Plaintiff's right shoulder; (2) Plaintiff kicked at Officer Crotty; (3) Plaintiff's force or violence fractured bone/s in Officer Crotty's hand. See id. (Rules Violation Report); cf. Cal. Code of Regs. tit. 15, § 3005(d)(1) (providing elements of violation); Cal. Penal Code § 242 (same); Cal. Penal Code 243(f)(4) (same).

Because Plaintiff was found guilty of violating § 3005(d)(1) and causing serious injury to Officer Crotty, the prison deducted behavioral / work credits from Plaintiff, which affected the duration of his incarceration. The prison notified Plaintiff of the guilty finding and deduction of credits on January 17, 2013. See Doc. No. 77-11 at 6-12 (Rules Violation Report).

I.  **On January 22, 2013, Plaintiff submitted an appeal to the prison about Plaintiff having been falsely accused of obstructing a peace officer.**

On January 22, 2013, Plaintiff submitted to the prison a written appeal on a Form 602. See Doc. No. 77-3 at 34-35 (Form 602). In the appeal Plaintiff complained that the prison had falsely accused him of obstructing a peace officer during the pepper spray incident. Plaintiff wrote in the appeal that he never disobeyed the prison officers' orders during the pepper spray incident, and Plaintiff had been merely "bird bathing" at the sink in his cell when Officer Dunnahoe and Officer

Valverde pepper-sprayed him. Plaintiff wrote in the appeal that he wanted his behavioral / work credits restored.

The prison denied Plaintiff's appeal on March 12, 2013, because, according to the prison, Plaintiff "provided no credible evidence or testimony that would justify" (1) dismissing Plaintiff's guilty finding of violating § 3005(d) during the pepper spray incident or (2) restoring Plaintiff's behavioral / work credits. Doc. No. 77-3 at 32-33 (prison's denial letter).

**J.     On February 19, 2013, Plaintiff submitted an appeal to the prison about Plaintiff being pepper-sprayed by Officer Valverde and Officer Dunnahoe on November 11, 2012, and beaten by Officer Crotty on December 7, 2012.**

On February 25, 2013, Plaintiff submitted to the prison a written appeal on a Form 602. See Doc. No. 77-3 at 25-28 (Form 602). In the appeal Plaintiff complained that Officer Crotty attacked Plaintiff during the beating incident on December 7, 2012. Plaintiff complained that Officer Crotty beat Plaintiff because Officer Crotty was "crooked" and "did not get a chance to do anything to [Plaintiff] on" November 11, 2012. Id. at 27. Plaintiff complained that Officer Crotty beat Plaintiff "for know [sic] reason at all" while Plaintiff was handcuffed. Id. Plaintiff complained that he never "put [his] hands or [his] feet on" Officer Crotty. Id. Plaintiff requested that the prison restore his behavioral / work credits. Id.

The prison cancelled Plaintiff's appeal on February 26, 2013, because, according to the prison, Plaintiff did not submit the appeal within the thirty-day time restraint imposed by California Code of Regulations, Title 15, § 3084.8(b)(1), quoted supra. See Doc. No. 77-3 at 24 (prison's cancelation letter). The prison's cancellation letter to Plaintiff states, "You claim the incident occurred on 12/7/12 and you have submitted your appeeal [sic] on 2/19/13, which is a not [sic] within the prescribed time frame." Id.

**K.     On July 11, 2016, Plaintiff was released from prison.**

On July 11, 2016, Plaintiff was released from prison on parole.

**L.     On December 3, 2016, Plaintiff submitted a government claim to California's Government Claims Program pursuant to the California Torts Claim Act. The Government Claims Program denied the claim.**

On December 3, 2016, Plaintiff submitted a claim to the California Government Claims Program for the incidents that occurred on November 12, 2012, and December 7, 2012. See Doc.

No. 77-13 at 6-8 (Pl.'s government claim).  Plaintiff's claim acknowledged that a "claim is only barred by the Cal. Government Claims Act if not presented to the Government Claims Program within 6 months of 'accrual of claim.'"  Id. at 8.  Plaintiff's claim asserted that the claim was timely because Plaintiff submitted the claim on December 3, 2016, which was within six months of the date that Plaintiff was released from prison, July 11, 2016.  Id.

In a letter to Plaintiff dated December 13, 2016, the Government Claims Program stated that a timely claim must be submitted no later than six months after the accrual of the cause of action.  See Doc. No. 77-13 at 5 (government's letter).  The Government Claims Program also notified Plaintiff that Plaintiff's "application for leave to present a late claim was received."  Doc. No. 77-2 (JSUF No. 33).

In a letter to Plaintiff dated January 24, 2017, the Government Claims Program stated that Plaintiff's application for leave to present a late claim was denied for failure to meet the requirements of California Government Code § 911.6.  See Doc. No. 77-13 at 10 (government's letter).  The Government Claims Program stated:

> Your recourse, should you wish to pursue the matter further, is to file a petition in court for relief from the requirements of Government Code Section 945.4.  You will have six months from the date of this notice to file a petition.  If the courts grant the petition, you will have 30 days from the date the petition is granted to file suit on the cause of action to which this claim relates.

Doc. No. 77-13 at 10.

**M.     On December 6, 2016, Plaintiff filed this lawsuit.**

On December 6, 2016, Plaintiff filed this lawsuit against the multiple prison officers involved in the incidents that occurred on November 11, 2012, and December 7, 2012.  The Court adjudicated two motions to dismiss pursuant to Rule 12(b)(6), by which the Court dismissed some of Plaintiff's claims.  See Doc. No. 21; Doc. No. 31.  Ultimately Plaintiff filed a first amended complaint, see Doc. No. 22, which is currently the operative complaint.

/ / /

**N.  Plaintiff's pending claims.**

At this summary judgment phase, Plaintiff's pending claims are as follows:[3]

- First claim: Eighth Amendment violations during the pepper-spray incident by:

    o  Officer Dunnahoe and Officer Valverde for excessive force.

- Second claim: Eighth Amendment violations during the holding cell incident by:

    o  Officer Crotty for excessive force.

- Third claim: Eighth Amendment violations during the beating incident by:

    o  Officer Crotty for excessive force;

    o  Officer Gonzales and Officer Cantu for failure to intervene.

- Seventh claim: Eighth Amendment violations during all incidents by:

    o  Officer Foster for supervisory liability.

- Ninth claim: assault and battery during the pepper-spray incident by:

    o  Officer Dunnahoe and Officer Valverde.

- Tenth claim: assault and battery during the holding cell incident by:

    o  Officer Crotty.

- Eleventh claim: assault and battery for the beating incident by:

    o  Officer Crotty for assault and battery;

    o  Officer Gonzales and Officer Cantu for failure to intervene.

- Twelfth claim: California Bane Act violations for all incidents by:

    o  Officer Valverde, Officer Dunnahoe, Officer Crotty, Officer Gonzales, and Officer Cantu.

- Thirteenth claim: negligence for all incidents by:

    o  Officer Foster.

---

[3]  In response to Defendants' summary judgment motion, Plaintiff voluntarily abandoned the following claims: all claims premised on the Fourteenth Amendment (first, second, and third claims); the Eighth Amendment claim against Officer Crotty for the pepper-spray incident (first claim); and all claims against Officer White (first and ninth claims). Pursuant to Plaintiff's abandonment, these claims will be dismissed with prejudice.

# IV. Defendants' Motion

**A.      Statute of limitations.**

**1.      Defendants' arguments:**

Plaintiff's claims that are premised on the incidents that occurred on November 11, 2012, are barred by the statute of limitations, which is two years. Pursuant to California Code of Civil Procedure § 352.1, the statute of limitations may be statutorily tolled for two years because Plaintiff was incarcerated at the time of the incidents and the subsequent two years.

Plaintiff filed his complaint on December 6, 2016. Consequently, even with the application of statutory tolling under § 352.1, Plaintiff filed his complaint twenty-four days after the running of the statute of limitations, which ran on November 12, 2016. But for the application of equitable tolling, the statute of limitations bars all claims premised on the pepper spray incident and holding cell incident.

Equitable tolling is not warranted because Plaintiff did not timely pursue his administrative remedies. To wit, Plaintiff did not submit his first prison appeal until January 7, 2013. That appeal was untimely because it was not submitted to the prison within thirty days of November 12, 2012, as is required by California Code of Regulations, Title 15, § 3084.8(b)(1). Further, in the appeal, Plaintiff only complained that the prison erroneously found Plaintiff guilty of violating California Code of Regulations, Title 15, § 3005(b), but Plaintiff did not complain of being pepper-sprayed by Officer Dunnahoe and Officer Valverde or physically abused by Officer Crotty in the holding cell. In other words, Plaintiff's appeal on January 7, 2013, did not put Defendants on notice of the alleged misconduct that occurred on November 12, 2012.

Moreover, assuming arguendo that Plaintiff's appeal on January 7, 2013, was timely, the prison canceled the appeal eight days later on January 15, 2013, meaning the appeal would afford Plaintiff only eight days of equitable tolling. Eight days of equitable tolling is insufficient to overcome the statute of limitations bar because Plaintiff filed his complaint twenty-four days after the running of the statute of limitations.

Finally, while it is true that Plaintiff testified in his deposition that he submitted to the prison an appeal a "day or so after" November 11, 2012, the Court should disregard Plaintiff's

testimony because, first, it is self-serving and, second, neither party has produced a written record of the alleged "day or so after" appeal, such as a copy of the appeal. The absence of a written record proves that the alleged appeal is a fiction.

**2.    Plaintiff's arguments:**

The statute of limitations for the claims arising from the incidents on November 11, 2012, should be tolled for at least thirty days. This is because Plaintiff submitted to the prison an appeal a "day or so after" November 11, 2012. Pursuant to California Code of Regulations, Title 15, § 3084.8(c)(1), the prison was required to respond to Plaintiff's appeal within thirty days. Plaintiff waited thirty days for the prison to respond, but the prison never responded. Therefore, the thirty days that Plaintiff waited for the prison's response should be grounds for thirty days of equitable tolling.

Although neither party has produced a written record of the "day or so after" appeal, Plaintiff testified in his deposition that he submitted the written appeal to the prison. Therefore, assuming the prison is telling the truth that it currently does not have a written copy of the appeal, the prison either intentionally destroyed the written appeal or lost the written appeal. In other words, just because neither party has produced a written record of the appeal does not mean that the appeal is a fiction, nor does it mean that Plaintiff is lying about submitting the appeal.

Next, on January 4, 2013, the prison notified Plaintiff that the prison found him guilty of violating § 3005(b) during the pepper spray incident and, as a result, the prison deducted behavioral / work credits. On January 7, 2013, Plaintiff submitted to the prison a written appeal, complaining about the officers' misconduct during the incidents on November 11, 2012. The appeal on January 7, 2013, was a timely appeal about the prison officers' misconduct during the incidents on November 11, 2012, and this is because California Code of Regulations, Title 15, § 3084.8(b)(1) states that an appeal must be submitted within thirty days of either "[t]he occurrence of the event or decision being appealed." (Emphasis added). Since Plaintiff was notified on January 4, 2013, of the prison's "decision" concerning the incidents on November 11, 2012, Plaintiff's appeal on January 7, 2013, was filed within the thirty-day deadline imposed by § 3084.8(b)(1).

Next, the prison canceled Plaintiff's January 7, 2013, appeal on January 15, 2013, on grounds that the appeal was untimely. The prison's cancelation of the appeal was improper because, as discussed <u>supra</u>, the appeal was timely. Further, assuming arguendo that the cancelation was proper, the prison notified Plaintiff of the cancelation eight days after Plaintiff filed his appeal on January 7, 2013. Therefore, the eight days that Plaintiff waited for the prison's cancelation decision should be grounds for eight days of equitable tolling.

Next, on January 22, 2013, Plaintiff submitted a written appeal to the prison about the incidents on November 11, 2012. On February 25, 2013, Plaintiff submitted another written appeal to the prison about the incidents on November 11, 2012. On March 12, 2013, the prison denied the appeal that was submitted on January 22, 2013. Therefore, Plaintiff's written appeals (<u>i.e.</u>, the written appeals of which there are written records, which excludes the "day or so after" appeal) prove that Plaintiff diligently pursued his administrative remedies concerning the incidents on November 11, 2012, for a total of sixty-five days: from January 7, 2013, through March 12, 2013. Those sixty-five days should be grounds for sixty-five days of equitable tolling.

### **3.** **Legal standard:**

All of Plaintiff's claims are governed by a two-year statute of limitations. <u>See</u> Cal. Civ. Proc. Code § 335.1; <u>Douglas v. Noelle</u>, 567 F.3d 1103, 1109 (9th Cir. 2009); <u>Rasmussen v. City of Los Angeles</u>, 2012 WL 5522738, at *5 (Cal. Ct. App. Nov. 15, 2012). The two-year statute of limitations for Plaintiff's claims may be statutorily tolled for two years. <u>See</u> Cal. Code Civ. Proc. § 352.1. <u>See also</u> <u>Hardin v. Straub</u>, 490 U.S. 536, 543-44 (1989) (stating that state tolling statutes apply to § 1983 claims); <u>Elliott v. City of Union City</u>, 25 F.3d 800, 803 (9th Cir. 1994).

The federal Prison Litigation Reform Act requires a prisoner to exhaust administrative remedies within the prison grievance system, such as filing a prison appeal, before filing a related § 1983 action. <u>See</u> 42 U.S.C. § 1997e(a). The running of the limitations period "must be tolled" during the pendency of the PLRA's mandatory exhaustion process. <u>Brown v. Valoff</u>, 422 F.3d 926, 943 (9th Cir. 2005).

In addition to applying the foregoing PLRA mandatory tolling rule for § 1983 claims, federal courts also apply "the forum state's law regarding tolling, including equitable tolling, except to the

extent any of these laws is inconsistent with federal law." <u>Canatella v. Van De Kamp</u>, 486 F.3d 1128, 1132 (9th Cir. 2007) (citations omitted).  California recognizes equitable tolling, which "is a judicially created doctrine that operates to suspend or extend a statute of limitations in order to ensure that a limitations period is not used to bar a claim unfairly."  <u>Hatfield v. Halifax PLC</u>, 564 F.3d 1177, 1185 (9th Cir. 2009).

Under California's equitable tolling doctrine, the statute of limitations may be tolled when the claimant sought alternative relief prior to filing suit, subject to showing the following: (1) "timely notice" of the first claim for relief to the defendants; (2) "lack of prejudice[ ] to the defendant[s]"; and (3) "reasonable and good faith conduct on the part of the plaintiff."  <u>McDonald v. Antelope Valley Comm. College Dist.</u>, 45 Cal. 4th 88, 102 (2008); <u>accord</u> <u>Cervantes v. City of San Diego</u>, 5 F.3d 1273, 1275 (9th Cir. 1993); <u>Thomas v. Gilliand</u>, 95 Cal. App. 4th 427, 434 (2002).

California Code of Regulations, Title 15, § 3084.1(a) allows for prisoner appeals.  To exhaust claims related to a prisoner appeal, the prisoner must first submit the appeal on a written "Form 602" to the appeals coordinator's office for receipt and processing.  Cal. Code Regs. tit. 15, §§ 3084.2(a), (c), 3084.7(a).  As previously stated, section § 3084.8(b)(1) imposes a thirty-day deadline for filing a prisoner appeal.  It states, "[e]xcept as described in subsection 3084.8(b)(4), an inmate or parolee must submit the appeal within 30 calendar days of: (1) The occurrence of the event or decision being appealed . . . ."  <u>Id.</u> at § 3084.8(b)(1).  If the prisoner submits the appeal after the thirty-day deadline, then the prison may cancel the appeal.  <u>Id.</u> at § 3084.6(c)(4).

**4.**     **Discussion:**

The parties do not dispute that the statute of limitations for Plaintiff's claims arising from the incidents on November 11, 2012, ran on November 12, 2016.  The parties do not dispute that those claims are barred by the statute of limitations but for the application of equitable tolling of at least twenty-four days.[4]

Under both the PLRA mandatory tolling rule for § 1983 claims and California's equitable tolling doctrine, Plaintiff is not entitled to equitable tolling for his claims arising from the

---

[4]  The Court previously ruled that the two-year statute of limitations for Plaintiff's claims may be tolled consecutively using both statutory tolling under California Civil Procedure Code § 352.1 and California's equitable tolling doctrine.  <u>See</u> Doc. No. 21 (Court's order citing cases).

incidents on November 11, 2012, if Plaintiff did not submit to the prison a written appeal on a Form 602 by December 12, 2012. First, with respect to the PLRA mandatory tolling rule, mandatory tolling is required only if the prisoner proceeds through the mandatory exhaustion process. See Brown v. Valoff, 422 F.3d 926, 943 (9th Cir. 2005) ("[T]he applicable statute of limitations must be tolled while a prisoner completes the mandatory exhaustion process.") (emphasis added). Plaintiff cannot be said to have proceeded through the exhaustion process, let alone completed the exhaustion process, if Plaintiff failed to timely initiate the exhaustion process.

Second, with respect to California's equitable tolling doctrine, Plaintiff cannot satisfy any of the three elements outlined in McDonald v. Antelope Valley Comm. College Dist., 45 Cal. 4th 88, 102 (2008), if Plaintiff did not timely initiate the exhaustion process. For the first element, if Plaintiff failed to timely initiate the exhaustion process, then Plaintiff did not provide Defendants with "timely notice" of the claims. "The timely notice requirement essentially means that the first claim must have been filed within the statutory period. Furthermore, the filing of the first claim must alert the defendant in the second claim of the need to begin investigating the facts which form the basis for the second claim." Id. at 102 n.2. If Plaintiff filed an untimely appeal, then the prison would be authorized to cancel the appeal; and if the prison canceled the untimely appeal, then Defendants would likely not be placed on notice "of the need to begin investigating the facts which form the basis for the second claim." Id. For the second element, if Plaintiff failed to timely initiate the exhaustion process, then Defendants would be prejudiced because, as previously stated, they would not be placed on notice of the need to begin investigating and documenting the facts which form the basis of Plaintiff's second claim. Without the benefit of having notice of the need to begin investigating and documenting the facts which form the basis of Plaintiff's second claim, the Defendants would be prejudiced if equitable tolling were applied because, in part, "[f]airness to the defendant requires that a case be brought when memories have not been affected by time . . . ." Jones v. Blanas, 393 F.3d 918, 928 (9th Cir. 2004) (analyzing California's equitable tolling doctrine). This is particularly true here where the two-year statute of limitations, to say nothing of being equitably tolled, is being statutorily tolled for two years. Third, if Plaintiff failed to timely initiate the exhaustion process, then it cannot be said that Plaintiff acted

reasonably and in good faith. Plaintiff does not even attempt to argue that he was incapable of

timely initiating the exhaustion process, nor does Plaintiff attempt to argue that he was unaware of

the filing deadline. In fact, by testifying that he submitted the appeal a "day or so after" the

incidents on November 11, 2012, Plaintiff implicitly conceded that he was capable of timely

initiating the exhaustion process. Therefore, for all these reasons, if Plaintiff did not submit to the

prison a written appeal on a Form 602 by December 12, 2012, then Plaintiff is not entitled to

equitable tolling for his claims arising from the incidents on November 11, 2012.

At this summary judgment phase, Plaintiff provided the Court with his deposition

testimony wherein he testified that a "day or so after" November 11, 2012, Plaintiff submitted to

the prison a written appeal about the pepper spray incident and holding cell incident. Further,

Plaintiff presented evidence that the prison never responded to Plaintiff about the appeal within the

thirty days required under § 3084.8(c)(1). If that evidence is true, then Plaintiff's appeal was

timely and, consequently, thirty days of equitable tolling is warranted.

Defendants contend that the Court should disbelieve Plaintiff's testimony because it is self-

serving and false. According to Defendants, the fact that neither party found or produced a written

record of the alleged "day or so after" appeal proves that the appeal is a fiction. The Court rejects

Defendants' contention. At this summary judgment phase, justifiable inferences are drawn in

Plaintiff's favor. The fact that neither party produced a written record of the "day or so after"

appeal does not indisputably prove that Plaintiff did not submit the appeal.

Because there is a disputed issue of material fact as to whether Plaintiff submitted an

appeal by December 12, 2012, and because that issue ultimately determines whether equitable

tolling is warranted and whether Plaintiff's claims arising from the incidents on November 11,

2012, are barred by the statute of limitations, the Court will present the question to the jury. See

Katz v. Goodyear Tire & Rubber Co., 737 F.2d 238, 242 at n.2 (2d Cir. 1984) ("Where there are

disputed factual questions regarding an affirmative defense such as a statute of limitations defense,

the Second Circuit has stated that issues of fact as to the application of that defense must be

submitted to a jury.") (citations omitted); Anisko v. Eldorado Dev. Corp., 2018 WL 4409354, at

*4 (D. Nev. Sept. 17, 2018) (refusing to grant summary judgment because there was a genuine

issue of material fact as to whether equitable tolling was warranted); <u>Huss v. City of Huntington</u> <u>Beach</u>, 317 F. Supp. 2d 1151, 1162 (C.D. Cal. 2000) ("Accordingly, the propriety of equitable tolling in this case hinges upon disputed questions of fact and upon credibility judgments that the Court is not free to make on a motion for summary adjudication."); <u>FNB Mortg. Corp. v. Pac.</u> <u>Gen. Grp.</u>, 76 Cal. App. 4th 1116, 1126 (1999) ("Resolution of a statute of limitations defense normally is a factual question for the trier of fact. Summary judgment is proper, however, if the court can draw only one legitimate inference from uncontradicted evidence regarding the limitations question.") (citations omitted). In order for the Court to conclude that equitable tolling is not warranted at this summary judgment phase, the Court would have to make a credibility determination: namely, Plaintiff's testimony about the "day or so after" appeal is false. That credibility determination is better left to the jury. <u>See, e.g.</u>, <u>Aronsen v. Crown Zellerbach</u>, 662 F.2d 584, 595 (9th Cir. 1981).

Finally, the Court rejects Plaintiff's argument that the appeal submitted on January 7, 2013, was timely. California Code of Regulations, Title 15, § 3084.8(b)(1) states that "an inmate or parolee must submit the appeal within 30 calendar days of . . . [t]he <u>occurrence of the event</u> or decision being appealed . . . ." (Emphasis added). Plaintiff's claims are premised on "events" under § 3087.8(b)(1), namely, the pepper spray incident and holding cell incident. Those events occurred on November 11, 2012. Plaintiff's claims are not premised on a prison decision, such as the January 4, 2013, prison decision finding Plaintiff guilty of violating § 3005(b). Therefore, Plaintiff's thirty-day deadline under § 3084.8(b)(1) ran from November 11, 2012, not January 4, 2013.

**B.** **Favorable termination doctrine.**

      **1.** <u>**Defendants' arguments:**</u>

Plaintiff's § 1983 claims arising from the pepper spray incident and beating incident are barred by the favorable termination doctrine from <u>Heck v. Humphrey</u>, 512 U.S. 477, 483-87 (1994). For the pepper spray incident, the prison found Plaintiff guilty of "Resisting/Obstructing a Peace Officer," a violation of California Code of Regulations, Title 15, § 3005(b). As a result, the

prison deducted behavioral / work credits from Plaintiff, which affected the duration of his incarceration. The prison's guilty finding and deduction of credits were based on the facts that Officer Dunnahoe and Officer Valverde gave Plaintiff orders to back up, cuff up, and get in a prone position, but Plaintiff disobeyed those orders. Officer Dunnahoe's and Officer Valverde's use of force, i.e., pepper spray, can only be considered excessive and unnecessary under the Eighth Amendment if Plaintiff was not disobeying orders. Therefore, if judgment were entered in Plaintiff's favor on the § 1983 claims arising from the pepper spray incident, then the judgment would necessarily imply the invalidity of the prison's guilty finding and deduction of credits. The possibility of that result cannot be allowed under the favorable termination doctrine. Therefore, Plaintiff's § 1983 claims arising from the pepper spray incident cannot proceed.

For the beating incident, the prison found Plaintiff guilty of "Battery on a Peace Officer with Serious Injury," a violation of California Code of Regulations, Title 15, § 3005(d)(1). As a result, the prison deducted behavioral / work credits from Plaintiff, which affected the duration of his incarceration. The prison's guilty finding and deduction of credits were based on the following facts: (1) Plaintiff suddenly lunged towards Officer Crotty, striking Officer Crotty in the left shoulder with Plaintiff's right shoulder, thereby causing Officer Crotty to lose his grip on Plaintiff's arm; (2) Officer Crotty ordered Plaintiff to assume a prone position, and Plaintiff refused to comply with that order; (3) Officer Crotty struck Plaintiff twice in the upper right thigh with his baton, but Plaintiff refused to comply with the order to get down, resulting in (4) Officer Crotty grabbing Plaintiff's arm and forcing Plaintiff to the ground; and (5) while Plaintiff was on the ground, Plaintiff kicked at Officer Gonzales and Officer Crotty.

Yet, when Plaintiff was questioned in his deposition about the beating incident, Plaintiff testified that: (1) he did not lunge at or strike Officer Crotty's shoulder; (2) he did not refuse to assume a prone position; (3) it is not true that he refused to comply with an order to get down when struck with a baton; (4) he was not struck with a baton while standing; (5) he did not ignore orders to assume a prone position; (6) he did not kick at Officer Crotty and Officer Gonzales while on the ground; (7) he did not continue kicking at Officer Crotty and Officer Gonzales while or after he was batoned. Therefore, because Plaintiff's testimony contradicts the factual basis of the

prison's guilty finding and deduction of credits for the beating incident, the success of Plaintiff's §

1983 claims arising from the beating incident would necessarily imply the invalidity of the

prison's guilty finding and deduction of credits. The possibility of that result cannot be allowed

under the favorable termination doctrine. Therefore, Plaintiff's § 1983 claims arising from the

beating incident cannot proceed.

**2.** **Plaintiff's arguments:**

Plaintiff's § 1983 claims are not <u>Heck</u>-barred because even if the prison's factual basis for

the guilty findings and credit deductions is presumed to be true, the use of force during the pepper

spray incident and beating incident can still be considered excessive and unnecessary under the

Eighth Amendment. This means that Plaintiff can prevail on his § 1983 claims without

necessarily implying the invalidity of the prison's guilty findings and deduction of credits.

**3.** **Legal standard:**

Where a § 1983 claim seeking damages alleges constitutional violations that would

necessarily imply the invalidity of the prisoner's conviction or sentence, the prisoner must first

establish that the underlying sentence or conviction has been invalidated on appeal, by a habeas

petition, or through some similar proceeding. <u>See</u> <u>Heck</u>, 512 U.S. at 483-87. Consequently,

where a § 1983 claim would necessarily imply the invalidity of the conviction or sentence, the §

1983 claim may not proceed. <u>See</u> <u>Edwards v. Balisok</u>, 520 U.S. 641, 646-48 (1997). This

principle is referred to as the "<u>Heck</u>-bar" or "favorable termination" doctrine. However, the

inverse of the <u>Heck</u>-bar is true: where the § 1983 claim would not necessarily imply the invalidity

of the conviction or sentence, the § 1983 claim may proceed. <u>See</u> <u>Heck</u>, 512 U.S. at 482-83. <u>See</u>

<u>also</u> <u>Reese v. Cty. of Sacramento</u>, 888 F.3d 1030, 1045-46 (9th Cir. 2018); <u>Hooper v. Cty. of San</u>

<u>Diego</u>, 629 F.3d 1127, 1132-33 (9th Cir. 2011); <u>Weilburg v. Shapiro</u>, 488 F.3d 1202, 1206-07 (9th

Cir. 2007).

**4.** **Discussion:**

The Court previously addressed the <u>Heck</u>-bar when it ruled on Defendants' Rule 12(b)(6)

motion. <u>See</u> Doc. No. 31. In essence, the Court previously held that Plaintiff's § 1983 claims are

<u>Heck</u>-barred only insofar as the legal theories underlying the claims would necessarily invalidate

the prison's guilty findings and credit deductions if Plaintiff were to prevail on the claims. Stated the Court,

> Plaintiff's first cause of action alleges that, on November 11, 2012, Defendants Dunnahoe and Valverde sprayed two full canisters of pepper spray at Plaintiff through the cell's port door. . . . A reasonable reading of Plaintiff's complaint is that the amount of forced used was beyond the force necessary to bring Plaintiff into compliance. To that extent, Plaintiff's claim survives <u>Heck</u>. However, insofar as Plaintiff suggests that no force was warranted because he did not defy the Defendant correctional officers' orders, his claim is barred by <u>Heck</u>. . . . And again, his claim may only succeed if it is established that the force used was more than necessary. Plaintiff could not recover based on a finding that the application of any force was unwarranted because Plaintiff did nothing to warrant application of such force. Plaintiff's first claim is curbed, but not barred, by <u>Heck</u>.

> . . . .

> Plaintiff's second cause of action alleges that on November 11, 2012, after the pepper spray incident, Defendant Crotty raised up Plaintiff's hand-cuffed hands and threw Plaintiff into a holding cell, causing Plaintiff's face to be slammed into the cell's back fence, injuring his left cheekbone and eye in the form of bruising. Plaintiff contends that this act constituted excessive force. <u>Heck</u> does not preclude that claim because it is not necessarily inconsistent with the [prison's] RVR. Indeed, the RVR issued in relation to the November 11, 2012 incident gives no indication that the allegations of the second cause of action ever took place or that any force was required in that situation. Plaintiff's success on such a claim would not tend to undermine, in any way, the RVR. This claim is not impacted by <u>Heck</u>. Dismissal is not warranted as to this claim.

> . . . .

> Plaintiff's third cause of action alleges that on December 7, 2012, Defendant Crotty escorted Plaintiff, whose hands were handcuffed behind his back, to a spot out of view and threw Plaintiff into a wall and then onto the ground where he struck Plaintiff multiple times in his infirm leg. Two Doe Defendant correctional officers joined in the attack, inflicting baton blows and stomping on Plaintiff. Plaintiff contends that the beating he received constituted force beyond that which was necessary to restore order.

> A RVR was issued in relation to this incident wherein Plaintiff was assessed a 360-day credit loss for battery upon a peace officer resulting in serious injury. At the rules violation hearing, the hearing official considered the statements of the correctional officers and Plaintiff's oral statement. Defendant Crotty testified that Plaintiff thrust his shoulder into Crotty, causing Defendant Crotty to lose his grip on Plaintiff's arm. Defendant Crotty ordered Plaintiff to assume a prone position and Plaintiff refused. Defendant Crotty then used his baton, and then physical force to force Plaintiff to the ground. Additional force was utilized and Plaintiff became compliant. Defendants Gonzales and Cantu agreed with Defendant Crotty's recitation of the events and added that Plaintiff kicked at Defendants Gonzales and Crotty after having been forced to the ground.

> In this context, even if Defendants acted unlawfully by using excessive force, Plaintiff could still have been guilty of battery. Assuming, as the Court must, that Plaintiff did thrust his shoulder at Defendant Crotty, Plaintiff contends that

21

Defendant Crotty's response was excessive; further assuming that Plaintiff kicked at Defendants Crotty and Gonzales, Plaintiff contends that the beating he received was beyond that necessary to achieve compliance with their orders. The fact that the RVR recited the situation as relayed by Defendants Crotty, Gonzales, and Cantu — that the force used to bring Plaintiff to the ground was necessary and that Defendants only applied baton strikes until Plaintiff stopped kicking — does not preclude litigation of excessive force allegations. The findings regarding how much force Defendants applied and when they ceased to apply force were not necessary to sustain the RVR for battery on a peace officer causing serious injury. As this Court has previously noted, the fact that Plaintiff battered a correctional officer and refused orders from a correctional officer does not offer a blank check for use of force by correctional officers. A finding that the Defendants applied excessive force would not tend to invalidate the RVR resulting from the December 7, 2012 incident. Plaintiff's third cause of action survives <u>Heck</u>. Dismissal is not appropriate as to this claim.

. . . .

Each of Plaintiff's first three causes of action allege a failure-to-intervene by surrounding correctional officers. Defendants move to dismiss all of the failure-to-intervene allegations as barred by <u>Heck</u> for largely the same reasons addressed with respect to the direct violation allegations. . . . [W]ith respect to the third cause of action, relating to the December 7, 2012 incident involving Defendant Crotty forcing Plaintiff to the ground and Defendant Crotty and Doe Defendants 1 and 2 applying baton strikes and kicks to Plaintiff while he was on the ground, Plaintiff contends that Defendants Gonzales, Cantu, and Doe Defendants 11-20 failed to intervene to prevent the alleged misconduct. Plaintiff contends that Defendant Gonzales was present and did nothing to intervene and Defendant Cantu operated the control tower and also watched and did nothing to intervene. To the same extent that Plaintiff's third cause of action survives against Defendant Crotty, <u>i.e.</u> insofar as it alleges that the force applied was malicious and sadistic and not taken in a good-faith effort to restore discipline, the derivative claim against Defendants Gonzales and Cantu survive <u>Heck</u>.

Doc. No. 31 (citations and quotations omitted).

The Court's foregoing ruling and analysis still stand. If judgment on one of the § 1983 claims were issued in Plaintiff's favor, then the favorable termination doctrine would be violated only if the judgment would necessarily invalidate the prison's guilty finding and/or credit deduction. To explicate this issue, the Court must discuss the prison's two guilty findings, which the prison documented in written Rules Violation Reports.

### *a.*     *Pepper spray incident:*

For the pepper spray incident, the prison found Plaintiff guilty of "Resisting and/or Obstructing a Peace Officer," which was a violation of California Code of Regulations, Title 15, Section 3005(b). Section 3005(b) states,

Obeying Orders. Inmates and parolees must promptly and courteously obey written and verbal orders and instructions from department staff, and from employees of

other agencies with authorized responsibility for the custody and supervision of inmates and parolees.

Cal. Code Regs. tit. 15, § 3005(b). Therefore, for purposes of this lawsuit, the elements considered by the prison for a § 3005(b) violation, as documented in the Rules Violation Report, were: (1) a prison officer gives an order or instruction to a prisoner and (2) the prisoner does not promptly or courteously obey the order.

Because of those elements, the prison's guilty finding was based on the following facts, which are documented in the Rules Violation Report: (1) Officer Dunnahoe gave Plaintiff a verbal order to back up to the cuff port and cuff up; (2) Plaintiff did not obey that order; (3) Officer Dunnahoe gave Plaintiff a verbal order to get down in a prone position; (4) Plaintiff did not obey that order; (5) Officer Dunnahoe and Officer Valverde both gave Plaintiff a verbal order to get down; (6) Plaintiff did not obey those orders. Consequently, pursuant to the Heck-bar, Plaintiff's § 1983 claims may not advance any legal theory that, if successful, would necessarily invalidate or contradict any of the foregoing facts. In other words, none of the foregoing facts can be presumed to be false by the factfinder for purposes of adjudicating Plaintiff's § 1983 claims.

With that factual groundwork in mind, Plaintiff's § 1983 claims arising from the pepper-spray incident are not necessarily Heck-barred. This is because even if Plaintiff disobeyed the foregoing orders of Officer Dunnahoe and Officer Valverde, Plaintiff can advance the cognizable theory that the force applied by the prison officers, i.e., two cans of pepper spray, was excessive and unnecessary and applied maliciously and sadistically for the purpose of causing harm to Plaintiff. If Plaintiff prevailed on that legal theory, then the judgment would not necessarily invalidate the prison's finding that Plaintiff was guilty of "Resisting and/or Obstructing a Peace Officer." See Cunningham v. Gates, 312 F.3d 1148, 1153-54 (9th Cir. 2002), as amended on denial of reh'g (Jan. 14, 2003) ("In evaluating whether claims are barred by Heck, an important touchstone is whether a § 1983 plaintiff could prevail only by negating 'an element of the offense of which he has been convicted.'") (quoting Heck v. Humphrey, 512 U.S. 477, 486 n.6 (1994)). Cf. Beets v. Cty. of Los Angeles, 669 F.3d 1038, 1045 (9th Cir. 2012) (ruling that because the elements of the plaintiff's underlying criminal conviction were that the officer was "lawfully performing his duties as a peace officer" and not "using unreasonable or excessive force in his or

her duties," the plaintiff's subsequent § 1983 claim for excessive force against the officer was Heck-barred because success on the claim would "be contrary to" the underlying criminal conviction, i.e., success on the § 1983 claim would mean that the officer was acting unlawfully and using excessive force while performing his duties).

### *b.* ***Beating incident:***

For the beating incident, the prison found Plaintiff guilty of "Battery on a Peace Officer with Serious Injury," which was a violation of California Code of Regulations, Title 15, § 3005(d)(1). Section 3005(d)(1) states,

> Inmates shall not willfully commit or assist another person in the commission of an assault or battery to any person or persons, nor attempt or threaten the use of force or violence upon another person.

Cal. Code Regs. tit. 15, § 3005(d)(1). "Battery," as was recognized in the Rules Violation Report, is defined by California Penal Code § 242 as "any willful and unlawful use of force or violence upon the person of another." "Serious injury," as was recognized in the Rules Violation Report, is defined by California Penal Code 243(f)(4) as "a serious impairment of physical condition, including, but not limited to . . . bone fracture." Therefore, for purposes of this lawsuit, the elements considered by the prison for "Battery on a Peace Officer with Serious Injury," as documented in the Rules Violation Report, were: (1) a prisoner (2) willfully and (3) unlawfully (4) using force or violence (5) upon a peace officer, (6) causing a bone fracture.

Because of those elements, the prison's guilty finding was based on the following facts, which are documented in the Rules Violation Report: (1) Plaintiff lunged towards Officer Crotty and struck Officer Crotty's left shoulder with Plaintiff's right shoulder; (2) Plaintiff kicked at Officer Crotty; (3) Plaintiff's force or violence fractured bone/s in Crotty's hand. Consequently, pursuant to the Heck-bar, Plaintiff's § 1983 claims may not advance any legal theory that, if successful, would necessarily invalidate or contradict any of the foregoing facts. In other words, none of the foregoing facts can be presumed to be false by the factfinder for purposes of adjudicating Plaintiff's § 1983 claims.

With that factual groundwork clarified, Plaintiff's § 1983 claims arising from the beating incident are not necessarily Heck-barred. This is because even if Plaintiff battered Officer Crotty

24

by shouldering and kicking him and fractured Officer Crotty's hand, Plaintiff can advance the

cognizable legal theory that the force applied by the prison officers in response was excessive and

unnecessary and applied maliciously and sadistically for the purpose of causing harm to Plaintiff.

If Plaintiff prevailed on that legal theory, then the judgment would not necessarily invalidate the

prison's finding that Plaintiff was guilty of "Battery on a Peace Officer with Serious Injury."

### c. *Plaintiff's deposition testimony:*

Defendants invoke the <u>Heck</u>-bar because, in part, Plaintiff testified in his deposition that he

disputed the prison's factual findings underlying the guilty findings.  For example, regarding the

beating incident, Plaintiff denied lunging or kicking at Officer Crotty.  Plaintiff's deposition

testimony, however, does not necessarily trigger the <u>Heck</u>-bar, and this is because a party's factual

testimony during discovery does not necessarily dictate the party's legal theory at the summary

judgment phase or trial phase.  But to be clear, as previously stated, Plaintiff's § 1983 claims may

not advance at trial any legal theory that would invalidate or contradict any of the material,

elemental facts premising the guilty findings, which were discussed <u>supra</u>.  <u>See</u> <u>Smith v. City of</u>

<u>Hemet</u>, 394 F.3d 689, 695 (9th Cir. 2005) (stating in an explanatory parenthetical about

<u>Cunningham v. Gates</u>, 312 F.3d 1148, 1153-54 (9th Cir. 2003) that "Heck bars suits <u>based on</u>

<u>theories</u> that necessarily imply the invalidity of the plaintiff's convictions or sentences")

(emphasis added).

### d. *Non-material findings from the prison adjudications:*

Defendants cite to multiple factual findings documented by the prison in the Rules

Violation Reports.  For example, for the beating incident for which Plaintiff was found guilty of

battery, Defendants cite to the prison's factual finding that Officer Crotty struck Plaintiff twice in

the upper right thigh with his baton before Plaintiff went to the ground.  Also, Defendants cite to

the prison's factual finding that Plaintiff refused to comply with Officer Crotty's orders to get

down and assume a prone position.  Those factual findings were not material to the battery guilty

finding, and that is because those factual findings were not elements of the battery violation.[5]

---

[5] The prison, presumably, was not limited as to the charges that it could bring against Plaintiff.  For example, for the beating incident, the prison arguably could have also charged Plaintiff with resisting a peace officer.  The prison did

1  Non-material factual findings that the prison documented in the Rules Violation Reports are not

2  sanctified by the Heck-bar.  See Venson v. Jackson, 2019 WL 3072308, at *4-5 (S.D. Cal. July 15,

3  2019), report and recommendation adopted, 2019 WL 3798704 (S.D. Cal. Aug. 13, 2019) (taking

4  judicial notice of only the following facts documented in a Rules Violation Report: (1) the charge

5  brought against the plaintiff (i.e., battery on a peace officer); (2) the fact that the plaintiff was

6  found guilty; (3) the identity of the victim; and (4) the resulting punishment (i.e., a 150-day good-

7  time credit deduction)); Daniels v. Valencia, 2018 WL 3640321, at *3-*4 (E.D. Cal. July 30,

8  2018), report and recommendation adopted, 2018 WL 4636186 (E.D. Cal. Sept. 26, 2018) (taking

9  judicial notice of the charge, victim, and punishment that were documented in the Rules Violation

10 Report, but not taking judicial notice of the other factual findings in the Rules Violation Report).

11

12 **C.      Failure to intervene by Officer Cantu during the beating incident.**

13         **1.      Defendants' arguments:**

14         Summary judgment is warranted in Officer Cantu's favor on the § 1983 failure-to-

15 intervene claim.  This is because a prison officer can violate a prisoner's Eighth Amendment rights

16 by failing to intervene, but only if the prison officer had a realistic opportunity to intervene and

17 prevent or curtail the violation but failed to do so.  Plaintiff's failure-to-intervene theory is that

18 Officer Cantu, upon seeing the beating, should have sounded the alarm sooner.  But this theory

19 fails because Officer Cantu declared that after he noticed the commotion, and before Plaintiff went

20 to the ground, Officer Cantu immediately sounded the alarm.  While Plaintiff argues that Officer

21 Cantu should have sounded the alarm sooner, Plaintiff has not provided any evidence that Officer

22 Cantu could have acted sooner.  Consequently, Plaintiff cannot establish a genuine issue of

23 material fact as to Officer Cantu's ability to intervene sooner.

24         **2.      Plaintiff's argument:**

25         The beating lasted at least three or four minutes.  The alarm was not sounded until after the

26 beating ended.  Therefore, summary judgment in Officer Cantu's favor is not warranted because,

27

28 not do so.  Consequently, the factual findings in the Rules Violation Report about Plaintiff resisting a peace officer are
   not encompassed within the Heck-bar.

first, Officer Cantu could and should have sounded the alarm before the beating ended and, second, if Plaintiff was truly threatening or battering Officer Crotty, then Officer Cantu should and would have sounded the alarm before the beating ended.

### 3. Legal standard:

Prison officers have a duty under the Eighth Amendment to take reasonable steps to protect inmates from physical abuse from other prisoners and prison officers. Farmer v. Brennan, 511 U.S. 825, 832-33 (1994) (quotations omitted); Hearns v. Terhune, 413 F.3d 1036, 1040 (9th Cir. 2005); Cunningham v. Gates, 229 F.3d 1271, 1289 (9th Cir. 2000). "[O]fficers have a duty to intercede when their fellow officers violate the constitutional rights of a suspect or other citizen. In these cases, the constitutional right violated by the passive defendant is analytically the same as the right violated by the person who strikes the blows." United States v. Koon, 34 F.3d 1416, 1447 (9th Cir. 1994), rev'd in part on other grounds, Koon v. United States, 518 U.S. 81 (1996); Stevenson v. Holland, 2017 WL 2958731, at *13 (E.D. Cal. July 11, 2017) (Ishii, J.) (citations omitted). See also Smith v. Mensinger, 293 F.3d 641, 651 (3d Cir. 2002) ("The approving silence emanating from the officer who stands by and watches as others unleash an unjustified assault contributes to the actual use of excessive force, and we cannot ignore the tacit support such silence lends to those who are actually striking the blows. Such silence is an endorsement of the constitutional violation resulting from the illegal use of force.") (emphasis added).

Accordingly, as the Court previously indicated in this lawsuit, "the deliberate indifference standard is inappropriate" for purposes of evaluating the Eighth Amendment violation of the prison officer who failed to intervene while his fellow prison officers used excessive force on a prisoner. Stevenson, 2017 WL 2958731, at *13. "[T]he core judicial inquiry" is whether the prison officer maliciously and sadistically failed to intervene to cause harm. Id. (quoting Hudson v. McMillian, 503 U.S. 1, 6-7 (1992) and citing Whitley v. Albers, 475 U.S. 312, 320 (1986)). See also Tabron v. Grace, 6 F.3d 147, 153 (3d Cir. 1993) ("[Plaintiff] had offered no evidence to show that her failure to intervene was done maliciously or sadistically with the very purpose of causing harm, as must be established to prevail in an Eighth Amendment challenge to the actions of a prison official in an emergency situation.") (emphasis added) (citing Whitley v. Albers, 475

1  U.S. 312, 320 (1986)).

2      Importantly, prison officers "can be held liable for failing to intercede only if they had an

3  opportunity to intercede." Cunningham v. Gates, 229 F.3d 1271, 1289 (9th Cir. 2000).

4      **4.    Discussion:**

5      Summary judgment is not warranted in Officer Cantu's favor because there are genuine

6  issues of material fact as to, first, whether Officer Cantu's failure to intervene was done

7  maliciously and sadistically for the purpose of causing harm to Plaintiff and, second, whether

8  Officer Cantu had an opportunity to intervene sooner.

9      With the evidence and justifiable inferences drawn in Plaintiff's favor, the facts are as

10 follows: (1) Officer Cantu became aware of the incident before Officer Crotty took Plaintiff to the

11 ground; (2) the beating lasted at least three or four minutes; (3) the beating collectively consisted

12 of at least four prison officers (a) slamming Plaintiff into a wall, (b) taking Plaintiff to the ground,

13 (c) hitting Plaintiff with a baton in the ribs, injured leg, and ankle at least seven or eight times, (d)

14 sticking Plaintiff with a baton, and (e) doing a "pile" on Plaintiff; (4) from the moment Plaintiff

15 fell to the ground throughout the entire duration of the beating, the prison officers did not give any

16 orders to Plaintiff; and (5) Officer Cantu sounded the alarm only after the beating ended.

17     Based on these facts, a reasonable factfinder could find that Officer Cantu could have

18 sounded the alarm sooner, such as at some point during the three- to four-minute beating.  Further,

19 a reasonable factfinder applying the five Hudson factors could find that Officer Cantu maliciously

20 and sadistically failed to intervene in order to cause harm to Plaintiff.  See Furnace v. Sullivan,

21 705 F.3d 1021, 1028 (9th Cir. 2013) (citing Hudson v. McMillian, 503 U.S. 1 (1992)).

22 Accordingly, because there are genuine issues of material fact as to the failure-to-intervene claim

23 against Officer Cantu, summary judgment in Officer Cantu's favor will be denied.

24

25 **D.    Supervisory liability for Officer Foster's deliberate indifference.**

26     **1.    Defendants' arguments:**

27     Summary judgment is warranted in Officer Foster's favor on Plaintiff's supervisory

28 liability claim.  First, the actions that Officer Foster took after the use of force incidents — such as

investigating the incidents, interviewing Plaintiff, and submitting inaccurate reports — cannot create supervisory liability because those actions did not cause or contribute to the use of force. Second, a prisoner does not have a constitutional right to an adequate post-incident investigation. Third, there is no evidence that Officer Foster's inadequate supervision or failure to train caused the use of force incidents. Fourth, Officer Foster did not have prior notice of any information — such as relevant excessive force lawsuits filed by other prisoners against prison officers — that put or should have put Officer Foster on notice his subordinates' propensity to use excessive force on Plaintiff.

**2.    Plaintiff's arguments:**

Summary judgment is not warranted in favor of Officer Foster, who was the supervising lieutenant. First, Officer Foster failed to prevent Officer Crotty from abusing Plaintiff, even though Officer Foster was on notice of Officer Crotty's propensity for using excessive force. Officer Foster was on notice because other prisoners had filed excessive force lawsuits against prison officers at California Correctional Institution before November 11, 2012. Second, in an attempt to shield his subordinates from liability, Officer Foster deliberately conducted inadequate investigations of the incidents involving Plaintiff, such as by actively concealing material evidence that incriminated his subordinates. Officer Foster's conduct during the investigations is evidence that he knew of his subordinates' propensity for using excessive force.

**3.    Legal standard:**

"Liability under [§] 1983 arises only upon a showing of personal participation by the defendant." Taylor v. List, 880 F.2d 1040, 1045 (9th Cir. 1989) (citations omitted). Therefore, respondeat superior liability may not be imposed upon supervisors for the acts of their subordinates in § 1983 claims. Ashcroft v. Iqbal, 556 U.S. 662, 677 (2009); Taylor, 880 F.2d at 1045. "A supervisory official is liable under § 1983 so long as there exists either (1) his or her personal involvement in the constitutional deprivation, or (2) a sufficient causal connection between the supervisor's wrongful conduct and the constitutional violation." Rodriguez v. Cty. of Los Angeles, 891 F.3d 776, 798 (9th Cir. 2018) (citations omitted). "The requisite causal connection can be established by setting in motion a series of acts by others or by knowingly refusing to terminate a series of acts by others,

which the supervisor knew or reasonably should have known would cause others to inflict a constitutional injury." Id. (citations omitted). "Thus, a supervisor may be liable in his individual capacity for [1] his own culpable action or inaction in the training, supervision, or control of his subordinates; [2] for his acquiescence in the constitutional deprivation; or [3] for conduct that showed a reckless or callous indifference to the rights of others." Id. (citations omitted).

**4.** **Discussion:**

Summary judgment is warranted in Officer Foster's favor on the claim that Officer Foster acquiesced in or was deliberately indifferent to the constitutional deprivations committed by his subordinates. Plaintiff premises the claim on the deliberate indifference theory recognized in Starr v. Baca, 652 F.3d 1202, 1208 (9th Cir. 2011). See Doc. No. 80 at 54 (Plaintiff citing Starr v. Baca). In Starr the prisoner alleged that the supervisor knew of, and was specifically given notice of, a voluminous history of culpable uses of force by the supervisor's subordinates prior to the alleged use of force towards the prisoner, but the supervisor took no preventative action despite his ability to do so. Starr, 652 F.3d at 1208-1209. Based on those facts, the Ninth Circuit recognized a cognizable deliberate indifference claim against the supervisor. The Ninth Circuit in Starr detailed at length the voluminous reports received by the supervisor of past injuries to other prisoners, reports which were sufficient to put the supervisor on notice that similar injuries could occur to prisoners in the future. Id. at 1209-1213.

Here Plaintiff contends that Officer Foster was or should have been on notice of his subordinates' propensity for using excessive force. Plaintiff's primary evidence for this contention is copies of court filings, mostly complaints, from multiple excessive force lawsuits filed against prison officers at California Correctional Institution. This evidence, however, standing alone, fails to show that Officer Foster knew of or should have known of Officer Dunnahoe's, Officer Valverde's, and Officer Crotty's propensity for using excessive force and Officer Cantu's and Officer Gonzales's propensity for failing to intervene. First, Plaintiff provided no evidence showing that any of the allegations in any of the lawsuits were meritorious. There is a meaningful distinction between, on one hand, a prison supervisor knowing that a prisoner alleged in a court filing that a subordinate used excessive force or failed to intervene and, on the other hand, a prison supervisor knowing that a

subordinate used excessive force or failed to intervene.  Plaintiff's failure to recognize or even address this distinction is problematic.  Consider, for example, that in several of Plaintiff's cited lawsuits the court screened and dismissed the claims because, in part, the plaintiff had previously filed multiple malicious and/or frivolous lawsuits.  Or consider, for example, that (according to the evidence before the Court) none of the plaintiff's in those lawsuits prevailed on their claims.  Second, Plaintiff provided no evidence demonstrating that Officer Foster knew or should have known of the lawsuits.  According to Plaintiff's logic, if a lawsuit was filed against a prison officer at California Correctional Institution, then Officer Crotty should have known of the lawsuit.  But Plaintiff provided no legal support for this position, which the Court finds to be unsound.  Consider, for example, that several of the lawsuits were filed before Officer Foster was a supervisor.  See Jacobs v. Sullivan, Case No. 1:05-cv-01625 (E.D. Cal.) (filed in 2005); Palmer v. Crotty, Case No. 1:07-cv-00148 (E.D. Cal.) (filed in 2007); Johnson v. Dovey, Case No. 1:08-cv-00640 (E.D. Cal.) (filed in 2008); Holt v. Nicholas, Case No. 1:09-cv-00800 (E.D. Cal.) (filed in 2009).  Or consider, for example, that of the lawsuits that were filed while Plaintiff was a supervisor, all appear to have been dismissed by the court prior to the defendants filing a response, and the dismissals were based, in part, on the fact that the plaintiffs had previously filed multiple malicious and/or frivolous lawsuits.  See, e.g., Gonzales v. Francisco, Case No. 1:12-cv-01786 (E.D. Cal.); Young v. Peterson, Case No. 1:12-cv-00864 (E.D. Cal.); Young v. Curliss, Case No. 1:12-cv-01871 (E.D. Cal.).  Or consider, for example, that one of the lawsuits arose from an alleged incident that occurred in 2013, which was after the incidents involving Plaintiff, with the complaint being filed in 2014.  See Byerley v. Holland, Case No. 1:14-cv-00489 (E.D. Cal.) (filed in 2014).  See also Doc. No. 80-3 (Officer Foster testifying in his deposition that he was not aware of the allegations and lawsuits filed by Jacobs, Palmer, Johnson, and Young).  For all these reasons, the court filings presented by Plaintiff fail to show that Officer Foster was or should have been on notice of the excessive force and failure to intervene that occurred towards Plaintiff on November 11, 2012, and December 7, 2012.  See Hydrick v. Hunter, 669 F.3d 937 (9th Cir. 2012) ("Even under a 'deliberate indifference' theory of individual liability, the Plaintiffs must still allege sufficient facts to plausibly establish the defendant's knowledge of . . . the unconstitutional conduct of his subordinates.") (emphasis added) (citations omitted); Henry

A. v. Willden, 678 F.3d 991, 1004 (9th Cir. 2012) (finding allegation of supervisory liability insufficient where complaint "does not allege . . . any personal knowledge of the specific constitutional violations that led to Plaintiffs' injuries").

Plaintiff also argues that the pepper spray incident and holding cell incident on November 11, 2012, put Officer Foster on notice of the excessive force that later occurred on December 7, 2012. Specifically, Plaintiff contends that Officer Foster was on notice because Plaintiff complained to Officer Foster after the holding cell incident about "Officer Crotty's conduct of slamming his face into the fence." Doc. No. 80 at 13. However, for purposes of proving a supervisory liability claim under a deliberate indifference theory, those facts do not demonstrate that Officer Foster knew or should have known of Officer Crotty's propensity to use excessive force towards Plaintiff on December 7, 2012, nor do those facts demonstrate that Officer Foster acquiesced in the constitutional deprivation that occurred on December 7, 2012. Unlike in Starr, where the supervisor allegedly knew or should have known of a voluminous "series of acts" by his subordinates that would ultimately cause the constitutional violation to the plaintiff, Starr v. Baca, 652 F.3d 1202, 1207 (9th Cir. 2011), here the fact that Plaintiff told Officer Foster about the holding cell incident does not amount to a sufficient "series of acts" for purposes of a deliberate indifference theory. Id. See also Stevenson v. Holland, 2018 WL 1109707, at *11 (E.D. Cal. Mar. 1, 2018) (Ishii, J.) ("To be clear, a supervisory defendant that is aware of regular use of excessive force by his or her subordinates yet does nothing to prevent such abuses even though he or she is in a position to do so, is responsible for his or her own inaction.").

Plaintiff also argues that if Officer Foster had interviewed Plaintiff not within earshot of his cellmate after the pepper spray incident — as Officer Foster should have done pursuant to the prison's regulations — then Plaintiff's cellmate potentially would have given the prison exculpatory evidence during the administrative investigation that would have resulted in the prison finding Plaintiff innocent of disobeying orders during the pepper-spray incident. If that had happened, Plaintiff contends, then the pepper-spray incident would have put Officer Foster on notice of Officer Dunnahoe's and Officer Valverde's propensity for using excessive force. Plaintiff's argument fails because, aside from being

premised on heavy speculation, Officer Dunnahoe and Officer Valverde were not involved in the beating incident on December 7, 2012.

Plaintiff also asks the Court to draw the inference that because Officer Foster conducted inadequate and improper investigations after the incidents on November 7, 2012, and December 7, 2012, Officer Foster must have known that his subordinates had a propensity for using excessive force prior to those dates. Without Plaintiff providing any additional support to strengthen this tenuous inference, the Court finds the inference unjustifiable and insufficient to create a genuine issue of material fact as to whether Officer Crotty was deliberately indifferent to his subordinates' constitutional violations that occurred on November 11, 2012, and December 7, 2012.

Accordingly, because there are no genuine issues of material fact as to whether Officer Foster knowingly refused to terminate a series of acts by others that he knew or reasonably should have known would cause others to inflict a constitutional injury, the Court will grant summary judgment in Officer Foster's favor on the § 1983 claim for supervisory liability.

**E.      Qualified immunity.**

**1.      Defendants' arguments:**

For the pepper spray incident, Officer Dunnahoe and Officer Valverde are entitled to qualified immunity. First, they used the pepper spray to quell a disturbance by Plaintiff, and such conduct does not violate Plaintiff's rights under the Eighth Amendment. Second, even if the pepper-spraying violated Plaintiff's rights under the Eighth Amendment, those rights were not clearly established at the time of the alleged incident. Further, the prison officers were operating within the "hazy" area between proper force and excessive force, and they believed that their conduct complied with the prison's policies. Doc. No. 83 at 28.

For the beating incident, Officer Crotty, Officer Gonzales, Officer Cantu, and Officer Foster are entitled to qualified immunity. First, Officer Crotty used force to effect custody of Plaintiff, and the force was limited to batoning and striking Plaintiff's legs while Plaintiff was resisting the prison officers' lawful attempts to effect custody. Officer Crotty's conduct does not violate Plaintiff's rights under the Eighth Amendment, nor does Officer Cantu's and Officer

Gonzales's conduct of responding to the incident, nor does Officer Foster's conduct of investigating the incident. Second, even if the prison officers' conduct violated Plaintiff's rights under the Eighth Amendment, those rights were not clearly established at the time of the alleged incident. Further, the prison officers were acting within the hazy area between proper force and excessive force, and they believed that their conduct complied with the prison's policies.

**2.      Plaintiff's arguments:**

For the pepper spray incident, Officer Dunnahoe and Officer Valverde are not entitled to qualified immunity. Plaintiff's cellmate stated during the prison's post-incident investigation that Officer Dunnahoe and Officer Valverde used the pepper spray without first warning Plaintiff. Therefore, the pepper-spraying was an excessive and unnecessary use of force.

For the beating incident, Officer Crotty struck Plaintiff with a baton seven to eight times while Plaintiff was handcuffed with his hands behind his back. Additionally, while Plaintiff was on the ground, other prison officers struck and kicked Plaintiff.[6] Officer Crotty's force was unnecessary and excessive. Officer Gonzales "failed to sound the alarm to stop any alleged assault." Doc. No. 80 at 56. Officer Cantu failed to sound the alarm sooner to stop the beating. Officer Foster actively concealed his subordinates' wrongdoing after the beating incident.

**3.      Legal standard:**

Qualified immunity "is a defense available . . . to government officials sued in their individual capacities." Cmty. House, Inc. v. City of Boise, Idaho, 623 F.3d 945, 965 (9th Cir. 2010). The Supreme Court has set forth a two-part test for resolving government officials' qualified immunity claims. See Saucier v. Katz, 533 U.S. 194, 201 (2001), overruled in part on other grounds, Pearson v. Callahan, 555 U.S. 223, 236 (2009). First, the court must consider whether the facts "[t]aken in the light most favorable to the party asserting the injury . . . show [that] the [defendant's] conduct violated a constitutional right[.]" Saucier, 533 U.S. at 201. "If there is no constitutional violation, the inquiry ends and the officer is entitled to qualified

---

[6] Plaintiff suggests that Officer Gonzales is a defendant to an excessive force claim arising from the beating incident. See Doc. No. 80 at 56 ("Gonzales admitted he used — four baton strikes — [which] was unnecessary and excessive . . . ."). Based on the Court's review of Plaintiff's first amended complaint, Officer Gonzales is a defendant to a failure to intervene claim arising from the beating incident, but not an excessive force claim. See Doc. No. 22.

immunity." Ioane v. Hodges, 903 F.3d 929, 933 (9th Cir.), opinion amended and superseded, 939 F.3d 945 (9th Cir. 2018). "[W]hether a constitutional right was violated . . . is a question of fact." Tortu v. Las Vegas Metro. Police Dep't, 556 F.3d 1075, 1085 (9th Cir. 2009).

Second, the court must determine whether the right was clearly established at the time of the alleged violation. Saucier, 533 U.S. at 201. Once a court determines that "the law was clearly established, the immunity defense ordinarily should fail, since a reasonably competent public official should know the law governing [the official's] conduct." Harlow v. Fitzgerald, 457 U.S. 800, 818-19 (1982). However, even if the defendant violated a clearly established right, the government official is entitled to qualified immunity if he or she made a reasonable mistake as to what the law requires. See Saucier, 533 U.S. at 205; Kennedy v. City of Ridgefield, 439 F.3d 1055, 1061 (9th Cir. 2006); Wilkins v. City of Oakland, 350 F.3d 949, 955 (9th Cir. 2003); Newell v. Sauser, 79 F.3d 115, 118 (9th Cir. 1996); Schroeder v. McDonald, 55 F.3d 454, 461-62 (9th Cir. 1995). The reasonableness inquiry is objective: "the question is whether the officers' actions are 'objectively reasonable' in light of the facts and circumstances confronting them, without regard to their underlying intent or motivation." Graham v. Connor, 490 U.S. 386, 397 (1989). The plaintiff bears the burden of proving that the right allegedly violated was clearly established at the time of the violation; and if the plaintiff meets this burden, then the defendant bears the burden of establishing that the defendant reasonably believed the alleged conduct was lawful. See Sorrels v. McKee, 290 F.3d 965, 969 (9th Cir. 2002). "[T]he 'clearly established' inquiry is a question of law that only a judge can decide." Morales v. Fry, 873 F.3d 817, 821 (9th Cir. 2017).

The "judges of the district courts and the courts of appeals should be permitted to exercise their sound discretion in deciding which of the two prongs of the qualified immunity analysis should be addressed first in light of the circumstances in the particular case at hand." Pearson v. Callahan, 555 U.S. 223, 236 (2009) (explaining the sequence, while "often appropriate," "should no longer be regarded as mandatory"). When the two-part Saucier test "is properly applied, it protects 'all but the plainly incompetent or those who knowingly violate the law.'" Hernandez v. City of San Jose, 897 F.3d 1125, 1132-33 (9th Cir. 2018) (citations omitted).

At the summary judgment phase, although both the "clearly established right" and "reasonableness" inquiries are questions of law, where there are factual disputes as to the parties' conduct or motives, the case cannot be resolved at summary judgment on qualified immunity grounds. <u>See</u> <u>Torres v. City of Madera</u>, 648 F.3d 1119, 1123 (9th Cir. 2011) ("Where the objective reasonableness of an officer's conduct turns on disputed issues of material fact, it is a question of fact best resolved by a jury, [and] only in the absence of material disputes is it a pure question of law.") (internal quotation marks and citations omitted).

**4.** **Discussion:**

**_a._** **_Excessive force_**

Under the Eighth Amendment, a convicted prisoner has the right to be free from excessive force. In order to prove an excessive force claim, the plaintiff must prove the following elements: (1) the defendant used excessive and unnecessary force under all of the circumstances; (2) the defendant acted maliciously and sadistically for the purpose of causing harm, and not in a good faith effort to maintain or restore discipline; and (3) the acts of the defendant caused harm to the plaintiff. <u>Hoard v. Hartman</u>, 904 F.3d 780, 788 & n.9 (9th Cir. 2018).

In determining whether these three elements have been met, the factfinder should consider the following <u>Hudson</u> factors: (1) the extent of the injury suffered; (2) the need to use force; (3) the relationship between the need to use force and the amount of force used; (4) any threat reasonably perceived by the defendant; and (5) any efforts made to temper the severity of a forceful response, such as, if feasible, providing a prior warning or giving an order to comply. <u>Furnace v. Sullivan</u>, 705 F.3d 1021, 1028 (9th Cir. 2013). Further, "[i]t is well established that judges and juries must defer to prison officials' expert judgments." <u>Norwood v. Vance</u>, 591 F.3d 1062, 1066 (9th Cir. 2010). Therefore, the factfinder should also "give deference to prison officials in the adoption and execution of policies and practices that in their judgment are needed to preserve discipline and to maintain internal security in a prison." <u>Id.</u> at 1067.

"[S]ubjective intent is critical in an Eighth Amendment analysis. More than de minimis force applied for no good faith law enforcement purpose violates the Eighth Amendment." <u>Rodriguez v. Cty. of Los Angeles</u>, 891 F.3d 776, 797 (9th Cir. 2018). However, "[o]bjective

reasonableness may inform the Eighth Amendment inquiry, providing evidence of good faith or of malice." Id.

### i.    *Officer Dunnahoe and Officer Valverde for pepper-spray incident:*

Under the first prong of the Saucier test, the Court concludes that there are no genuine issues of material fact as to whether Officer Dunnahoe and Officer Valverde used excessive force. With all evidence and justifiable inferences drawn in Plaintiff's favor, but with the evidence and inferences curbed by the Heck-bar, the material facts are as follows. On November 11, 2012, Plaintiff was in his cell with his cellmate. Plaintiff was at the sink, and Plaintiff's cellmate was on the top bunk. Officer Dunnahoe and Officer Valverde approached Plaintiff's cell. Officer Dunnahoe gave Plaintiff a verbal order to back up to the cuff port and cuff up. Plaintiff did not comply with those orders. Officer Dunnahoe gave Plaintiff a verbal order to get down in a prone position. Plaintiff did not comply with that order. Officer Dunnahoe sprayed Plaintiff with one can of pepper spray. Officer Dunnahoe and Officer Valverde both gave Plaintiff a verbal order to get down. Plaintiff did not comply with those orders. Officer Valverde sprayed Plaintiff with one can of pepper spray.

Applying the Hudson factors to these facts, a reasonable factfinder could not find that Officer Dunnahoe and Officer Valverde used excessive and unnecessary force. First, the extent of the injury to Plaintiff was relatively minimal: burning from the pepper-spray. See Doc. No. 80-3 (Plaintiff's deposition testifying about burning). Plaintiff has not cited to any evidence suggesting that the injury from the pepper-spray was anything more than a burning feeling. Second, there was a need for the officers to use force towards Plaintiff: Plaintiff refused to obey multiple verbal orders from the prison officers. Third, the amount of force was related to the need for the force: both officers gave verbal orders to Plaintiff, all of which Plaintiff disobeyed, and both officers sprayed Plaintiff with one can of pepper spray. Plaintiff even continued to disobey orders after being pepper-sprayed. Fourth, there is no evidence that Defendants perceived a threat to themselves, and, in fact, they were located outside Plaintiff's cell during the incident.[7] Fifth, the

---

[7] Defendants contend that Plaintiff's cellmate was threatened by Plaintiff, but because Plaintiff denied that fact, the Court does not accept that fact as true at this summary judgment phase.

prison officers attempted to temper the severity of the force by giving prior orders to Plaintiff, all of which Plaintiff failed to obey.[8]  Hence, the first, second, third, and fifth <u>Hudson</u> factors weigh in favor of finding no excessive and unnecessary force and no maliciousness and sadism.  As for the fourth <u>Hudson</u> factor, it does not weigh in favor of finding excessive and unnecessary force, and this is because the force applied was, again, relatively minimal.  Plaintiff failed to identify or present any evidence of a less-severe form of force that the officers could have applied, other than giving verbal orders, which obviously were ineffective on Plaintiff, or doing nothing.

Additionally, as for the prison officers' execution of prison policies and practices, Officer Dunnahoe and Officer Valverde both declared that they believed they were acting in accordance with California Code of Regulations, Title 15, § 3268, <u>see</u> Doc. No. 77-5 (Officer Dunnahoe's Decl.), Doc. No. 77-6 (Officer Valverde's Decl.), which provides that "verbal persuasion or orders shall be issued prior to resorting to force and are required to be provided before controlled force is used," and "[e]mployees may use reasonable force as required in the performance of their duties," with force options including "chemical agents."  Cal. Code. Regs. tit. 15, § 3268(b)(c); <u>see also</u> <u>id.</u> at § 3268(c) (identifying "chemical agents" as arguably the least severe use of force option, with the other options being batons, physical strength and holds, and non-lethal and lethal weapons, such as launchers and firearms).

Assuming arguendo that Plaintiff's Eighth Amendment rights were violated by Officer Dunnahoe's and Officer Valverde's use of force, the Court concludes that Plaintiff failed to carry his burden under the second prong of the <u>Saucier</u> test.  The inquiry under the second prong must be "undertaken in light of the specific context of the case, not as a broad general proposition." <u>Mullenix v. Luna</u>, 136 S. Ct. 305, 308 (2015) (per curiam) (citations omitted).  "[T]he right allegedly violated must be defined at the appropriate level of specificity before a court can determine if it was clearly established."  <u>Dunn v. Castro</u>, 621 F.3d 1196, 1201 (9th Cir. 2010).

_____

[8]  Plaintiff contends that the prison officers did not warn Plaintiff about the pepper-spray, and Plaintiff cites to his expert's report, which paraphrases a statement made by Plaintiff's cellmate during the post-incident investigation. The expert's paraphrased statement of the cellmate's statement (which appears to have been documented in a written prison record) is arguably hearsay, and Plaintiff failed to cite to direct evidence of the cellmate's statement. Moreover, even if it is true that the prison officers did not warn Plaintiff about the pepper-spray, the officers nonetheless issued multiple verbal orders to Plaintiff prior to using the pepper spray.

Once the right is appropriately defined, then for the right to be clearly established, "[t]he contours of the right must be sufficiently clear that a reasonable official would understand that what [the official] is doing violates that right." Anderson v. Creighton, 483 U.S. 635, 640 (1987); Rodriguez v. Swartz, 899 F.3d 719, 728 (9th Cir. 2018) ("A constitutional right is clearly established if every reasonable official would have understood that what he is doing violates that right.") (citations omitted).  Here Plaintiff failed to sufficiently define the "specific" constitutional right that he contends was violated by Officer Dunnahoe and Officer Valverde, other than his right to be free from excessive and unnecessary force under the Eighth Amendment, which is too general here.  See Kisela v. Hughes, 138 S. Ct. 1148, 1152 (2018) (stating that the court may not "define clearly established law at a high level of generality").  In light of the facts here, the Court concludes that the specific constitutional right at issue here would be a prisoner's Eighth Amendment right to not be pepper-sprayed by a prison officer after disobeying the prison officer's orders.  Plaintiff failed to show, let alone even attempt to show, that this right was clearly established at the time of the incident.  Plaintiff did not cite to a single precedent.[9]

Accordingly, Officer Dunnahoe and Officer Valverde are entitled to qualified immunity on the § 1983 excessive force claim.

### ii.    _Officer Crotty for beating incident:_[10]

Under the first prong of the Saucier test, the Court concludes that a reasonable factfinder could find that Officer Crotty's conduct violated Plaintiff's Eighth Amendment right to be free from unnecessary and wanton pain inflicted by a prison guard.  See Furnace v. Sullivan, 705 F.3d 1021, 1027 (9th Cir. 2013) (recognizing constitutional right).  With all evidence and justifiable inferences drawn in Plaintiff's favor, but with the evidence and inferences curbed by the Heck-bar,

---

[9]  Plaintiff filed a 61-page opposition brief to Defendants' motion for summary judgment.  See Doc. No. 80.  In conjunction with the opposition brief, Plaintiff filed a 29-page "response" to Defendants' statement of undisputed facts, 260 pages of documents that Plaintiff asked the Court to judicially notice, approximately 260 pages of exhibits, which does not even include the "supplemental" exhibits filed by Plaintiff, and 33 pages of objections to Defendants' motion for summary judgment.  See Doc. No. 80-1; Doc. No. 80-2; Doc. No. 80-3; 80-4.  All of this for a grand total of approximately 640 pages.  Yet within that inordinate sum, Plaintiff dedicated a paltry two pages to opposing Defendants' claims for qualified immunity, and nowhere in those two pages did Plaintiff squarely address the Saucier test, and nowhere in those two pages did Plaintiff cite to a single precedent.

[10]  Defendants did not move for qualified immunity for Officer Crotty with respect to the holding cell incident, which is the focus of Plaintiff's second cause of action.

the material facts are as follows.  On December 7, 2012, Officer Crotty escorted Plaintiff from the shower.  Plaintiff's hands were handcuffed.  Plaintiff suddenly lunged towards Officer Crotty, striking Officer Crotty in the left shoulder with Plaintiff's right shoulder, thereby causing Officer Crotty to lose his grip on Plaintiff's arm.  Officer Crotty grabbed Plaintiff's arm and slammed Plaintiff into a wall, and Plaintiff fell to the ground.  Plaintiff kicked at Officer Crotty.  Officer Crotty hit and stabbed Plaintiff with a baton, including in Plaintiff's ribs.  Officer Crotty hit Plaintiff's injured leg, which Officer Crotty knew was injured (from a prior unrelated incident), and ankle with a baton seven or eight times.  Officer Gonzales was nearby watching the incident.  At least two other prison officers arrived at the scene of the incident, and they along with Officer Gonzales and Officer Crotty continued beating Plaintiff and did a pile on Plaintiff.  One of the officers was sticking Plaintiff with a baton, and that officer hit Officer Crotty's hand with the baton.  The beating lasted at least three or four minutes.  Plaintiff suffered injuries from the beating, including an abrasion, scratch, bruise, discoloring, and swelling in the left thigh.  From the moment Plaintiff fell to the ground throughout the entire duration of the beating, the prison officers did not give any orders to Plaintiff.  Plaintiff's force or violence fractured bone/s in Crotty's hand.

Applying the Hudson factors to these facts, first, the extent of the injuries to Plaintiff are notable: an abrasion, scratch, bruise, discoloring, and swelling in the left thigh.  Second and third, while the officers needed to use force to respond to Plaintiff's battery, the undisputed facts do not indicate exactly when Plaintiff's battery ceased.  According to Plaintiff's non-Heck-barred evidence, Plaintiff did not batter or attempt to batter the officers during a significant portion of the three- to four-minute beating, including the latter portion of the beating.  Therefore, with at least four officers at the scene of the incident, and with Plaintiff on the ground in handcuffs, and with Plaintiff not battering or attempting to batter any of the prison officers, the prison officers beat Plaintiff for some time.  Fourth, Officer Crotty reasonably perceived a threat from Plaintiff, but that threat did not last during the entire three- to four-minute beating.  Fifth, the prison officers did not attempt to temper the severity of a forceful response by giving orders to Plaintiff.

Therefore, in light of the foregoing Hudson factors, a reasonable factfinder could find that (1) Officer Crotty used excessive and unnecessary force under all of the circumstances; (2) Officer Crotty acted maliciously and sadistically for the purpose of causing harm, and not in a good faith effort to maintain or restore discipline; and (3) the acts of Officer Crotty caused harm to Plaintiff. Therefore, it cannot be said at this summary judgment phase that Officer Crotty did not violate Plaintiff's Eighth Amendment right to be free from unnecessary and wanton infliction of pain.

Under the second prong of the Saucier test, the Court concludes that it was clearly established as of December 7, 2012, that a prisoner has an Eighth Amendment right to be free from the unnecessary and wanton infliction of pain from prison officers while the prisoner is on the ground in handcuffs, not responding with force, and not disobeying orders. See Martinez v. Stanford, 323 F.3d 1178, 1184 (9th Cir. 2003). See also Rodriguez v. Cty. of Los Angeles, 891 F.3d 776, 796 (9th Cir. 2018) (citing cases); Martinez v. Stanford, 323 F.3d 1178, 1184 (9th Cir. 2003); McRorie v. Shimoda, 795 F.3d 780, 784 (9th Cir. 1986); Petrolino v. County of Spokane, 678 F. Supp. 2d 1082, 1093 (E.D. Wash. 2009). As for Defendants' contention that Officer Crotty made a reasonable mistake as to what the law required, this argument fails because Officer Crotty's conduct was not objectively reasonable when the facts are drawn in Plaintiff's favor. See Saucier v. Katz, 533 U.S. 194, 205 (2001); Graham v. Connor, 490 U.S. 386, 397 (1989).

Accordingly, Officer Crotty is not entitled to qualified immunity on the § 1983 excessive force claim.

**b.** **_Failure to intervene by Officer Cantu and Officer Gonzales:_**

As discussed in greater detail supra, prison officials have a duty under the Eighth Amendment to take reasonable steps to protect inmates from physical abuse from other prisoners and prison officers. "[T]he core judicial inquiry" is whether the prison officer either, on one hand, failed to intervene in a good-faith effort to maintain or restore discipline or, on the other hand, maliciously and sadistically failed to intervene to cause harm. Stevenson v. Holland, 2017 WL 2958731, at *13 (E.D. Cal. July 11, 2017) (Ishii, J.).

Under the first prong of the Saucier test, the Court concludes that there are genuine issues of material fact as to whether Officer Cantu and Officer Gonzales failed to intervene. With all

evidence and justifiable inferences drawn in Plaintiff's favor, but with evidence and inferences curbed by the <u>Heck</u>-bar, the facts are that both Officer Cantu and Officer Gonzales witnessed Officer Crotty (and at least two other officers) maliciously and sadistically beat Plaintiff, but neither Officer Cantu nor Officer Gonzales intervened during the beating, despite having the ability to do so. Therefore, pursuant to the foregoing discussion concerning Officer Crotty's excessive force, <u>see</u> <u>supra</u>, a reasonable factfinder applying the <u>Hudson</u> factors could find that (1) Officer Cantu and Officer Gonzales watched Officer Crotty use excessive and unnecessary force; (2) Officer Cantu and Officer Gonzales maliciously and sadistically failed to intervene in order to cause harm to Plaintiff; and (3) the failure to intervene caused harm to Plaintiff.

Under the second prong of the <u>Saucier</u> test, the Court concludes that it was clearly established as of December 7, 2012, that a prisoner has an Eighth Amendment right to intervention from an able prison officer when another prison officer uses excessive force against the prisoner. <u>See</u> <u>Robins v. Meecham</u>, 60 F.3d 1436, 1442 (9th Cir. 1995). As for Defendants' contention that Officer Cantu and Officer Gonzales made a reasonable mistake as to what the law required, this argument fails because their conduct was not objectively reasonable when the facts are drawn in Plaintiff's favor. <u>See</u> <u>Saucier</u>, 533 U.S. at 205; <u>Graham</u>, 490 U.S. at 397.

Accordingly, Officer Gonzales and Officer Cantu are not entitled to qualified immunity on the § 1983 failure-to-intervene claim.

### <u>c.</u>     *<u>Supervisory liability against Officer Foster:</u>*

As discussed <u>supra</u>, summary judgment is warranted in Officer Foster's favor on Plaintiff's § 1983 supervisory liability claim. Therefore, qualified immunity is inapplicable to Officer Foster: there is no liability from which he can be immunized. Nonetheless, assuming qualified immunity were applicable, the Court concludes that Officer Foster is entitled to qualified immunity. Under the first prong of the <u>Saucier</u> test, the Court concludes that Officer Foster's supervisory conduct did not violate Plaintiff's Eighth Amendment right to be free from excessive force. This conclusion is based on the same reasoning that the Court applied in concluding that summary judgment is warranted in Officer Foster's favor on the § 1983 supervisory liability claim. <u>See</u> <u>supra</u>.

1  **F.     California Tort Claims Act.**

2       **1.     Defendants' arguments:**

3       Plaintiff's California state law claims are barred by California's Tort Claims Act, which

4  states, "A claim relating to a cause of action . . . for injury to person . . . shall be presented [to the

5  State of California] as provided in Article 2 (commencing with Section 915) <u>not later than six</u>

6  <u>months after the accrual of the cause of action</u>."  Cal. Gov't Code § 911.2(a) (emphasis added).

7  Plaintiff's state law claims accrued on the dates of the incidents, November 11, 2012, and

8  December 7, 2012.  Plaintiff did not submit his government claim to the state until December 3,

9  2016, making his claim untimely.  After Plaintiff submitted his untimely government claim, the

10  state rejected the claim as untimely.  The state denied Plaintiff's application to present a late

11  government claim because Plaintiff did not meet any of the requisite criteria in California

12  Government Code § 911.6.

13       **2.     Plaintiff's argument:**

14       Plaintiff's government claim was timely because Plaintiff was in custody until his release

15  from prison on July 11, 2016, and Plaintiff filed his government claim on December 3, 2016,

16  which was within six months of his release.

17       **3.     Discussion:**

18       State procedural requirements apply to state claims litigated in federal court.  <u>See</u> <u>Karim-</u>

19  <u>Panahi v. Los Angeles Police Dep't</u>, 839 F. 2d 621, 627 (9th Cir. 1988) ("The amended complaint

20  fails to allege compliance with California tort claim procedures.  The district court properly

21  dismissed the state law tort claims.").  The California Government Claims Act requires that a tort

22  claim against a public entity or its employees be presented to the state within six months after the

23  cause of action accrues.  Cal. Gov't Code §§ 905.2, 910, 911.2, 945.4, 950-950.2.  The claimant's

24  presentation of the claim and the state's subsequent action on the claim are prerequisites to suit.

25  Cal. Gov't Code § 945.4; <u>State v. Superior Court of Kings County (Bodde)</u>, 32 Cal. 4th 1234, 1239

26  (2004).

27       Plaintiff filed his government claim on December 3, 2016, approximately four years from

28  the accrual of the claims.  Further, Plaintiff did not pursue potential judicial relief under California

43

Government Code § 946.6, which allows a claimant to file a judicial petition for relief from § 945.4. Plaintiff has provided the Court with no authority indicating that his incarceration tolled or extended his government claim filing deadline under the Government Claims Act. Consequently, there is no genuine issue of material fact as to whether Plaintiff complied with the requirements under the California Government Claims Act. He did not. Consequently, summary judgment is warranted in Defendants' favor on Plaintiff's California state law claims.

**G.    Judicial notice.**

Pursuant to Defendants' request, the Court takes judicial notice of "Exhibit 8" and "Exhibit 9" in Doc. No. 77-13 and "Exhibit 8" in Doc. No. 83-2, which are California state administrative records. See FRE 201; Disabled Rights Action Comm. v. Las Vegas Events, Inc., 375 F.3d 861, 866 (9th Cir. 2004) ("Under Federal Rule of Evidence 201, we may take judicial notice of the records of state agencies and other undisputed matters of public record.").

Pursuant to Plaintiff's request, the Court takes judicial notice of the exhibits in Doc. No. 80-2, which are court filings, including some judicial decisions. FRE 201; United States v. Black, 482 F.3d 1035, 1041 (9th Cir. 2007) ("[Courts] may take notice of proceedings in other courts, both within and without the federal judicial system, if those proceedings have a direct relation to matters at issue."). See also Lee v. City of Los Angeles, 250 F.3d 668, 689 (9th Cir. 2001), overruled on other grounds, Galbraith v. Cty. of Santa Clara, 307 F.3d 1119 (9th Cir. 2002).

# ORDER

Accordingly, Defendants' motion for summary judgment (Doc. No. 77) is GRANTED in part and DENIED in part as follows:

1.    Summary judgment in Defendants' favor on grounds of the statute of limitations is DENIED as to all claims arising from the incidents on November 11, 2012;

2.    Summary judgment in Defendants' favor on grounds of the Heck-bar is DENIED as to all § 1983 claims arising from the pepper spray incident on November 11, 2012, and the beating incident on December 7, 2012;

3.    Summary judgment in Officer Cantu's favor is DENIED as to the § 1983 failure-to-

1   intervene claim;

2   4.  Summary judgment in Officer Foster's favor is GRANTED as to the § 1983 supervisory

3       liability claim (seventh claim);

4   5.  Summary judgment in Defendants' favor is GRANTED as to all California law claims

5       (ninth, tenth, eleventh, twelfth, and thirteenth claim);

6   6.  Qualified immunity is GRANTED to Officer Dunnahoe and Officer Valverde for the §

7       1983 excessive force claims arising from the pepper spray incident on November 11, 2012

8       (first claim);

9   7.  Qualified immunity is DENIED to Officer Crotty for the § 1983 excessive force claim

10      arising from the beating incident on December 7, 2012;

11  8.  Qualified immunity is DENIED to Officer Gonzales and Officer Cantu for the § 1983

12      failure-to-intervene claim;

13  9.  All claims premised on the Fourteenth Amendment (first, second, and third claims) are

14      DISMISSED WITH PREJUDICE;

15  10. The § 1983 claim against Officer Crotty arising from the pepper-spray incident on

16      November 11, 2012, (first claim) is DISMISSED WITH PREJUDICE;

17  11. All claims against Officer White (first and ninth claims) are DISMISSED WITH

18      PREJUDICE.

19
20  IT IS SO ORDERED.

21  Dated:   January 17, 2020        _____

22                                  SENIOR  DISTRICT  JUDGE

23
24
25
26
27
28