1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

# UNITED STATES DISTRICT COURT

## EASTERN DISTRICT OF CALIFORNIA

**DOUGLAS JEROME STEVENSON,**

**Plaintiff,**

v.

**K. HOLLAND,** *et al.*,

**Defendants.**

**CASE NO. 1:16-CV-1831-AWI-JLT**

**ORDER ON MOTIONS IN LIMINE AND REQUESTS FOR JUDICIAL NOTICE**

(Doc. Nos. 112–127)

## INTRODUCTION

This lawsuit is about a former prisoner, Plaintiff Douglas Stevenson, who alleges that he was physically abused by multiple prison officers on November 11, 2012, and December 7, 2012, while incarcerated at the California Correctional Institution in Tehachapi, California. The alleged physical abuse occurred during two separate incidents: the "holding-cell incident" and the "beating incident." While the parties dispute the factual circumstances of these incidents, the following specifics are taken from the facts drawn by the Court at summary judgment:

On November 11, 2012, Officer M. Crotty escorted Stevenson to a holding cell. Stevenson's hands were handcuffed behind his back. Crotty took Stevenson's hands and pushed them up his back. Upon arriving at the holding cell, Crotty "ran" Stevenson's face into the gate in the back of the cell.

On December 7, 2012, Crotty escorted Stevenson from the shower. Stevenson's hands were handcuffed. Stevenson suddenly lunged toward Crotty, striking Crotty in the left shoulder with his right shoulder, thereby causing Crotty to lose his grip on Stevenson's arm. Crotty grabbed Stevenson's arm and slammed him into a wall, and Stevenson fell to the ground. Stevenson kicked at Crotty. Crotty hit and stabbed Stevenson with a baton, including in Stevenson's ribs. Crotty hit Stevenson's injured leg, which Crotty knew was injured (from a prior unrelated incident), and ankle with a baton seven or eight times. Officer C. Gonzales was nearby

watching the incident.  At least two other prison officers arrived at the scene of the incident and they along with Crotty and Gonzales continued beating Stevenson and "did a pile" on Stevenson. One of the officers was "sticking" Stevenson with a baton, and that officer hit Crotty's hand with the baton.  The beating lasted at least three or four minutes.  Stevenson suffered injuries from the beating, including an abrasion, scratch, bruise, discoloring, and swelling in the left thigh.  From the moment Stevenson fell to the ground through the end of the beating, the officers did not give any orders to Stevenson.  Stevenson's force or violence fractured a bone (or bones) in Crotty's hand.  During this incident, Officer A. Cantu was stationed in a nearby patrol tower.  Cantu saw Crotty escort Stevenson.  Cantu saw a "commotion" during the escort.  Cantu saw Crotty force Plaintiff to the ground.  Cantu saw Stevenson kick while he was on the ground.  After the beating ended, Cantu sounded an alarm.  Stevenson heard the alarm.

Stevenson is proceeding to trial on the following three causes of action:

- Against Officer Crotty:  Eighth Amendment violation for use of excessive force during the holding-cell incident (second cause of action);

- Against Officer Crotty:  Eighth Amendment violation for use of excessive force during the beating incident (third cause of action); and

- Against Officers Gonzales and Cantu:  Eighth Amendment violations for failure to intervene during the beating incident (third cause of action).

In anticipation of trial, Defendants have filed thirteen motions in limine.  Doc. Nos. 112–116, 118–120, 122, 123, 125–127.  Stevenson has filed fourteen motions in limine and two requests for judicial notice.  Doc. Nos. 117, 121, 124.  The Court held a hearing on these and other matters on November 23, 2020.

## LEGAL STANDARDS

**A.    Motions in limine**

"A motion in limine is a procedural mechanism to limit in advance testimony or evidence in a particular area."  United States v. Heller, 551 F.3d 1108, 1111 (9th Cir. 2009).  Motions in limine may be "made before or during trial, to exclude anticipated prejudicial evidence before the

1  evidence is actually offered." Luce v. United States, 469 U.S. 38, 40 n.2 (1984). "Although the

2  Federal Rules of Evidence do not explicitly authorize in limine rulings, the practice has developed

3  pursuant to the district court's inherent authority to manage the course of trials." Id. at 41 n.4;

4  Jonasson v. Lutheran Child & Family Servs., 115 F.3d 436, 440 (7th Cir. 1997); see also City of

5  Pomona v. SQM N. Am. Corp., 866 F.3d 1060, 1070 (9th Cir. 2017) (explaining motions in limine

6  "are useful tools to resolve issues which would otherwise clutter up the trial" (quoted source

7  omitted)).

8       In Hana Financial, Inc. v. Hana Bank, the Ninth Circuit cited with approval the following

9  "standards applicable to motions in limine":

10     Judges have broad discretion when ruling on motions in limine.  However, a motion in
       limine should not be used to resolve factual disputes or weigh evidence.  To exclude
11     evidence on a motion in limine, the evidence must be inadmissible on all potential
       grounds.  Unless evidence meets this high standard, evidentiary rulings should be deferred
12     until trial so that questions of foundation, relevancy and potential prejudice may be
       resolved in proper context.  This is because although rulings on motions in limine may
13     save time, costs, effort and preparation, a court is almost always better situated during the
       actual trial to assess the value and utility of evidence.
14

15 735 F.3d 1158, 1162 n.4 (9th Cir. 2013) (citing Goodman v. Las Vegas Metro. Police Dep't, 963

16 F. Supp. 2d 1036, 1047 (D. Nev. 2013), rev'd in part on other grounds by 613 F. App'x 610 (9th

17 Cir. 2015)); see also Tritchler v. County of Lake, 358 F.3d 1150, 1155 (9th Cir. 2004); Jenkins v.

18 Chrysler Motors Corp., 316 F.3d 663, 664 (7th Cir. 2002).

19      By resolving a motion in limine, the court may prevent the presentation of potentially

20 prejudicial evidence to the jury, which also eliminates the need to try to neutralize a prejudicial

21 taint after the evidence has already been presented.  See Brodit v. Cambra, 350 F.3d 985, 1004–05

22 (9th Cir. 2003).  Notwithstanding a motion in limine ruling, a court may change course at trial in

23 the event that testimony or other evidence "bring[s] facts to the district court's attention that it did

24 not anticipate at the time of its initial ruling."  United States v. Bensimon, 172 F.3d 1121, 1127

25 (9th Cir. 1999) (citing Luce, 469 U.S. at 41–42).

26

27 **B.**    **Admissibility generally**

28      Evidence is relevant if (a) it has any tendency to make a fact more or less probable than it

would be without the evidence; and (b) the fact is of consequence in determining the action.  Fed. R. Evid. 401.  Irrelevant evidence is not admissible.  Fed. R. Evid. 402.  "Relevancy is not an inherent characteristic of any item of evidence but exists only as a relation between an item of evidence and a matter properly provable in the case."  Sprint/United Mgmt. Co. v. Mendelsohn, 552 U.S. 379, 387 (2008) (quoting Fed. R. Evid. 401 advisory committee notes).  Even if relevance is established, the court may exclude evidence "if its probative value is substantially outweighed by a danger of one or more of the following: unfair prejudice, confusing the issues, misleading the jury, undue delay, wasting time, or needlessly presenting cumulative evidence." Fed. R. Evid. 403.  In general, "[e]vidence of a person's character or character trait is not admissible to prove that on a particular occasion the person acted in accordance with the character or trait."  Fed. R. Evid. 404(a)(1).  Likewise, "[e]vidence of a crime, wrong, or other act is not admissible to prove a person's character in order to show that on a particular occasion the person acted in accordance with the character."  Fed. R. Evid. 404(b)(1).  But evidence of a crime, wrong, or other act may be admitted for another purpose, such as motive, opportunity, intent, preparation, plan, knowledge, identity, absence of mistake, or lack of accident.  Fed. R. Evid. 404(b)(2).

## **DISCUSSION**

In this Order, the Court will address Defendants' Motions in Limine Nos. 1 through 14 (exclusive of Nos. 2, 3, 6,[1] and 14), and Stevenson's Motions in Limine Nos. 1 through 14 (exclusive of No. 13 and his requests for judicial notice).  For the matters not addressed here, during the motions-in-limine hearing, the Court instructed the parties to further meet and confer and provided new deadlines by which the parties are to file supplemental briefing or submit disputed evidence to the Court for in camera review.  The Court will reserve its rulings on these matters at this time.

**A.      Defendants' Motion No. 1 concerning Stevenson's use-of-force expert Daniel Fulks**

Defendants seek an order excluding the opinions of Stevenson's use-of-force expert,

---

[1] Defendants did not file a Motion in Limine No. 6.

Daniel Fulks.  (Doc. No. 112.)  Alternatively, they seek an order limiting Fulks' opinions to matters within the scope of his expertise and such that those opinions do not invade the province of the jury.

### 1.    The parties' arguments:

Defendants first assert that Fulks is not qualified to provide expert opinions on the use of force in correctional settings.  Defendants contend that his employment experience at the California Department of Corrections and Rehabilitation ("CDCR") does not establish he possesses the requisite specialized knowledge, skill, experience, training, or education to qualify as an expert.  They stress that Fulks has undertaken minimal efforts to remain current on use-of-force training, only reviewing online annual updates of the CDCR's operations manual and relevant California regulations.  Defendants contend that this lack of upkeep comes in the face of significant more recent changes to CDCR's use-of-force policy, which also contradicts Fulks' claim in his deposition that no significant changes have occurred since his retirement in 2008.

Next, Defendants argue that Fulks' opinions—specifically that Defendant Crotty used unnecessary and excessive force during the beating incident—are not relevant, reliable, or helpful to the trier of fact.  Defendants critique Fulks' primary opinion on the grounds that he offered no reasonable explanation as to why Stevenson no longer posed an immediate threat to Crotty after having broken away from Crotty's grasp while in restraints.  They also point out that whether Stevenson attempted to continue to attack Crotty is disputed, and not a fact that Fulks can himself determine or rely on.  Defendants argue that Fulks' opinions are further unreliable because CDCR's use-of-force policy did not prohibit Crotty's use of force or lead to Fulks' conclusion, and on the whole Fulks has not referred to any objective sources that explain how he reached his conclusion.  Finally, Defendants reiterate that Fulks' lack of recent experience, education, and training undermines the possible relevance and helpfulness of his proposed testimony.

In their alternative argument, Defendants argue that Fulks should not be allowed to opine on ultimate legal issues, including whether excessive force was used here.

Stevenson opposes Defendants' motion in full.  He responds that Fulks is well-qualified as both a use-of-force expert and a correctional expert, emphasizing his twenty-five years of

knowledge and experience as a correctional officer with the CDCR (including time spent as a certified use-of-force instructor).  Stevenson disagrees with Defendants' characterizations of Fulks' experience as a use-of-force instructor.  He asserts that amidst his experience Fulks was tasked by a prison warden to review all use-of-force incident, including those occurring in maximum security facilities.  Stevenson also disagrees with Defendants' contentions that CDCR's use-of-force policy has been subject to recent and substantive changes.  He asserts that despite making much of the matter Defendants do not explain how Fulks' opinions might be affected by the single policy distinction (contrasting "immediate" and "controlled" uses of force) that they identify as having gone into effect since his retirement.  As for expert methodology, Stevenson highlights that Fulks has conducted administrative inquiries into staff misconduct, which constitutes reliably precise means of evaluating specific uses of force.  He adds that Fulks also has substantial experience working at the location of the acts complained of in this lawsuit.

**2.      Analysis:**

"A witness who is qualified as an expert by knowledge, skill, experience, training, or education may testify in the form of an opinion or otherwise," provided the expert witness's knowledge will help the jury to understand the evidence or to determine a fact in issue.  Fed. R. Evid. 702.  The expert's testimony must be "based on sufficient facts or data," and must stem from the expert's application of "reliable principles and methods" to the facts of the case.  Id.  This rule imposes a "gatekeeping" obligation on the trial judge to ensure that expert has the appropriate qualifications, and that the expert's testimony "is not only relevant, but reliable."  Kumho Tire Co. v. Carmichael, 526 U.S. 137, 147 (1999).

In assessing whether an expert has the appropriate qualifications, the court only need consider whether the expert offers some special knowledge, skill, experience, training, or education on the subject matter.  United States v. Hankey, 203 F.3d 1160, 1168 (9th Cir. 2000).  Relevancy "simply requires that the evidence . . . logically advance a material aspect of the party's case."  Estate of Barabin v. AstenJohnson, Inc., 740 F.3d 457, 463 (9th Cir. 2014).  Reliability requires the court to assess "whether an expert's testimony has a 'reliable basis in the knowledge and experience of the relevant discipline.'"  Id. (quoting Kumho Tire, 526 U.S. at 149); see also

1   Primiano v. Cook, 598 F.3d 558, 564 (9th Cir. 2010) (stating that the concern is not with the

2   correctness of the expert's conclusions but the soundness of the methodology).  Finally, as with

3   any testimony, the gatekeeping function also requires an examination of whether the testimony's

4   "probative value is substantially outweighed by a danger of . . . unfair prejudice, confusing the

5   issues, misleading the jury, undue delay, wasting time, or needlessly presenting cumulative

6   evidence." Fed. R. Evid. 403.

7       Under Daubert v. Merrell Dow Pharmaceuticals, Inc., 509 U.S. 579, 589 (1993), and its

8   progeny, a district court's inquiry into admissibility "is a flexible one." Alaska Rent-A-Car, Inc.

9   v. Avis Budget Grp., Inc., 738 F.3d 960, 969 (9th Cir. 2013).  District courts have "broad

10  discretion" in performing this function, and "Rule 702 generally is construed liberally." Hankey,

11  203 F.3d at 1168.  The overarching objective of Daubert's gatekeeping requirement "is to ensure

12  the reliability and relevancy of expert testimony [and] to make certain that an expert, whether

13  basing testimony upon professional studies or personal experience, employs in the courtroom the

14  same level of intellectual rigor that characterizes the practice of an expert in the relevant field."

15  Kumho Tire, 526 U.S. at 152.  Thus, "[t]he district court is not tasked with deciding whether the

16  expert is right or wrong, just whether [the] testimony has substance such that it would be helpful

17  to a jury." Alaska Rent-A-Car, 738 F.3d at 969–70.  "Shaky but admissible evidence is to be

18  attacked by cross examination, contrary evidence, and attention to the burden of proof[—]not

19  exclusion." Primiano, 598 F.3d at 564; see also Alaska Rent-A-Car, 738 F.3d at 969 ("Basically,

20  the judge is supposed to screen the jury from unreliable nonsense opinions, but not exclude

21  opinions merely because they are impeachable.").  "[R]ejection of expert testimony is the

22  exception rather than the rule." Fed. R. Evid. 702 advisory committee notes.

23      *a.    Qualified*

24      Defendants' contention that Fulks is not qualified is not compelling.  According to his

25  expert report and curriculum vitae, Fulks accrued twenty-five-and-a-half years of corrections

26  experience before retiring as an associate warden in 2008.  In 1999, he was certified by CDCR as a

27  use-of-force instructor, and thereafter accumulated approximately 200 hours instructing

28  correctional officers, supervisors, managers, and non-custody staff on CDCR use-of-force policy

and job training.  As a correctional captain, Fulks was tasked by the warden to act as the use-of-force coordinator, which required him to review all use-of-force incidents to ensure compliance with the use-of-force policy.  Fulks also chaired use-of-force review committees and conducted administrative inquiries into the use of force by custody staff and referred incidents for investigation when force was used under questionable authority.  Additionally, during his career as a correctional officer, sergeant, and lieutenant, Fulks reviewed or was himself involved in hundreds of incidents that required the use of force.  Moreover, from November 1986 to March 1990, Fulks worked as a correctional sergeant at the Tehachapi prison, which is where the underlying incidents occurred.

Collectively, Fulks' experience "lays at least the minimal foundation of knowledge, skill, and experience required in order to give 'expert' testimony" on the use of force in a prison setting.  Notably, other courts have qualified experts in excessive-force cases with experience similar to Fulks'.  See, e.g., Estate of Casillas v. City of Fresno, No. 1:16-CV-1042 AWI-SAB, 2019 WL 586747, at *6 (E.D. Cal. Feb. 13, 2019) (rejecting argument that use-of-force expert was not qualified to opine on an incident occurring in 2015 because his relevant experience was from the 1980s and 1990s); Henderson v. Peterson, No. C 07-2838 SBA (PR), 2011 WL 2838169, at *10–11 (N.D. Cal. July 15, 2011) (rejecting argument that use-of-force expert with thirty-six years of corrections experience was not qualified because his only experience consisted of administrative review of use-of-force reports between 1970 and 1994); Cotton v. City of Eureka, No. C 08–4386 SBA, 2010 WL 5154945, at *13 (N.D. Cal. Dec. 14, 2010) (rejecting argument that expert was "not qualified to opine on the use of force for an incident occurring in 2007 because he has not received any training on the use of force since his retirement in 1993"); Knapps v. City of Oakland, 647 F. Supp. 2d 1129, 1148 (N.D. Cal. 2009) (determining former county sheriff who retired sixteen years before testifying qualified as an excessive-force expert).

In sum, Fulks is qualified as a use-of-force expert.  Defendants' objections to his experience go to the weight of his testimony—a tack they can pursue on cross-examination at trial—not his disqualification.

1        **_b.        Relevant, reliable, helpful_**

2        The Court also finds Defendants' argument against the relevance, reliability, and

3    helpfulness of Fulks' opinions to be unavailing.  In his report, Fulks states that he has relied on the

4    following information in reviewing this case:  (1) Defendants' document production, including

5    Stevenson's strategic offender management file, incident reports and logs, CDCR's use-of-force

6    policy, use-of-force manager and coordinator review reports, incident photos, Stevenson's medical

7    file, in-service training records, and a videotaped interview of Stevenson recorded by correctional

8    staff; (2) transcripts from state court proceedings arising from the beating incident; (3) depositions

9    of officers and witnesses, including Defendant Crotty; and (4) an investigative report produced by

10    the public defender's office consisting of an interview with an inmate witness.

11        Based on this review, Fulks renders two primary conclusions:  First, the use of force by

12    custody staff during the beating incident was unnecessary and excessive per the CDCR use-of-

13    force policy, and second, based on reporting discrepancies, conflicting and changing testimony

14    from Crotty, and Stevenson's videotaped interview, the beating incident did not happen as stated

15    within the contents of the custody staff's reports.  As to the second conclusion, Fulks states his

16    opinion is based in part on his "experience as a Use of Force instructor, a Use of Force

17    coordinator, having been assigned as a Chairperson for the Use of Force Committee review, [his]

18    experience conducting administrative inquiries into the use of force, and having conducted internal

19    affairs investigation into possible staff misconduct during the Use of Force."

20        On both fronts, these opinions and proposed testimony are certainly relevant to

21    Stevenson's case.  The first conclusion goes to the heart of Stevenson's claims arising from the

22    beating incident.  The second conclusion appears tailored to undermine Defendants' case in so far

23    as it is premised on their own (or other internally reported) accounts of the incident.  Relevance is

24    not in question here.  In light of the aforementioned qualifications, the same is also true of the

25    reliability and helpfulness of Fulks' proposed testimony.  As to reliability, after asserting his

26    qualifications, Fulks demonstrates throughout his report his knowledge of and experience with

27    correctional and administrative practices regarding uses of force.  See Hangarter v. Provident Life

28    & Accident Ins. Co., 373 F.3d 998, 1017 (9th Cir. 2004) (explaining that "the reliability of non-

1    scientific testimony . . . depends heavily on the knowledge and experience of the expert, rather

2    than the methodology or theory behind it" (quoted source omitted)).  While Defendants contest

3    specifics in Fulks' report—e.g., no reasonable explanation as to why Stevenson no longer posed

4    an immediate threat to Crotty after having broken away from Crotty's grasp while in restraints—

5    those challenges are disagreements of opinion that can be probed at trial, not cause to exclude

6    Fulks' conclusions on reliability grounds.  Finally, given relevance and reliability, it is also

7    evident that Fulks' testimony will aid the jury in understanding how force is to be deployed by

8    reasonable officers in certain situations and how uses of force are to be accounted for in

9    correctional settings—the crux of Stevenson's claims and a key source of potential rebuttal.

10                      *c.      Province of the jury*

11           Defendants' alternative argument that Fulks' proposed testimony be limited so as to not

12   invade the province of the jury is well taken.  In his report, Fulks frames his opinions within the

13   specific factual circumstances of this case (i.e., Defendants used excessive force against Stevenson

14   during the beating incident on December 7, 2012.  While expressions of this kind are permissible

15   within the context of an expert report, the trier of fact must do the necessary fact-finding at trial.

16   To prevent invasion of the jury's province here, the Court will require the parties to use

17   hypothetical questioning to explore Fulks' testimony, conclusions, and opinions at trial.  See

18   Smolen v. Chater, 80 F.3d 1273, 1288 (9th Cir. 1996) ("[T]he use of leading, hypothetical

19   questions to elicit expert opinions is entirely appropriate."); see also Willis v. City of Fresno, 680

20   F. App'x 589, 591 (9th Cir. 2017) (holding that where expert opined on threat posed by decedent

21   and hypothesized that deadly force would have been appropriate if decedent had been reaching for

22   a gun, it was not abuse of discretion to allow expert "to respond to hypotheticals based on

23   evidence presented at trial [because] the jury was responsible for resolving whether [decedent]

24   was reaching for the gun at the time [the officer] fired"); Valtierra v. City of Los Angeles, 99 F.

25   Supp. 3d 1190, 1199 (C.D. Cal. 2015) (finding that although expert was "qualified to opine as to

26   whether the officers' use of force was excessive or unreasonable, . . . such testimony should be

27   explored through hypothetical questioning so as to avoid invading the province of the jury").  In

28   addition, although Fulks may testify as to percipient witnesses' testimony and his opinions on

whether certain actions were in accordance with relevant training and best practices, his testimony should not include credibility assessments.  See United States v. Candoli, 870 F.2d 496, 506 (9th Cir. 1989) (explaining an expert must not testify specifically to a witness's credibility or testify in such a manner as to improperly buttress credibility).  Nor should it include testimony as to intent, motive, or state of mind.  Hill v. Novartis Pharms. Corp., No. 1:06-cv-00939-AWI-DLB, 2012 WL 5451816, at *2 (E.D. Cal. Nov. 7, 2012) ("The Court finds this and other testimony regarding defendant's intent, motives or state of mind to be impermissible and outside the scope of expert testimony.").  Nor instruction on the law.  A.G. v. Paradise Valley Unified Sch. Dist. No. 69, 815 F.3d 1195, 1207 (9th Cir. 2016) ("[A]n expert witness cannot give an opinion as to her legal conclusion, i.e., an opinion on an ultimate issue of law.  Similarly, instructing the jury as to the applicable law is the distinct and exclusive province of the court." (quoting Hangarter, 373 F.3d at 1016)).

Fulks' job as an expert witness is merely to aid the jury in comprehending the use-of-force standard for objectively reasonable officers.  Given Fulks' experience, he may also opine generally on matters falling within the scope of administrative reporting and review of use-of-force incidents (presuming relevance and foundation).  But in each case, Fulks' testimony should comply with the guidelines above, and he should not draw factual conclusions or speculate on the specifics of this particular case.  In other words, Fulks (like any other expert) should not decide for the jurors what happened in critical moments for which he was not present.

### d.   Conclusion:

In sum, the Court will deny Defendants' motion to exclude the opinions and testimony of Stevenson's use-of-force expert Daniel Fulks.  Assuming he intends to rely on the materials he reviewed and the trial testimony of percipient witnesses regarding certain facts, Fulks is generally qualified to opine on uses of potentially excessive force, as well as matters of administrative reporting and review of uses of force within a correctional setting.  At trial, Fulks' testimony shall be subject to the guidelines set forth above so as to not invade the province of the jury.

**B.**      **Defendants' Motion No. 4 concerning Stevenson's battery on an officer conviction**

Defendants seek an order permitting references to and evidence of Stevenson's guilty plea to a criminal charge of battering Officer Crotty.  (Doc. No. 115.)  Defendants declare that Stevenson has stipulated to the facts that he pleaded guilty to and was convicted of battery on Crotty arising from the beating incident, and further stipulated that he will not dispute those facts at trial.  Stevenson has not filed opposition to Defendants' motion.  Accordingly, Defendants' motion will be granted based on and in a manner consistent with the parties' stipulation.

**C.**      **Defendants' Motion No. 5 concerning Stevenson's medical evidence**

Defendants seek an order excluding all evidence or opinions constituting medical conclusions with respect to Stevenson's injuries stemming from the beating incident, and the cause thereof, that are not supported by expert testimony.  (Doc. No. 116.)

**1.**      **The parties' arguments:**

Defendants argue neither Stevenson nor any other lay witness can offer opinions regarding the proper medical diagnosis and causation of Stevenson's injuries because those opinions can be rendered only by medical experts pursuant to Rule 702.  Defendants acknowledge that Stevenson may testify as to the symptoms he experienced as a result of the alleged incident, his response to those symptoms, and the information he communicated to his doctors.

In opposition, Stevenson contends that Defendants' request is vague and unclear based on different wording used throughout their motion.  (Doc. No. 145 at 7–8.)  Stevenson states that he has no intention to testify as an expert, but asserts that "medical conclusions" is an overbroad concept.  Stevenson adds that he should be able to testify as to his knowledge of his body, including the physical trauma he suffered to his leg before this case (i.e., that he was shot in the leg, underwent surgical procedures, and has post-surgical physical and functional abnormalities with respect to this leg).  Likewise, he argues that he should also be able to describe not only the intensity and duration of the pain he suffered as a result of the baton beating on his infirm leg or being slammed face-first into a wall, but also his subsequent observations of bruising, cuts, and abrasions.  He asserts that this evidence is well within the scope of lay testimony, rationally based

1  on his perceptions, helpful in understanding his testimony, and not at all based on specialized

2  knowledge that only an expert might have.

3      **2.      Analysis:**

4      Under Federal Rule of Evidence 701, a lay person may offer testimony in the form of an

5  opinion if it is "(a) rationally based on the witness' perception, (b) helpful to clearly understanding

6  the witness' testimony or to determining a fact in issue, and (c) not based on scientific, technical,

7  or other specialized knowledge within the scope of Rule 702."  Fed. R. Evid. 701.  Under Rule

8  702, a person is permitted to testify as to "scientific, technical or other specialized" information if

9  the witness is "qualified as an expert by knowledge, skill, experience, training or education" and

10 the testimony is based upon sufficient facts or data, the testimony is based upon reliable analysis

11 and the witness applies this reliable analysis to the data.  Fed. R. Evid. 702.  Regarding medical

12 testimony, the Ninth Circuit has stated that explaining medical diagnoses is beyond the

13 competence of lay witnesses.  Tobeler v. Colvin, 749 F.3d 830, 833 (9th Cir. 2014).  But lay

14 witnesses can testify as to perceived symptoms (i.e., what is felt, exhibited, or experienced over

15 time) and how a condition affects one's ability to function.  Id.

16     As an initial matter, to the extent Defendants' motion is meant to confirm that Stevenson

17 cannot provide formal medical expert testimony, there is no disagreement between the parties.

18 Stevenson cannot testify as a medical expert, nor can any other witness who has not been found

19 qualified to do so under Rule 702.  On the other hand, the parties also agree that Stevenson can

20 testify as to his subjective perception of his symptoms (i.e., his physical and mental conditions) as

21 well as his response to those symptoms and any other personal knowledge he has based upon his

22 own perceptions.  (This includes, if applicable, cross-examination of any testimony a medical

23 expert provides as to his own perceptions.)  They also agree he can testify to any information he

24 conveyed to medical professionals.  And there appears to be no disagreement that other lay

25 witnesses—while not providing medical expert opinions—can testify as to their own perceptions

26 as they relate to Stevenson's physical and mental conditions.

27     Accordingly, the Court will grant Defendants' motion to the extent that Stevenson and

28 other lay witnesses may not provide medical opinions that are subject to Rule 702.  This excludes

13

1  lay witness evidence in the form of medical diagnoses, medical prognoses, and medical causation.

2  This does not exclude testimony and other evidence from Stevenson regarding his own

3  experiences, observations, actions, and symptoms, as well as his own communications to medical

4  personnel.  This also does not exclude lay opinions regarding Stevenson's physical or mental pain

5  (subject to proper foundation under Rule 701).

6

7  **D.    Defendants' Motion No. 7 concerning Stevenson's witness disclosures**

8      Defendants seek an order excluding all witnesses who were not timely disclosed, including

9  those witnesses who were not disclosed and thereby not timely disclosed.  (Doc. No. 118.)

10     **1.    The parties' arguments:**

11     Pursuant to Federal Rules of Civil Procedure 26(a) and (e), Defendants move to exclude

12  from trial any witnesses Stevenson named in his second and sixth supplemental disclosures.

13  Defendants contend that these witnesses were not disclosed in a timely manner.  Defendants assert

14  the same is true for a list of witnesses that they anticipate Stevenson may call (despite having not

15  been disclosed).  As to all of these witnesses, Defendants contend that Stevenson's failure to

16  timely disclose has prevented them from conducting witness-related discovery and will leave them

17  severely prejudiced at trial if these witnesses are allowed to testify.

18     Stevenson disputes Defendants' motion in its entirety.  (Doc. No. 145 at 8–11.)  He argues

19  that his disclosures were either timely or within a reasonable time after Defendants supplemented

20  their own disclosures or produced court-ordered discovery.  Hence, Stevenson continues, if there

21  is any delay, it is solely attributable to Defendants having withheld the information in the first

22  place.  Stevenson also provides explanation as to what circumstances Defendants' list of

23  anticipated witnesses would be called, and assets that calling the respective witnesses under these

24  circumstances would be proper.

25     **2.    Analysis:**

26     Under Rule 26(a), a party must provide the opposing party with "the name and, if known,

27  the address and telephone number of each individual likely to have discoverable information—

28  along with the subjects of that information—that the disclosing party may use to support its claims

or defenses, unless the use would be solely for impeachment."  Fed. R. Civ. P. 26(a)(1)(A)(i).

Rule 26(e) dictates that a party is under a continuing obligation to supplement its discovery

responses in a timely manner.  See Fed. R. Civ. P. 26(e)(1).  If a party fails to identify a witness or

make a disclosure that is required under Rule 26(a) or (e), Federal Rule of Civil Procedure

37(c)(1) states that "the party is not allowed to use that information or witness to supply evidence

on a motion, at a hearing, or at a trial, unless the failure was substantially justified or is harmless."

Fed. R. Civ. P. 37(c)(1).  Courts consider the following factors to determine whether to preclude

the introduction of evidence pursuant to Rule 37:  "(1) the surprise to the party against whom the

evidence would be offered; (2) the ability of that party to cure the surprise; (3) the extent to which

allowing the evidence would disrupt trial; (4) the importance of the evidence; and (5) the

nondisclosing party's explanation for it[s] failure to disclose the evidence."  S.F. Baykeeper v.

West Bay Sanitary Dist., 791 F. Supp. 2d 719, 733 (N.D. Cal. 2011).  "The party facing sanctions

bears the burden of proving that its failure to disclose the required information was substantially

justified or is harmless."  R & R Sails, Inc. v. Ins. Co. of the State of Pa., 673 F.3d 1240, 1246 (9th

Cir. 2012).

In his second supplemental disclosures, filed on May 6, 2019, Stevenson identified four

witnesses:  Joshua Lee Byerly, Thomas Faulkner, William Shaw, and Theresa Stevenson.

Defendants argue these disclosures came after the February 13, 2019 deadline for discovery of

non-expert witnesses.  Stevenson responds that this deadline was pushed back when the Court

approved the parties' stipulation to continue non-expert discovery until May 14, 2019.  Stevenson

is correct (Doc. No. 53), and his disclosure of these witnesses was timely.

In his sixth supplemental disclosures, filed on August 13, 2019, Stevenson identified

eleven witnesses:  Lt. K. Campbell; Captain J. Lundy; Warden K. Holland; Captain J. Jones;

Almorai; Jackson; Internal Affairs Investigator E. Henderson; Internal Affairs Investigator Sr.

Special Agent J. Rodriguez; Machado; Inmate Junior Rendon Dominguez; ISU Investigator J.

Parker; and Lt. P. Trupe.  Defendants once again argue these disclosures came after the February

13, 2019 deadline.  In response, Stevenson asserts that these witnesses were disclosed after their

names were revealed in documents that Stevenson received on August 8, 2019, as part of

15

Defendants' compliance with a June 12, 2019 order requiring their production (see Doc. No. 63). With the full context, Stevenson's supplemental disclosure either complies with the timeliness requirement of Rule 26(e), or was substantially justified under Rule 37(c)(1).  While some of newly identified witnesses were no strangers to this action—for instance, Warden Holland, Almorai, and Jackson all appear to have been former named defendants—Stevenson acted in a timely manner to supplement his disclosure only days after he received relevant discovery from Defendants that was produced pursuant to a court order.

Finally, Defendants move to exclude from trial the following witnesses that they believe Stevenson may call despite not disclosing:  ISU Officer Ronald J. Frye; Custodian of Records; Reynaldo Richard Vasquez; Registered Nurse T. Lapham; Sgt. Kelly; K. Hosey (Correctional Counselor II-Supervisor and Appeals Coordinator at CCI).  First, Stevenson points out that Vasquez was actually disclosed as part of his sixth supplemental disclosure.  Stevenson contends that he was only able to disclose Vasquez after Defendants provided Stevenson information regarding Vasquez's parole agent in their fifth supplemental disclosure on September 26, 2019. Accordingly, Stevenson asserts that his disclosure of Vasquez within his sixth supplemental disclosure on October 8, 2019, was timely under the circumstances.  Consistent with the sixth supplemental disclosure discussion above, Stevenson's disclosure of Vasquez was either timely within the scope of Rule 26(e) or substantially justified under Rule 37(c)(1).  Second, Stevenson admits that Nurse Lapham and Sgt. Kelly should have been previously disclosed but were not, and thus concedes any effort to call them as witnesses at trial.  Third, Stevenson acknowledges that he has not disclosed Frye, Hosey, and a custodian of records, but contends that these witnesses would only be called for basic foundation purposes.  While he makes no substantive effort to particularize how a custodian of records will prove necessary or important at trial, Stevenson notes that the parties are considering treating as joint exhibits the documentary evidence that was created by Frye and Hosey, which would negate need for their appearance.

In sum, the Court will grant in part and deny in part Defendants' motion.  Defendants' motion to exclude the witnesses identified in Stevenson's second and sixth supplemental disclosures (including Vasquez) will be denied because Stevenson's disclosures were either timely

or his delay was substantially justified in light of the relevant discovery deadline and the parties' continuing production.  Defendants' motion to exclude Nurse Lapham and Sgt. Kelly as witnesses will be granted in light of Stevenson's concession.  Finally, Defendants' motion to exclude Frye, Hosey, and Custodian of Records will be granted because no disclosure of these witnesses was made; however, if Stevenson seeks to call one of these three at trial, he may still make a case at that time that his previous failure to disclose was harmless under Rule 37(c)(1).

**E.      Defendants' Motion No. 8 concerning Stevenson's evidence disclosures**

Defendants seek an order excluding all evidentiary exhibits that were not timely disclosed. (Doc. No. 119.)

**1.      The parties' arguments:**

Defendants argue that Stevenson filed his second, third, fourth, and sixth supplemental disclosures after the deadline for completion of all non-expert discovery.  Defendants contend that the tardy supplemental disclosures were not justified, and that Stevenson's failure to comply with the deadline prevented them from conducting discovery on the disclosed items such that they will be severely prejudiced if Stevenson is allowed to use any documents and items from his late disclosures at trial.  In opposition, Stevenson asserts his disclosures were timely because the court approved the parties' stipulation to continue the relevant discovery deadline and Stevenson made timely disclosures after receiving relevant production from Defendants.  (Doc. No. 145 at 11–12.)

**2.      Analysis:**

The same disclosure requirements of Rules 26 and 37 apply here as well.  In his second supplemental disclosures, filed on February 13, 2019, Stevenson disclosed a use-of-force training tape.  Defendants contend this disclosure was untimely because the Court had imposed a non-expert discovery deadline of February 13, 2019.  As noted above, Stevenson correctly points out that the Court approved the parties' stipulation to modify this deadline to May 14, 2019. Accordingly, Stevenson's disclosure was timely.

In his third supplemental disclosures, filed on June 3, 2019, Stevenson disclosed a report from Public Defender Investigator T. Lowe.  Stevenson states that he does not intend to introduce

1   Lowe or refer to this report at trial.  In turn, Stevenson's concession will resolve this matter.

2   In his fourth supplemental disclosures, filed on July 1, 2019, Stevenson disclosed an

3   exhibit titled "Office of the Inspector General, June 2019, Monitoring the Use of Excessive Force:

4   The California Department of Corrections and Rehabilitation Continues to Perform Well in Self-

5   Assessing Its Use-of-Force Incidents, but Has Shown Little Improvement in Its Overall

6   Compliance with Policies and Procedures."  Defendants contend this disclosure was untimely.

7   Stevenson asserts that, as suggested by its title, the disclosed report was published in June 2019,

8   thus leaving him unable to disclosure the report by the May 14, 2019 deadline.  Stevenson

9   contends that his disclosure still constituted a timely supplement under Rule 26(e).  On one hand,

10  Stevenson's disclosure came amidst the parties' ongoing non-expert discovery.  On the other hand,

11  it came after the May 14, 2019 deadline and unlike his sixth supplemental disclosures it did not

12  come in response to his receipt of new production from Defendants or in response to a court order.

13  Accordingly, this disclosure was untimely made under Rule 26(e).  That said, Stevenson's

14  explanation for his tardiness and the lack of serious suggestion of surprise or disruption counsel

15  against preclusion under Rule 37 on grounds of both substantial justification and harmlessness.

16  S.F. Baykeeper, 791 F. Supp. 2d at 733.

17  In his sixth supplemental disclosures, filed on August 13, 2019, Stevenson disclosed the

18  redacted records that Defendants produced on July 12, 2019, and August 8, 2019, in response to a

19  June 10, 2019 order requiring their production.  These records are the documents in which

20  Stevenson identified the witnesses that he disclosed with his sixth supplemental disclosures.  As

21  discussed above, with this additional context in hand, Stevenson's disclosure shall be considered

22  either timely under Rule 26(e) or substantially justified under Rule 37(c)(1).

23  In sum, the Court will grant in part and deny in part Defendants' motion.  Defendants'

24  motion to exclude the evidence referenced in Stevenson's second, fourth, and sixth supplemental

25  disclosures will be denied because the disclosures were either timely in light of the relevant

26  discovery deadline and the parties' continuing production in response to a court order, or late but

27  with failure that was harmless or substantially justified.  Defendants' motion to exclude the

28  evidence referenced in Stevenson's third supplemental disclosure will be granted in light of his

18

1 concession.

2

3 **F.      Defendants' Motion No. 9 concerning Stevenson's dismissed claims**

4       Defendants seek an order excluding evidence of Stevenson's dismissed claims.  (Doc. No.

5 120.)  Defendants declare that Stevenson has agreed and stipulated to exclude all references to and

6 evidence of the dismissed claims and former named defendants at trial.  Defendants further declare

7 that this should not preclude Stevenson's counsel from referencing former named defendants by

8 name.  Stevenson did not file an opposition to Defendants' motion.  But in a declaration,

9 Stevenson's counsel clarified that the Court should not bar references to the facts underlying this

10 case.  (Doc. No. 145-1 at 3.)  Counsel further declared that in addition to mentions of the former

11 named defendants, Stevenson should still be able to introduce evidence that served as a part of a

12 dismissed claim.  As an example, Stevenson states that he should be able to introduce evidence

13 that on November 11, 2012, he was pepper sprayed, but that he should not be able to introduce

14 evidence that this incident was the basis for a now-dismissed claim in his amended complaint.

15       As to its specifics, the following named defendants have been dismissed from this action:

16 K. Holland, warden; S. Foster, sergeant; R. Valverde, correctional officer; J. Dunnahoe,

17 correctional officer; V. White, correctional officer; I. Alomari, correctional officer; T. Jackson,

18 correctional officer, R. Frye, ISU employee; and Does 1–100.  The following claims have been

19 dismissed from this action:  First Cause of Action alleging a § 1983 claim for the pepper-spray

20 incident against Dunnahoe, Valverde, Crotty, and White; Second Cause of Action alleging a

21 § 1983 claim for the holding-cell incident against Crotty *to the extent the claim premised on the*

22 *Fourteenth Amendment*; Third Cause of Action alleging a § 1983 claim for the beating incident

23 against Crotty, Gonzales, and Cantu *to the extent the claim premised on the Fourteenth*

24 *Amendment*; Fourth Cause of Action alleging a § 1983 claim for false reporting of beating incident

25 against Crotty, Gonzales, Cantu, Frye, and Foster; Fifth Cause of Action alleging a § 1983 claim

26 for false testimony and Brady violation against Crotty; Sixth Cause of Action alleging a § 1983

27 claim for property damage and vandalism of call against Does 41–50; Seventh Cause of Action

28 alleging § 1983 claim for supervisory liability based on deliberate indifference against Holland

and Foster;  Eighth Cause of Action alleging § 1983 claim for administrative grievance process failure against Alomari and Jackson; Ninth Cause of Action alleging pendent assault/battery claim for pepper-spray incident against Dunnahoe, Valverde, Crotty, and White; Tenth Cause of Action alleging pendent assault/battery claim for holding-cell incident against Crotty; Eleventh Cause of Action alleging pendent assault/battery claim for beating incident against Crotty, Gonzales, and Cantu; Twelfth Cause of Action alleging violations of the California Government Code and the Unruh, Ralph, and Bane Acts against all defendants; Thirteenth Cause of Action alleging pendent negligence claim against Holland and Foster.

The parties' agreement can carry the day on this motion.  Accordingly, the Court will grant Defendants' motion based on and in a manner consistent with the parties' stipulation:  references to former claims and named defendants shall be excluded to the extent those references are specifically tied to proceedings in this case; however, references to the facts underlying the erstwhile claims and defendants can be used for purposes other than referring to the litigation.

## G.     Defendants' Motion No. 10 concerning Defendants' indemnification

Defendants seek an order excluding references to or evidence of their indemnification by the State of California if they are found liable for Stevenson's injuries.  (Doc. No. 122.) Defendants declare that Stevenson has agreed and stipulated to such exclusion.  Stevenson has not otherwise opposed Defendants' motion.  Accordingly, the Court will grant Defendants' motion based on and in a manner consistent with the parties' stipulation.

## H.     Defendants' Motion No. 11 concerning evidence of settlement negotiations

Defendants seek an order excluding references to the fact that the parties engaged in settlement negotiations, including any references to the substance of those negotiations and the fact that those negotiations were not successful.  (Doc. No. 123.)  Defendants declare that Stevenson has agreed and stipulated to their request.  Stevenson has not filed an opposition. Accordingly, the Court will grant Defendants' motion based on and in a manner consistent with the parties' stipulation.

**I.      Defendants' Motion No. 12 concerning bifurcation of trial (liability and damages)**

Defendants seek an order bifurcating the trial into separate trials for liability and damages. (Doc. No. 125.)

**1.      The parties' arguments:**

Defendants argue that the jury should first determine whether they are liable before admission of any evidence regarding damages.  Defendants contend that bifurcating trial will promote judicial economy and avoid inconvenience and prejudice to them.  As to the potential for prejudice, Defendants emphasize that they are at risk of the jury making its liability determination based on Stevenson's damages evidence.  Defendants assert that bifurcation will not burden the proceedings given the trial is expected to be short.

In response, Stevenson opposes the proposed bifurcation, stating, "the outrageous nature of Defendants' conduct merges with their liability.  As such, damages is intertwined with liability; bifurcation would not serve the interests of judicial economy, and would impinge on [his] right to a jury trial.  [He] is entitled to tell his story to the jury without being hampered by Defendants' desire to not be prejudiced by their own misconduct."  (Doc. No. 145 at 12–13.)  Stevenson shares his intent to argue to the jury in his case in chief that, as compensatory damages, California state law values a prisoner's time at $140 per day of wrongful confinement, and that the cause of his wrongful imprisonment was the terror and brutality that Defendants inflicted on him.  Stevenson requests that if the court bifurcates damages, that bifurcation be limited to punitive damages.

**2.      Analysis:**

Under Federal Rule of Civil Procedure 42(b), a court has broad discretion to order separate trials based on separate issues or claims "[f]or convenience, to avoid prejudice, or to expedite and economize."  Fed. R. Civ. P. 42(b); Jinro Am., Inc. v. Secure Invs., Inc., 266 F.3d 993, 998 (9th Cir. 2001).  "A court might bifurcate a trial to 'avoid [ ] a difficult question by first dealing with an easier, dispositive issue,' or to avoid the risk of prejudice."  Estate of Diaz v. City of Anaheim, 840 F.3d 592, 601 (9th Cir. Aug. 24, 2016) (internal citations omitted); see Zivkovic v. S. Cal. Edison Co., 302 F.3d 1080, 1088 (9th Cir. 2002) (explaining bifurcation under Rule 42(b) may "defer[] costly and possibly unnecessary proceedings pending resolution of potentially dispositive

preliminary issues").  "It is clear that Rule 42(b) gives courts the authority to separate trials into liability and damage phases."  De Anda v. City of Long Beach, 7 F.3d 1418, 1421 (9th Cir. 1993).  In exercising this discretion, the court should consider "potential prejudice to the parties, potential confusion to the jury, and the relative convenience and economy which would result" from bifurcation.  Green v. Baca, 226 F.R.D. 624, 630 (C.D. Cal. 2005) (citing Cravens v. County of Wood, Ohio, 856 F.2d 753, 755 (6th Cir. 1988)).  "A decision ordering bifurcation is dependent on the facts and circumstances of each case."  Saxion v. Titan–C–Mfg., 86 F.3d 553, 556 (6th Cir. 1996).  "Absent some experience demonstrating the worth of bifurcation, 'separation of issues for trial is not to be routinely ordered.'"  Hamm v. Am. Home Prods. Corp., 888 F. Supp. 1037, 1039 (E.D. Cal. 1995) (quoting Fed. R. Evid. 42(b) advisory committee notes).

While neither party addresses the prospect, it seems very likely that separate trials for liability and damages would involve presentation of much of the same evidence.  For example, to prove he is entitled to general damages for physical and mental pain suffered as a result of excessive force used against him in the two underlying incidents, Stevenson will need to provide accounts of those incidents and their immediate aftermath.  This evidence will track that which he must present to prove that Defendants are liable for those damages in the first place because of their use of excessive force.  In so far as the liability evidence and damages evidence are entwined, bifurcating trial would raise additional line-drawing questions as to what evidence is relevant and admissible at the separate mini-trials.  Other cases have shown how this can go wrong.  See e.g., Martin v. Heideman, 106 F.3d 1308, 1311–12 (6th Cir. 1997) (determining bifurcation of liability and damages in an excessive-force case was improper because the extent of the plaintiff's damages was relevant to the question of liability).  Moreover—contrary to Defendants' claims of additional convenience and judicial economy—bifurcating trial in this fashion despite entwined evidence portends to prolong the proceeding, something that inherently carries greater risk of prejudice to Stevenson.  See Scott v. City of Pasadena, No. CV 07-07856 MMM (AJWx), 2014 WL 12806259, at *8 (C.D. Cal. Feb. 6, 2014) (denying bifurcation request in excessive-force case because entwined evidence likely to produce more prejudice than convenience or efficiency).  In sum, the Court will deny Defendants' motion.  Although the trial will proceed in a segmented

fashion that includes separate phases for liability, liability damages amounts and whether punitive

damages are warranted, and punitive damage amounts (if necessary), the Court declines to

exercise its discretion under Rule 42(b) to hold separate trials for liability and damages.

**J.     Defendants' Motion No. 13 concerning bifurcation of trial (procedural issues)**

Defendants seek an order bifurcating the issues of statute of limitations and equitable

tolling from the rest of the triable issues arising from Stevenson's claims.  (Doc. No. 126.)

**1.     The parties' arguments:**

Defendants have consistently argued that Stevenson's claims arising from the November

11, 2012 holding-cell incident are time-barred and that those claims should not be saved by

equitable tolling.  The parties agree that the applicable statute of limitations ran on November 12,

2016.  At summary judgment, the Court explained that application of equitable tolling was

dependent on Stevenson having submitted a Form 602 appeal to the prison by December 12, 2012.

In short, this action by Stevenson would have initiated the mandatory exhaustion process; absent

doing so, Stevenson could not make a case that California's equitable tolling doctrine should apply

in his favor.  Weighing arguments and evidence from both sides, the Court concluded that

summary judgment in favor of Defendants was not appropriate on this issue because there

remained a disputed issue of material fact as to whether Stevenson submitted an appeal by

December 12, 2012.  Importantly, Stevenson testified that he submitted an appeal the "day or so

after" the holding-cell incident.  Thus, to award Defendants summary judgment, the Court

explained it would need to make a credibility determination as to Stevenson's testimony.  This, the

Court concluded, was a determination better left to the jury.

Defendants now move to bifurcate trial such that their statute of limitations defense and the

adjacent equitable tolling issue are tried separately as threshold questions.  In support, Defendants

contend that bifurcation will (1) convenience all involved because a jury determination in their

favor on the threshold questions would avoid further trial on Stevenson's claims arising from the

holding-cell incident; (2) prevent prejudice caused by the presentation of irrelevant evidence if the

jury determines the threshold questions in their favor; and (3) promote expedition and economy.

1    Stevenson objects to bifurcating the trial as Defendants propose.  (Doc. No. 145 at 13.)  In

2    support of his theory that he submitted a timely appeal, Stevenson expects to present testimonial

3    evidence from other inmates that shows their difficulty having prison grievances and appeals

4    processed.  Stevenson asserts that the inmates will also testify to other subjects, and that judicial

5    economy interests are against separating the limitations period questions from the rest of trial.

6         **2.    Analysis:**

7         Once more, Rule 42(b) grants courts broad discretion to order separate trials based on

8    separate issues or claims "[f]or convenience, to avoid prejudice, or to expedite and economize."

9    Fed. R. Civ. P. 42(b).  Defendants offer two cases in support of their motion:  In Burnham

10   Chemical Co. v. Borax Consolidated, 170 F.2d 569, 572–73, 578 (9th Cir. 1948), the Ninth Circuit

11   affirmed a trial court order where statute of limitations questions had been separated from the

12   merits issues at trial.  Burnham does not address a live dispute on the particular bifurcation.  It was

13   cited, however, in Grisham v. Philip Morris, Inc., No. CV 02-7930 SVW RCX, 2009 WL

14   9102320, at *4 (C.D. Cal. Dec. 3, 2009), wherein the Central District bifurcated for trial a statute

15   of limitations question.  Citing to numerous authorities that have endorsed using Rule 42(b) in

16   such a fashion, the Grisham court bifurcated trial in light of the prospect of beneficially avoiding

17   presentation of voluminous evidence based on the preliminary resolution of a limited factual

18   question underlying the limitations period dispute.  Id. (citing, among others, Stewart v. RCA

19   Corp., 790 F.2d 624, 629 (7th Cir. 1986), and Wright & Miller, Federal Practice & Procedure

20   § 2389 & n.29 (2009)).

21        The same support for bifurcation can be identified in this case.  Namely, Stevenson's claim

22   based on the holding-cell incident is predicated on resolution of a threshold limitations period

23   question in his favor.  That question is a discrete factual matter that will require presentation of

24   limited evidence and argument to the jury.  If the jury determines that Stevenson cannot avail

25   himself of equitable tolling, the claim must be dismissed and trial will proceed to the merits solely

26   on his claims based on the beating incident.  And if the case is narrowed to a single incident, the

27   parties would be required to present less evidence and arguments as to the remaining claims,

28   which in turn means that the total length of trial will be cut down.  Against this potential benefit,

the Court sees minimal disruption of the course in which trial would otherwise proceed.  See Stewart, 790 F.2d at 629 ("The statute of limitations is a prime candidate for a limited trial under Rule 42(b), both because the issues may overlap very little with the merits of the case and because the potential savings are greatest when a case is put to death at an early stage.").  When weighed together, the scales tip in favor of the proposed bifurcation.  Accordingly, the Court will grant Defendants' motion and exercise its discretion to bifurcate trial on the statute of limitations issue related to Stevenson's holding-cell claim against Defendant Crotty.  The parties will have full opportunity to present opening statements, evidence, witnesses, closing arguments, and jury instructions specifically fitted for this issue, which will be tried first.  Likewise, trial will proceed on all other issues only after the jury has completed its deliberation on this issue.

**K.    Plaintiff's Motion No. 1 concerning Defendants' use-of-force expert Erik Pedersen**

Stevenson seeks an order excluding the opinions and testimony of Defendants' use-of-force expert, Erik Pedersen, as unqualified and unreliable.  (Doc. No. 117 at 2–5.)

**1.    The parties' arguments:**

Stevenson moves for the exclusion of Pedersen in his entirety or, in the alternative, for an order limiting Pedersen's opinions to matters that do not invade the province of the jury by permitting him only to comment on basic principles or hypotheticals, and not speak to the specific events of November 11, 2012 or December 7, 2012.  As a second alternative, Stevenson requests permission for his own use-of-force expert (Fulks) to be exempt from witness sequestration such that he can sit through Pedersen's testimony to assist counsel in cross-examination and facilitate rebuttal testimony.

As to his primary challenge, Stevenson first contends that Pedersen is not a qualified expert because he lacks the requisite experience, noting his lack of publication authorship and testimony as an expert.  (He raises discovery-based complaints that Defendants still have not provided requested information regarding Pedersen's in-service training records and curriculum vitae—failures on promises that have seen Stevenson refrain from noticing Pedersen's deposition.) Second, Stevenson argues that Pedersen's opinions are not reliable because he has not reviewed,

much less used, all the relevant evidence and because Pedersen's conclusions indicate unfamiliarity with the issues relevant to trial.  As to missing relevant evidence, Stevenson faults Pedersen for not reviewing Defendant Crotty's state court testimony, which he (Stevenson) claims contradicts Crotty's testimony in the instant action and Pedersen's conclusions drawn therefrom. Stevenson further faults Pedersen for discussing Fourth Amendment case law within his report, despite Stevenson's claims arising from allegations of Eighth Amendment violations.

Defendants object to Stevenson's motion.  (Doc. No. 146.)  They contend that Pedersen is qualified as a use-of-force expert.  (As to the discovery dispute, Defendants assert that Pedersen's report contains enough relevant information regarding his qualifications (in lieu of a curriculum vitae), produce certain requested documents with their opposition, and emphasize that Stevenson never noticed a deposition of Pedersen (hence no deposition was taken).)  Next, Defendants assert that Pedersen's opinions are reliable, relevant, and helpful to the jury.  Responding to Stevenson's argument, Defendants contend that any claimed deficiencies in Pedersen's use and assessment of all the relevant evidence go to the weight of his testimony, not his admissibility as an expert witness.  Defendants also assert that Pedersen's case law citation is meaningless as expert witnesses cannot provide legal conclusions.  Defendants lastly assert that Pedersen's testimony should not be limited to basic principles or hypotheticals, so long as he does not invade the province of the jury by making legal conclusions.  As to exempting Fulks from witness sequestration, Defendants argue that Stevenson has not carried his burden to make a fair showing that Fulks is required for the management of his case under Federal Rule of Evidence 615(c).

**2.    Analysis:**

*a.    Exclusion of Pedersen*

Stevenson's arguments against Pedersen do not go far.  To start, Pedersen is qualified.  In his report, Pedersen asserts he has worked for the CDCR for over eighteen years, during which time he has worked as a correctional officer, correctional sergeant, correction lieutenant, and captain (current role).  As a member of CDCR's crisis response team, a role held for approximately fifteen years, Pedersen was required to have an enhanced working knowledge of the CRCR's use-of-force policy.  In 2004, Pedersen became a certified trainer on various subjects

through CDCR in-service training.  Thereafter, he continued to obtain training experience through in-service training and involvement with the crisis response team.  For three years starting in 2012, Pedersen served as a primary use-of-force instructor.  In this role, he conducted training sessions for custody and non-custody staff and new employee orientations.  He estimates having taught use-of-force training at least three times per month during this assignment.  He was also required to participate in weekly institutional executive review committee meetings.  In 2015, Pedersen was certified as a master use-of-force instructor, and thereafter he assisted with training staff on use-of-force policy revisions.  Since 2015, Pedersen's primary involvement with the use of force is specific to his evaluation of force used by facility staff on an as-needed basis.

As set forth in his report, Pedersen's opinions and expected testimony are also relevant, reliable, and helpful.  Generally, Pedersen renders various conclusions that, based on correctional policies and in light of the respective circumstances, Defendants did not use excessive or unnecessary force during the underlying incidents (including the November 11, 2012 pepper-spray incident, which is no longer the primary subject of a claim).  Like with Fulks', these conclusions go to the heart of the case and are constructed in a manner so as to help the jury understand evidence or determine factual issues.  Relevance and helpfulness are shown.  As for reliability, in his report, Pedersen asserts he reviewed and relied on applicable use-of-force regulations and policies, proceedings in this case, CDCR incident reports, Stevenson's videotaped interview, Defendants' document production, Stevenson's prison file and medical records, photographs of Stevenson, Stevenson's administrative claim and criminal case, Stevenson's initial disclosures, and deposition transcripts.  In the rest of his report, Pedersen consistently displays methodological application of his experience and knowledge to the specific circumstances of this case.

By and large, Stevenson has not challenged particular conclusions of Pedersen's that he believes are not admissible on one ground or another.  Defendants are correct in their response that Stevenson's argument about Pedersen not reviewing or relying upon specific pieces of evidence is a matter for weight of testimony, not admissibility.  Likewise, Defendants are correct to note that Pedersen's proffer of conclusions with legal analysis is irrelevant for purposes of assessing his particular expertise.  Contrary to Defendants' argument, however, so long as Fulks' testimony is

cabined in ways to prevent its invasion of the province of the jury, Pedersen's will as well.  That is, Pedersen's testimony on whether Defendants' use of force was excessive or unreasonable should be limited to discussion of already presented testimony, hypothetical questioning, and opinions on whether actions were in accordance with training and best practices.  Casillas v. City of Fresno, 2019 WL 586747, at *8; Valtierra, 99 F. Supp. 3d at 1198.

In sum, the Court will deny Stevenson's motion to the extent it concerns exclusion of Defendants' use-of-force expert Erik Pedersen.

### b.    *Sequestration exemption for Fulks*

Under Rule 615, at a party's request or on its own volition the court shall order witnesses excluded so that they cannot hear other witnesses' testimony.  Fed. R. Evid. 615; see also United States v. Seschillie, 310 F.3d 1208, 1212–13 (9th Cir. 2002) ("The purpose of this rule is to prevent witnesses from 'tailoring' their testimony to that of earlier witnesses." (quoted source omitted)).  As an exception, the court is not authorized to exclude "a person whose presence a party shows to be essential to presenting the party's claim or defense." Fed. R. Evid. 615(c).  To avail oneself of Rule 615(c), the party seeking an exception must make a "fair showing" that the expert witness is in fact required for the management of the case." Seschillie, 310 F.3d at 1213 (quoting Morvant v. Constr. Aggregates Corp., 570 F.2d 626, 630 (6th Cir. 1978)).  There is no per se rule that expert witnesses will always meet the criteria of Rule 615(c). Id.  But the Ninth Circuit has recognized that the Rule 615(c) burden constitutes a fairly low bar, particularly for expert witnesses that need to hear the testimony of factual witnesses in order to properly provide opinion evidence.  Id. at 1214 (emphasizing the absence of countervailing reasons to sequester an expert that is acting only as an expert witness: "[A]n expert who is not expected to testify to facts, but only assumes facts for purposes of rendering opinions, might just as well hear all of the trial testimony so as to be able to base his opinion on more accurate factual assumptions." (quoting Opus 3 Ltd. V. Heritage Park, Inc., 91 F.3d 625, 629 (4th Cir. 1996))).

The Court will reserve further ruling on specific exemptions from sequestration at this time.  The parties have been informed that they may renew or raise any motion of this kind at the time the Court makes its formal witness exclusion order on the record at the start of trial.

**L.      Plaintiff's Motion No. 2 concerning evidence of his criminal history**

Stevenson seeks an order excluding evidence of his criminal history (other than the 2012 felony conviction for battery on a custodial officer).  (Doc. No. 117 at 6–7.)

**1.      The parties' arguments:**

Stevenson confirms his agreement to stipulate to the fact of his plea and conviction for the 2012 felony of battery on a custodial officer that relates to his case.  Otherwise, Stevenson moves to bar any mention of any other non-stipulated-to convictions, their underlying acts, or acts involving dishonesty, untruthfulness, or moral turpitude, including the length of incarceration and any restitution imposed.  He contends such evidence is either more prejudicial than it is probative or pertaining to criminal history that is more than ten years old.  Stevenson emphasizes that this request includes the redaction of any such reference from any document Defendants seek to introduce that is otherwise admissible.

In addition to the 2012 felony conviction, Defendants seek to admit for impeachment purposes evidence of four other felony convictions:  (1) a 1998 felony conviction for corporal injury on specific persons resulting in traumatic condition (Cal. Penal Code 273.5(a)), with no prison sentence; (2) a 2004 felony conviction for possession or ownership of a firearm by a felon or addict (Cal. Penal Code 29800(a)(1)), with a sixteen-month prison sentence; (3) a 2010 felony conviction for two charges of corporal injury on specific persons resulting in traumatic condition and two charges of assault with a deadly weapon (Cal. Penal Code 273.5(a) and 245(a)(1)), with a sixty-four-month prison sentence; (4) a 2012 felony conviction for battery on a custodial officer (Cal. Penal Code 241.1), with a forty-eight-month prison sentence; and (5) a 2017 felony conviction for DUI/bodily injury/death with two or more priors (Cal. Penal Code 23152(a)), with a sixty-month prison sentence.

In support of admission, Defendants argue that this evidence is probative of Stevenson's veracity and relevant to his honesty, integrity, and credibility at trial, without being overly prejudicial for the jury.  (Doc. No. 147 at 2–5.)  Generally, Defendants contend that Stevenson's convictions carry significant impeachment value, as this criminal history reveals that he "is, arguably, less likely to be convinced to tell the truth by the threat of perjury than someone who has

29

not spent the majority of their adult life incarcerated."  With regard to convictions over ten years old, Defendants explain they have provided Stevenson with sufficient written notice of their intent to use the convictions (through their opposition to his motion), and that evidence of these convictions is more probative than prejudicial as Stevenson's credibility and testimony are central to the case.  With regard to the 1998 conviction, Defendants assert that Stevenson's conviction for corporal injury is directly relevant to their states of mind—i.e., reason to fear Stevenson as a violent felon.  Defendants make a similar argument regarding the 2010 conviction, noting that Stevenson's repeated convictions for corporal injury indicate that Defendants had reason to fear him.  With regard to the 2017 conviction, Defendants contend that Stevenson's conviction and subsequent imprisonment are relevant to his claim for damages for over-incarceration.

In reply, Stevenson disagrees with Defendants' claim that any felony is relevant to their states of mind because Defendants have not provided foundation as to their familiarity with Stevenson's specific criminal history before the alleged incidents.  (Doc. No. 157 at 2–4.)  He also disputes that his convictions older than ten years offer probative value in terms of his veracity and credibility, much less enough to substantially outweigh their prejudicial effect.  He points out that none of the convictions included elements of dishonesty, fraud, or untruthfulness.  With regard to his 2017 felony conviction for driving under the influence causing injury, Stevenson asserts that his five-year prison term should be treated as a four-year term in light of subsequent changes to the applicable sentencing laws.  Stats. 2019, ch. 590, § 1, S.B. 136 (allowing for prison priors only if the prior was for conviction involving a sex offense).  He also again contends that because the conviction did not involve dishonesty or untruthfulness, its probative value does not substantially outweigh its prejudicial effect.

### 2.    Analysis:

For the purpose of attacking a witness's truthful character, evidence that a witness has been convicted of a crime that was punishable by imprisonment in excess of one year shall be admitted subject to Rule 403.  Fed. R. Evid. 609(a)(1)(A).  Prior convictions involving elements or admitted acts of dishonesty or false statements may also be used to impeach, regardless of the length of incarceration.  Fed. R. Evid. 609(a)(2).  Under Rule 609(b), prior convictions older than ten years

are admissible for impeachment purposes if their probative value substantially outweighs any prejudicial effect and reasonable written notice of intent to use is given.  Fed. R. Evid. 609(b).

The Ninth Circuit has outlined five factors for courts to consider when balancing the probative value of evidence against the prejudicial effect under Rule 609:  "(1) the impeachment value of the prior crime; (2) the point in time of the conviction and the witness's subsequent history; (3) the similarity between the past crime and the charged crime; (4) the importance of [the party's] testimony; and (5) the centrality of [the party's] credibility."  United States v. Hursh, 217 F.3d 761, 768 (9th Cir. 2000).  With regard to the ten-year limit under Rule 609(b), the Ninth Circuit has cited favorably to the committee notes from the adoption of the rule, which state in part that "[i]t is intended that convictions over 10 years old will be admitted very rarely and only in exceptional circumstances."  Simpson v. Thomas, 528 F.3d 685, 690 (9th Cir. 2008) (quoting Fed. R. Evid. 609 advisory committee notes).

It does not appear that any of Stevenson's prior convictions involved dishonesty or a false statement, thus ruling out admission under Rule 609(a)(2).  Furthermore, Stevenson has stipulated to the facts of the 2012 conviction.  (See discussion above regarding Defendants' Motion No. 4.)

The 2017 conviction falls under Rule 609(a)(1), which means admission for impeachment is mandated unless its probative value as to Stevenson's trustworthiness is substantially outweighed by unfair prejudice or another Rule 403 concern.  While the prior crime is different than the one at issue, Stevenson's testimony and credibility are important to this case.  Moreover, the conviction was relatively recent and occurred between the incidents in question and trial in this case.  The impeachment value seems a bit neutral at this point, but collectively the factors point in favor of admission.[2]  Notwithstanding, Stevenson may propose a jury instruction on this matter for the Court's review.

---

[2] Defendants also argue that the 2017 conviction should be usable in so far as Stevenson makes a claim for damages based on his over-incarceration.  Neither party fleshes out this argument any further.  Defendants may just be preemptively signaling one way in which they could impeach Stevenson.  But if Defendants are suggesting that had he not been over-incarcerated Stevenson would have committed and been convicted of the same felony sooner such that one way or another he would have been incarcerated, their argument is a stretch.  Cf. Willis v. Mullins, No. 1:04-CV-6542 AWI BAM, 2019 WL 1116200, at *4−5 (E.D. Cal. Mar. 11, 2019) (discussing potential for plaintiff to open door to additional evidence of prior convictions if he pursues damages for emotional distress and mental anguish).  Defendants may seek to revisit this matter at trial if it becomes necessary.

As for the 1998, 2004, and 2010 convictions, the analysis on balance tips in favor of exclusion under Rule 609(b).  While the 1998 and 2010 convictions were for crimes of corporal injury, which is in the ballpark of the excessive-force dispute underlying Stevenson's claims and could have utility for impeachment purposes, it strains to say that any probative value this evidence carries substantially outweighs the obvious prejudicial effect.  This does not appear to be one of the exceptional cases that avoids the Rule 609(b) prohibition.  This is just as true with regard to Defendants' contention that evidence of these convictions has probative value for purposes of showing Defendants' states of mind at the time of the alleged incidents.  Any probative value does not substantially outweigh the accompanying prejudicial effect.

In sum, the Court will grant in part and deny in part Stevenson's motion.  Defendants may present evidence regarding the 2017 conviction for purposes of impeachment; however, evidence of the 1998, 2004, and 2010 convictions is excluded.  The parties use of evidence regarding the 2012 conviction shall track the Court's order with respect to Defendants' Motion in Limine No. 4.

**M.     Plaintiff's Motion No. 3 concerning evidence of his prison discipline history**

Stevenson seeks an order excluding his history of prison discipline and associated underlying acts (other than the findings in a December 7, 2012 Rules Violation Report ("RVR") regarding the beating incident).  (Doc. No. 117 at 7–8.)

**1.     The parties' arguments:**

Stevenson enumerates the following incidents of misconduct or prison discipline that he contends should not be introduced at trial because they are irrelevant, improper character evidence, or more prejudicial than probative:  (1) battery on an inmate in June 2012 leading to the Security Housing Unit ("SHU") term where the incidents in this case took place, including credit loss; (2) a November 11, 2012 RVR regarding the "pepper-spray incident," which found Stevenson resisted or delayed an officer and assessed ninety days of lost credit; (3) the failure to leave his cell in 2013 to attend medical appointments resulting in counseling or write ups; (4) an attack by an inmate in July 2014 (credits lost and restored); (5) the loss of phone, vendor, yard privileges for some event that happened June 2016; and (6) any inmate appeals or RVRs relating

to the above-listed matters.

With regard to the November 11, 2012 RVR, Stevenson acknowledges that had his claims arising from the pepper-spray incident not been dismissed, then the contents or findings of the RVR would be relevant.  But, Stevenson continues, his remaining claim against Defendant Crotty only relates to events occurring after any resisting or delaying—i.e., where Crotty escorted him and forcefully threw him in the holding cell, causing injury.  As a result, Stevenson concludes, the RVR and the finding that he delayed or resisted are not relevant, but overly prejudicial.

In opposition, Defendants argue that all of this evidence is directly relevant to Stevenson's propensity for violence and history of not following rules, which are collectively relevant to their states of mind.  (Doc. No. 147 at 5–6.)  As an example, Defendants explain that Stevenson's placement in the SHU in June 2012 for battering an inmate is relevant to their states of mind, as inmates are not placed in the SHU unless they committed a violent act or distributed drugs.  As another example, Defendants contend that the November 11, 2012 RVR, goes to their states of mind, as it shows Stevenson's propensity for resisting or delaying correctional officers, which poses a significant threat to officers.  In addition to its relevance for the purpose of their states of mind, Defendants assert that such evidence is also admissible for impeachment purposes, as it is probative of Stevenson's veracity and relevant to his honesty, integrity, and credibility at trial.

In reply, Stevenson reiterates that the disputed evidence is more prejudicial than probative.  (Doc. No. 157 at 4–5.)  He argues that, with regard to his prison history, Defendants can testify in general terms (e.g., why any inmate might be assigned to the SHU) without testifying to his particulars (e.g., why he was put in the SHU).  Stevenson further objects to Defendants' opposition on grounds of no foundation for his prison history specifics, improper character evidence if used to show propensity, and lack of relevance to his veracity.

2.    **Analysis:**

On one ground or another, the Court will grant most of Stevenson's motion to exclude evidence regarding his prison disciplinary record.  Taking Stevenson's list as a guide:  First, evidence as to disciplinary events occurring after the 2012 incidents underlying this action (i.e., list items 3, 4 and 5, as well as any others that may exist but are not identified by the parties) are

not relevant to Stevenson's claims.  Second, even where prison disciplinary evidence is potentially

relevant—for example, the June 2012 incident that led to Stevenson's SHU term could have

relevance as to Defendants' states of mind (with proper foundation)—its probative value is

substantially outweighed by the danger of unfair prejudice and confusion, distraction, and

misleading of the jury from the main issues and incidents in this action.  Defendants may testify to

their states of mind regarding their work in the SHU (as well as their knowledge that Stevenson

was housed in the SHU in the fall of 2012), but that testimony does not need to address the

specifics of the June 2012 incident that led to Stevenson's particular assignment (if it even can).

Those specifics are either not relevant to the remaining claims or inadmissible under Rule 403 or

Rule 404.

Of Stevenson's list, evidence regarding the November 11, 2012 RVR presents the toughest

call.  It also seems the most likely to appear at trial—perhaps from Stevenson himself.

Stevenson's claims arising from the pepper-spray incident have been dismissed, but those events

immediately preceded the factual allegations underlying his active claim arising from the holding-

cell incident.  Defendants acknowledge that evidence regarding the pepper-spray incident is

propensity evidence—namely, in Defendants' telling, both incidents involved Stevenson's

resistance to custodial officer orders.  To avoid Rule 404, Defendants seek admission of this

propensity evidence for the alternative non-propensity purpose of showing Defendant Crotty's

state of mind at the time of the holding-cell incident.  Fed. R. Evid. 404(b)(2).  There is some

merit here.  The alleged incidents occurred in immediate succession and involved similar

altercations.  Crotty was also present for both incidents.  (In reference to the pepper-spray incident,

Stevenson alleged in the First Amended Complaint that Crotty baited him to kick his cell door and

offered his own pepper-spray canister for use by other officers.  FAC, ¶ 21.)  In sum, there appears

to be a sufficient nexus between the two incidents in terms of the nature of the altercations and the

parties involved such that one of those parties should be able to testify as to how the prior incident

affected his state of mind with regard to the subsequent incident.  As a related angle, a jury

considering an excessive-force claim must assess the threat reasonably perceived by the defendant

official.  Bearchild v. Cobban, 947 F.3d 1130, 1141 (9th Cir. 2020) (reciting factors bearing on the

analysis of a § 1983 excessive-force claim).  Presumably, a defendant should thus be able to argue to the jury that an inmate's continuing and escalating obstinacy across two proximate incidents constituted a perceivable threat in his mind at the time of the second incident.  Said differently, the directly adjacent nature of the pepper-spray and holding-cell incidents could appropriately play a role in the jury's determination of whether any force used against Stevenson was excessive or not.

Other district courts have leaned, albeit carefully, toward admission of state-of-mind testimony where there has been an ample showing of relevance.  See, e.g., Brodeur v. Champion, No. 3:17 CV 1738 (RMS), 2019 WL 3717570, at *5 (D. Conn. Aug. 7, 2019) (denying motion for exclusion but instructing no state-of-mind testimony shall be elicited before plaintiff has an opportunity to renew argument at trial when more context is available); Easley v. Haywood, No. 1:08-cv-601, 2015 WL 1926399, at *3 (S.D. Ohio Apr. 28, 2015) (explaining admissible for defendants to present evidence regarding subjective state of mind if disputed evidence (1) involved prior altercation relevant to incident at issue, (2) involved altercation that plaintiff instigated, and (3) defendant had personal knowledge of prior altercation).

Finally, it is not hard to imagine Stevenson opening the door on this front.  In fact, as an example provided in response to Defendants' Motion in Limine No. 9, Stevenson states that he should be able to discuss the facts underlying pepper-spray incident notwithstanding the parties' agreement to exclude discussion of his previously dismissed claims.  If Stevenson opens the door, Defendants should have the ability to introduce evidence of the same kind for purposes of impeachment and rebuttal.  The same is true with any other door Stevenson opens regarding his prison disciplinary record.  But unless and until Stevenson opens the door, Defendants should not be able to use this evidence to attack his credibility.  With the incidents that Stevenson lays out, nothing in his disciplinary record reflects dishonest or deceit—meaning the history is not probative of his credibility.

In sum, the Court will grant Stevenson's motion to exclude evidence of his prison disciplinary record with the exception of evidence regarding the incident underlying the November 11, 2012 RVR.  As to that exception, Defendants may only offer evidence for the specific and limited purpose of Crotty's state of mind as it relates to Stevenson's claim based on the holding-

1  cell incident.  (The parties may consider submitting a jury instruction on this matter.)  Further, if

2  Stevenson opens other doors on this issue, Defendants may move at that time to use admissible

3  evidence for impeachment or rebuttal purposes.  Any motion to introduce this evidence should be

4  made out of the jury's presence.

5

6  **N.      Plaintiff's Motion No. 4 concerning evidence of his ascribed prison statuses**

7           Stevenson seeks an order excluding his ascribed prison statuses.  (Doc. No. 117 at 8.)

8           **1.      The parties' arguments:**

9           Stevenson enumerates the following prison statuses that he contends should not be

10  introduced at trial because they are irrelevant, improper character evidence, or more prejudicial

11  than probative:  (1) his status of not being allowed family visits; (2) his designation as an enemy

12  or having an enemy, confidential or otherwise; (3) his mental health status and or any

13  nomenclature used to indicate he was recipient of mental health services or participant in the

14  CDCR's mental health system, as well as evidence of any mental health records or evidence of his

15  mental health diagnoses, medications or treatment; (4) any mentally disordered offender

16  designation, request for evaluation, or psychological evaluation conducted prior to release; (5) any

17  alleged gang association; and (6) his prior and current status as a parolee.

18           Defendants assert that evidence of Stevenson's ascribed prison statuses is relevant and that

19  the probative value of this evidence is not outweighed by undue prejudice.  (Doc. No. at 6–7.)

20  Defendants assert this information is directly relevant to their states of mind, and Stevenson's

21  credibility and damages.  Defendants emphasize that Stevenson's gang affiliation created a

22  significant risk of threat for custodial officers whose states of mind are at issue.  Defendants also

23  seek introduction of such evidence for impeachment purposes, and contend that Stevenson

24  testified in a manner contrary to the evidence and in some instances his own expert (Fulks) as to

25  these statuses.  Specifically, Defendants assert that Stevenson's testimony that he was not in a

26  prison gang was contrary to Fulks' testimony.  Finally, Defendants argue that Stevenson's parolee

27  and mental health statuses are specifically relevant to the calculation of damages.

28           In reply, Stevenson asserts Defendants' case for admission of his parolee and mental health

statues fails in light of Rule 403.  (Doc. No. 157 at 4–5.)  He also disputes that he is or was a

"gang member" or a member of any criminal street gang, or prison gang, pointing out that he has

no criminal street gang convictions.  He contests that Fulks testified that he was in a gang—

according to Stevenson, Fulks testified that he saw documentation indicating that when Stevenson

first came into prison, he was "associated" or had "an affiliation" with a gang.  Stevenson then

stresses that because of this possible association, a prison gang investigator conducted an

investigation and concluded that he was not a validated gang member.

### 2.    Analysis:

At this stage, it is difficult to know whether Stevenson's motion adequately applies to all

of the potential evidence that could fall under the rather generic category of "ascribed prison

statuses."  But to the extent Stevenson's list can be ruled upon, its contents largely break down as

follows:  (1) gang affiliation evidence; (2) mental health evidence; (3) parole status evidence; and

(4) evidence of other statuses.

As to gang affiliation evidence, a relevance argument can be made.  Defendants argue that

this evidence should be admissible as it goes to their states of mind at the time of the incidents at

issue.  Under that theory, Defendants could testify to having subjective knowledge of Stevenson's

possible gang affiliation and how that knowledge affected their perceived threat calculus (see

state-of-mind discussion above regarding Stevenson's Motion in Limine No. 3).  But some

problems persist with this theory.  One, it is clear that any testimony would need to be strictly

curtailed to the specific and limited purpose of Defendants' in-the-moment states of mind.  This

task projects to be more difficult given the parties strongly dispute the underlying facts as to

Stevenson's possible gang affiliation.  Two, even if relevant evidence exists, probative value

seems marginal here.  Stevenson's claims do not turn on status of gang affiliation.  Cf. United

States v. Rodriguez, 766 F.3d 970, 986 (9th Cir. 2014) (permitting evidence of gang affiliation in a

criminal trial where gang affiliation was critical to the government's theory of motive); United

States v. Takahashi, 205 F.3d 1161, 1164–65 (9th Cir. 2000) (explaining evidence of gang

affiliation may be admissible when relevant to a material issue such as bias).  Moreover, although

Defendants' state-of-mind theory goes to the potential threat Stevenson posed, Defendants have

1 not made clear how Stevenson's possible gang affiliation itself would affect any threat perceived

2 by a reasonable officer in these particular circumstances.  While an inmate's status as a gang

3 member could carry additional risks for custodial officers in many ways and contexts, risk based

4 on a reasonable perception of that status must directly relate to the incidents at issue.  That is,

5 evidence would need to show that Defendants perceived particular threats during the holding-cell

6 and beating incidents at least in part because of Stevenson's possible gang affiliation.  Three, it is

7 well-established that gang affiliation evidence presents a very high danger of substantial prejudice.

8 See Kennedy v. Lockyer, 379 F.3d 1041, 1055–1056 (9th Cir. 2004) ("Our cases make it clear that

9 evidence relating to gang involvement will almost always be prejudicial . . . .").  In sum, with the

10 exception of Stevenson opening the door for impeachment, any admission of gang affiliation

11 evidence must be strictly limited to Defendants' testimony as to their states of mind.  And

12 evidence of that kind must be tied directly to the incidents in question and Stevenson's excessive-

13 force claims.  Absent additional context that is yet to be unveiled at trial, the Court will reserve

14 further ruling on this portion of Stevenson's motion.  With the aforementioned prejudicial risk in

15 mind, Defendants shall at that time specify in detail—and out of the jury's presence—how any

16 proposed evidence or testimony is properly admissible.

17   As to the mental health statuses, Defendants' argument that such evidence is relevant and

18 not unduly prejudicial as it relates to Stevenson's damages could be correct such that admission is

19 proper.  See Morris v. Long, No. 1:08-CV-01422-AWI, 2012 WL 1498889, at *4 (E.D. Cal. Apr.

20 27, 2012).  But unlike in Morris where the defendant explained that evidence of the plaintiff's

21 mental health could controvert his claim that the defendant caused his physical and emotional

22 injuries, Defendants have not done much to connect the dots here.  That said, in his First Amended

23 Complaint, Stevenson seeks damages for the injuries, pain, and emotional distress that were

24 caused by Defendants.  Thus, to the extent Defendants seek to introduce otherwise admissible

25 evidence that tends to show that something other than their conduct caused Stevenson's physical

26 and mental injuries, the Court finds that the probative value of this evidence is not substantially

27 outweighed under Rule 403.  At this stage, denial of Stevenson's motion on this issue constitutes

28 permission to present mental health evidence for damages purposes only.  Likewise, when trial

turns to that phase, Stevenson may ask the Court to revisit this ruling if the parties' current dispute becomes clearer in its details.

Stevenson's parole status constitutes criminal conviction evidence.  Under Rule 609, evidence of Stevenson's 2017 conviction is admissible for impeachment evidence.  Defendants argue that this evidence is also admissible as to Stevenson's damages; however, they have not provided any authority or much substance on that claim.  Instead, the Court will use Rule 609 as a ceiling for use of criminal conviction evidence.  See Jones v. City of Chicago, No. 14-cv-4023, 2017 WL 413613, at *15 (N.D. Ill. Jan. 31, 2017) (presuming door is opened to questioning about parole status, that evidence may only be used for specific impeachment purposes).

Finally, at this stage, it is hard to see relevance in the other ascribed statuses that Stevenson takes issue with (i.e., his not being allowed family visits and any enemy designations).  This evidence can be excluded as not relevant.  If trial proceeds in such a way that causes need to revisit this ruling, Defendants can move at that time for introduction of the evidence for a specific purpose.

To recap, the Court will grant Stevenson's motion regarding the exclusion of evidence of the ascribed prison statuses enumerated in his motion with the exception of mental health evidence relating to Stevenson's claim for damages.  With regard to gang affiliation evidence, the Court reserves its ruling on Stevenson's motion, and instructs the parties as to how the matter shall be revisited at trial (if necessary).  With all of these statuses, Defendants have the ability to move for the admission of certain impeachment or rebuttal evidence if Stevenson opens a particular door.  Motions of this kind must made out of the jury's presence.

**O.    Plaintiff's Motion No. 5 concerning evidence of his tattoos**

Stevenson seeks an order excluding evidence regarding his tattoos, including any discussion, speculation, or interpretation of the meaning of those tattoos.  (Doc. No. 117 at 8.)

**1.    The parties' arguments:**

Stevenson represents that he has some tattoos on his body.  He acknowledges it may be impossible to obscure his tattoos from the December videotape where he is interviewed in his

boxers, but notes counsel will be attempting to do so.  Successful or not, Stevenson moves to prohibit any additional evidence or discussion regarding his tattoos and any speculation or interpretation as to their meaning.  He contends this evidence and discussion would be unduly prejudicial because the jury may find tattoos offensive.

Defendants argue that evidence of Stevenson's tattoos and their possible meanings should be admitted for impeachment purposes, as they are probative of Plaintiff's veracity and are relevant to his honesty, integrity, and credibility at trial.  (Doc. No. 147 at 8.)  They assert that Stevenson testified in a manner contrary to the evidence and, in some instances, his expert (Fulks), regarding these issues.  As an example, Defendants state that Stevenson testified that his tattoos were not indicative of gang affiliation, which is contrary to evidence anticipated at trial. Defendants seek the ability to probe Stevenson's misrepresentations through impeachment at trial.

In reply, Stevenson disputes Defendants' claim that he lied about the meaning of his tattoos and asserts that they have no evidence to prove that to be so.  (Doc. No. 157 at 4–5.)  He reiterates that the CDCR's own investigation concluded there was insufficient evidence that Stevenson was a gang member—a claim that Stevenson also disputes.

> **2.    Analysis:**

At this point, relevance of this evidence (if any) seems limited to impeachment.  While Stevenson could certainly open a specific door on this front, free-range impeachment threatens to run right into Rule 403.  This threat appears particularly acute given the parties raise a factual dispute as to the specific meaning of certain tattoos, and cite different adversarial sources (Fulks and the CDCR) that support their own positions on the matter.  If gang affiliation becomes a mini-trial within a trial despite its attenuated relationship to the claims at hand, Stevenson will be significantly at risk of substantial prejudice.  On that note, courts have generally granted motions like Stevenson's in light of the high prejudice potential.  See, e.g., Ramirez v. City of Gilroy, No. 17-cv-00625-VKD, 2020 WL 1492704, at *1 (N.D. Cal. Mar. 27, 2020) (granting motion in limine to exclude evidence of tattoos as unduly prejudicial); Molina v. City of Visalia, No. 1:13-cv-01991-DAD-SAB, 2016 WL 8730723, at *4 (E.D. Cal. Sept. 16, 2016) (granting motion in limine to exclude evidence of tattoos because of potential to be particularly prejudicial); Engman

1   v. City of Ontario, No. EDCV 10-284 CAS, at *11 (PLAx), 2011 WL 2463178 (C.D. Cal. June

2   20, 2011) (granting motion in limine to exclude evidence of tattoo as irrelevant).  But see United

3   States v. Young, 2019 WL 9518229, at *7 (C.D. Cal. Apr. 8, 2019) (denying a motion in limine to

4   exclude gang tattoos in criminal case for gang murders).

5        Put together, the Court will grant Stevenson's motion to exclude all evidence regarding his

6   tattoos (except to the extent those tattoos appear in images or videos admitted for other purposes).

7

8   **P.    Plaintiff's Motion No. 6 concerning evidence of his infirm leg**

9        Stevenson seeks an order permitting him to present his infirm leg to the jury as a

10  demonstrative exhibit.  (Doc. No. 117 at 8–9.)

11       **1.    The parties' arguments:**

12       In Stevenson's telling, he has a large surgical scar on his left leg that predated the incidents

13  at issue in this case.  He contends that in the month prior to the December 7, 2012 beating,

14  Defendant Crotty conducted a strip-search of him and had an opportunity to see the scar and

15  deformity to his leg.  Stevenson now moves to be able to present his leg as a demonstrative exhibit

16  at trial, arguing it goes to the following issues set for jury consideration:  Crotty's credibility in

17  light of any testimony that he did not notice any infirmity to the leg during the strip-search;

18  whether Crotty was acting maliciously and sadistically when he struck the leg with his baton;

19  whether baton strikes to the leg would result in greater damage than strikes to a healthy leg (i.e.,

20  the eggshell plaintiff doctrine); the damage baton strikes would cause to such a deformed leg;

21  Stevenson's mobility and his ability to quickly comply with an order to "Get Down" with his

22  hands cuffed behind his back.

23       Defendants contend that evidence of Stevenson's leg is irrelevant and intended solely to

24  engender the sympathy and inflame the passions of the jury by depicting the extensive injuries and

25  scarring from non-relevant prior incidents that occurred outside of Stevenson's incarceration.

26  (Doc. No. 147 at 8–9.)  Defendants also assert that the evidence is irrelevant because Defendants

27  did not see the pre-existing injuries during the alleged incident.  Presuming relevance, Defendants

28  argue that the probative value of such evidence is substantially outweighed by a danger of unfair

1  prejudice.  They further argue that evidence of the infirm leg will also mislead the jury regarding

2  the cause of the injuries and their scarring, thereby confusing the issues.  Finally, Defendants

3  describe evidence of the infirm leg as needlessly cumulative given the existence of photographs

4  depicting Stevenson's injuries from the beating incident.

5       Stevenson replies that exhibiting his leg is appropriate for purposes of impeaching Crotty's

6  testimony that he did not notice Stevenson's leg during the strip-search.  (Doc. No. 157 at 5–6.)

7  Stevenson asserts that "the jury should be allowed to assess whether it could possibly be true that

8  someone viewing [his] naked leg would not notice this great deformity."

9       **2.    Analysis:**

10      Stevenson's display of his leg clearly has relevance to multiple issues on his claims arising

11  from the beating incident.  This includes the jury's consideration of the extent of injury suffered

12  by Stevenson (which includes possible application of the eggshell plaintiff rule), the need for

13  application of force (see Stevenson's contention that he was less able to quickly comply with

14  orders because of the leg), and the threat reasonably perceived by Defendant Crotty.  See

15  Bearchild, 947 F.3d at 1141 (reciting factors bearing on the analysis of a § 1983 excessive-force

16  claim).  The evidence can also go to the jury's consideration of any damages on that claim.  See,

17  e.g., Dang v. Cross, 422 F.3d 800, 806–09 (9th Cir. 2005) (discussing factors within the jury's

18  ability to consider a punitive damages award for an excessive force claim under § 1983).

19  Additionally, as noted by Stevenson, there are very conceivable circumstances in which the

20  evidence is also relevant for impeachment.  To that point, the fact that Defendants argue the

21  evidence is not relevant because Crotty did not see Stevenson's pre-existing condition before the

22  beating incident effectively proves the opposite to be true.  Namely, Stevenson contends

23  otherwise.  Therein lies a critical issue of material fact that is in dispute.  In sum, in many

24  situations, the evidence easily passes muster under Rule 401.

25      As for Rule 403, Defendants' contentions that the evidence may cause unfair prejudice,

26  confuse the jury, and needlessly present cumulative evidence hold some merit.  Given the

27  relevance shown above, there is ample probative value in the evidence.  In Stevenson's mind,

28  presentation of the naked leg will have a decisive effect on the jury.  Presuming presentation of the

1  demonstrative exhibit, the Court can curb any prejudice or jury confusion by instructing the jury,

2  upon party request, as to the specific purpose and capacity of the evidence—for example,

3  impeachment evidence or evidence demonstrating the nature and extent of Stevenson's pre-

4  existing condition.  In that case, it cannot be said that the probative value of the evidence is

5  substantially outweighed by prejudice or jury confusion.  As for cumulative evidence, Defendants

6  assert that they have sufficient photographic evidence of Stevenson's leg that can be introduced.

7  Be that as it may, Stevenson seeks to present his case in a different fashion.  While more

8  spectacular, it cannot be said that Defendants should be able to thwart that presentation by

9  introducing photographs and claiming anything else constitutes needlessly cumulative evidence.

10       Accordingly, the Court will grant Stevenson's motion to present his leg as a demonstrative

11  exhibit provided proper foundation is laid at trial.

12

13  **Q.      Plaintiff's Motion No. 7 concerning inmate witnesses' criminal history**

14       Stevenson seeks an order excluding evidence of inmate witnesses' criminal convictions,

15  underlying criminal acts, incarceration or restitution, and any pending charges.  (Doc. No. 117 at

16  9–10.)

17       **1.      The parties' arguments:**

18       Stevenson expects to call several inmate witnesses to testify, and specifically names five

19  currently incarcerated individuals to which he states his motion applies.  Stevenson also states that

20  his motion pertains to Reynaldo Vasquez, a former inmate.  With regard to these witnesses,

21  Stevenson moves to exclude any mention of any non-stipulated-to convictions, their underlying

22  acts, or acts involving dishonesty, untruthfulness, or moral turpitude, including the length of

23  incarceration and any restitution imposed.  He also moves to exclude any pending charges that

24  may exist.  He contends that all of this evidence should be excluded as it is unduly prejudicial and

25  relating to convictions older than ten years.

26       Defendants contend that evidence of Stevenson's inmate witnesses' criminal convictions,

27  underlying acts, length of incarceration imposed, restitution imposed, and pending charges is

28  directly relevant to the honesty, integrity, and credibility of the inmate witnesses, which is central

to their purported testimonies.  (Doc. No. 148 at 2−3.)  Defendants further assert that evidence of the witnesses' criminal convictions, underlying acts, length of incarceration imposed, restitution imposed, and pending charges carries significant impeachment value and is more probative than potentially prejudicial because the credibility and testimony of the inmate witnesses are significant issues in the case.

In reply, Stevenson contends that Defendants have not provided any specific information pertaining to the nature of Stevenson's inmate witnesses' criminal histories that Defendants intend to use.  (Doc. No. 157 at 6.)  He reserves the right to address these issues further when Defendants provide additional information.

**2.      Analysis:**

Based on the parties' presentation, a ruling from the Court is premature.  Stevenson has identified prospective inmate witnesses, but neither party has identified criminal history evidence that should be admitted or excluded.  As things stand, a ruling would be little more than recitation of relevant rules of evidence.  Thus, the Court will deny Stevenson's motion with notice that he can renew his motion if and when Defendants seek to introduce evidence of this kind at trial.  Applicable motions should be made out of the jury's presence.

**R.      Plaintiff's Motion No. 8 concerning inmate witnesses' prison statuses and tattoos**

Stevenson seeks an order excluding evidence of inmate witnesses' tattoos, gang membership, mental health conditions and treatment, and other status designations.  (Doc. No. 117 at 10.)

**1.      The parties' arguments:**

Stevenson states that his motion applies to the same inmate witnesses (and Vasquez.  With regard to these witnesses, Stevenson describes evidence or references to any tattoos and their meanings; gang affiliation; mental health conditions, diagnoses, and treatments; and status designations as irrelevant, improper character evidence, or more prejudicial than probative.

Defendants contend that evidence of this kind is directly relevant to Defendants' states of mind and the witnesses' credibility.  (Doc. No. 148 at 4−5.)  Defendants assert that gang

1   affiliations create a significant risk of threat for correctional officers whose states of mind are at

2   issue regarding the proposed testimony of the inmate witnesses.  Defendants contend that evidence

3   of the inmate witnesses' tattoos and their possible meanings are also relevant to Defendants' states

4   of mind, as certain tattoos indicating gang affiliations create a significant risk of threat for officers.

5   Defendants add that gang affiliations and gang affiliation tattoos also carry significant

6   impeachment value, as gang-affiliated witnesses are less likely to be convinced to tell the truth by

7   the threat of perjury.  Finally, Defendants contend that the inmate witnesses' mental health

8   conditions and statuses should be admitted as relevant evidence for impeachment purposes, as

9   they are probative of their veracity, honesty, integrity, and credibility at trial.

10        Stevenson replies that Defendants do not provide any information as to the specific

11   evidence regarding his inmate witnesses' that Defendants intend to use.  (Doc. No. 157 at 6.)

12   Stevenson reserves the right to address these issues further when Defendants provide additional

13   information.

14        **2.      Analysis:**

15        Once again, a ruling from the Court on this motion would be premature given the parties'

16   presentation.  Stevenson has identified prospective inmate witnesses, but neither party has

17   identified applicable evidence that should be admitted or excluded.  Thus, the Court will deny

18   Stevenson's motion with notice that he can renew his motion at trial if and when Defendants seek

19   to introduce evidence of this kind.  Applicable motions should be made out of the jury's presence.

20

21   **S.      Plaintiff's Motion No. 9 concerning inmate witnesses' clothing and restraints**

22        Stevenson seeks an order excluding witnesses' shackles, restraints, and prison clothing.

23   (Doc. No. 117 at 10.)

24        **1.      The parties' arguments:**

25        Stevenson states that his motion applies to the same inmate witnesses (and Vasquez).

26   Stevenson requests that any inmate witness be able to "dress out" (at least from what the jury can

27   perceive) and that any restraints be minimized from the jury's view.  He further states that counsel

28   will request that the general jury instructions include an admonishment not to consider a witness's

1  custodial status, and prefers such admonishment to be made at that time, rather than called out

2  during any particular witness's testimony (which would create the opposite effect of emphasizing

3  custodial status).

4       Defendants dispute Stevenson's motion by emphasizing that Stevenson's listed inmate

5  witnesses have criminal histories that create a serious threat of escape and danger to those in and

6  around the courtroom, such that shackling, restraints, and prison clothing is proper.  (Doc. No. 148

7  at 5–6.)  Defendants contend that this heightened risk of danger and compelling need for restraints

8  to maintain courtroom security is ever more the case because certain inmate have gang affiliations.

9  Defendants lastly assert that the jury will already know that the inmate witnesses are incarcerated,

10  such that prison clothing cannot be considered inherently prejudicial.

11      **2.**    **Analysis:**

12       This is a civil case and a number of the concerns that are present in a criminal case are

13  absent.  There is no presumption of innocence.  The jury knows that in any Eighth Amendment

14  case the plaintiff is (or has been) an inmate and soon learn that certain witnesses are (or were)

15  inmates.  This obviates direct comparison from some of the case law that arises from criminal

16  proceedings.  See, e.g., Duckett v. Godinez, 67 F.3d 734, 748 (9th Cir. 1995) (holding that

17  shackling during the sentencing hearing in the absence of a compelling need and consideration of

18  less restrictive alternatives constitutes constitutional error).  On the other hand, the right to a fair

19  trial is fundamental in civil cases just as it is in criminal proceedings.  Stevenson and his witnesses

20  should not be presented to the jury in a worse light than the circumstances require.

21       While Defendants may be correct that the jury will discover that inmate witnesses are

22  incarcerated, it does not follow that there is no additional prejudicial effect caused by appearing in

23  prison clothing.  Even if that effect is muted, it can still be easily avoided in light of Stevenson's

24  timely request.  See United States v. Brande, 86 Fed. App'x 338, 340 (9th Cir. 2004).

25       Stevenson's motion as to shackles and restraints is different.  While such measures carry

26  prejudicial effect, the Court's calculus as to their exclusion must also account for security

27  concerns (which are not present when deciding between prisoner and civilian clothing).  Morgan

28  v. Bunnell, 24 F.3d 49, 51 (9th Cir. 1994) ("The judge has wide discretion to decide whether a

defendant who has a propensity for violence poses a security risk and warrants increased security measures.").  While discretionary, a court's decision to order for physical restraints or other protective measures is guided by a two-part test:  "First the court must be persuaded by compelling circumstances that some measure was needed to maintain the security of the courtroom.  Second, the court must pursue less restrictive alternatives before imposing physical restraints."  Id. (internal punctuation and citations omitted).  Compelling circumstances may include a prisoner's status, propensity for violence, and history of unruly conduct.  See Wilson v. McCarthy, 770 F.2d 1482, 1485 (9th Cir. 1985).  By itself, prisoner status may not warrant shackling, but it may justify the court's concern for security.  Id.  "[S]hackling is proper where there is a serious threat of escape or danger to those in and around the courtroom or where disruption in the courtroom is likely in the absence of shackles."  Id. (internal citation omitted).

As this standard makes clear, the specific circumstances of a particular inmate witness and his or her incarceration details is going to dictate assessment of any security risk that might be posed.  Here, neither side has offered any specifics as to need or lack thereof for the use of physical restraints or less restrictive alternatives with respect to a particular witness set to be called to testify.  They must do so moving forward.  When an objection or motion has been lodged, the Court can then undertake a particularized investigation to assure itself that necessary security precautions are in place and that those measures neither unnecessarily impair Stevenson's ability to present his case nor distract the jury from freely evaluating the case.  Within this process, the Court will be able to further consider Stevenson's request for a limiting instruction that the jury shall not reflect adversely on any witness's credibility because of security precautions employed.

In sum, the Court will grant Stevenson's motion with respect to exclusion of prison attire for inmate witness testimony, but deny his motion as to shackles and restraints.  Stevenson may renew his motion when the parties have provided more clarity as to what, if any, inmate witnesses will be called at trial.  Applicable motions should be made out of the jury's presence.  The Court further directs Stevenson and counsel to communicate with the office of the U.S. Marshals Service for purposes of coordinating any matters of courtroom attire and restraints.

1

2   **T.      Plaintiff's Motion No. 10 concerning potential witness's parole status**

3       Stevenson seeks an order excluding evidence of witness Reynaldo Vasquez's parole status.

4   (Doc. No. 117 at 10.)  According to Stevenson, Vasquez is presently on parole, and Stevenson

5   requests that no mention be made of this status because it is more prejudicial than probative.

6   Defendants contend that evidence of a witness's parole status, even if it proves a prior criminal

7   conviction, is admissible as it is directly relevant to the witness's honesty, integrity, and

8   credibility, which are central to his purported testimony.  (Doc. No. 148 at 6–8.)  Defendants

9   further assert that a witness's parole status or prior conviction carries significant impeachment

10  value and that such evidence is more probative of the witness's veracity than potentially

11  prejudicial because the credibility and testimony of the witness is a significant issue in the case.

12      Based on the parties' briefing, a ruling here is premature.  Neither party has specified what

13  evidence may be sought for admission or exclusion.  Generally, admission of evidence regarding

14  Vasquez's parole status will track with admission of evidence regarding the underlying criminal

15  conviction(s), as discussed above for purposes of Plaintiff's Motion in Limine No. 4.  Admission

16  of any evidence within the scope of this motion will thus be subject to the dictates of Rule 609.  At

17  this time, however, the Court will deny Stevenson's motion with notice that, if necessary, it can be

18  renewed out of the jury's presence at trial.

19

20  **U.      Plaintiff's Motion No. 11 concerning his use-of-force expert's employment history**

21      Stevenson seeks an order excluding certain evidence regarding his use-of-force expert

22  (Fulks).  (Doc. No. 117 at 10–11.)  Stevenson first requests for the exclusion of evidence

23  regarding an inmate complaint (Form 602 appeal not lawsuit) filed against Fulks and three other

24  officers in 2004 for an "inexcusable neglect of duty."  Stevenson asserts exclusion is proper

25  because the incident occurred well over a decade ago and the matter was denied.  Stevenson also

26  describes the evidence as improper character evidence, irrelevant, and more prejudicial than

27  probative.  Stevenson also seeks to exclude evidence that Fulks suffered employment discipline

28  (ten days without pay) for off-duty misconduct in 2001.  According to Stevenson, "[t]he incident

was not a criminal conviction, and does not appear to involve dishonesty or untruthfulness.  It also occurred almost two decades ago and should be excluded on grounds of remoteness, improper character evidence, irrelevant, and more prejudicial than probative."

Defendants seek permission to introduce evidence relating to the inmate complaint and discipline for off-duty misconduct.  (Doc. No. 149.)  Defendants describe this information as relevant evidence for impeachment purposes that is not more prejudicial than probative.  Defendants also contend that this evidence is relevant to Fulks' state of mind as he testifies against other employees of his former employer.

The Court will grant Stevenson's motion.  Any relevance that this evidence may carry appears to derive solely from possible impeachment.  Defendants offer no authority in support of their state-of-mind/witness-bias angle, and that route would certainly present issues under Rule 403 given the dated and attenuated nature of the evidence from the case at hand.  As far as impeachment goes, there is always a chance Stevenson opens the door, which would allow for cross-examination on specific instances of past conduct under Rule 608(b).  But as things stand, the Court finds it hard to see how that door is opened without Stevenson himself delving into irrelevant evidence.

## V.      Plaintiff's Motion No. 12 concerning Defendant Crotty's medical evidence

Stevenson seeks an order excluding evidence of injuries sustained by Defendant Crotty during the beating incident, including evidence regarding diagnoses, treatments, post-incident complications, impairments, or any reason for medical retirement.  (Doc. No. 117 at 11.)  Stevenson asserts that evidence as to the nature or extent of Crotty's injuries is irrelevant and more prejudicial than probative because he has stipulated that he pleaded guilty to the battery on a custodial officer charge.  Stevenson adds that Crotty's opinion as to any injury he sustained will lack foundation, be based on hearsay, and constitute improper lay witness testimony.

In response, Defendants first assert that evidence of Crotty's injuries is directly relevant to the disputed allegations underlying Stevenson's claims based on the beating incident.  (Doc. No. 150.)  Defendants emphasize that the Court has already taken as true (for purposes of summary

49

judgment) that Crotty suffered serious injury based on the prison disciplinary finding that Stevenson was guilty of violating the regulation for battery on a custodial officer with serious injury, California Code of Regulations, tit. 15, § 3005(d)(1).  Defendants argue that this information is admissible as an undisputed fact that is relevant and probative of both Stevenson's allegations related to the incident, as well as Defendants' version of the events.  Defendants also contend that even as a lay witness Crotty can testify regarding the nature of his injuries so long as his testimony is based on his own perceptions of his own body.  Finally, Defendants argue that the undisputed fact of Crotty's injuries should be admissible for impeachment purposes, as it is probative of Stevenson's veracity and relevant to his honesty, integrity, and credibility.

For the reasons offered by Defendants—disputing circumstances of the beating and as a potential means of impeachment—evidence relating to Crotty's injuries is relevant and has ample probative value to survive a Rule 403 analysis.  Stevenson's motion asks for a blanket bar on such evidence on various grounds that are raised without much, if any, legal authority.  To the extent Stevenson seeks exclusion on the basis of improper lay witness testimony, the standard here is the same that applies above in relation to Defendants' Motion in Limine No. 5.  Neither Crotty nor any other lay witness may provide medical opinions subject to Rule 702; however, they may testify as to their own subjective perceptions of any symptoms Crotty displayed as well as Crotty's response to the same.  As to other uses, Stevenson provides no details as to the particular evidence he expects to lack foundation or constitute inadmissible hearsay.  While specific challenges of this kind may be raised, their potential existence does not suggest a blanket bar on this evidence should be imposed.  Thus, the Court will deny Stevenson's motion to the extent he seeks exclusion of all evidence pertaining to Crotty's injuries.

**W.    Plaintiff's Motion No. 14 concerning a potential witness's availability and testimony**

Stevenson seeks an order finding Steven Foster unavailable and permitting introduction of Foster's deposition testimony in lieu of live testimony.  (Doc. No. 117 at 15−16.)

**1.    The parties' arguments:**

Stevenson represents that Foster—a former correction sergeant and former named

defendant in this case who was dismissed on summary judgment—resides in Bigfork, Montana, which is more than 100 miles from the courthouse in Fresno, California.  Stevenson moves to have Foster found unavailable under Federal Rule of Civil Procedure 32(a)(4)(B), and in light of that finding, for permission to use Foster's deposition in lieu of live testimony at trial.

Defendants disagree with Stevenson's proposal in numerous ways.  (Doc. No. 151.)  First, Defendants point out that Stevenson has not offered which portions of Foster's deposition he intends to use.  Second, Defendants seek to reserve the opportunity to object to the admissibility of any deposition testimony under Rule 32(b), noting also that Foster's deposition was not a direct examination and did not include information that Defendants would procure at trial.  Third, Defendants seek to reserve their right to call Foster as a witness, and assert that if done Foster could not be found unavailable under Rule 32(a)(4)(B).  Finally, Defendants represent that Foster is willing and able to testify at trial, if called, notwithstanding the fact that he lives in Montana, and that if Defendants elect to call Foster, they also object to the use of his deposition testimony in lieu of live testimony.

### 2.    Analysis:

Presuming that Foster is located more than 100 miles from the courthouse—a fact not under dispute—the Court could take judicial notice of these circumstances and declare Foster unavailable such that his deposition testimony can be used at trial.  See Fed. R. Civ. P. 32(a)(4); Fed. R. Civ. P. 45(c)(1)(A).  Yet, Defendants represent that Foster is willing and able to testify at trial.  Given this representation,[3] the Court will deny Stevenson's motion with notice that if Foster fails to appear after Stevenson makes reasonable efforts to call him at trial, the witness will at that point be declared unavailable such that his deposition can be used under Rule 32(a)(4).  In this situation, Defendants would not be permitted to call Foster as a witness during their own case in chief.  See First Sav. Bank, F.S.B. v. U.S. Bancorp, 196 F.R.D. 608, 609 (D. Kan. 2000) (explaining persons present at trial will not be permitted to testify by deposition); Truckstop.net, L.L.C. v. Sprint Commc'ns Co., L.P., No. CV-04-561-SBLW, 2010 WL 1248254, at *1 (D. Idaho

---

[3] The Court recognizes Defendants' assurance is less than party control.  Cf. Young & Assocs. Public Relations, L.L.C. v. Delta Air Lines, Inc., 216 F.R.D. 521, 524 (D. Utah 2003) (rejecting application of "100 mile" exception because opposing party agreed to make available the witnesses in question at trial for live testimony).

Mar. 23, 2010) (explaining a witness available for one part of trial cannot be considered "unavailable" for another part).  They would however retain the ability to object to the admissibility of any deposition testimony under Rule 32(b).  Collectively, this outcome embraces the preference for and importance of live testimony in open court—see Federal Rules of Civil Procedure 32(a)(4)(E) and 43(a))—but also preserves Stevenson's ability to avail himself of Rule 32's "unavailable witness" safeguard should no other option remain.

### **ORDER**

Accordingly, consistent with the explanations above, IT IS HEREBY ORDERED that:

1. Defendants' Motion in Limine No. 1 (Doc. No. 112) concerning Stevenson's use-of-force expert is DENIED;

2. Defendants' Motion in Limine No. 4 (Doc. No. 115) concerning Stevenson's battery conviction is GRANTED;

3. Defendants' Motion in Limine No. 5 (Doc. No. 116) concerning Stevenson's medical evidence is GRANTED;

4. Defendants' Motion in Limine No. 7 (Doc. No. 118) concerning Stevenson's witness disclosures is GRANTED IN PART AND DENIED IN PART;

5. Defendants' Motion in Limine No. 8 (Doc. No. 119) concerning Stevenson's evidence disclosures is GRANTED IN PART AND DENIED IN PART;

6. Defendants' Motion in Limine No. 9 (Doc. No. 120) concerning Stevenson's dismissed claims is GRANTED;

7. Defendants' Motion in Limine No. 10 (Doc. No. 122) concerning Defendants' indemnification is GRANTED;

8. Defendants' Motion in Limine No. 11 (Doc. No. 123) concerning evidence of settlement negotiations is GRANTED;

9. Defendants' Motion in Limine No. 12 (Doc. No. 125) concerning bifurcation into liability and damages trials is DENIED;

10. Defendants' Motion in Limine No. 13 (Doc. No. 126) concerning bifurcation of procedural issues from rest of trial is GRANTED;

11. Plaintiff's Motion in Limine No. 1 (Doc. No. 117) concerning Defendants' use-of-force expert is DENIED;

12. Plaintiff's Motion in Limine No. 2 (Doc. No. 117) concerning evidence of his criminal history is GRANTED IN PART AND DENIED IN PART;

13. Plaintiff's Motion in Limine No. 3 (Doc. No. 117) concerning evidence of his prison discipline history is GRANTED IN PART AND DENIED IN PART;

14. Plaintiff's Motion in Limine No. 4 (Doc. No. 117) concerning evidence of his ascribed prison statuses is GRANTED IN PART AND DENIED IN PART;

15. Plaintiff's Motion in Limine No. 5 (Doc. No. 117) concerning evidence of his tattoos is GRANTED;

16. Plaintiff's Motion in Limine No. 6 (Doc. No. 117) concerning evidence of his infirm leg is GRANTED;

17. Plaintiff's Motion in Limine No. 7 (Doc. No. 117) concerning inmate witnesses' criminal history is DENIED;

18. Plaintiff's Motion in Limine No. 8 (Doc. No. 117) concerning inmate witnesses' prison statuses and tattoos is DENIED;

19. Plaintiff's Motion in Limine No. 9 (Doc. No. 117) concerning inmate witnesses' clothing and restraints is GRANTED IN PART AND DENIED IN PART;

20. Plaintiff's Motion in Limine No. 10 (Doc. No. 117) concerning potential witness's parole status is DENIED;

21. Plaintiff's Motion in Limine No. 11 (Doc. No. 117) concerning evidence of his use-of-force expert's employment history is GRANTED;

22. Plaintiff's Motion in Limine No. 12 (Doc. No. 117) concerning Defendant Crotty's medical evidence is DENIED;

23. Plaintiff's Motion in Limine No. 14 (Doc. No. 117) concerning a potential witness's availability and testimony is DENIED;

24.    The Court's rulings on Defendants' Motions in Limine Nos. 2, 3, and 14 and
Plaintiff's Motion in Limine No. 13 and Requests for Judicial Notice Nos. 1 and 2
are RESERVED.

IT IS SO ORDERED.

Dated:   December 1, 2020
                                                    SENIOR  DISTRICT  JUDGE