UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| **DOUGLAS J. STEVENSON,**<br><br>**Plaintiffs,**<br><br>v.<br><br>**K. HOLLAND, et al.,**<br><br>**Defendants.** | **CASE NO. 1:16-cv-01831-AWI-JLT**<br><br>**ORDER ON DEFENDANTS' MOTION FOR PARTIAL SUMMARY JUDGMENT**<br><br>(Doc. No. 192) |

Plaintiff Douglas Stevenson alleges that he was physically abused by prison officers while incarcerated at the California Correctional Institution in Tehachapi, California. Now before the Court is a motion for partial summary judgment filed by the three remaining defendants—Officers M. Crotty, C. Gonzales, and A. Cantu—against a specific theory of damages that Stevenson seeks to pursue at trial. For the following reasons, the Court will grant this motion.

## BACKGROUND

### A.  Factual background

Unless noted otherwise, the following facts are drawn from those that were set forth in the Court's resolution of Defendants' first summary judgment motion. Doc. No. 101 at 3–9.

On November 11, 2012, Stevenson was in his cell with his cellmate. Stevenson was at the sink, and his cellmate was on the top bunk. Officers J. Dunnahoe and R. Valverde approached Stevenson's cell, and Dunnahoe gave Stevenson a verbal order to back up to the cuff port and cuff up. Stevenson did not comply with those orders. Dunnahoe gave Stevenson a verbal order to get down in a prone position. Stevenson did not comply with that order. Dunnahoe then sprayed Stevenson with one can of pepper spray. Dunnahoe and Valverde both gave Stevenson a verbal

order to get down. Stevenson did not comply with those orders. Valverde then sprayed Stevenson with one can of pepper spray. Based on this "pepper-spray incident," Stevenson was found guilty of violating California Code of Regulations, title 15, § 3005(b) ("Resisting and/or Obstructing a Peace Officer"). This guilty finding and its factual basis were memorialized in a written "rules violation report" (the "November 2012 RVR"). Because of the guilty finding, Stevenson received a 90-day credit loss. See Doc. Nos. 77-2 at 3 & 77-3 at 38.[1]

Also on November 11, 2012, and immediately after the pepper-spray incident, Defendant Crotty escorted Stevenson to a holding cell. Stevenson's hands were handcuffed behind his back. Crotty took Stevenson's hands and pushed them up his back. Upon arriving at the holding cell, Crotty "ran" Stevenson's face into the gate in the back of the cell. This is referred to as the "holding-cell incident."

Then, on December 7, 2012, Crotty escorted Stevenson from the shower. Stevenson's hands were handcuffed. Stevenson suddenly lunged toward Crotty, striking Crotty in the left shoulder with his right shoulder, thereby causing Crotty to lose his grip on Stevenson's arm. Crotty grabbed Stevenson's arm and slammed him into a wall, and Stevenson fell to the ground. Stevenson kicked at Crotty. Crotty hit and stabbed Stevenson with a baton, including in Stevenson's ribs. Crotty hit Stevenson's injured leg, which Crotty knew was injured (from a prior unrelated incident), and ankle with a baton seven or eight times. Defendant Gonzales was nearby watching the incident. At least two other prison officers arrived at the scene of the incident and they along with Crotty and Gonzales continued beating Stevenson and "did a pile" on Stevenson. One of the officers was "sticking" Stevenson with a baton, and that officer hit Crotty's hand with the baton. The beating lasted at least three or four minutes. Stevenson suffered injuries from the beating, including an abrasion, scratch, bruise, discoloring, and swelling in the left thigh. From the moment Stevenson fell to the ground through the end of the beating, the officers did not give any orders to Stevenson. Stevenson's force or violence fractured a bone (or bones) in Crotty's

---

[1] Stevenson's claims based on the pepper-spray incident and former defendants Dunnahoe and Valverde have been dismissed, although the Court determined in its resolution of the parties' motions in limine that facts related to the previously dismissed claims and defendants can be used at trial for purposes other than referring to the proceedings in this case. See Doc. No. 180 at 19–20.

hand. During this incident, Defendant Cantu was stationed in a nearby patrol tower. Cantu saw Crotty escort Stevenson. Cantu saw a "commotion" during the escort. Cantu saw Crotty force Stevenson to the ground. Cantu saw Stevenson kick while he was on the ground. After the beating ended, Cantu sounded an alarm, which Stevenson heard. Based on this "beating incident," Stevenson was found guilty of violating California Code of Regulations, title 15, § 3005(d)(1) ("Battery on a Peace Officer with Serious Injury"). This guilty finding and its factual basis were memorialized in a written rules violation report (the "December 2012 RVR"). Because of the guilty finding, Stevenson received a 360-day credit loss. See Doc. Nos. 77-2 at 4 & 77-11 at 9.

Following the beating incident, Stevenson was also criminally charged in state court with one count of battery on Crotty, with a great bodily injury enhancement, California Penal Code §§ 4501.5, 12022.7(a). Doc. No. 201-2 at 8. In September 2013, Stevenson was sentenced to a consecutive four-year term after pleading no contest to the charge. Id. at 11–12. Stevenson appealed, arguing that (1) the trial court improperly denied his suppression motion; (2) the trial court erred in refusing to view evidence of his own injury during the incident and refusing to permit cross-examination of Crotty about prior complaints; and (3) his plea was not voluntary. People v. Stevenson, No. F068170, 2015 WL 4554526, at *1 (Cal. Ct. App. July 28, 2015).[2] In the same appeal, Stevenson also sought appellate review of Crotty's personnel records pursuant to Pitchess v. Superior Court, 11 Cal. 3d 531 (1974). In July 2015, the California Court of Appeal conditionally reversed Stevenson's conviction and remanded for a new Pitchess hearing and for additional discovery related to discoverable portions of the personnel records. Stevenson, 2015 WL 4554526, at *9–10. The appellate court did not disturb Stevenson's plea, and instead informed that that matter could be revisited on remand (with possible withdrawal of the plea) once the discovery matters were completed. Id. at *10. In June 2016, the prosecution dismissed the case in the interest of justice. Doc. No. 187-3 at 11. Stevenson was released from prison on July

---

[2] The parties have both asked the Court to take judicial notice of this decision. Doc. Nos. 124 at 2 & 193 at 2. The Court will grant these requests here. It will further decline as unnecessary for resolution of this motion Defendants' other requests for notice of transcripts from the state court proceeding (Doc No. 193 at 2) and Stevenson's request for notice of the amounts of days between two spans of certain dates (Doc. No. 198 at 1). See Cox v. Mariposa County, 445 F. Supp. 3d 804, 808 n.2 (E.D. Cal. 2020); Bryan v. City of Carlsbad, 297 F. Supp. 3d 1107, 1115 (S.D. Cal. 2018). The Court addresses Stevenson's other request for judicial notice below.

11, 2016.  Doc. No. 196 at 2

### B.     Relevant procedural background

Stevenson is proceeding to trial on the following three causes of action under 42 U.S.C. § 1983:  two Eighth Amendment violations for uses of excessive force against Crotty related to the holding-cell and beating incidents, and an Eighth Amendment violation for failure to intervene against Gonzales and Cantu related to the beating incident.

After discovery closed and in anticipation of trial, the parties filed motions in limine. Defendants used one of theirs to seek an order precluding Stevenson from pursuing any damages for wrongful imprisonment or overincarceration.  Doc. No. 114.  As part of that motion, Defendants argued that Stevenson failed to present sufficient evidence that their actions caused him damages defined by his unlawful incarceration.  In other words, Defendants argued that Stevenson has not carried his burden to prove the causation element on certain theories of relief. See Harper v. City of Los Angeles, 533 F.3d 1010, 1026 (9th Cir. 2008) ("In a § 1983 action, the plaintiff must also demonstrate that the defendant's conduct was the actionable cause of the claimed injury.").  During a hearing on the motions in limine, the Court informed the parties of its opinion that this specific argument was ill-suited for a motion in limine.  See C & E Servs., Inc. v. Ashland Inc., 539 F. Supp. 2d 316, 323 (D.D.C. 2008) ("It is worth noting that a motion in limine should not be used to resolve factual disputes or weigh evidence.  Nor should a motion in limine be used to argue, as Ashland does here, that an item of damages may not be recovered because no reasonable person could find that it was proximately caused by the defendant's acts.  That is the function of a motion for summary judgment, with its accompanying and crucial procedural safeguards." (citations omitted)); see also Elliott v. Versa CIC, L.P., 349 F. Supp. 3d 1000, 1002 (S.D. Cal. 2018) ("A motion in limine is not a proper vehicle for a party to ask the Court to weigh the sufficiency of the evidence to support a particular claim or defense, because that is the function of a motion for summary judgment, with its accompanying and crucial procedural safeguards." (quoted sources and internal citation marks omitted)).  Without objection from Stevenson (or Defendants), the Court directed the parties to brief the issue of pursuable overincarceration

4

1  damages as a matter for summary judgment. See Fed. R. Civ. P. 56(b).

## LEGAL STANDARD

Summary judgment is proper where there exists no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56; Adickes v. S.H. Kress & Co., 398 U.S. 144, 157 (1970); Fortyune v. Am. Multi- Cinema, Inc., 364 F.3d 1075, 1080 (9th Cir. 2004). The party moving for summary judgment bears the initial burden of informing the court of the basis for its motion and identifying the portions of any declarations, pleadings, and discovery that demonstrate the absence of a genuine issue of material fact. Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986); Soremekun v. Thrifty Payless, Inc., 509 F.3d 978, 984 (9th Cir. 2007). When the nonmoving party will have the burden of proof on an issue at trial, the movant may prevail by presenting evidence that negates an essential element of the nonmoving party's claim or by merely pointing out that there is an absence of evidence to support an essential element of the nonmoving party's claim. See James River Ins. Co. v. Herbert Schenk, P.C., 523 F.3d 915, 923 (9th Cir. 2008); Soremekun, 509 F.3d at 984. If the moving party meets its initial burden, the burden then shifts to the opposing party to establish that a genuine issue as to any material fact actually exists. See Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986); Nissan Fire & Marine Ins. Co. v. Fritz Cos., 210 F.3d 1099, 1102–03 (9th Cir. 2000). If the nonmoving party fails to produce evidence sufficient to create a genuine issue of material fact, the moving party is entitled to summary judgment. Nissan Fire, 210 F.3d at 1103. On the other hand, if the nonmoving party produces sufficient evidence to create a genuine issue of material fact, the nonmoving party defeats the motion. Id.

## DISCUSSION

This summary judgment dispute centers on Stevenson's intended pursuit of damages for wrongful imprisonment or overincarceration. Stevenson frames his pursuable claims for overincarceration damages as follows: First, he sets as parameters his earliest possible release date of December 14, 2013, and his actual release date of July 11, 2016. Second, he divides this

5

span of 940 days of incarceration into three segments: (1) a 90-day credit loss for the November 2012 RVR; (2) a 360-day credit loss for the December 2012 RVR; and (3) the remaining 490 days. See also Doc. No. 22 at 37–38 (seeking this recovery in the first-amended complaint).

Defendants maintain that Stevenson cannot recover damages for any of these segments. They support their summary judgment motion on two primary grounds. First, Defendants contend that any overincarceration damages claim is barred under Heck v. Humphrey, 512 U.S. 477 (1994). Second, Defendants contend that even if he can pursue overincarceration damages, Stevenson cannot show Defendants caused that specific injury. For his part, Stevenson acknowledges the Court's previous rulings regarding Heck, but disputes Defendants' contention that Heck bars every possible overincarceration damages claim he can make. As for causation, Stevenson contends that he has adequately alleged how Defendants caused his overincarceration and that causation remains an unresolved issue that is appropriate for jury determination. These challenges will be taken in turn.[3]

### A. Heck v. Humphrey

Heck dictates that where a § 1983 damages claim would necessarily imply the invalidity of an underlying conviction or sentence, the claimant must establish that the conviction or sentence has been invalidated on appeal (by a habeas petition or through some similar proceeding). See Heck, 512 U.S. at 483–87. This principle is referred to as the "Heck-bar" or "favorable termination doctrine." See also Edwards v. Balisok, 520 U.S. 641, 646–48 (1997) (applying Heck in the context of a prison disciplinary action affecting the prisoner's term of confinement). The

---

[3] Defendants also argue as a threshold issue that Stevenson cannot use his excessive force and failure to intervene claims to recover overincarceration damages in light of Haygood v. Younger, 769 F.2d 1350 (9th Cir. 1985). Haygood explains that detention beyond the termination of a sentence is unconstitutional only if it is the result of deliberate indifference (e.g., a prison official, after being put on notice, refuses to investigate a computational error resulting in overdetention) or a violation of due process (e.g., a prisoner has a state-created liberty interest in being released and the state fails to provide minimum due process appropriate to ensure that liberty interest is not arbitrarily abrogated). Id. at 1354–55. While Stevenson is not prosecuting a deliberate indifference or due process claim, he also is not arguing that he was subject to a constitutional violation predicated on his wrongful detention beyond the termination of his sentence. Rather, Stevenson asserts that his Eighth Amendment rights were violated because of Defendants' use of excessive force and failure to intervene, and then seeks damages that compensate him for these distinct constitutional injuries. Hazle v. Crofoot, 727 F.3d 983, 992 (9th Cir. 2013). In other words, the limits imposed by Haygood are not at issue here. And Defendants have not cited additional authority suggesting that this alternative means of assessing possible overincarceration within the § 1983 context cannot take place.

6

relevant inquiry on such matters is as follows: "when a state prisoner seeks damages in a § 1983 suit, the district court must consider whether a judgment in favor of the plaintiff would necessarily imply the invalidity of his conviction or sentence; if it would, the complaint must be dismissed unless the plaintiff can demonstrate that the conviction or sentence has already been invalidated." Heck, 512 U.S. at 488.

The Court has previously discussed Heck's relation to Stevenson's claims at the pleading stage and in relation to Defendants' first summary judgment motion. Doc. Nos. 21 at 10–14, 31 at 6–14 & 101 at 18–26. In so doing, the Court has confirmed that Stevenson's § 1983 claims are Heck-barred in so far as Stevenson's success on his claims would necessarily imply the invalidity of the guilty findings and credit deductions documented in the November 2012 and December 2012 RVRs.[4] In resolving Defendants' first summary judgment motion, the Court reminded the parties that Stevenson "may not advance at trial any legal theory that would invalidate or contradict any of the material, elemental facts premising the guilty findings" in the RVRs. Doc. No. 101 at 23–25. Despite addressing Heck multiple times, the Court has not specifically considered Stevenson's overincarceration damages claims from that angle. It will do so here to resolve Defendants' latest summary judgment motion.

### 1. 90-day credit loss

Stevenson first concedes that the 90-day credit loss was not attributable to Defendants' conduct and withdraws further pursuit of damages for this segment. Doc. Nos. 181 at 10 & 194 at 41. In other words, Stevenson concedes this segment on causation grounds, not Heck. That said, if Stevenson were to argue that he was wrongfully incarcerated for the 90 days attributable to the November 2012 RVR credit-loss assessment—an argument he seemingly would have to make to recover overincarceration damages for this segment—Heck would apply against him.

---

[4] At the pleading stage, the Court explained that Heck has no application regarding Stevenson's claim against Crotty involving the holding-cell incident because the November 2012 RVR does not indicate that the allegations of that claim took place or that any force used in the situation was required. Doc. No. 31 at 11–12.

7

### 2. 360-day credit loss

Stevenson next argues that Heck does not bar a damages theory based on the 360-day credit loss. He acknowledges the Court's previous adverse rulings on this particular argument, and explains his wish to preserve for appeal his position that the RVRs are invalid, which would thus make Heck inapplicable. Doc. No. 194 at 18. Even so, across his briefing against Defendants' motions in limine and for summary judgment, Stevenson has likened his case to Nonnette v. Small, 316 F.3d 872 (9th Cir. 2002), and asserted that a jury should be able to determine whether Defendants' conduct during the beating incident caused this specific segment of allegedly wrongful incarceration.

As an initial matter, Stevenson's claim for overincarceration damages based on the 360-day credit-loss assessment runs directly into Heck. That is, by claiming that he was wrongfully incarcerated for this period of time, Stevenson is effectively arguing that the credit-loss assessment in the December 2012 RVR was invalid. Heck bars this specific theory of damages.[5]

The Court has also previously rejected Stevenson's argument that the very narrow exception to a Heck-bar that was recognized in Nonnette applies to his case. Doc. No. 31 at 9–10. In Nonnette, the Ninth Circuit held that where habeas relief is unavailable on mootness grounds because the would-be petitioner is no longer incarcerated, a § 1983 damages action can be maintained even through its success would imply the invalidity of the disciplinary proceeding that caused revocation of good-time credits. 316 F.3d at 876. After Nonnette, the Ninth Circuit issued opinions clarifying that a plaintiff could bring a § 1983 claim despite the Heck-bar so long as appropriate relief from a prior conviction was timely pursued. Guerrero v. Gates, 442 F.3d 697, 705 (9th Cir. 2006) ("Nonnette was founded on the unfairness of barring a plaintiff's potentially legitimate constitutional claims when the individual immediately pursued relief after the incident giving rise to those claims and could not seek habeas relief only because of the shortness of his

---

[5] The same will also be true of any other damages claim that necessarily invalidates or implies the invalidity of the December 2012 RVR. As one possible example that is briefly identified in his opposition papers, Stevenson asserts that a jury could find that the 360-day credit-loss assessment in the December 2012 RVR, which arose from Defendants' constitutional violations, "exacerbated his damages" and caused him to suffer additional emotional distress. If Stevenson pursues this theory (which is not a subject of Defendants' instant motion), he must account for Heck. The Court further notes that, at this stage, it is hard to see how Stevenson could succeed on this theory without at least implying that the punishment levied in the December 2012 RVR was invalid.

8

prison sentence."); see also Lyall v. City of Los Angeles, 807 F.3d 1178, 1191–92 (9th Cir. 2015) (describing Nonnette as recognizing a "narrow exception" within the Heck-bar doctrine).

At the pleading stage, the Court determined that the Nonnette exception does not apply in this case because Stevenson did not diligently pursue available habeas relief. Doc. No. 31 at 9–10. Stevenson's current arguments to the contrary are, at their core, the same ones that the Court previously rejected.[6] Namely, he contends that his efforts to pursue timely habeas relief on his own and through counsel were continually sidetracked or thwarted amidst the state court proceedings on his criminal battery charge. The recurring theme in Stevenson's narrative is his reliance on counsel's advice to wait to pursue habeas relief so as to better make an eventual habeas case. Doc. Nos. 194-1 and 194-5. The fact that this pattern stretches for more than three years introduces seeds of doubt regarding Nonnette's applicability based on a timely pursuit of habeas relief. But even accepting all of Stevenson's underlying assertions as true, he still had from July 25, 2015—when the California Court of Appeal denied his application to expand the scope of counsel's appointment to include review of habeas corpus issues—until his release on July 11, 2016, to petition for habeas relief. He did not do so. This case is more analogous to Guerrero and Lyall (where timely habeas relief was not pursued) than Nonnette, and the Court stands behind its previous conclusion.

### 3. The remaining 490 days

This leaves Stevenson's final 490 days of incarceration. The parties' briefing considers this final segment primarily through the lens of Defendants' causation argument. There are still Heck questions to consider with regard to this segment; however, considering those questions makes more sense once Stevenson's causation theory is fully unpacked.

---

[6] Nearly three years after the Court's previous ruling on this front, Stevenson sought and obtained state court documents that, he suggests, show that on remand from the state appellate court pursuit of habeas relief was not unreasonably delayed because Stevenson had to endure issues related to his representation, filing of a Pitchess motion, and requests for funding. Doc. No. 187-2. Defendants contend that this evidentiary submission is itself unreasonably belated and not worthy of the extraordinary remedy of this Court's reconsideration of its previous ruling. As explained above, even accepting this tardy presentation of evidence that seems to have been readily available for multiple years without action from Stevenson, the Court is unmoved by the renewed call for application of Nonnette to this case.

### B. Causation

Under challenge from Defendants, Stevenson argues that his final 490 days of time served constitutes compensable overincarceration that was caused by Defendants' actions. Defendants use the instant motion to argue otherwise.

As to the applicable law, a § 1983 action plaintiff must demonstrate that the defendant's conduct was the actionable cause of the claimed injury. Harper, 533 F.3d at 1026; see also Tatum v. Moody, 768 F.3d 806, 817 (9th Cir. 2014) (explaining that in a § 1983 action, a defendant is "responsible for the natural consequences of his actions"). "To meet this causation requirement, the plaintiff must establish both causation-in-fact and proximate causation." Harper, 533 F.3d at 1026. This standard of causation "closely resembles the standard 'foreseeability' formulation of proximate cause." Arnold v. Int'l Bus. Machs. Corp., 637 F.2d 1350, 1355 (9th Cir. 1981). A defendant's consequences are capped if "'an intervening decision of an informed, neutral decision-maker 'breaks' the chain of causation,' meaning that the harm to the plaintiff can be traced more directly to an intervening actor." Stoot v. City of Everett, 582 F.3d 910, 926 (9th Cir. 2009) (quoted source omitted). "The inquiry into causation must be individualized and focus on the duties and responsibilities of each individual defendant whose acts or omissions are alleged to have caused a constitutional deprivation." Leer v. Murphy, 844 F.2d 628, 633 (9th Cir. 1988). "Causation is an intensely factual question that should typically be resolved by a jury." Pac. Shores Props., LLC v. City of Newport Beach, 730 F.3d 1142, 1168 (9th Cir. 2013).

#### 1. Stevenson's causation theory

Through his briefing, Stevenson presents the following theory of causation related to the 490-day segment: Defendants used excessive force against him during the December 2012 beating incident. The beating incident also led to his criminal charge for battery on a custodial officer. On the eve of trial, his cell was subject to property damage and theft. He believes that the ransacking of his cell was committed as reprisal for his complaints and with intent to intimidate him from proceeding to trial in the criminal case. In response to this—as well as his experience with the pepper-spray, holding-cell, and beating incidents—he involuntarily pleaded no contest to

the battery charge in fear of his safety and to protect himself from further harm. His plea led to a four-year prison sentence. His plea was then invalidated on appeal, and his conviction and sentence were overturned. Further prosecution was dismissed, and he was released from prison after serving 490 days on the sentence.

In other words, Stevenson argues that there is no break in the causal chain between Defendants' use of excessive force during the beating incident and 490 days of incarceration that he contends were wrongfully served. That is, Stevenson's overincarceration was a foreseeable consequence of Defendants' excessive force.

Of particular importance, Stevenson contends that any perceived weakness in this causal chain is attributable to Defendants' actions to cover up their abuse of him. To this point, Stevenson asserts that: (1) Defendants covered up their use of excessive force by producing incident reports that omitted material facts, and (2) Crotty provided testimony in the criminal case that omitted material and adverse information, and included information that was not in the incident reports regarding the identities of inmate witnesses and Stevenson's movement during the beating incident. According to Stevenson, Defendants' efforts knowingly misled the district attorney's office and the state court. In light of all this, Stevenson argues that the jury should be able to determine whether Defendants' "tandem" use of force and cover up led to his wrongful conviction and overincarceration.

### 2. Return to Heck

First returning to Heck, a threshold question remains whether Stevenson could prove this exact causation theory without invalidating or contradicting material facts of the December 2012 RVR. At summary judgment, the Court addressed the December 2012 RVR for purposes of Heck and Stevenson's claims as follows:

> For the beating incident, the prison found Plaintiff guilty of "Battery on a Peace Officer with Serious Injury," which was a violation of California Code of Regulations, Title 15, § 3005(d)(1). Section 3005(d)(1) states, Inmates shall not willfully commit or assist another person in the commission of an assault or battery to any person or persons, nor attempt or threaten the use of force or violence upon another person. Cal. Code Regs. tit. 15, § 3005(d)(1). "Battery," as was recognized in the Rules Violation Report, is defined by California Penal Code § 242 as "any

> willful and unlawful use of force or violence upon the person of another." "Serious injury," as was recognized in the Rules Violation Report, is defined by California Penal Code [§] 243(f)(4) as "a serious impairment of physical condition, including, but not limited to . . . bone fracture." Therefore, for purposes of this lawsuit, the elements considered by the prison for "Battery on a Peace Officer with Serious Injury," as documented in the Rules Violation Report, were: (1) a prisoner (2) willfully and (3) unlawfully (4) using force or violence (5) upon a peace officer, (6) causing a bone fracture.
> 
> Because of those elements, the prison's guilty finding was based on the following facts, which are documented in the Rules Violation Report: (1) Plaintiff lunged towards Officer Crotty and struck Officer Crotty's left shoulder with Plaintiff's right shoulder; (2) Plaintiff kicked at Officer Crotty; (3) Plaintiff's force or violence fractured bone/s in Crotty's hand. Consequently, pursuant to the Heck-bar, Plaintiff's § 1983 claims may not advance any legal theory that, if successful, would necessarily invalidate or contradict any of the foregoing facts. In other words, none of the foregoing facts can be presumed to be false by the factfinder for purposes of adjudicating Plaintiff's § 1983 claims.
> 
> With that factual groundwork clarified, Plaintiff's § 1983 claims arising from the beating incident are not necessarily Heck-barred. This is because even if Plaintiff battered Officer Crotty by shouldering and kicking him and fractured Officer Crotty's hand, Plaintiff can advance the cognizable legal theory that the force applied by the prison officers in response was excessive and unnecessary and applied maliciously and sadistically for the purpose of causing harm to Plaintiff. If Plaintiff prevailed on that legal theory, then the judgment would not necessarily invalidate the prison's finding that Plaintiff was guilty of "Battery on a Peace Officer with Serious Injury."

Doc. No. 101 at 24–25.

In line with the Court's concluding comments regarding application of Heck, Stevenson's causation theory could be understood as not technically invalidating or directly contradicting the material factual findings of the December 2012 RVR. That is, he takes as a given all the facts on which his guilty finding was based, and simply argues that the December 2012 RVR does not tell the whole story.

But Stevenson also treads a very fine line on this front. Notably, in promoting the cover-up portion of his causation theory, Stevenson seemingly aims to convince the jury that Defendants were liable for his overincarceration at least in part based on an inference (or more) that the December 2012 RVR and his criminal case were a product of a charge that was manufactured by Defendants to shield themselves from liability for violating his civil rights. This aim is made evident by the repeated challenges throughout Stevenson's briefing to the validity of the charges underlying the December 2012 RVR and the criminal conviction. For tamer criticisms of the former, Stevenson contends the December 2012 RVR did not include important information and was merely a rubber-stamp following a perfunctory proceeding. On the other end of the spectrum,

Stevenson characterizes the December 2012 RVR as follows:

> When Defendants unleashed their violence against Plaintiff, they expected it to be covered up, per standard operating procedure, well understood by all, at that time and place. This social contract of terror, known to inmates at CCI, has been perpetuated by greater denial. The truth is finally coming to light that when guards beat an inmate and engage in excessive, unwarranted force, they cover it up by charging the inmate with battering a guard or similar violations.

Doc. No. 194 at 13. Stevenson then seeks to bolster this point by citing authorities generally addressing law enforcement cover ups as a means of avoiding liability for civil rights violations. Stevenson's briefing essentially positions the circumstances here within a self-described conspiracy of violence and fraud being perpetrated in prisons across the country:

> An unjust Catch-22 is at play because the built-in bias assumes that correctional officers are following the rules. Yet even when the COs have violated the rules, they still enjoy the bias of their word against that of the inmate. At the same time, their power to prolong an inmate's sentence and subject an inmate to the most restrictive conditions, such as the SHU, eludes meaningful review.

Id. at 14.

Stevenson similarly attacks the state court proceedings that led to his criminal conviction, indicating that Crotty's participation as a testifying witness revealed that "Defendants' conduct, collectively and individually, were [sic] deliberately intended to cover up their acts of violating Plaintiff's constitutional rights." Id. at 19. More specifically, Stevenson contends that "Defendants' materially incomplete incident reports that resulted in Plaintiff being charged in an RVR and by the prosecutor in state court, as well as Crotty's continued testimony at state court proceedings, were cover-up acts designed to shield Defendants from liability for their acts of excessive force." Id. at 31–32. Stevenson then proceeds to implicate both the trial court and prosecution as (at the very least) unwitting actors within Defendants' efforts to cover up their constitutional violations. Id. at 36, 40.

All of these broadsides portend a massive clash with Heck. That is, if Stevenson were to prove his causation theory in this fashion, it seems clear that he would undermine (if not outright destroy) the validity of the December 2012 RVR at the same time. Despite acknowledging the Court's previous rulings on Heck, Stevenson seems to miss this looming conflict in its entirety. Instead, his briefing suggests that he is "entitled to present evidence to the jury regarding how

guards cover up assaulting inmates via cover charges, because that is integral to his story in many respects, including in his subjective understanding that led him to enter a guilty plea, and his diligence in pursuing remedies." Id. at 18. Stevenson would almost surely run headlong into Heck if he were to act on such broad entitlement. Yet, the Court can also avoid the tricky task of monitoring this issue at trial, as a lack of evidentiary support for Stevenson's causation theory reveals that the final overincarceration damages claim should be stopped before it can even start.

### 3. Evidentiary support for Stevenson's causation theory

As the crux of their summary judgment motion, Defendants argue that Stevenson has failed to show any causal connection between their actions and his 490 days of incarceration. From a sufficiency of the evidence perspective, there are two major problems with Stevenson's causation theory, each of which would support a ruling in Defendants' favor.

First, Stevenson's causation theory is dependent on his claims of Defendants' cover up, and as Defendants point out, these claims are based entirely on speculation, conjecture, and references to authorities beyond the scope of this action. Stevenson's primary source of relevant evidentiary support is his own declaration. Doc. No. 194-1. But even there, Stevenson is unable to describe how Defendants are connected to specific links in the broader causal chain. For instance, Stevenson's causation theory is predicated on his no contest plea being caused by Defendants' acts of intimidation, which included the ransacking of his cell on the eve of the criminal trial. Yet, Stevenson admits that he has no evidence establishing who ransacked his cell, which in turn forces him to rely on unsupported assertions that "it is common knowledge that inmates suffer reprisals when they complain" and "[i]t was reasonably foreseeable—indeed, *intended,* that Plaintiff would interpret the property damages as a threat to his future safety should he proceed to trial." Doc. No. 194 at 30. But nothing in these assertions (or the sworn ones in his declaration) implicate Defendants in any fashion.[7] As another example, and as discussed above,

---

[7] It bears noting here that the Court dismissed as inadequately pleaded Stevenson's intimidation and state law property damage claims, which were based on the ransacked-cell allegations that undergird the causation theory. Doc. Nos. 31 at 15–16, 20–22.

14

Stevenson's causation theory is also dependent on allegations regarding Crotty's participation in the criminal case. Like with the ransacked-cell allegations, however, the evidentiary support for this portion of Stevenson's broader cover-up claim essentially amounts to layered speculation and unsubstantiated accusations that Crotty was actively attempting to skew the state court proceedings through false reports and testimony.[8]  In short, multiple portions of the Stevenson's causation theory stand without any evidentiary support.

Stevenson receives no help on this front from a handful of declarations from other persons that (with one exception) were incarcerated at the California Correctional Institution around the time of the underlying incidents. Doc. Nos. 194-2, 194-3, 194-4 & 200. In general, these declarations assert that inmates were routinely subject to physical and mental abuse, intimidation, and retaliation from officers at the prison. But even if these declarations support separate allegations of officers committing constitutional violations and acts of intimidation in a similar time and place, Stevenson has not shown how they stand as relevant evidence in his case. To that point, of the four declarations, only one references a lone Defendant in this action and that declaration itself seems to refer to events occurring eight years before those at issue here. Simply, no causal connection is made. Based on the allegations at hand—which, notably, do not seek relief on a prison-wide level—the Court finds this collection of evidence insufficient to create a genuine issue of material fact that these Defendants are liable to Stevenson because of their own cover up and intimidation actions against him.

Nor does Stevenson receive evidentiary support from his litany of case law and secondary source citations addressing law enforcement cover ups, intimidation, and retaliation across the country. None of this constitutes evidence in this case. The same is also true for Stevenson's judicial notice request regarding a redacted declaration that was filed in a Northern District of California case, Armstrong v. Newsom, No. C94 2307 CW (N.D. Cal. 2020). Doc. Nos. 198 &

---

[8] Here too the Court notes that it dismissed on Heck grounds Stevenson's false reports and false testimony claims, which were based on allegations that he was wrongfully convicted because of Crotty's participation in his criminal case. Doc. No. 21 at 15–17. In so doing, the Court explained that Heck is not an evidentiary bar, which in turn left Stevenson with an opportunity to produce and eventually present to the fact-finder evidence related to these claims. Simpson v. Thomas, 528 F.3d 685, 696 (9th Cir. 2008). But the existence of that opportunity, which Stevenson emphasize in his briefing, is not equivalent to the existence of that evidence. And Stevenson has not produced the latter here.

198-1 at 4–100. Stevenson explains that the declaration was filed in support of a party's "Motion to Stop Defendants from Assaulting, Abusing and Retaliating Against People with Disabilities at R.J. Donovan Correctional Facility." According to Stevenson, the declaration was signed by an expert who attests to having overseen all prisons in Washington State and witnessed a pattern of prison guards charging inmates with assault on staff to cover up the guards' own use of excessive force. Defendants' objection to Stevenson's request correctly lays out numerous problems with the Court taking judicial notice here (Doc. No. 201-1), and the Court need not belabor the point. In addition to the declaration having minimal (if any) relevance and probative value for purposes of this wholly independent case, its contents are seemingly full of facts subject to reasonable dispute. Fed. R. Evid. 201(b). Moreover, as made clear in his briefing, Stevenson seeks judicial notice of the truth of the contents of the declaration in so far as he uses those contents as supportive authority for his own causation theory. BP W. Coast Prod. LLC v. Greene, 318 F. Supp. 2d 987, 994 (E.D. Cal. 2004) (quoting M/V Am. Queen v. San Diego Marine Const. Corp., 708 F.2d 1483, 1491 (9th Cir. 1983)). Put together, judicial notice is improper, and the request will be denied.

       The second problem with Stevenson's causal chain compounds the evidence deficiency presented by the first. Namely, evidence before the Court shows that Stevenson served the 490 days of incarceration because of his no contest plea to the criminal battery charge, and evidence also indicates that that plea was never withdrawn or otherwise disturbed throughout the state court proceeding. In other words, Stevenson's plea and the resulting four-year sentence appear to be a severing act in the alleged causal chain. This presents a separate fatal threat to Stevenson's causation theory. If there is no showing of wrongful incarceration because the plea is never overcome, the theory collapses on itself. Recognizing this threat, Stevenson challenges the validity of his plea and asserts the jury should have an opportunity to do the same.

       The Court can first reject Stevenson's passing assertion that his plea was "invalidated" on appeal. While the voluntariness of his plea was an issue on appeal, the California Court of Appeal disposed of the matter by conditionally reversing the conviction and remanding for limited discovery proceedings attendant to Crotty's personnel file. Stevenson, 2015 WL 4554526, at *9–

1  10 (emphasis added). In so doing, the court stated that "[a]fter the trial court rules on Stevenson's
2  new suppression motion, Stevenson shall be permitted to withdraw his plea and proceed to trial. If
3  Stevenson elects not to withdraw his plea for a new trial, the trial court shall reinstate the
4  judgment." Id. at *10. This language makes clear that the state appellate court expressly declined
5  to address Stevenson's argument regarding the voluntariness of his no contest plea *and* left that
6  plea intact notwithstanding the favorable disposition.

7  Beyond this, Stevenson's primary line of attack on the validity of his no contest plea
8  involves equating this case to Akey v. Placer County, No. 2:14-cv-2402-KJM-DB, 2019 WL
9  290617 (E.D. Cal. Jan. 23, 2019). The Court is not persuaded.

10  In resolving a summary judgment dispute, the Akey court clarified that an intervening
11  family court custody determination did not necessarily break the causal chain regarding the
12  defendants' liability in facilitating the removal of a child from the plaintiff mother's custody. Id.
13  at *2–4. This was so, the Akey court explained, because there remained a question for jury
14  resolution regarding the validity of the family court proceeding. Id. at *4.

15  While procedurally aligned, the situation at hand is substantively different from Akey in
16  material ways. The family court proceeding in Akey was a hearing on an ex parte application for
17  sole custody that occurred eight days after the disputed removal of the child. Id. at *1. The Akey
18  court found the validity of that proceeding remained an open question in light of evidence showing
19  that the defendants' child abuse investigation was conducted with inconsistencies and in bad faith,
20  that the family court heavily relied on the defendants' representations when reaching its custody
21  determination, and that the family court later found that there was "no evidence" of the mother's
22  neglect or failure to protect the child. Id. at *4. In other words, summary judgment could not be
23  granted on the basis of a severed causation theory because specific evidence suggested that the
24  defendants' conduct undermined the validity of the family court proceeding that was supposed to
25  sever the defendants' causal liability.

26  Here, in contrast, Stevenson has provided only conclusory assertions and citations to
27  authorities discussing factual circumstances beyond the scope of this particular case. Of note,
28  Stevenson has not presented evidence suggesting that the prosecutor's decision to prosecute him

on the criminal battery charge was not an independent choice. See Beck v. City of Upland, 527 F.3d 853, 862 (9th Cir. 2008). Nor has he presented evidence showing that his no contest plea was improperly accepted such that the state court judgment of conviction was not an intervening decision of an informed, neutral decisionmaker. Stoot, 582 F.3d at 926. As discussed above, Stevenson instead uses his briefing to baldly allege that the prosecution and trial court (as well as the state attorney general's office) were either unwitting or culpable actors within a far-reaching effort to cover up Defendants' excessive force. Doc. No. 194 at 36, 40. To the extent these accusations have any semblance of support in the record, it is in the state appellate court's determination that the trial court erred in limiting discovery and suppression hearing examination on materials relating to Crotty's personnel records. Stevenson, 2015 WL 4554526, at *7.[9] But with nothing more (and shorn of Stevenson's accusatory bluster), this Court declines to characterize the appellate court's holding as evidence showing that the trial court lacked neutrality or the prosecutor lacked independence.

Moreover, even if Stevenson had presented an evidentiary case that raised doubts regarding the impartiality of these decisionmakers, he would still need to have presented evidence showing that their actions were compromised *because of* Defendants' conduct. Nicholson v. City of Los Angeles, 935 F.3d 685, 691–92 (9th Cir. 2019). On this front, Stevenson offers only unsubstantiated assertions such as "Defendants knew or should have known that their abuse would lead to Plaintiff's involuntary plea . . . [and] bogus criminal charges against Plaintiff." Doc. No. 194 at 38. According to Stevenson,

> [Defendants] knew from their training that illegitimate violence led to further investigation, especially with CDCR Internal Affairs. Anticipating further investigation, Defendants would (and did) use the RVR to obscure their own unlawful violence. It was foreseeable that a serious disciplinary violation of this sort would be referred to the district attorney, who would bring criminal charges against Plaintiff. That was a distinct component of Defendants' abuse of their power. Thus, it was also foreseeable that, sooner or later, assuming their further story was airtight enough (— but it wasn't! —), Plaintiff would pick up a new

---

[9] The state appellate court added that this error (along with other evidentiary errors) left it "very difficult to evaluate whether Stevenson would have chosen . . . to enter a no contest plea rather than proceed to trial." Id. at *8. This statement obviously questions the outcome below. Yet, this statement also is not by itself evidence supporting Stevenson's distinct claim that Defendants caused him to enter a no contest plea through their intimidation. As noted above, evidence of that kind has not been presented here.

18

> criminal conviction, for which he would serve an additional prison sentence in the aftermath of this incident. These are factual questions, and Plaintiff is entitled to put them to the jury.

Id. These unsupported assertions are not equivalent to the evidentiary showing in Akey. They are also insufficient to show a genuine issue of material fact remains regarding Defendants' alleged causation of overincarceration damages for the 490-day segment.

### C.  Conclusion

To start, the Court relies on its previous Heck-related rulings to grant part of Defendants' motion: namely, Stevenson cannot pursue a theory for liability or damages that invalidates the factual findings or conclusions of the November 2012 or December 2012 RVRs. This bar includes theories of overincarceration damages based on time served because of the RVRs' credit-loss assessments. The Court also independently accepts Stevenson's concession on causation grounds of any overincarceration damages argument based on the 90-day credit loss arising from the November 2012 RVR. As to the 490-day segment, the Court concludes that Stevenson has not presented sufficient evidence as to his causation theory. In sum, the Court will grant Defendants' summary judgment motion in full.

### **ORDER**

Accordingly, IT IS HEREBY ORDERED that Defendants' Motion for Partial Summary Judgment (Doc. No. 192) is GRANTED.

IT IS SO ORDERED.

Dated:  September 22, 2021                    _____
                                                                    SENIOR DISTRICT JUDGE