# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| **DOUGLAS J. STEVENSON,**<br><br>　　　　**Plaintiffs,**<br><br>　v.<br><br>**K. HOLLAND, et al.,**<br><br>　　　　**Defendants.** | CASE NO. 1:16-cv-01831-AWI-JLT<br><br>**ORDER ON OUTSTANDING MOTIONS IN LIMINE**<br><br>(Doc. Nos. 113, 117, 121, 124, 127 & 129) |

　　In this order, the Court will resolve all motions in limine and judicial notice requests that were not already resolved through its previous orders on the parties' motions in limine and Defendants' motion for partial summary judgment. Doc. Nos. 180 & 203.[1]

## LEGAL STANDARD

　　"A motion in limine is a procedural mechanism to limit in advance testimony or evidence in a particular area." United States v. Heller, 551 F.3d 1108, 1111 (9th Cir. 2009). Motions in limine may be "made before or during trial, to exclude anticipated prejudicial evidence before the evidence is actually offered." Luce v. United States, 469 U.S. 38, 40 n.2 (1984). "Although the Federal Rules of Evidence do not explicitly authorize in limine rulings, the practice has developed pursuant to the district court's inherent authority to manage the course of trials." Id. at 4 n.4; Jonasson v. Lutheran Child & Family Servs., 115 F.3d 436, 440 (7th Cir. 1997); see also City of Pomona v. SQM N. Am. Corp., 866 F.3d 1060, 1070 (9th Cir. 2017) (explaining motions in limine

---

[1] The rulings here were reserved in the Court's previous order on motions in limine. Doc. No. 180 at 54. In response to that order, the parties filed supplemental briefing and submitted evidence for in camera review, after which another hearing was held. Doc. Nos. 181–183, 187, 189 & 191. The Court's previous order on motions in limine also provided relevant factual background for the motions resolved in this order. Doc. No. 180 at 1–2.

"are useful tools to resolve issues which would otherwise clutter up the trial" (quoted source omitted)).

In <u>Hana Financial, Inc. v. Hana Bank</u>, the Ninth Circuit cited with approval the following "standards applicable to motions in limine":

> Judges have broad discretion when ruling on motions in limine. However, a motion in limine should not be used to resolve factual disputes or weigh evidence. To exclude evidence on a motion in limine, the evidence must be inadmissible on all potential grounds. Unless evidence meets this high standard, evidentiary rulings should be deferred until trial so that questions of foundation, relevancy and potential prejudice may be resolved in proper context. This is because although rulings on motions in limine may save time, costs, effort and preparation, a court is almost always better situated during the actual trial to assess the value and utility of evidence.

735 F.3d 1158, 1162 n.4 (9th Cir. 2013) (citing <u>Goodman v. Las Vegas Metro. Police Dep't</u>, 963 F. Supp. 2d 1036, 1047 (D. Nev. 2013), <u>rev'd in part on other grounds by</u> 613 F. App'x 610 (9th Cir. 2015)); see also <u>Tritchler v. County of Lake</u>, 358 F.3d 1150, 1155 (9th Cir. 2004); <u>Jenkins v. Chrysler Motors Corp.</u>, 316 F.3d 663, 664 (7th Cir. 2002). By resolving a motion in limine, the court may prevent the presentation of potentially prejudicial evidence to the jury, which also eliminates the need to try to neutralize a prejudicial taint after the evidence has already been presented. See <u>Brodit v. Cambra</u>, 350 F.3d 985, 1004–05 (9th Cir. 2003). Notwithstanding a motion in limine ruling, a court may change course at trial in the event that testimony or other evidence "bring[s] facts to the district court's attention that it did not anticipate at the time of its initial ruling." <u>United States v. Bensimon</u>, 172 F.3d 1121, 1127 (9th Cir. 1999) (citing <u>Luce</u>, 469 U.S. at 41–42).

As to general admissibility standards, evidence is relevant if (a) it has any tendency to make a fact more or less probable than it would be without the evidence; and (b) the fact is of consequence in determining the action. Fed. R. Evid. 401. Irrelevant evidence is not admissible. Fed. R. Evid. 402. "Relevancy is not an inherent characteristic of any item of evidence but exists only as a relation between an item of evidence and a matter properly provable in the case." <u>Sprint/United Mgmt. Co. v. Mendelsohn</u>, 552 U.S. 379, 387 (2008) (quoting Fed. R. Evid. 401 advisory committee notes). Even if relevance is established, the court may exclude evidence "if its probative value is substantially outweighed by a danger of one or more of the following: unfair

2

prejudice, confusing the issues, misleading the jury, undue delay, wasting time, or needlessly presenting cumulative evidence." Fed. R. Evid. 403. In general, "[e]vidence of a person's character or character trait is not admissible to prove that on a particular occasion the person acted in accordance with the character or trait." Fed. R. Evid. 404(a)(1). Likewise, "[e]vidence of a crime, wrong, or other act is not admissible to prove a person's character in order to show that on a particular occasion the person acted in accordance with the character." Fed. R. Evid. 404(b)(1).

## **DISCUSSION**

The outstanding matters that the Court will resolve in this order are Defendants' Motions in Limine Nos. 2 and 14 and Stevenson's Motion in Limine No. 13 and Requests for Judicial Notice Nos. 1 and 2.[2]

### A.     **Defendants' Motion No. 2 concerning Defendant Crotty's personnel records**

Defendants seek an order excluding the discussion or introduction as evidence of Defendant M. Crotty's personnel records at trial. Doc. No. 113.

#### 1.     **The parties' arguments:**

Defendants argue that Crotty's records are not admissible. They first contend that the records are not relevant to Stevenson's claims and allegations that Crotty used excessive force. They further argue that even if the records are relevant, they are not proportional to the needs of the case and would instead unfairly prejudice Crotty, confuse the issues, mislead the jury, and waste time. Finally, Defendants argue that Stevenson should not be allowed to use the records as improper character evidence.

In opposition, Stevenson first agrees that the records may not be admitted to show that Crotty acted in accordance with an earlier instance of bad character. Doc. No. 145 at 3. But he contends the records and their contents are generally admissible as evidence bearing on Crotty's

---

[2] The Court's resolution of Defendants' partial summary judgment motion takes the place of its resolution of Defendants' Motion in Limine No. 3. Doc. No. 203.

credibility and truthfulness. Stevenson asserts that the records should be admissible upon cross-examination for impeachment purposes, and also requests permission to question Crotty regarding these subjects during his direct examination as an adverse party and an expected-to-be hostile witness.

### 2. Analysis:

In response to the Court's previous order on motions in limine, the parties submitted for in camera review certain tangible evidence. At least some of this evidence appears to be related to Crotty's personnel records. And for at least some of that evidence, the parties have presented general admissibility arguments in their original briefing on Defendants' motion: once again, Defendants seek a blanket bar of the evidence, while Stevenson argues he should be able to use the evidence on cross-examination for impeachment and on direct-examination under expectation that Crotty will be a hostile witness. Although the Court has now reviewed this evidence, there remain unaddressed specifics as to how any particular evidence that this motion covers will be used at trial. This in turn makes it difficult to assess whether any particular evidence is relevant or whether introduction of such evidence would be unfairly prejudicial or constitute improper character evidence. The same can be said for possible references to particular evidence coming from the records.

Thus, at this stage, the Court will both deny Defendants' motion for a blanket bar on evidence regarding Crotty's personnel records and defer further ruling as to the admissibility of any specific evidence until that time.[3] Any attempted use of such evidence at trial must be preceded by an offer of proof made out of the presence of the jury.[4] Recognizing that moment

---

[3] In support of their motion, Defendants cite cases where discovery requests for production of personnel records have been denied on relevance and character evidence grounds. See Wheeler v. Alison, No. 1:12CV00861-LJO DLB, 2014 WL 7157626, at *7 (E.D. Cal. Dec. 15, 2014), aff'd, 779 F. App'x 488 (9th Cir. 2019); Brown v. Williams, No. 1:09-CV-00792-LJO, 2012 WL 1290801, at *2 (E.D. Cal. Apr. 13, 2012). While dealing with comparable issues, these cases are inapt here in so far as Stevenson only seeks to use records that were in fact produced in discovery pursuant to court order. Cf. Shepard v. Quillen, No. 1:09-CV-00809-BAM PC, 2013 WL 978201, at *3 (E.D. Cal. Mar. 12, 2013) (motion in limine denied because no production of records during discovery and sought for improper character evidence).

[4] The Court will also defer ruling on the admissibility of the evidence submitted for in camera review that does not pertain directly to Crotty's personnel records. In so far as this evidence's admissibility is still disputed at this stage (an open question), the Court is resigned to guesswork on relevance and Rule 403 analysis. As with the discussion

4

may come, the Court will also provide some preliminary guidance that should be accounted for in any efforts to use this evidence at trial. First, it appears that at least some evidence within Crotty's personnel records could be relevant for impeachment purposes. On the other hand, doubtless some evidence in those records is irrelevant and certain uses of the records would run afoul of Rules 403 and 404. With this in mind, arguments for and against the admission of this evidence should be made with a degree of specificity that enables the Court to promptly determine issues of relevance and devise any measures to minimize potential prejudice. Second, Stevenson's desired use of the evidence—attacking Crotty's truthfulness and credibility—is subject to the limitations imposed by Federal Rules of Evidence 608(b) and Rule 611(b). Third, the Court possesses ample authority under Rules 403 and 611(a) to impose measures that ensure potential distraction, prejudice, and embarrassment are minimized. See, e.g., Castro v. County of Los Angeles, No. 2:13-cv-06631-CAS (SSx), 2015 WL 4694070, at *11 (C.D. Cal. Aug. 3, 2015) (limiting cross-examination to a single on-point question to avoid distracting the jury from the facts at hand).

### B. Defendants' Motion No. 14 concerning Stevenson's allegation that Defendant Crotty called an attorney in another proceeding a "dick"

Defendants seek an order excluding references to or evidence of Stevenson's allegation that Defendant Crotty called an attorney in another proceeding a "dick." Doc. Nos. 127 & 129.

#### 1. The parties' arguments:

At a preliminary hearing in Stevenson's state court prosecution for battery on a custodial officer, Deputy Public Defender Jacob Evans cross-examined Crotty. At the conclusion of the hearing, Deputy Public Defender Andrew Blanco heard Crotty call Evans a "dick," and communicated as much to Evans. Evans later shared this information with Stevenson. Now, Stevenson's counsel declares that Evans is expected to testify that he shared having been called a "dick" by Crotty with Stevenson. Doc. No. 145-1 at 3. Defendants contend that evidence related

---

above, if the issue arises at trial, substantive admissibility arguments for this evidence shall be made out of the presence of the jury.

to this comment should be precluded as it is not relevant and instead unduly prejudicial. Defendants argue that Stevenson's only purpose in introducing this evidence would be to paint Crotty in a negative light.

In opposition, Stevenson contends that Crotty's statement is relevant to his own state of mind. Doc. No. 145 at 13—14. Specifically, Stevenson asserts that he will testify that knowing Crotty called his attorney a "dick" contributed to his decision to accept a guilty plea because he feared for his ongoing safety. In greater detail, Stevenson explains that he

> informed the Kern County Superior Court that he was pleading guilty because he feared for his ongoing safety. Plaintiff explained he feared that Defendant Crotty and his co-workers would assault him as a reprisal if he were to go to trial. Plaintiff told the court that regardless of whether he won his trial, Plaintiff would have to return to face the guards, and it simply was not safe for him to do so based on the continued harassment he was experiencing.
> Crotty's use of profanity to an officer of the court will not be offered to show Crotty's lack of decorum or bad character, but to show that Plaintiff's attorney found the information relevant to share with him and that Crotty's use of profanity against his attorney contributed to Plaintiff's assessment that it was unsafe for him to proceed to trial.

Doc. No. 145 at 14 (internal citation omitted). Stevenson offers that he would have no objection to a limiting instruction that explains what the evidence may properly be used for—i.e., relevant to his state of mind.

### 2. Analysis:

The outcome of this motion is governed by the Court's disposition of the summary judgment dispute. Namely, as briefed, Stevenson's case for admission of this evidence is tied exclusively to his causation theory for his intended pursuit of overincarceration damages for his time imprisoned on the state felony conviction. With that causation theory playing no further role in these proceedings in light of the summary judgment ruling in Defendants' favor, the Court finds this evidence without relevance. Accordingly, the Court will grant Defendants' motion.

### C.    Stevenson's Motion No. 13 concerning lifting the stipulated protective order

Stevenson seeks an order removing the confidential designation from documents covered by the stipulated protective order or an order relieving the parties of the stipulated protective order

6

in full. Doc. No. 117 at 11–15.

### 1. The parties' arguments:

During discovery, the Court entered a protective order to which the parties had previously stipulated. Doc. No. 48. The protective order dictates that certain identified records shall only be disclosed with designation of "Confidential Material" and subject to outlined confidentiality procedures. It also states that "this protective order does not assure that any of the materials protected [by the protective order] will be sealed by the Court in the event a party wishes to file them," and that any party may "apply to the Court for an order removing the Confidential Material designation from any document." The protective order enables disclosure of "Confidential Material" to the jury, should the matter proceed to trial, but requires return of "all Confidential Material received under the provision of this order (including any copies made)" to Defendants' counsel within sixty days after trial, any appeal, or any other termination of the litigation.

Now, with trial approaching, Stevenson moves to lift the confidential designation from all matters bearing that designation—or, put otherwise, to be relieved of any further confidentiality obligations pursuant to the stipulated protective order. Stevenson seeks to be able to freely use confidential material at trial and thereafter without breaching the protective order. Alluding to the Court's earlier lifting of the protective order for purposes of litigating Defendants' first motion for summary judgment (Doc. No. 94), Stevenson asserts that Defendants cannot meet their burden to show "compelling reasons" for continued confidentiality. He adds that even if it applies, Defendants also cannot meet the lower burden of "good cause."

In opposition, Defendants first argue that Stevenson has not fulfilled the protective order's meet-and-confer requirement, which this Court clarified was to apply to any future motion seeking to lift the protective order as to materials previously designated as confidential. Doc. No. 152. Second, Defendants argue that the Court should not grant Stevenson a blanket lift of the protective order and that Stevenson has not identified the specific documents from which he seeks to have the confidential designation removed. Third, Defendants assert the documents covered by the protective order meet both the "compelling reasons" and the "good cause" standards to support

7

confidentiality. Anticipating Stevenson's use of Crotty's personnel records, Defendants contend that the documents at issue warrant sealing because public disclosure of the documents will cause a sufficient level of annoyance, embarrassment, oppression, undue burden, or expense. They add that the records are irrelevant and improper character evidence, and that Stevenson intends to introduce the evidence to mislead the jury into believing that prior allegations of misconduct by Crotty are indicative of his character or related to his actions during the alleged incidents in this matter. Further, Defendants state that there is no public interest that outweighs the protected and confidential nature of the disputed documents.

In reply, Stevenson disputes Defendants' contention that he failed to satisfy the meet-and-confer requirement, noting that for purposes of their motions in limine the parties agreed to discuss matters by way of phone calls and letters and that his counsel provided Defendants with a letter that signaled intent to request relief from the protective order and the confidential designation. Doc. No. 157 at 6–7. Stevenson also objects to Defendants' contention that he has not made adequate showings of relevance and admissibility. He asserts that he is requesting relief from the protective order in full because "he has no way of knowing in advance which documents might be relevant." He emphasizes that his need for relief could prove critical for purposes of an interlocutory appeal or other post-trial proceedings, and once again asserts that Defendants have not carried their burden to maintain the confidentiality of particular documents.

### 2. Analysis:

In federal court, all filed documents are presumptively public. San Jose Mercury News, Inc. v. U.S. Dist. Court, 187 F.3d 1096, 1103 (9th Cir. 1999). This is because "the courts of this country recognize a general right to inspect and copy public records and documents, including judicial records and documents." Ctr. for Auto Safety v. Chrysler Grp., LLC, 809 F.3d 1092, 1096 (9th Cir. 2016) (citations omitted). Accordingly, a party seeking to seal a judicial record bears the burden of overcoming the strong public access presumption. Id.

Two standards generally govern requests to seal documents: the "compelling reasons" standard for documents directly related to the underlying causes of action, such as documents

attached to summary judgment motions, and the lesser "good cause" standard for documents only tangentially related to the underlying causes of action, such as some discovery documents and documents attached to non-dispositive motions. Kamakana v. City & Cty. of Honolulu, 447 F.3d 1172, 1179–80 (9th Cir. 2006) (citations omitted).

The compelling reasons standard "derives from the common law right to inspect and copy public records and documents, including judicial records and documents." Pintos v. Pac. Creditors Ass'n, 605 F.3d 665, 678 (9th Cir. 2010) (citations omitted). "To limit this common law right of access, a party seeking to seal judicial records must show that compelling reasons supported by specific factual findings outweigh the general history of access and the public policies favoring disclosure." Id. (citations omitted). In general, "compelling reasons" sufficient to outweigh the public's interest in disclosure and justify sealing court records exist when such "court files might have become a vehicle for improper purposes, such as the use of records to gratify private spite, promote public scandal, circulate libelous statements, or release trade secrets." Kamakana, 447 F.3d at 1179 (citations omitted). However, "[t]he mere fact that the production of records may lead to a litigant's embarrassment, incrimination, or exposure to further litigation will not, without more, compel the court to seal its records" under the compelling reasons standard. Id.

The good cause standard "comes from [Federal Rule of Civil Procedure] Rule 26(c)(1), which governs the issuance of protective orders in the discovery process." Ctr. for Auto Safety, LLC, 809 F.3d at 1097. Rule 26(c) states that the court "may, for good cause, issue an order to protect a party or person from annoyance, embarrassment, oppression, or undue burden or expense." Fed. R. Civ. P. 26(c); see also Pintos, 605 F.3d at 678 (stating that the good cause standard under Rule 26(c) asks "whether 'good cause' exists to protect the information from being disclosed to the public by balancing the needs for discovery against the need for confidentiality"). The good cause standard "presents a lower burden for the party wishing to seal documents than the 'compelling reasons' standard," as the "cognizable public interest in judicial records that underlies the 'compelling reasons' standard does not exist for documents produced between private litigants." Pintos, 605 F.3d at 678.

A ruling on the continuation of a protective order proceeds in two steps. First, the Court

"must determine whether 'particularized harm will result from disclosure of information to the public.'" In re Roman Catholic Archbishop of Portland in Or., 661 F.3d 417, 424 (9th Cir. 2011) (quoted source omitted). "Broad allegations of harm, unsubstantiated by specific examples or articulated reasoning, do not satisfy the Rule 26(c) test." Beckman Indus., Inc. v. Int'l Ins. Co., 966 F.2d 470, 476 (9th Cir. 1992) (quoted source omitted). "[T]he person seeking protection from disclosure must 'allege specific prejudice or harm.'" Roman Catholic, 661 F.3d at 424 (quoted source omitted). Second, "if the court concludes that such harm will result from disclosure of the discovery documents, then it must proceed to balance 'the public and private interests to decide whether [maintaining] a protective order is necessary.'" Id. (quoted source omitted) (directing courts to engage in this balancing with consideration of the factors identified in Glenmede Trust Co. v. Thompson, 56 F.3d 476, 483 (3d Cir. 1995)).

As the Ninth Circuit has stated, a stipulated blanket protective order generally does not by itself demonstrate "good cause" for sealing specific information and documents. See Kamakana, 447 F.3d at 1183 ("Although the magistrate judge expressly approved and entered the protective order, the order contained no good cause findings as to specific documents that would justify reliance by the United States . . . ."); Foltz v. State Farm Mut. Auto. Ins. Co., 331 F.3d 1122, 1133 (9th Cir. 2003) ("[A] party seeking the protection of the court via a blanket protective order typically does not make the 'good cause' showing required by Rule 26(c) with respect to any particular document."); Beckman Indus., 966 F.2d at 476 ("Further, because the protective order was a stipulated blanket order, International never had to make a 'good cause' showing under Fed. R. Civ. P. 26(c) of the need for protection of the deposition transcripts in the first place.); see also Jepson, Inc. v. Makita Elec. Works, Ltd., 30 F.3d 854, 858 (7th Cir. 1994) ("Even if the parties agree that a protective order should be entered, they still have the burden of showing that good cause exists for issuance of that order. It is equally apparent that the obverse also is true, i.e., if good cause is not shown, the discovery materials in question should not receive judicial protection." (citations omitted)).

Turning to the parties' arguments, Defendants' meet-and-confer theory does not go far. The relevant provision of the protective order states that in applications to the Court for orders

removing the confidential designation from any document or permitting disclosure of confidential materials beyond the terms of the protective order "[t]he party making the motion must comply with all meet and confer requirements of the Court." Eastern District of California Local Rule 251(b) sets forth the parties' requirement of conferring for motions dealing with discovery matters. It states that a motion will not be heard "unless (1) the parties have conferred and attempted to resolve their differences, and (2) the parties have set forth their differences and the bases therefor in a Joint Statement re Discovery Disagreement." In granting Stevenson's previous request to lift, the Court found the protective order's meet-and-confer requirement ambiguous and questioned its application beyond discovery disputes. Doc. No. 94 at 5 n.1. But the Court also stated that all future requests to lift the protective order would be subject to the requirement. Any trickiness with possible nonapplication of the requirement in this specific context is relieved by the fact that Stevenson complied with the requirement for purposes of this motion. The parties both represent they met and conferred regarding their motions in limine. Stevenson represents that he informed Defendants of his intention to file this particular motion. Generally, the parties' filings related to their motions in limine show that their process constituted an attempt at resolving their differences. Moreover, although the parties have not submitted a joint statement as to their discovery disagreement (which, again, is of questionable application here), they have submitted their differences on the issues attendant to Stevenson's motion in those separate filings. Under the circumstances here—loose and minimal language in the protective order, questionable application of a discovery dispute rule to a non-discovery dispute matter, and at least some effort from the parties to address the disagreement before turning to the Court—this is enough.

Second, Defendants' argument that Stevenson has not identified what documents he seeks to have the confidential designation removed from is unavailing. As part of his request, Stevenson moves to lift the protective order in its entirety. Nothing in the protective order prohibits this action, nor does the protective order require that such a request be made with additional specificity.

Third, for their case under the "compelling reasons" and "good cause" standards, Defendants argue that the protective order should remain in full force because the underlying

evidence is irrelevant and should be excluded from trial as misleading under Rule 403 and improper character evidence under Rule 404; public disclosure of the documents will cause a sufficient level of annoyance, embarrassment, oppression, undue burden, or expense; and there is no public interest that outweighs the protected and confidential nature of the relevant documents. For the most part, these statements are nothing more than bare recitations of applicable legal standards. In its previous order lifting the protective order for summary judgment purposes, the Court explained that Defendants had not carried their burden even assuming the lesser good cause standard applied:

> Defendants failed to demonstrate that the documents at issue warrant sealing under either the good cause standard or compelling reasons standard. Even if the Court were to assume that the lesser good cause standard applies here, Defendants have nonetheless failed to demonstrate that the public disclosure of the documents will cause a sufficient level of annoyance, embarrassment, oppression, undue burden, or expense. In fact, Defendants did not even earnestly attempt to make this argument: Defendants focused solely on the issue of relevance. [Defendants failed to convince the Court that the documents lack any relevance to the merits of this lawsuit. In turn, Defendants also failed to convince the Court that the "only reason" for disclosing the documents is to "promote public scandal" and appease Plaintiff's spite towards Defendants.] The closest Defendants came to actually wrestling with the good cause standard was to baldly assert that Defendant M. Crotty "is entitled to privacy with regard to his employment and personnel records." But that assertion both misses the mark of Rule 26(c) and fails to offer specific examples or articulated reasoning of specific harm or prejudice that will befall Defendant M. Crotty if the documents become public. Consequently, because Defendants failed to provide the Court with a proper basis for sealing the documents from the public, the Court will grant Plaintiff's request to lift the protective order as to the documents.

Doc. No. 94 at 5–6 (citations omitted). This analysis and conclusion fit here as well. Under the good cause standard (which again is the lesser of the two possible standards), Defendants are to allege specific harm or prejudice that will occur absent the protective order. This they have not done. At most, they focus on Crotty's personnel records and contend such evidence should be excluded from trial in its entirety because the records "are not relevant to the claims in this action and are not proportional to the needs of the case, considering the importance of the issues at stake in the action." That is, at its most specific, Defendants' argument offers broad and generic allegations to go with bald recitations of law. Like this Court previously informed Defendants, this effort does not satisfy the good cause standard, much less the compelling reasons standard. Roman Catholic, 661 F.3d at 424; Beckman Indus., 966 F.2d at 476.

In many ways, Defendants' arguments are entirely detached from the question of whether the protective order should be lifted and instead aimed at issues of admissibility of the underlying evidence at trial. To that point, the parties' dispute parallels their dispute over Defendants' motion in limine concerning exclusion of Crotty's personnel records. As explained above in the Court's denial of a blanket bar against the personnel records evidence, particulars as to how such evidence might be introduced at trial remain uncertain. The same is true here with respect to how the disputed evidence would cause particularized prejudice and harm upon disclosure. But this burden is Defendants to carry for purposes of this motion. And arguments in favor of continuing a protective order on grounds of evidence admissibility simply put the cart before the horse. If mere inadmissibility at trial constituted good cause under Rule 26(c), unquantifiable amounts of documents and materials produced in discovery in cases across the country could be ordered sealed on account of their not being admissible at trial. This flips the applicable standard on its head.

In sum, the Court will grant Stevenson's Motion in Limine No. 13 to lift the protective order. The magistrate judge entered the protective order based upon a stipulation of the parties, not an explicit finding of good cause. Doc. No. 48 at 7. Defendants are seemingly content to simply argue in favor of the status quo. But as Stevenson correctly points out, showing good cause for continued confidentiality is Defendants' burden. In their opposition to Stevenson's motion, Defendants do not carry that burden.[5]

### D.     Stevenson's Request for Judicial Notice No. 1

Stevenson moves for the Court to take judicial notice of a state agency's adverse action notice and the report and exhibits of an official investigation. Doc. No. 121. Defendants did not submit opposition. But Stevenson's counsel stated in her declaration that Defendants object to this

---

[5] Despite the ruling here, the Court notes that the separate ruling on Defendants' motion in limine regarding Crotty's personnel records imposes independent procedural obligations that may be used to safeguard confidential information even in the absence of the protective order. Additionally, lifting the protective order does not affect other obligations on the parties regarding their pre-trial disclosure of evidence they intend to use at trial, nor does it affect the general rules governing the admission or use of evidence at trial. With these measures in place, the parties still have the ability and opportunities to raise any issue regarding potential disclosure of specific confidential information. If such issues are raised at trial, they shall be raised out of the presence of the jury.

1 request. Doc. No. 121-1 at 2.

2     A trial court may judicially notice a fact that is not subject to reasonable dispute because it
3 either is generally known within the court's territorial jurisdiction or can be accurately and readily
4 determined from sources whose accuracy cannot reasonably be questioned. Fed. R. Evid. 201(b).
5 Under Rule 201, courts may take notice of public records, including records and reports of
6 administrative bodies. United States v. Ritchie, 342 F.3d 903, 909 (9th Cir. 2003); Lundquist v.
7 Cont'l Cas. Co., 394 F. Supp. 2d 1230, 1242–43 (C.D. Cal. 2005).

8     Through his briefing, Stevenson acknowledges these documents are portions of Defendant
9 Crotty's personnel records and that this request pairs with his opposition to Defendants' motion in
10 limine concerning the exclusion of those records and his own motion in limine concerning the
11 protective order. Across all of these disputes, Stevenson has made clear that he seeks to introduce
12 these specific documents at trial for purposes of impeaching Crotty on cross-examination or
13 directly examining him as a hostile witness. Given the Court's rulings above, Stevenson can make
14 a case that evidence involving Crotty's personnel records may be used at trial. But judicial notice
15 has its limits. See Lee v. City of Los Angeles, 250 F.3d 668, 690 (9th Cir. 2001) (explaining that
16 judicial notice may be taken as to the existence of a public record, but not for the truth of the facts
17 recited therein); Schechter v. Smith, No. EDCV-09-1653 MJG, 2011 WL 13174954, at *8 (C.D.
18 Cal. Dec. 6, 2011) (explaining that "one of the major abuses of judicial notice, albeit perhaps
19 unwitting, is courts allowing the use of judicial notice of court records to evade the hearsay rule"
20 (quoted source omitted)). Without more information regarding how these documents will be used,
21 doubt lingers as to whether judicial notice here might be used in violation of these limits and as a
22 means of circumventing the normal process for seeking admission of documentary evidence. To
23 account for that concern—as well as those above regarding this particular evidence—the Court
24 will deny Stevenson's request at this stage and note that the matter may revisited at trial out of the
25 jury's presence.

26

27     **E.**    **Stevenson's Request for Judicial Notice No. 2**

28     Stevenson next moves for the Court to take judicial notice of (1) People v. Douglas J.

14

Stevenson, No. F068170, 2015 WL 4554526, 2015 Cal. App. Unpub. LEXIS 5291 (July 28, 2015); (2) California Penal Code § 4904 (recommending $140/day for overincarceration recovery); and (3) the duration between December 14, 2013, and July 11, 2016, is 941 days (including the end date). Doc. No. 124. On the face of Stevenson's briefing, it appears his request is aimed at and resolved by the Court's ruling on Defendants' partial summary judgment motion. Given that ruling, the Court will deny the request here as unnecessary. Should Stevenson seek to use these sources for other purposes at trial, a renewed request can be made.

**ORDER**

Accordingly, IT IS HEREBY ORDERED that:

1. Defendants' Motion in Limine No. 2 (Doc. No. 113) is DENIED;
2. Defendants' Motion in Limine No. 14 (Doc. Nos. 127 & 129) is GRANTED;
3. Stevenson's Motion in Limine No. 13 (Doc. No. 117) is GRANTED;
4. Stevenson's Request for Judicial Notice No. 1 (Doc. No. 121) is DENIED;
5. Stevenson's Request for Judicial Notice No. 2 (Doc. No. 124) is DENIED; and
6. A status conference shall be SET for Monday, October 4, 2021, at 1:30 p.m.

IT IS SO ORDERED.

Dated: September 22, 2021

SENIOR DISTRICT JUDGE